## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**CHRISTINA MARIE MCLAUGHLIN**

    *Plaintiff*,

    -V.-                         Case: 1:20cv22942

**FLORIDA INTERNATIONAL UNIVERSITY**
             BOARD OF TRUSTEES;
CLAUDIA PUIG, Chair of FIU Board of Trustees,
             In her official capacity;
MARK B. ROSENBERG, President of Florida International
             University- In his official capacity;
R. ALEX ACOSTA, Dean of the FIU College of Law 2009-2017,
             In his official capacity;
TAWIA BAIDOE ANSAH, Interim Dean FIU Law 2017,
             In his official capacity;
JOYCELYN BROWN, FIU Adjunct Professor of Law 2016-2017,
             In her official capacity;
HOWARD WASSERMAN, FIU Professor of Law,
             In his official capacity and personally;
ROSARIO L. SCHRIER aka Lozada, FIU Professor of Law,
             In her official capacity;
THOMAS E. BAKER, FIU Professor of Law,
             In his official capacity;
SCOTT F. NORBERG, FIU Professor of Law,
             In his official capacity;
NOAH WEISBORD; FIU Associate Professor of Law 2016-2017,
             In his official capacity;
MARCI ROSENTHAL, Assistant Dean of Academic Affairs,
             In her official capacity;
THE BOARD OF GOVERNORS FOR THE STATE
             UNIVERSITY SYSTEM OF FLORIDA;
NED C. LAUDENBACH, Chair of Florida Board of Governors of
             State University System, In his official capacity;
IRIS ELIJAH, Assistant Counsel Florida Board of Governor,
             In her official capacity;
UNITED STATES DEPARTMENT OF EDUCATION;
ELISABETH D. DEVOS, Secretary U.S. Dept. of Education,
             In her official capacity;

    *Defendants*.

**VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, MONETARY DAMAGES, AND ATTORNEY'S FEES AND COSTS**

**DEMAND FOR JURY TRIAL**

"Today's students, who are being propagandized by hard left teachers to diminish the importance of due process, are our future leaders, - that's my biggest concern." Professor Alan Dershowitz, Life, Liberty and Levin, aired Fox News, December 8, 2019, Television.

Plaintiff, Christina M. McLaughlin, (hereinafter referred to as "Ms. McLaughlin" or "Plaintiff"), by and through her undersigned counsel, brings this verified complaint against the Defendants, FLORIDA INTERNATIONAL UNIVERSITY, et.al. and alleges claims for 1. Unconstitutional infringement of the fundamental right to freedom of speech and political expression and hostile educational environment; 2. Infringement of substantive and procedural due process of a property interest in her graduate law school education and liberty interest in her good name and reputation; 3. Violation of equal protection; 4. U.S. Department of Education's Breach of Legal Obligation to enforce Family Educational Rights and Privacy Act (hereinafter known as "FERPA"); 5. Violation of Ms. McLaughlin's FERPA rights pursuant to Fla. Stat. 1002.225; 6. Denial of Plaintiff's assistance of counsel; 7. Fraud; 8. Civil Conspiracy; 9. Breach of Fiduciary duty; 10. Negligence; 11. Defamation and False Light.

## INTRODUCTION AND SUMMARY OF THE CASE

### PART 1-FIU Law

1. On or about Fall 2016 through Spring 2017, the State of Florida through Florida International University-governing university (hereinafter known as "FIU") and its FIU College of Law (hereinafter known as "FIU Law") systemically and systematically targeted

the Plaintiff, Ms. Christina McLaughlin, a first year law student, for academic expulsion because she openly supported and volunteered for the Republican party, conservative candidates for local elections, and then candidate President Donald J. Trump.  Since Fall 2016, FIU Law professors routinely used their classrooms for anti-Trump propaganda and created a hostile educational environment for conservative students.  In early 2017, FIU sanctioned protests against the "Muslim Ban."  Before and after President Trump's inauguration, law professors routinely expressed vitriol and hostility toward President Trump's supporters.  FIU Law professors used their classroom to indoctrinate, and influence the 2016 Presidential election.  Ms. McLaughlin felt threatened, intimidated and unsafe in FIU classrooms and on campus.  Because of the hostile educational environment, Ms. McLaughlin never demonstrated her political beliefs on campus and felt stifled to even wear a "Trump/Pence" shirt.  The facts will show that routine use of the classroom for indoctrination was severe and pervasive.  The hostile educational environment limited Ms. McLaughlin's ability to participate in or benefit from an educational program.  FIU Law became aware of her political affiliation through Ms. McLaughlin's extensive social media posts.  FIU Law professors and administration retaliated against Ms. McLaughlin, as a surrogate for the Trump administration by ostracizing her as a student; refusing to answer questions or provide any support; using non-academic grading standards; fraudulently tampering with exam Scantron scores; failing to use anonymous grading and "unblinding" the plaintiff's final exams and grades to fraudulently "bump down" grades.  FIU Law professors and administrators took these actions purposely and maliciously to fraudulently manufacture a Grade Point Average (G.P.A.) that would cause the Plaintiff's academic dismissal.  FIU Law attempted to deny Ms. McLaughlin a law school education because she

represented the embodiment of all things "Trump." FIU Law engaged in a deliberate, systemic effort to socially, politically and legally engineer a more left-leaning student body and graduate future leftist lawyers, judges, and legislators. FIU Law professors predetermined that Ms. McLaughlin would become a conservative lawyer that would likely support President Trump and the Republican Party in future elections. Thus, FIU Law jerry-rigged an academic dismissal.

2. Ms. McLaughlin has a Fourteenth Amendment liberty interest in her reputation and good name which FIU Law infringed upon when they unconstitutionally academically dismissed Ms. McLaughlin.

3. Ms. McLaughlin, a matriculated law school student, has a property interest in her graduate law school education. *See Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012).

4. FIU's academic dismissal holds out to the public that Ms. McLaughlin does not have the capacity to manage a law school education and successfully graduate from an accredited law school pursuant to American Bar Association (ABA) Section 308 and 501(c).

5. In December 2019, Ms. McLaughlin was conferred a juris doctor degree from a different ABA accredited law school. See Exhibit #1.

6. FIU's academic dismissal is, therefore, defamatory on its face because she successfully completed an law school education and graduated from an ABA accredited law school.

7. Ms. McLaughlin's academic dismissal was FIU Law's first communication with the Plaintiff concerning academic standing.

8. Ms. McLaughlin never failed any course at FIU Law. See Exhibit # 2.

9. Ms. McLaughlin never received a failing grade on any interim exam or assignment.

10. FIU Law never placed Ms. McLaughlin on academic probation.

11. FIU Law never placed Ms. McLaughlin in remedial courses or in any remedial program.

12. FIU Law never contacted Ms. McLaughlin about the possibility of academic dismissal prior to her actual dismissal.

13. Ms. McLaughlin maintained a GPA of 2.2 throughout her 1L year until the day of her academic expulsion on May 19, 2017.

14. FIU Law awarded Ms. McLaughlin all available credits, fifteen (15) for the Fall semester.

15. FIU Law awarded Ms. McLaughlin all available credits, sixteen (16) for the Spring semester.

16. Ms. McLaughlin, shockingly, received the notice of the deficient GPA and academic expulsion simultaneously, without notice or warning causing her severe emotional and mental distress.  See Exhibit # 3.

17. On May 23, 2017, FIU Law gave Ms. McLaughlin only **seven (7) days** to challenge her academic dismissal with no opportunity to access her educational records; with a strong presumption against readmission, the burden shift transferred to the student to produce clear and convincing evidence of readmission; in effect an entire inequitable scheme meant to be insurmountable by any student placed in this predicament.  See Exhibit #4.

18. FIU Law's sudden and final academic dismissal is "beyond the pale of reasoned academic decision-making when viewed against the background of [her] entire career" at FIU Law. *Regents of University of Michigan v. Ewing*, 474 U. S. 214, 228 (1985).

19. Ms. McLaughlin alleges that the final GPA of 1.98, generated on the day of her academic expulsion, was fraudulently manufactured by the defendant professors and administration to produce an academic dismissal by 0.02 points below the required 2.0 for promotion.

20. Ms. McLaughlin alleges that her expulsion was arbitrary and capricious.

21. Ms. McLaughlin claims that FIU Law is liable because academic dismissals can be enjoined if those dismissals are shown to be clearly arbitrary and capricious. *See Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 91 (1978).

22. Ms. McLaughlin alleges that FIU Law's conduct is in violation of the holding in *Ewing[i]* to the extent that University's academic dismissals must use accepted standards of professional judgment and may not substantial deviate from accepted academic norms. *See Ewing*, 474 U.S. at 225.

23. FIU Law *Regulations* are inconsistent with the standard of all other Florida law schools' academic dismissal policies. See Exhibit #5.

24. FIU violated Ms. McLaughlin's right to substantive and procedural due process because FIU Law's *Academic Policies and Regulations* (hereinafter known as "FIU Law *Regulations*") codified an unconstitutional academic expulsion scheme that permitted a final expulsion without notice. See Exhibit #6.

25. FIU's academic dismissal was final and FIU Law *Regulations* only permits a petition for readmission. See Exhibit # 6 – Paragraph #1601.

26. FIU Law does not permit any appeals or hearings to determine the legitimacy of expulsion before the expulsion is final. *See Id.*

27. Additionally, the petition for readmission has a stated strong presumption against readmission; a stated burden of proof of "clear and convincing" evidence of readmission; has no opportunity for any discovery; transferred the readmission's burden of proof to the student; conducted a biased readmission hearing; and denied the assistance of counsel. See Exhibit #6- Paragragh #1602.

28. The readmission decision was assigned to the offending professors with a conflict of interest and inherent bias.

29. FIU Law failed to provide a neutral decision-maker.

30. The offending professors, particularly Prof. Wasserman, subjected Ms. McLaughlin to a hostile and emotionally harmful hearing.

31. Clearly, FIU Law's *Regulations* are not meant to evoke an exchange of fluid communications that diminishes the chances of an injustice being perpetrated.

32. Ms. McLaughlin challenged her expulsion on two grounds: 1. the academic dismissal was procedurally unfair because FIU Law never provided any notice and treated other students in her circumstances disparately; 2. At least one law professor used non-academic standards for grading.  See Exhibit #7.

33. On May 31, 2017, FIU Law conducted Ms. McLaughlin's readmission hearing without reviewing her educational records for inaccuracies or miscalculations.

34. On June 2, 2017, FIU Law denied Ms. McLaughlin's request for readmission without investigation or consideration of Ms. McLaughlin's allegation of inaccurate grading and without any finding of fact.  See Exhibit #8.

35. In fact, the Academic Standards Committee (ASC) Chair, Prof. Wasserman stated that the ASC had "**no jurisdiction to review grades**."

36. FIU Law *Regulations* were purposely designed by unscrupulous law professors who used their expert legal knowledge to disadvantage and purposely infringe the constitutional rights of law students who incur the displeasure of FIU law professors.   In this case, Ms. McLaughlin's expulsion was a means to politically retaliate and engineer a leftist law school class.

37. Many of these same unscrupulous law professors and deans oversaw and failed to supervise a hostile educational environment which inhibited Ms. McLaughlin's freedom of political expression and denied her education.

38. FIU Law permitted multiple ethical violations of inappropriate sexual encounters between professors and students during the 2016-2017 1L year.

39. FIU Law publicly held Ms. McLaughlin as a "student that will be unable to successfully complete the curriculum" in their letter to another law school.  See Exhibit #9.

40. The handling of Ms. McLaughlin's expulsion should shock the conscience of the Court, especially since the violations of fundamental rights were perpetrated at the hands of the very guardians of juris prudence i.e. FIU College of Law.

## **PART 2**

41. Subsequently, from June 2017 through September 2017, Ms. McLaughlin, properly and timely, disputed and challenged her academic dismissal and alleged that her educational records were inaccurate and misleading: the challenge was sent directly to FIU's governing university and its agents Ms. Carbajal- General Counsel and directly to FIU President Rosenberg.  In response, FIU took several unlawful actions intended to conceal and cover-up FIU Law's felonious acts.  FIU weaponized FERPA to block access to educational records and deny her right to a FERPA hearing.  FIU failed to properly and transparently investigate or review any of Ms. McLaughlin's grades or allegations.  FIU repeatedly stalled and obfuscated any good faith effort to determine the facts in this case.

42. FIU callously dismissed Ms. McLaughlin and tried to end her law career without undertaking a careful and deliberate review of her academic performance.

43. Ms. McLaughlin challenged the accuracy of her educational records and grades directly to FIU President Rosenberg.  See Exhibit #10.

44. FIU, through its agent Isis Carbajal (General Counsel), admits to reviewing only **one** final grade (LSV II) for computational error.  See Exhibit #11.

45. Thereby, FIU admits that they failed to review all of Ms. McLaughlin's grades for computational inaccuracies.

46. Furthermore, FIU's review of only one grade was performed ***after*** her dismissal was final.

47. Therefore, the review of the grade for computational error had no bearing at all in the final expulsion.

48. FIU had a duty to determine the accuracy or rationale for the poor academic performance especially given that Ms. McLaughlin was never in remedial or notified of poor academic performance before Ms. McLaughlin was actually expelled.

49. FIU claims that Ms. McLaughlin was afforded sufficient "due process" because she was "1. Notified of her dismissal due to poor academic performance, 2. Given an opportunity to appear before the Academic Standards Committee, 3. Notified in writing of the final decision."  See Exhibit #12.

50.  FIU perpetrates a fraud concerning the standards of "due process" in academic dismissals by intentionally omitting material details in FIU Law's *Regulations* concerning academic dismissals.

51. FIU Law's first and ***final*** academic dismissal ended her matriculation and was not a notice of poor academic performance before dismissal was actually final.

52. FIU Law never noticed Ms. McLaughlin of poor academic performance and she was never allowed an opportunity to remediate or mitigate the academic performance.

53. FIU Law's "opportunity to appear before the Academic Standards Committee" was actually a Petition for Readmission as a newly matriculated student and not an academic performance review appeal and does not satisfy due process requirement.

54. The "Academic Standards Committee" meeting is unlikely to result in a readmission because FIU Law *Regulation* created a "strong presumption against readmission;" requiring "compelling and extraordinary circumstances" for readmission; and setting a "clear and convincing" standard for readmission.

55. FIU Law's "writing of the final decision" is a restatement of the first dismissal and is actually a denial of readmission.

56. FIU Law never held a fact finding hearing nor made a careful and deliberate decision based on a thorough review of all facts and findings prior to the taking of her law school education.

57. FIU perverted the holdings in *Ewing* and *Horowitz* by creating "due process" standard so distorted and unfair that Ms. McLaughlin's constitutional right to justice and fair play is violated. *See Id.* at 225; *See also Horowitz* 435 U.S. at 91.

58. The Court in both *Ewing* and *Horowitz* did not intend for educational institutions like FIU Law to take such substantial and transformative decision with Ms. McLaughlin's future career and livelihood with such an unfair and biased procedures. *See Id.*

59. FIU weaponized FERPA law to argue that Ms. McLaughlin is not due a careful and deliberate review of her education record for inaccuracies upon an academic dismissal.

60. Additionally, FIU impermissibly used FERPA to infringe Ms. McLaughlin's vested rights granted to students who challenge educational records as misleading or inaccurate in opposition to the legislative intent.

61. FIU ignored Ewing's holding in dicta that an academic dismissal is reviewable if the educational institution applied "bad faith, ill-will or other impermissible ulterior motives." *Ewing*, 474 U. S. at 220.

62. Thereby, FIU, through its Board of Trustees, President Rosenberg, law professors and administration violated Ms. McLaughlin's Constitutional Rights to procedural and substantive due process property rights in her law school education; infringed her freedom of political expression through discrimination based on her political beliefs; weaponized FERPA to cover-up malfeasance; attempted to unlawfully deprive Ms. McLaughlin of her career aspirations; created a hostile and biased educational environment and defamed her good name and reputation.

## PART 3- Florida Board Of Governors and Iris Elijah

63. Florida, through its State University System Board of Governors, (FBG) violated Ms. McLaughlin's rights to freedom of expression, due process; equal protection under color of law, and violated FERPA law by failing to properly and neutrally investigate her complaint.

64. FBG is vested with all authority for FIU and is responsible for the adoption and authorization of all policies and regulations and provide oversight of all FIU agents and employees.

65. On December 4, 2017, the FBG received Ms. McLaughlin's complaint.  See Exhibit #13.

66. Ms. McLaughlin mailed the identical complaint to multiple agencies at the same time.

67. The FBG appointed Ms. Iris Elijah to process and investigate Ms. McLaughlin's complaint despite the fact that she had a substantial and material conflict of interest with this case.  See Exhibit #14.

68. Ms. Elijah is a former and recent FIU Law graduate and worked for FIU's General Counsel's office a few months prior.  See Exhibit #15.

69. Ms. Elijah is personal friends with FIU's General Counsel, Isis Carbajal.

70. Concurrently, Ms. Elijah was featured on FIU website which highlighted her close relationship with FIU. *See Id.*

71. Ms. Elijah was re-employed as FIU's Assistant General Counsel shortly thereafter.

72. On December 11, 2017, Ms. McLaughlin objected to Ms. Elijah's participation or control of the complaint's investigation because of probable bias and possible conflict of interest. See Exhibit #16.

73. FBG did not answer Ms. McLaughlin's objection.

74. The FBG never reached out or communicated with Ms. McLaughlin at all except for the final determination letter.

75. Ms. Elijah's excessive intermingling with FIU created a reasonable inference of bias favoring FIU.

76. Ms. Elijah knew or should have known to recuse herself from any further participation in this complaint.

77. FIU never denied or overtly recused Ms. Elijah from this complaint and Ms. McLaughlin alleges that Ms. Elijah directed, determined, coordinated and/or influenced the FBG response.

78. Ms. McLaughlin alleges that Ms. Elijah directed, supervised and possibly authored the FBG response.

79. On January 26, 2018, Ms. Rebekah Weeks, Investigation and Audit Specialist of the Inspector General's Office, returned a response to Ms. McLaughlin's complaint and determined that her complaint had no substance without any fact finding. See Exhibit #17.

80. Plaintiff alleges that Ms. Elijah's bias against Ms. McLaughlin was, at least in part, the basis for the failure to properly investigate and make a proper determination.

81. Ms. Weeks is not an attorney and has no legal authority to make determinations of student complaints as a matter of law.

82. The FBG response conducted themselves in a wholly biased manner.

### PART 4- Department of Education

83. The deep-state, anti-Trump U. S. Department of Education (DOE) has shown reckless and callous indifference to Ms. McLaughlin's federal rights vested to her under FERPA.

84. On December 4, 2017, the DOE was in receipt of Ms. McLaughlin's FERPA complaint.  See Exhibit #18.

85. The DOE has failed its statutory obligation to timely investigate and make a determination on a notice of investigation.

86. As of the filing of this complaint, the DOE has failed to make any determination on this student consumer complaint for more than two years.

87. The DOE has offered no support, guidance or assistance to the student complainant.

88. Contrastingly, the DOE offered FIU a complete blueprint of defenses and answers to Ms. McLaughlin's complaint.  See Exhibit #19.

89. Ms. McLaughlin alleges that the DOE is so poisoned and corrupted by anti-Trump deep-state swamp operatives that they have intentionally tried to bury and obviate Ms. McLaughlin's complaint.

90. Ms. McLaughlin alleges that FIU exerts undue influence at the DOE through several Congressional Representatives which precludes the Department from conducting a neutral and fair determination.

91. Defendants, FIU General Counsel, Isis Carbajal and FIU Law Assistant Dean Marci Rosenthal both were former employees at the Department of Education and maintain deep and strong connections with the DOE.

92. The DOE has been and continues to be a farcical, toothless agency that exists primarily for the purpose of supporting universities in their various unlawful and nefarious acts against students and only rarely protect student's vested rights as an inconvenient burden.

93. Ms. McLaughlin alleges that if not malicious, then the DOE is negligent for their complete failure to fulfill their duty to make a determination after over two years of the complaint's filing date.

94. DOE, through its agents, made numerous assurances that the complaint was a top priority for several years in order to stall Ms. McLaughlin from enforcing her legal rights through the courts.

95. After two years of stalling and failing to file a findings letter, Ms. McLaughlin alleges that the DOE and FIU colluded to infringe her right to seek redress from the courts.

96. The DOE has violated Ms. McLaughlin's constitutional right to due process under the Fifth Amendment because the DOE is a conspiracy participant in denying Ms. McLaughlin her property right to her law school education and her liberty interest in her good name and reputation.

97. Ms. McLaughlin alleges that the DOE and FIU participated in an either expressed conspiracy or implied collusion to deny Ms. McLaughlin her FERPA rights and protect a liberal university's malfeasance.

98. The DOE's conduct and handling of Ms. McLaughlin's complaint is so outrageous that it should shock the conscience of any reasonable arbiter or jurors of this case.

99. Ms. McLaughlin's FERPA complaint against FIU was originally intended to enforce her right to a fair FERPA hearing and to place an explanatory statement on her educational record so that she may resurrect her law career.

100.   Ms. McLaughlin alleges that she lost valuable time and incurred additional tuition expenses because of the Defendants' unlawful actions.

101.   Ms. McLaughlin lost out on important educational and employment opportunities.

102.   Ms. McLaughlin alleges that she has faced a loss of reputation due to the DOE's failure to make a determination in her complaint.

103.   Therefore as a consequence of the Defendants' egregious, outrageous and unlawful actions, Ms. McLaughlin now seeks monetary damages of TWENTY FIVE MILLION DOLLARS ($25,000,000.00) and all equitable and just remedies under law including but not limited to punitive damages.

## **JURISDICTION & VENUE**

104.   This complaint includes Civil Rights claims that raise federal subject matters pursuant to the First, Fifth and Fourteenth Amendments of the United States Constitution and the Civil Rights Act of 1871 and 42 U.S.C. Sec. 1983.

105.   This complaint includes Property Rights Takings claims that raise federal subject matters pursuant to the Fifth and Fourteenth Amendment of the United States Constitution.

106.   This complaint includes Liberty Rights claims that raise federal subject matters pursuant to the First and Fourteenth Amendment of the United States Constitution.

107.   This complaint also includes claims that raise civil rights, liberty rights and property rights pursuant to the Florida Constitution.

108.   The Court has jurisdiction over these claims pursuant to 28 U.S.C. Sec. 1331 and 1343.

109.    The Court has authority to award requested damages and injunctive relief pursuant to 28 U.S.C. 1343.

110.    The Court may award court costs and fees and attorney's fees pursuant to 42 U.S.C. Sec. 1988.

111.    Venue is proper because the acts occurred in the Southern District of Florida.

112.    The Plaintiff verifies that she has exhausted all administrative remedies:

A.  Florida Board of Governors determined that Ms. McLaughlin's complaint had no merit as a matter of law without an investigation or findings of fact.  See Exhibit #17.

B.  Stephanie Leland, Director of Equity and Civil Rights Compliance, Florida Department of Education never responded to complaint letter.

C.  Governor Rick Scott never responded to the complaint on December 4, 2017 and follow-up status letter on February 6, 2018.

D.  Virginia Foxx, U. S. House of Representative, Chair of the House Education and Workforce Committee never responded to complaint correspondence dated April 15, 2018.

E.  Lamar Alexander, U.S. Senate, Chair of the Committee on Health, Education, Labor and Pensions never responded to complaint correspondence dated April 15, 2018.

F.  U.S. Department of Justice, Civil Rights Division denied a review of discrimination and harassment claims based on political expression because of lack of jurisdiction. See Exhibit #20 and #21.

G.  U.S. Department of Education, Office of Civil Rights denied a review for lack of jurisdiction over discrimination claims based of political ideology.  See Exhibit #22.

H.  U.S. Department of Education, Family Privacy Compliance Office (FPCO) and now known as Student Privacy Policy Office (SPPO) has failed to make a determination for more than two (2) years after issuing a Notice of Investigation against FIU on May 26, 2018.

113.    According to the above responses or failures to respond, no department or agency of either Florida or federal government has jurisdiction over the infringement of first amendment rights; discrimination, and retaliation based on a student political ideology.

### Reservation to Name Additional Defendants and Additional Claims

114.    In addition to the entities set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiff.   Notwithstanding the above statement, the Plaintiff currently lacks specific facts to permit Plaintiff to name such person or persons as a party Defendant. By not naming such persons or entities at this time, Plaintiff is not waiving her right to amend this pleading to add such parties, should the facts warrant adding such parties.

115.    In addition to the claims set forth herein, there are likely other claims that may well be legally enforceable.   Notwithstanding the above statement, Plaintiff currently lacks specific facts to permit Plaintiff to name such claims.   By not naming such claims or damage at this time, Plaintiff is not waiving her right to amend this pleading to add such claims or damages, should the facts warrant adding such claims.

### STATUTE OF LIMITATIONS

116.    Plaintiff's defamation claim is within the two-year statute of limitations because FIU's defamatory and false representation that Ms. McLaughlin was unlikely to successfully graduate from law school, through their unlawful academic dismissal, began to run on the date of her law school graduation, December 17, 2019.

117.     Additionally, on May 13, 2018, Mr. Dale King, Director Family Policy Compliance Office (hereinafter called FPCO), deterred the Plaintiff's right to initiate litigation by writing "It is the policy of the Office [Family Privacy Compliance Office] that if a party commences litigation in court involving the subject matter of an alleged FERPA violation, this Office would not investigate an alleged violation prior to a decision by the court."  See Exhibit #23.

118.     The above stated "policy" is not published or publically known in any way, but it served to quell Ms. McLaughlin from filing suit pending a DOE determination.

119.     The law commonly requires that in claims involving government statutory compliance the plaintiff must have exhausted all administration regulatory remedies.

120.     The DOE through its agent, Mr. King, created a mutually exclusive, binary decision which in effect prevented Ms. McLaughlin from filing suit pending a DOE determination on the DOE's Notice of Investigation.

121.     Thereby, the DOE quelled Ms. McLaughlin's right to file litigation by holding her FERPA violations' investigation hostage through multiple stalling and avoidance tactics for more than two years.

122.     Ms. McLaughlin asserts that the statute of limitation is tolled on all claims effective May 13, 2018.

123.     On November 20, 2018, the DOE wrote "we are nearing completion, and expect to have a response to you shortly."  See Exhibit #24.

124.     On April 24, 2019, the DOE again stated, "investigation is still under review by our General Counsel's office, but I did receive word morning that there has been movement on the case.  I will let you know as soon as we are able to issue the findings letter."  See Exhibit #25.

125.    DOE did not communicate again with Ms. McLaughlin until October 9, 2019 when the DOE resent all documents relevant to the complaint and requested confirmation that the DOE may proceed to a resolution.  See Exhibit #26.

126.    On October 24, 2019, Ms. McLaughlin responded that the DOE is in possession of all relevant information and documents (and was since December 4, 2017) and may proceed to a final findings letter.  See Exhibit #27.

127.    Ms. McLaughlin demanded an immediate determination and issuing of a findings letter.

128.    The DOE created reliance that a findings letter would be imminent and would shed light upon possible legal claims concerning this matter.

129.    Ms. McLaughlin is still waiting for the DOE's final findings letter after more than two years.

130.    Ms. McLaughlin asserts that she can no longer permit the DOE to diminish her right of access to the courts and the exercise of her Constitutional rights.

131.    Additionally, the COVID-19 Pandemic and "Safer at Home" Executive Order delayed the filing by approximately four months.

## FACTS

### Facts: PLAINTIFF

132.    Plaintiff, Christina Marie McLaughlin, is a resident of the State of Florida.

133.    Plaintiff was a matriculated full-time student at Florida International University College of Law from on or about August 2, 2016 thru May 19, 2017.

134.    On May 19, 2017, FIU Law academically dismissed Ms. McLaughlin.

135.    Ms. McLaughlin was a 1L student in good standing during her entire matriculation.

136.    Ms. McLaughlin was awarded upon admission a scholarship of $5,000.00.

137.    Ms. McLaughlin paid FIU Law more than $ 42,000.00 in tuition and fees.

138.    Ms. McLaughlin received $58,000.00 in federally guaranteed student loans.

139.    FIU Law never provided or notified Ms. McLaughlin of the mandatory financial aid exit counseling concerning her student loans.

140.    During the Plaintiff's 1L year, Ms. McLaughlin posted on her Facebook and Twitter social media accounts many expressions of support for the Republican party, then candidate Donald J. Trump, and subsequently President Trump.

141.    During the Plaintiff's 1L year, Ms. McLaughlin posted photos with prominent Republican Party members including then-Governor Rick Scott, Congressman Francis Rooney, then-Ambassador John Bolton, and other Republicans on her social media accounts taken at various fundraising campaign events.

142.    On or about the end of October 2016, FIU held a "Hillary Clinton for President" rally.

143.    President Obama was the keynote speaker at that rally.

144.    Ms. McLaughlin attended the rally.  Ms. McLaughlin did not support Hillary Clinton for President and in fact disagreed with most of her platform.  But, she felt privileged to have the opportunity to witness the sitting president's (President Obama) oratory skills.  Ms. McLaughlin respectfully listened to President Obama's speech and politely clapped, but did not demonstrate adulation.  Additionally, Ms. McLaughlin had to fend off aggressive recruiting by Clinton volunteers seeking donations.

145.    It became plainly evident to all the surrounding classmates that Ms. McLaughlin was a Donald Trump supporter.  Ms. McLaughlin noted an almost immediate difference in attitude and behavior from classmates, professors, and FIU administration from that day forward.

146.    FIU Law professors' attitude became clearly cold, disengaged, non-responsive and at times hostile.

147.    Plaintiff alleges that FIU Law began an intentional hostile, discriminatory and retaliatory campaign against the Plaintiff.

148.    The hostile and retaliatory educational environment became progressively worse especially after President Trump's inauguration.

149.    Ms. McLaughlin felt threatened and stifled to voice any comments in support of President Trump for fear of further retaliatory action especially concerning grades.

150.    Ms. McLaughlin felt unsafe to show any expression of her political allegiance such as wearing a "Trump/Pence" shirt or hat because of the vitriol expressed by the law professors.

151.    However, Plaintiff asserts that she was unaware of any actual unlawful fraudulent tampering with grades or use of non-academic standards until after her academic expulsion.

152.    It has become evident that fellow Republican students had to hide their political affiliations because they felt threatened by FIU Law's hostility towards Republicans.


**DEFENDANTS**

**Facts: FIU- BOARD OF TRUSTEE and CLAUDIA PUIG**

153.    Defendant, Florida International University-Board of Trustees (Board of Trustees) is the governing body of a public Florida university corporation established pursuant to the laws of Florida.  *See* Article IX, section 7 of the Florida Constitution and section 1000.21, 1000.72, and 1004.39 Florida Statutes.

154.    Defendants, Claudia Puig, Chair of FIU Board of Trustees, and all members of the Board of Trustees were at all times relevant to this complaint, and are the final policymaking

authority for the university and are responsible for the adoption and authorization of all policies and regulations and provided oversight of all FIU agents and employees.

155.    Each member of the Board of Trustees is sued in his or her official capacity.

156.    Board of Trustees is responsible for the adoption and authorization of the FIU Law's *Academic Policies and Regulations (*FIU Law *Regulations)*.

157.    Board of Trustees is responsible for FIU, the governing university's FERPA *Regulations*.

158.    Board of Trustees is responsible for the websites, student handbooks and all other publications.

159.    Board of Trustees has oversight and authority over all law professors, other employees and agents, named in the complaint herein.

160.    Board of Trustees has defended, supported, and sanctioned all actions taken by professors, deans, employees and agents referred to in this complaint.

161.    Board of Trustees' actions is a severe dereliction of duty.

162.    Board of Trustees is sued for infringement of the fundamental right to freedom of political expression, violation of Procedural and Substantive Due Process, violation of equal protection under color of law, denial of assistance to counsel, violation of Ms. McLaughlin's right pursuant to Florida's FERPA Stat. 1002.225, civil conspiracy, breach of fiduciary duty, negligence and defamation of character.

163.    Board of Trustees acts and/or failure to act is the proximate cause of Ms. McLaughlin's harm.

### Facts: PRESIDENT MARK ROSENBERG

164.    Defendant, Mark B. Rosenberg, FIU President, is and was at all times relevant to this complaint.

165.    On August 17, 2017, President Rosenberg personally received a letter of complaint from Ms. McLaughlin concerning her allegations of fraudulent grading and inaccurate and misleading educational records.

166.    Pres. Rosenberg was aware of the allegations of fraud, tortious academic expulsion, and violation of the fundamental right to free speech and political expression and violation of Constitutional Right to procedural and substantive due process and hostile educational environment.

167.    President Rosenberg failed to personally respond to the Plaintiff's letter of complaint.

168.    On August 25, 2017, FIU's General Counsel (Isis Carbajal) answered on behalf of President Rosenberg.

169.    President Rosenberg, through his General Counsel, admits to failing to review all of Ms. McLaughlin's final grades for computational errors.

170.    President Rosenberg was aware that the issue of inaccuracies and misleading information in Ms. McLaughlin's educational records was still "unsettled."

171.    President Rosenberg disregarded FIU *Regulation* 108 that states if a FERPA issue is still "unsettled" FIU shall refer the issue to a fair and unbiased evidentiary hearing.  See Exhibit # 28.

172.    President Rosenberg dismissed Ms. McLaughlin's request for a FERPA hearing without conducting a fair, thorough and unbiased review of the Plaintiff's allegations.

173.    President Rosenberg summarily ended Ms. McLaughlin's complaints of fraud, malfeasance, and hostile educational environment without stating any investigatory findings.

174.    President Rosenberg unilaterally converted Ms. McLaughlin's FERPA challenge into a student grievance against one professor i.e. Prof. Brown and ignored the FERPA issue.

175.    President Rosenberg flippantly disregarded Ms. McLaughlin's complaints against, at least, four other professors.

176.    President Rosenberg never requested a meeting or any other communication with Ms. McLaughlin or her counsel.

177.    Instead, President Rosenberg "victim shamed" Ms. McLaughlin by stating that it was her responsibility to have filed a grievance against Prof. Brown.

178.    President Rosenberg also blamed Ms. McLaughlin for not following the proper grievance procedure.

179.    FIU Law has no stated grievance procedure.

180.    President Rosenberg callously tossed Ms. McLaughlin complaint back to offending professors and the offending FIU College of Law.

181.    Ms. McLaughlin alleges that President Rosenberg committed the above stated acts to conceal, divert, and cover-up the felonious acts committed by FIU Law professors.

182.    Furthermore, Ms. McLaughlin alleges that President Rosenberg committed a severe dereliction of duty.

183.    In the alternative, President Rosenberg was at least callous and negligent in the exercise of his duties.

184.    Pres. Rosenberg is sued in his official capacity for infringement of Plaintiff's right to freedom of political expression, hostile educational environment, violation of Procedural and Substantive Due Process, violation of equal protection under color of law, denial of assistance to counsel, violation of Ms. McLaughlin's right pursuant to Florida's FERPA Stat. 1002.225, civil conspiracy, breach of fiduciary duty, negligence and defamation of character.

185.   Pres. Rosenberg's actions and/or failure to act are the proximate cause of Ms. McLaughlin's harm.

## **Facts: DEAN RENE ALEX ACOSTA**

186.   Defendant, Rene Alex Acosta (also known as Alex Acosta), Dean of FIU Law is and was at all times relevant to this complaint up to his resignation on or about April 2017.

187.   Dean Acosta was responsible for the adoption and authorization of all policies and regulations and provided oversight of all FIU Law agents and employees.

188.   Dean Acosta is responsible for the adoption, authorization and maintenance of FIU Law's *Academic Policies and Regulations*.

189.   Dean Acosta is responsible for the websites, student handbooks, and all other publications concerning FIU Law.

190.   Dean Acosta had oversight authority over all FIU law professors, other employees, and agents named in the complaint herein.

191.   Dean Acosta has defended, supported, and sanctioned all actions taken by professors, deans, employees, and agents referred to in this complaint.

192.   Dean Acosta allowed or had willful blindness to law professors' creating a hostile educational environment without impediment.

193.   Dean Acosta allowed or had willful blindness to law professors' using non-academic standards for grading; tampering with scantron tabulation; unauthorized grade unblinding to fraudulently mis-recorded grades.

194.   Dean Acosta allowed or had willful blindness to law professors having inappropriate sexual relations with Plaintiff's classmates.

195.    Dean Acosta allowed or had willful blindness to systemic discrimination and retaliation based on impermissible bias based on political ideology.

196.    Dean Acosta's actions are a severe dereliction of duty.

197.    Dean Acosta was negligent in the conduct of his office.

198.    Dean Acosta is sued in his official capacity for infringement of the fundamental right to freedom of political expression under the U.S. Constitution and Florida Constitution; hostile educational environment; violation of substantive and procedural due process; violation of equal protection under color of law, breach of fiduciary duty; negligence and defamation of character.

199.    Dean Acosta's actions and/or failure to act are the proximate cause of Ms. McLaughlin's harm.

## **Facts: DEAN ANSAH**

200.    Defendant, Dean Tawia Baidoe Ansah, was FIU's interim Dean of FIU Law in May 2017 at the time of Ms. McLaughlin's academic dismissal.

201.    Dean Ansah is a well-known out-spoken, anti-conservative, anti-Trump critic.

202.    In fact, Dean Ansah signed an anti-Kavanaugh letter protesting Pres. Trump's selection of Judge Brett Kavanaugh for Supreme Court Justice.  See Exhibit #29.

203.    Dean Ansah was one of 10 FIU Law professors to sign the anti-Trump/anti-Kavanaugh letter.

204.    FIU Law had the most leftist law professors of all law schools participating in the protest.

205.    Ms. McLaughlin alleges that Dean Ansah's protest letter against Judge Kavanaugh, although occurring after Ms. McLaughlin's expulsion, demonstrates the depth of anti-Trump/anti-conservative ideology among Ansah and other FIU Law professors.

206.    Dean Ansah had oversight authority over all FIU law professors, other employees, and agents named in the complaint herein.

207.    Dean Ansah has defended, supported and sanctioned all actions taken by professors, deans, employees, and agents referred to in this complaint.

208.    Dean Ansah received several correspondences and emails personally from Plaintiff concerning the Plaintiff's academic dismissal.

209.    Dean Ansah failed to substantively respond to Plaintiff's reasonable attempts to learn about the readmission procedure and to have counsel present. See Exhibit #30.

210.    Dean Ansah possessed the authority of supervision to prevent or mitigate the claims made in Ms. McLaughlin's Petition for Readmission.

211.    Dean Ansah committed a gross dereliction of duty by failing to properly supervise the professors, review Ms. McLaughlin's grade for inaccuracies, and investigate Ms. McLaughlin's allegation of non-academic grading standards in her Petition for Readmission.

212.    On June 9, 2017, Dean Ansah letter of standing to another law school depicted Ms. McLaughlin as a failed 1L student without any mention of the fact that Ms. McLaughlin had not been placed on remediation or ever failed any class. See Exhibit #9.

213.    Dean Ansah was aware that Ms. McLaughlin had challenged her GPA in that at least one professor (LSV II) had disregarded standard academic norms for grading.

214.    FIU Law had not performed any review or investigation as to the accuracy of that grade at the time of letter.

215.    Ms. McLaughlin alleges that Dean Ansah purposely depicted Ms. McLaughlin in the worse possible light to diminish her chances of continuing her law school education.

216.    Ms. McLaughlin showed callous indifference to Ms. McLaughlin's complaint of inaccurate grading by at least one professor and disregarded Ms. McLaughlin's complaint of due process violations.

217.    Dean Ansah is sued in his official capacity for infringement of Plaintiff's right to freedom of political expression, violation of Procedural and Substantive Due Process, violation of equal protection under color of law, denial of assistance to counsel, civil conspiracy, breach of fiduciary duty, negligence, and defamation of character.

218.    Dean Ansah's actions and/or failure to act are the proximate cause of Ms. McLaughlin's harm.

## **Facts: PROFESSOR BROWN**

219.    Defendant, Joycelyn Brown, was an FIU interim professor of law during the Spring 2017 semester.

220.    Professor Brown was a former professor at Miami-Dade College.

221.    While at Miami-Dade College, she had received universal dismal ratings as a professor. See Exhibit #31.

222.    Professor Brown only served one semester as an FIU Law professor.

223.    She received dismal reviews and ratings as a professor at FIU.

224.    FIU was negligent in the hiring of this sub-par professor and negligent in her monitoring and supervision.

225.    Prof. Brown is a radical leftist who either belongs to or provide support for several radical leftist organizations.

226.    Prof. Brown was the Plaintiff's Legal Skills and Values II professor.

227.    Prof. Brown recorded the final grade of "C+" on Ms. McLaughlin's educational record.

228.    During spring 2017 semester, Prof. Brown told Ms. McLaughlin that her support for Donald Trump was "immoral."

229.    Prof. Brown told Ms. McLaughlin that her assignments were not graded according to the rubric, but instead, were downgraded in all categories at the same meeting she called Ms. McLaughlin "immoral."

230.    Prof. Brown created a hostile educational environment by making a personal judgment of Ms. McLaughlin's moral values.

231.    Ms. McLaughlin felt intimidated and unsafe in Prof. Brown's classroom.

232.    It is clear that Prof. Brown was so emotionally troubled by Ms. McLaughlin's conservative political stance that she was incapable of executing her duties as professor with fairness and impartiality.

233.    Prof. Brown knew or should have known to recuse or resign herself from teaching Ms. McLaughlin.

234.    Instead Prof. Brown chose to abuse her power as professor and openly treat Ms. McLaughlin with prejudice and animus.

235.    Prof. Brown publically insulted Ms. McLaughlin by calling out her public speaking skills.

236.    Ms. McLaughlin availed herself of after-class conference but Prof. Brown was evasive and failed to give substantive guidance.

237.    Prof. Brown repeatedly told Ms. McLaughlin that she didn't like her "style."

238.    Ms. McLaughlin alleges that Prof. Brown intentionally lowered Ms. McLaughlin's grades to retaliate and politically engineer the student body class.

239.  Prof. Brown had repeatedly written positive and praise worthy comments on her papers yet repeatedly gave Ms. McLaughlin the lowest grade in the class.

240.  Prof. Brown was otherwise inaccessible and evasive in response to Ms. McLaughlin's outreach.

241.  Prof. Brown never responded to email requests for clarification and direction.

242.  Ms. McLaughlin did not file a grievance before her dismissal because Ms. McLaughlin felt intimidated by all members of FIU Law professors and administration.

243.  As stated ante, FIU Law froze out Ms. McLaughlin and she found no friendly party with whom to address her concerns.

244.  As a student with no status or power, Ms. McLaughlin was trying not to antagonize an already very hostile environment.

245.  After Ms. McLaughlin's dismissal, she tried to reach Prof. Brown several times by email and phone messages concerning her grade.  See Exhibit #32.

246.  Prof. Brown never responded to Ms. McLaughlin's attempts to discuss her grade.

247.  Plaintiff alleges that Prof. Brown never responded because she was purposely avoiding Ms. McLaughlin.

248.  Plaintiff alleges that Prof. Brown used non-academic criteria in grading because of her political bias.

249.  Plaintiff alleges that Prof. Brown intentionally discriminated and retaliated against Ms. McLaughlin by issuing a lower grade than if grading was objective and the rubric was applied neutrally.

250.  Plaintiff alleges that Prof. Brown coordinated with other professors and FIU staff to unlawfully cause an academic dismissal.

251.    Prof. Brown served as an adjunct professor for only one semester because FIU was aware of Prof. Brown's dismal student ratings while at FIU.

252.    FIU Law undoubtedly knew of Prof. Brown's subpar performance and likely knew of her use of non-academic grading standards and arbitrary grading.

253.    Despite Prof. Brown's failed tenure as a professor, FIU refused to investigate Ms. McLaughlin's allegations of inaccurate or misleading grading based on political bias.

254.    FIU showed willful blindness as to Prof. Brown's conduct.

255.    Prof. Brown is sued in her official capacity for infringement of Plaintiff's right to freedom of political expression, hostile educational environment, fraud, civil conspiracy, breach of fiduciary duty, and defamation of character.

256.    Prof. Brown's actions and/or failure to act are the proximate cause of Ms. McLaughlin's harm.

## Facts: PROFESSOR WASSERMAN

257.    Defendant, Howard Wasserman, is an FIU professor of law.

258.    Prof. Wasserman was the Plaintiff's professor of Civil Procedure during the spring Semester of 2017.

259.    Prof. Wasserman recorded the final grade of "D" on Ms. McLaughlin's educational record.

260.    Prof. Wasserman is a publically, well-known anti-Trump blogger.

261.    Prof. Wasserman often expressed extreme, anti-Trump and "Not My President" rhetoric during class time.

262.    Professor Wasserman directed students to view his blog online where he writes as an extreme Trump critic.

263.    Prof. Wasserman engaged in political indoctrination.

264.    Ms. McLaughlin felt intimidated to freely express an opposing political viewpoint in his classroom.

265.    As of early 2017, Prof. Wasserman was aware of Ms. McLaughlin's support of President Trump and the Republican Party.

266.    Prof. Wasserman became openly hostile to Ms. McLaughlin and refused to answer her questions and ignored her class participation.

267.    Ms. McLaughlin alleges that Prof. Wasserman used non-academic standards to grade her exams.

268.    Ms. McLaughlin alleges that Prof. Wasserman graded her exam unblinded and failed to use anonymous grading to record Ms. McLaughlin's exam scores.

269.    Ms. McLaughlin alleges that Prof. Wasserman intentionally lowered Ms. McLaughlin's grades to retaliate and politically engineer the student body class.

270.    Ms. McLaughlin alleges that Prof. Wasserman did not apply the objective grading rubric to Ms. McLaughlin's written exams.

271.    Ms. McLaughlin alleges that Prof. Wasserman tampered with Ms. McLaughlin's multiple-choice Scantron results to manufacture a fraudulent exam score.

272.    Ms. McLaughlin alleges that Prof. Wasserman coordinated with other professors and FIU staff to unlawfully cause an academic dismissal.

273.    Ms. McLaughlin alleges that her Civil Procedure final grade is inaccurate and misleading.

274.    Prof. Wasserman intentionally targeted Ms. McLaughlin for expulsion because of her political beliefs.  Ms. McLaughlin alleges that Prof. Wasserman planned a hit-job to force Ms. McLaughlin out of law school because of her support for candidate Donald Trump.  The

hit-job was motivated in part by animus and retaliation for the Plaintiff being a Trump supporter, but more sinisterly, was a calculated effort to prevent graduating a conservative lawyer who would lend support to the 2020 Trump re-election campaign and the Republican Party.

275. Prof. Wasserman was **also** the Chair of the Academic Standards Committee during Ms. McLaughlin's reinstatement hearing.

276. Prof. Wasserman was, also, the senior professor who supervised all grading and academic standing.

277. Professor Wasserman had access, opportunity and authority to jerry-rig students' education records and class standing.

278. On May 30, 2017, Prof. Wasserman chaired and conducted the Plaintiff's ASC readmission hearing.

279. Prof. Wasserman refused to allow the Plaintiff's attorney from attending the ASC readmission hearing.

280. Prof. Wasserman physically blocked the hallway in front of the ASC meeting room preventing Ms. McLaughlin's attorney from entering the ASC hearing.

281. Prof. Wasserman wore athletic shoes, basketball shorts and a tee-shirt to the ASC hearing.

282. Ms. McLaughlin asserts that Prof. Wasserman's attire was a purposeful demonstration of the callous disregard for the gravity and the nature of the Plaintiff's academic dismissal from law school.

283. Prof. Wasserman gave Ms. McLaughlin an ultimatum that she either attend the readmission hearing without her attorney present or she forfeits any chance of readmission.

284.   Prof. Wasserman aggressively berated and demeaned Ms. McLaughlin, a 1L student, for thirty minutes during the ASC hearing.

285.   Ms. McLaughlin argued that a final dismissal without having been placed in remediation was inherently unfair and treated her disparately from other 1L students who had received the benefits of remediation.

286.   Prof. Wasserman stated that the burden is on the student to request assistance and that the treatment of other similarly situated students was none of her concern.

287.   Ms. McLaughlin argued that she had received all passing grades on all assignments and interim exams and that without any communication from professors, administration or staff she could not possibly discern that expulsion was likely.

288.   In fact, Ms. McLaughlin had reached out to several professors for after-class questions and she had been ignored.

289.   Ms. McLaughlin felt reassured that she was not at peril for expulsion because FIU Law had determined that she did not need the benefit of remediation and therefore could handle the academic requirements.

290.   Prof. Wasserman admittedly stated that FIU Law had not given Ms. McLaughlin any indication of possible academic dismissal prior to the final dismissal, but that it was nevertheless, proper notice because the rules are published and codified in the FIU Law *Academic Policies and Regulations*.

291.   Ms. McLaughlin also argued at the readmission hearing that Prof. Brown may have used non-academic standards in her grading because of bias against Ms. McLaughlin.

292.   Prof. Wasserman immediately dismissed Ms. McLaughlin's concerns and stated that the ASC had "no jurisdiction to review grades."

293.   With a wave of his hand Prof. Wasserman and the ASC never considered Ms. McLaughlin's allegation of inaccurate grading and that the ASC's decision would be final without any review or investigation as to the accuracy of the transcript.

294.   Prof. Wasserman had a duty to inform Ms. McLaughlin of any other remedies such as appeals, grievances or FERPA rights.

295.   Prof. Wasserman had a duty to investigate or review all grades for inaccuracies, miscalculations or mis-recordings.

296.   Prof. Wasserman had a duty to investigate Ms. McLaughlin's allegations of bias in grading by a newly hired professor.

297.   Prof. Wasserman breached his duty to carefully and deliberately evaluate Ms. McLaughlin's academic performance before denying her petition for readmission.

298.   Ms. McLaughlin alleges that Prof. Wasserman breached his duty of fairness and careful deliberation before taking Ms. McLaughlin's FIU Law education because he had predetermined the outcome making the ASC hearing a sham proceeding.

299.   Ms. McLaughlin alleges that Prof. Wasserman's unprofessional conduct during the ASC readmission hearing was because he felt extreme animus towards Ms. McLaughlin's political expression of support for President Trump.

300.   Ms. McLaughlin claims that Professor Wasserman's chairing the ASC readmission hearing was biased because he was one of the offending professors who caused her academic dismissal and therefore, it is a conflict of interest on its face.

301.   Ms. McLaughlin asserts that it is impossible for Prof. Wasserman to conduct a fair and neutral readmission hearing of a student for whom he has contempt and has predetermined the outcome.

302.    Professor Wasserman knew or should have known to recuse himself from participating in Ms. McLaughlin's ASC hearing.

303.    Ms. McLaughlin claims that the ASC hearing chaired by a biased arbiter was a sham and predetermined.  Therefore, the determination of the ASC is void and unenforceable.

304.    Prof. Wasserman is sued personally and in his official capacity for infringement of Plaintiff's right to freedom of political expression, hostile educational environment, violation of Procedural and Substantive Due Process, violation of equal protection under color of law, denial of assistance to counsel, fraud, civil conspiracy, and breach of fiduciary duty, negligence and defamation of character.

305.    Prof. Wasserman's actions and/or failure to act are the proximate cause of Ms. McLaughlin's harm.

### Facts: PROFESSOR SCHRIER

306.    Defendant, Rosario Schrier, is an FIU professor of law.

307.    Professor Schrier was the Plaintiff's Legal Skills and Values I instructor in Fall Semester 2016.

308.    Prof. Schrier recorded the final grade of "B-" on Ms. McLaughlin's educational record.

309.    In Fall 2016, Professor Schrier gave several "Feel the Bern" speeches promoting socialism during regular classroom time.

310.    Prof. Schrier engaged in political indoctrination and attempted to sway the students to voting for the Democrat nominee.

311.    Ms. McLaughlin felt intimidated to freely express an opposing political viewpoint in her classroom.

312.    Prof. Schrier gave the Plaintiff above average grades in the first half of the Fall semester.

313.    On or about October 2016, Ms. McLaughlin alleges that Prof. Schrier became aware of Ms. McLaughlin's support for President Trump and the Republican Party through students and/or other professors and Ms. McLaughlin's social media posts.

314.    Ms. McLaughlin states that she noticed a change of attitude and behavior towards her in the second half of the Fall semester in that Prof. Schrier became inhospitable to Ms. McLaughlin's questions after class.

315.    Prof. Schrier gave below average grades in the second half of the Fall semester.

316.    Plaintiff alleges that Prof. Schrier used non-academic standards to grade Ms. McLaughlin's assignments.

317.    Ms. McLaughlin alleges that Prof. Schrier intentionally lowered Ms. McLaughlin's grades to retaliate and politically engineer the student body class.

318.    Plaintiff alleges that Prof. Schrier began using non-academic standards after learning of Ms. McLaughlin's conservative beliefs and support of the Trump candidacy as political retaliation.

319.    Plaintiff alleges that Prof. Schrier collaborated with other professors and administrators to effectuate an unlawful academic dismissal.

320.    Additionally, Professor Schrier was a committee member at Ms. McLaughlin's readmission hearing.

321.    Professor Schrier participated in the decision to violate the Plaintiff's right to counsel at the ASC hearing.

322.    Professor Schrier voted to deny Ms. McLaughlin's readmission as a student.

323.    Ms. McLaughlin claims that Professor Schrier's participation in the ASC readmission hearing was inherently unfair because she was one of the professors who caused her academic dismissal and therefore, lacked neutrality on its face.

324.    Ms. McLaughlin asserts that it is impossible for Prof. Schrier to participate in a fair and neutral hearing of a student for whom she has contempt.

325.    Professor Schrier should have recused herself from participating in Ms. McLaughlin's ASC hearing.

326.    Plaintiff asserts that Prof. Schrier discriminated and retaliated against Ms. McLaughlin because of her political beliefs.

327.    Prof. Schrier is sued personally and in her official capacity for infringement of Plaintiff's right to freedom of political expression, hostile educational environment, violation of Procedural and Substantive Due Process, violation of equal protection, denial of assistance to counsel, fraud, civil conspiracy, and breach of fiduciary duty, negligence and defamation of character.

328.    Prof. Schrier's actions and/or failure to act are the proximate cause of Ms. McLaughlin's harm.

### Facts: PROFESSOR BAKER

329.    Defendant, Thomas E. Baker, is a FIU Professor of law.

330.    Prof. Baker was the Plaintiff's Constitutional Law instructor for Fall Semester 2016.

331.    Prof. Baker recorded the final grade of "D" on Ms. McLaughlin's educational record.

332.    Prof. Baker often expressed extreme, anti-Trump rhetoric during class time.

333.    Prof. Baker engaged in political indoctrination.

334.    Ms. McLaughlin felt intimidated to freely express an opposing political viewpoint in his classroom.

335.    In October 2017, during regular class time, Prof. Baker performed a skit demeaning Trump supporters.  Prof. Baker entered the classroom wearing a "MAGA" hat.  Prof. Baker spoke in a manner that mocked mentally challenged persons with a southern twang.  Prof. Baker stated that he was the average Trump voter.  Prof. Baker stated "My heroes are Napoleon Bonaparte, Forrest Gump and Donald J. Trump."  Prof. Baker carried on for several minutes making jokes and mocking Trump supporters as mentally challenged fascists.

336.    He continued his skit in that his character, the mentally challenged Trump supporter, was physically attacked by having text books and his computer thrown at him.

337.    Prof. Baker made Ms. McLaughlin feel threatened and unsafe in his classroom.

338.    Ms. McLaughlin was very scared to speak out and challenge Prof. Baker's portrayal of Trump supporters because openly defying Prof. Baker would most likely provoke his animus and cause him to exercise his unbridled discretion to retaliate with unfair grading.

339.    Ms. McLaughlin is a Florida certified teacher and as such she is aware that there is a great disparity between the status and power of a teacher and of a student.

340.    Prof. Baker made his classroom a hostile educational environment and stifled Ms. McLaughlin's freedom of speech and political expression in his classroom.

341.    Prof. Baker made a hostile education environment for several conservative, Republican Trump supporting students with his demeaning rhetoric forcing them to conceal their political affiliation.

342. On or about October 2016, Ms. McLaughlin alleges that Prof. Baker became aware of Ms. McLaughlin's support for President Trump and the Republican Party through students and/or other professors or her social media posts.

343. Ms. McLaughlin states that she noticed a change of attitude and behavior towards her in that Prof. Baker would not answer any of Ms. McLaughlin's questions after class.

344. Ms. McLaughlin alleges that Prof. Baker graded her exam unblinded and failed to use anonymous grading to record Ms. McLaughlin's exam scores.

345. Ms. McLaughlin alleges that Prof. Baker intentionally lowered Ms. McLaughlin's grades to retaliate and politically engineer the student body class.

346. Ms. McLaughlin alleges that Prof. Baker used non-academic standards to record her final grade.

347. Ms. McLaughlin alleges that Prof. Baker fraudulently tampered with her exam Scantron score to record a fraudulent exam score.

348. Ms. McLaughlin alleges that Prof. Baker colluded with other professors to unlawfully expel Ms. McLaughlin.

349. Ms. McLaughlin alleges that her grade in Constitutional Law is inaccurate and misleading.

350. Prof. Baker is sued in his official capacity for infringement of Plaintiff's right to freedom of political expression, hostile education environment, fraud, civil conspiracy, breach of fiduciary duty, negligence and defamation of character.

351. Prof. Baker's actions and/or failure to act are the proximate cause of Ms. McLaughlin's harm.

## Facts: PROFESSOR NORBERG

352.     Defendant, Scott F. Norberg, is an FIU professor of law.

353.     Prof. Norberg was the Plaintiff's Contracts Law instructor in Fall 2016.

354.     Prof. Norberg recorded the final grade of "C" on Ms. McLaughlin's educational record.

355.     Ms. McLaughlin alleges that Prof. Norberg is a vocal anti-Trump leftist and used his classroom to espouse anti-Trump rhetoric.

356.     Prof. Norberg engaged in political indoctrination.

357.     Ms. McLaughlin felt intimidated and unsafe to freely express an opposing political viewpoint in his classroom.

358.     In fact, Prof. Norberg signed an anti-Kavanaugh letter protesting Pres. Trump's selection of Judge Brett Kavanaugh for Supreme Court Justice.  See Exhibit # 29.

359.     Prof. Norberg (along with Dean Ansah) was one of 10 FIU Law professors to sign the anti-Trump/anti-Kavanaugh letter.

360.     FIU Law had the most law professors of all law schools participating in the protest.

361.     Ms. McLaughlin alleges that Prof. Norberg became aware of Ms. McLaughlin's support for Republican candidates.

362.     Prof. Norberg developed animus for Ms. McLaughlin for her political beliefs.

363.     Prof. Norberg ignored Ms. McLaughlin's class participation and refused to answer her academic questions.

364.     On or about November 2016, Prof. Norberg called up a list of students who had **not** timely submitted the "Casebook Plus" assignments.

365.     Ms. McLaughlin was not included in that group of students.

366.     Ms. McLaughlin did not think this was unusual because she **had** timely completed all the "Casebook Plus" assignments.

367.    After the completion of the Contracts course, on December 14, 2016, FIU administration (Marcia Walker Yang-Program) emailed Ms. McLaughlin and stated that she had not completed her "Casebook Plus" assignments.  See Exhibit #32.

368.    Ms. McLaughlin provided screenshot proof that she had timely completed her "Casebook Plus" assignments.  See Exhibit #33.

369.    Ms. McLaughlin was shocked and disturbed that she received that communication with such grossly inaccurate accusation after the semester was complete.

370.    FIU Law did not respond to that email communication.

371.    FIU failed to disclose that Prof. Norberg had "bumped down" Ms. McLaughlin's final Contracts grade from "C+" to "C."

372.    Ms. McLaughlin alleges that, at least, Prof. Norberg erroneously "bumped down" her final grade because her "Casebook Plus" assignments were not properly recorded.

373.    Ms. McLaughlin alleges that, at worse, Prof. Norberg maliciously "bumped down" her final grade without a legitimate academic reason.

374.    Ms. McLaughlin did not become aware that her grade was bumped down until August 2017 upon receipt of her educational records.

375.    FIU Law's education records do not have any record as to the rationale for the grade "bumped down."

376.    Plaintiff alleges that FIU, at the very least, negligently failed to properly give credit for the "Casebook Plus" assignment causing a bump-down in grade.

377.    Plaintiff asserts that had FIU properly given credit for her Casebook assignments her G.P.A. would have been above 2.0 and thus not resulted in an academic expulsion.

378.    In the alternative, Plaintiff alleges that Prof. Norberg intentionally bumped down Ms. McLaughlin's grade for non-academic reasons because of his animus for her political beliefs.

379.    FIU has failed to review Prof. Norberg's grade for any errors or miscalculations concerning proper credit for Casebook assignments.

380.    FIU has failed to review the rationale of Prof. Norberg's "bumped down" for a permissible academic reason.

381.    Ms. McLaughlin alleges that Prof. Norberg fraudulently tampered with Scantron exam scores.

382.    Ms. McLaughlin alleges that Prof. Norberg used non-academic standards to score unblinded essay exams.

383.    Ms. McLaughlin alleges that Prof. Norberg intentionally lowered Ms. McLaughlin's grade in retaliation for her political stance and to politically engineer the student body.

384.    Ms. McLaughlin alleges that Prof. Norberg colluded with other professors and administrators to effectuate an unlawful academic dismissal.

385.    Prof. Norberg is sued in his official capacity for infringement of Plaintiff's right to freedom of political expression, hostile educational environment, fraud, civil conspiracy, breach of fiduciary duty, negligence and defamation of character.

386.    Prof. Norberg's actions and/or failure to act are the proximate cause of Ms. McLaughlin's harm.

## Facts: PROF. NOAH WEISBORD

387.    Professor Noah Weisbord was an International Law professor at FIU Law during 2016-2017 academic year.

388.    Prof. Weisbord recorded the final grade of "C-" on Ms. McLaughlin's educational record.

389.    Prof. Weisbord used his classroom to accuse President Trump of being a criminal in violation of International and Humanitarian laws.  He routinely used his classroom as a propaganda instrument to influence students to have anti-Trump sentiment.

390.    Prof. Weisbord's hatred of Trump was so virulent that he accused President Trump of being a war criminal within one day of President Trump signing an immigration moratorium against several countries with notoriously porous and ineffective immigration procedures to enhance the safety and security of American citizens.

391.    The determination of ineffective and dangerous immigration procedures by these several countries was made during the Obama administration.

392.    Yet, Prof. Weisbord frequently stated that President Trump was guilty of war crimes.

393.    Prof. Weisbord engaged in political indoctrination.

394.    Ms. McLaughlin felt intimidated to freely express an opposing political viewpoint in his classroom.

395.    In the Fall semester of 2016, Prof. Weisbord became aware of Ms. McLaughlin's conservative political beliefs.

396.    Ms. McLaughlin alleges that Prof. Weisbord used non-academic grading to discriminate against the plaintiff.

397.    Prof. Weisbord had a well-known reputation to have inappropriate sexual relations with 2016-2017 1L students in the same class as the Plaintiff.

398.    In 2018, FIU Law forced Prof. Weisbord to resign his employ likely because his sexual affair with a 1L student was revealed.

399.    Ms. McLaughlin did not have a sexual affair with Prof. Weisbord.

400.   Plaintiff alleges that Prof. Weisbord used non-academic standards and grade unblinding to favorably grade the student subject of the sexual affair.

401.   Ms. McLaughlin alleges that Prof. Weisbord used non-academic standards and unblinded grading to unfavorably grade her.

402.   Ms. McLaughlin alleges that Prof. Weisbord lowered her grade in retaliation for her political beliefs.

403.   As a consequence, Ms. McLaughlin's grade for International Law was at a detriment within the class rank and the mandatory curve.

404.   Thus, Ms. McLaughlin's inaccurate recorded grade was in part responsible for a 0.02 GPA deficit causing academic expulsion.

405.   Ms. McLaughlin asserts that if Prof. Weisbord had graded fairly (without the influence of sexual affair and political discrimination) that Ms. McLaughlin correctly earned a grade which would have avoided an academic dismissal.

406.   Prof. Weisbord is sued in his official capacity for infringement of Plaintiff's right to freedom of political expression, hostile educational environment, fraud, civil conspiracy, breach of fiduciary duty, negligence and defamation of character.

407.   Prof. Weisbord's actions and/or failure to act are the proximate cause of Ms. McLaughlin's harm.

**Facts: ASSISTANT DEAN ROSENTHAL**

408.   Defendant, Marci Rosenthal, was the FIU Law interim Assistant Dean of Academic Affairs in Summer/Fall 2017.

409.   Asst. Dean Rosenthal is an attorney and a member of the Florida Bar and subject to Rule of Ethics 4-4.2.  See Exhibit #34.

410.    On August 25, 2017, FIU's General Counsel directed Asst. Dean Rosenthal to act as FIU's agent concerning Ms. McLaughlin's complaint.

411.    FIU, through its General Counsel Carbajal, was in receipt of Ms. McLaughlin's Notice of Intent to Litigate since June 26, 2017.  See Exhibit #35.

412.    Asst. Dean Rosenthal failed to disclose to the Plaintiff that she is a member of the Florida Bar and may legally represent clients.

413.    Asst. Dean Rosenthal knew or should have known that Ms. McLaughlin was represented by counsel and that Ms. McLaughlin intended to pursue legal action against FIU Law because of Ms. McLaughlin's Notice of Intent to Litigate and FIU's extensive communications with the Plaintiff's attorney.

414.    Dean Rosenthal contacted Ms. McLaughlin **directly** to discuss Ms. McLaughlin's complaints and allegations in violation of Florida Bar Rules of Ethics 4-4.2.  See Exhibit #36.

415.    The Rule states that "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer."  See Fla. Bar. Rules of Ethics 4-4.2.

416.    Dean Rosenthal did not obtain the consent of Ms. McLaughlin's attorney.

417.    Ms. McLaughlin agreed to meet with Asst. Dean Rosenthal conditioned that she permits her attorney's presence at the meeting.  See Exhibit #36.

418.    Asst. Dean Rosenthal explicitly wrote to Ms. McLaughlin that her legal counsel could not attend the meeting.  See Exhibit #36.

419.    FIU has argued that Asst. Dean Rosenthal was not representing FIU as a client, but rather as an "educator" in a student grievance matter. See Exhibit #11.

420.   FIU's argument fails because FIU may not unilaterally redefine this controversy as a mere student grievance to their advantage and disregard the Notice of Pending Litigation, the claims of fraud, discrimination, retaliation, FERPA violations and due process violations to bypass the Rules of Ethics.

421.   Asst. Dean Rosenthal attempted to disadvantage a 1L, law student by denying her the assistance of counsel.

422.   In fact, Asst. Dean Rosenthal worked at the Department of Education and is considered an expert on FERPA law and did not disclose this expertise to the student.

423.   Asst. Dean Rosenthal used her enormous disparity in status and knowledge in an attempt to overpower and potentially bully Ms. McLaughlin.

424.   Asst. Dean Rosenthal understood that any comments or statements made by Ms. McLaughlin without the presence of her attorney was discoverable and would certainly be used against her during litigation.

425.   Asst. Dean Rosenthal purposely denied Ms. McLaughlin assistance of counsel and her lack of transparency was an unethical attempt to disadvantage Ms. McLaughlin's legal rights.

426.   Asst. Dean Rosenthal's conduct is the most egregious of all violation of ethics.

427.   Plaintiff reserves the right to file an ethics complaint with the Florida Bar.

428.   Dean Rosenthal is sued in her official capacity for infringement of Plaintiff's right to freedom of political expression, violation of Procedural and Substantive Due Process, violation of equal protection, denial of assistance to counsel, breach of fiduciary duty, negligence and defamation of character.

429.   Dean Rosenthal's actions and/or failure to act are the proximate cause of Ms. McLaughlin's harm.

## BOARD OF GOVERNORS, FLORIDA UNIVERSITY SYSTEM, NED C. LAUDENBACH AND IRIS ELIJAH

430.    Defendant, Florida Board of Governors for State University System (FBG) is the governing body of all public Florida universities corporation established pursuant to the laws of Florida.

431.    Defendants, Ned C. Laudenbach, Chair of Board of Governors, and all members of the Board of Governors were at all times relevant to this complaint, and are the final policymaking authority for the university systems and are responsible for the adoption and authorization of all policies and regulations and provided oversight of FIU, the governing university and its colleges.

432.    Each member of the FBG is sued in his or her official capacity.

433.    FBG is responsible for the adoption and authorization for all of FIU policies and regulations.

434.    FBG is responsible for all of FIU's publications such as the websites, student handbooks, and all other publications.

435.    FBG has oversight authority over all law professors, other employees and agents, named in the complaint herein.

436.    FBG has defended, supported, and sanctioned all actions taken by professors, deans, employees and agents referred to in this complaint.

437.    Ms. Iris Elijah was the Assistant General Counsel for the Florida Board of Governors at the time of this complaint.

438.    Ms. Elijah had an excessively close relationship with FIU and all statements *ante* paragraph #66 through 71 are incorporated herein.

439.   Ms. Elijah knew or should have known to recuse herself from any participation, involvement, direction or control of Ms. McLaughlin's complaint.

440.   FBG did not respond to Ms. McLaughlin's objection to Ms. Elijah's participation in this complaint.

441.   Ms. McLaughlin alleges that Ms. Elijah had participation, direction and control over FBG's response letter.

442.   Ms. McLaughlin alleges that the FBG failure to investigate, query or review Ms. McLaughlin's complaint was a severe dereliction of duty.

443.   FBG's forwarding complaint concerning matters of compliance with external laws such as FERPA to the Office of Inspector General was an abdication of its duty to review.

444.   FBG failed to respond to Ms. McLaughlin's rebuttal of the FBG determination letter.

445.   Ms. McLaughlin alleges that the FBG failed to protect her, a lawfully matriculated student, from the nefarious act committed by one of the Florida Universities.

446.   Ms. McLaughlin alleges that the FBG's purpose is to sanction, assist and may even cover-up the unlawful acts committed by FIU.

447.   Ms. McLaughlin alleges that the FBG finding that Ms. McLaughlin's complaint had no merit without any investigation, or response from FIU was in part due to severe bias against Ms. McLaughlin.

448.   FBG, Mr. Laudenbach, and Ms. Elijah are sued for infringement of the fundamental right to freedom of political expression, violation of Procedural and Substantive Due Process, violation of equal protection under color of law, denial of assistance to counsel, violation of Ms. McLaughlin's right pursuant to Florida's FERPA Stat. 1002.225, civil conspiracy, breach of fiduciary duty, negligence and defamation of character.

449.    FBG, Mr. Laudenbach and Ms. Elijah's actions and or failure to act are the proximate cause of Ms. McLaughlin's harm.

## **FACTS: FAILURE TO NOTICE PLAINTIFF'S ACADEMIC DISMISSAL**

450.    Plaintiff alleges that her academic dismissal violated her right to due process because FIU never placed Ms. McLaughlin on notice of the risk for academic dismissal before the academic dismissal was final.

451.    FIU Law never placed Ms. McLaughlin on academic probation.

452.    FIU Law never placed Ms. McLaughlin in a remediation program.

453.    FIU Law placed more than 40 1L students on academic probation after the Fall semester.

454.    FIU Law placed more than 40 1L students in a remedial program after the Fall semester.

455.    FIU Law provided academic support and counseling to more than 40 1L students in remediation.

456.    FIU Law *Regulations* gives notice to students with a GPA below 2.0 during the 1L Fall semester to continue to the following semester with remediation.  See Exhibit #6- Paragraph #1501.

457.    FIU Law *Regulations* gives no notice or remediation to students who's GPA happens to fall below 2.0 after the 1L Spring semester and expels them immediately without benefit of remediation.  See Exhibit #6- Paragraph #1601.

458.    The Court must find that FIU Law's scheme that allowed Ms. McLaughlin to have a final academic dismissal without FIU providing one single word about dismissal is unconstitutional.

459.  FIU Law had a duty to advise Ms. McLaughlin of poor academic performance and the possibility of academic expulsion especially since more than 20% of the 1L class was placed on probation.

460.  In fact, because FIU never communicated any poor academic performance and was not placed in remediation, Ms. McLaughlin relied that she was not in peril of academic dismissal.

461.  Ms. McLaughlin asserts that FIU Law carves out of notice of expulsion and remediation from students who had an unsuccessful 1L Spring semesters is a violation of Ms. McLaughlin's right to equal protection because she received disparate treatment of similarly situated students as compared to other 1L students.

462.  Plaintiff alleges that FIU Law *Regulations* is inherently unfair to students who only fall below 2.0 in the Spring semester at the end of the first year because FIU Law *Regulations* mandates an immediate and final academic dismissal without remediation while 1L Fall semester are afforded remediation.

463.  Ms. McLaughlin did not receive the benefit of remediation because she fell into the donut hole of FIU Law *Regulation's* contrived and inherently unfair scheme.

464.  Contrastingly, FIU Law promoted many 1L students who had received an "F" or failing grade in a first year course to the 2L year of law school.

465.  Contrastingly, FIU Law promoted many 1L students who were not awarded credit for all 1L courses to the 2L year of law school.

466.  Plaintiff alleges that FIU violated Ms. McLaughlin's right to due process by making her academic dismissal final without any communication or notice.

467.     Plaintiff alleges that the inherently unfair FIU Law *Regulations* is a purposeful scheme to institutionally sanction FIU Law administration and law professors to unlawfully politically engineer the law school class.

### FACTS: FIU LAW VIOLATED THE ITS OWN *ACADEMIC POLICIES AND REGULATIONS* TO INTENTIONALLY DISADVANTAGE THE PLAINTIFF

468.     FIU Law violated FIU Law *Regulations* to intentionally disadvantage the Plaintiff.

469.     FIU Law violated Ms. McLaughlin's right to due process because FIU Law arbitrarily and capriciously increased Ms. McLaughlin's risk of academic dismissal.

470.     FIU Law violated its own *Regulations* #1501 by placing students with GPA's **higher** than 2.0 after the Fall semester in remediation.

471.     FIU Law arbitrarily and capriciously placed several students with a GPA above 2.0 to enter into a remedial program and cut off the benefit of remediation at Ms. McLaughlin's ranking.

472.     FIU Law intentionally placed Ms. McLaughlin at the bottom or close to the bottom students without remediation.

473.     FIU Law failed to provide any notice or publication of the possibility of jerry-rigging the FIU Law *Regulations* to capriciously benefit some students over others.

474.     FIU Law capriciously allowed all or almost all students with GPAs below Ms. McLaughlin to receive the benefit of remediation to the detriment of the Plaintiff.

475.     FIU Law gives one less required fundamental law class to remedial 1L students in the spring semester.

476.     Therefore, remedial 1L students have four fundamental law school classes while non-remedial 1L students have five.

477.   FIU Law provides a remedial tutoring and support class to the 1L remedial student that is not available to the other students.

478.   The remedial tutoring class is intended to provide support to increase the remedial students' GPA.

479.   The three credit remedial tutoring class is also not letter graded, but instead graded "Pass/Fail."

480.   Therefore, the remedial students have 3 credits less potential damage to their cumulative GPA because the "Pass/Fail" grade in the remedial tutoring class has no effect on the average GPA.

481.   Ms. McLaughlin, a non-remedial student, did not receive the benefit of any of these advantages.

482.   Ms. McLaughlin was not aware that several students with GPAs above 2.0 were receiving the benefits of the remedial program until several weeks into the spring semester.

483.   FIU Law failed to inform Ms. McLaughlin of the existence of the benefits afforded to students with GPAs above 2.0.

484.   FIU Law failed to offer or counsel Ms. McLaughlin any academic support knowing that she was arbitrarily placed at the bottom of the non-remedial students.

485.   Plaintiff alleges that FIU Law's arbitrary act of including students with GPAs above 2.0 in the remedial program increased Ms. McLaughlin's risk of academic expulsion.

486.   The more than 40 remedial students with GPAs below 2.0 or slight above 2.0 received benefits that were intended to increase their GPA substantially above 2.0.

487.   FIU Law arbitrarily and capriciously gave these benefits to several students whose GPA were between 2.0 and Ms. McLaughlin's GPA of 2.2.

488.   FIU Law *Regulations* require a curve ("Grade normalization") in ranking students in all 1L classes. See Exhibit #6- Paragraph #1101 – 1104.

489.   The advantage given to the students with GPAs between 2.0 and Ms. McLaughlin's 2.2 plus the grading curve placed Ms. McLaughlin at an even greater risk to fall below a GPA of 2.0.

490.   FIU Law violated FIU Law *Regulations* to the detriment of Ms. McLaughlin.

491.   FIU Law failed to give Ms. McLaughlin any notice of the additional burden and disadvantage placed on her to compete with the students whose GPAs were above 2.0 and also received the advantage of the remedial program.

492.   Plaintiff alleges that FIU Law cut off remediation support at Ms. McLaughlin's GPA to purposely disadvantage her.

493.   It is unreasonable to expect that Ms. McLaughlin, a 1L student, would be able to decipher and protect against the unfair scheme to which she was capriciously subjected.

494.   Plaintiff asserts that FIU Law violated Ms. McLaughlin's right to due process by either grossly, negligently, or intentionally placing Ms. McLaughlin at increased risk of academic expulsion without notice of FIU's impermissible act of including students with GPAs above 2.0 in the remedial program.

495.   Plaintiff asserts that FIU Law violated Ms. McLaughlin's right to equal protection by either grossly negligent or intentionally placing Ms. McLaughlin at increased risk of academic expulsion by treating similarly situated students disparately for the unconstitutional purpose of politically engineering the law school student body.

496.    Plaintiff alleges, in good faith, that FIU Law intentionally contrived Ms. McLaughlin's

Fall semester GPA and excluded her from remediation to cause an academic dismissal in

retaliation of her political beliefs.

**Facts: FIU LAW VIOLATED PLAINTIFF'S RIGHT TO PROCEDURAL DUE PROCESS BECAUSE FIU LAW *REGULATIONS* CREATE A STRONG PRESUMPTION AGAINST READMISSION; CREATE A NON-REBUTTABLE PRESUMPTION OF FIU LAW INFALLIBILITY; DENIES ACCESS TO EDUCATIONAL RECORDS BUT REQUIRES CLEARLY CONVINCING EVIDENCE FOR READMISSION**

497.    FIU Law violated Plaintiff's right to procedural due process because Ms. McLaughlin's

first notice of academic dismissal was final and only permitted a "Petition for Readmission."

Exhibit 6, #1601.

498.    The academic dismissal creates a non-rebuttable presumption of FIU Law infallibility of

ministerial error or inaccurate recording without a careful and deliberate review of the

educational records.  Exhibit 6, #1602.

499.    FIU Law *Regulations co*difies the Petition for Readmission to have a "strong

presumption against readmission." Exhibit 6, #1602.

500.    FIU Law *Regulations* codifies the Petition for Readmission to require "compelling and

extraordinary" reasons for readmission. Exhibit 6, #1602.

501.    FIU Law *Regulation* fails to define or characterize what the "compelling and

extraordinary" reasons might be.

502.    FIU Law *Regulations* shifts the burden of proof for readmission to the student. Exhibit 6,

#1602.

503.    FIU Law *Regulations* denies the Petitioner for Readmission any access to her educational

records or knowledge of the manner in which her grades were calculated.

504. Plaintiff alleges that FIU Law *Regulations* violated Ms. McLaughlin's procedural due process rights on its face.

505. Ms. McLaughlin's academic expulsion was final without a review or any discussion with the student of any kind and only with a reapplication for admission that is highly prejudiced.

506. FIU Law notified Ms. McLaughlin of her academic dismissal by an Email addressed with another student's name.  See Exhibit #3.

507. Ms. McLaughlin immediately requested further instructions or directions on the readmission process.

508. FIU Law dismissed Ms. McLaughlin's request for further instructions and postponed a response by stating that a letter from the Dean would be forthcoming.

509. FIU Law failed to provide timely instructions because Dean Ansah's instruction letter was received by mail *after* the deadline for submission of her petition.

510. Plaintiff alleges that FIU Law grossly negligently, or intentionally failed to properly respond to Ms. McLaughlin's request for assistance in the petition process because FIU Law had predetermined that Ms. McLaughlin's readmission was denied.

511. On May 22, 2017, despite FIU Law's failure to provide directions or assistance of any kind as to the manner of petitioned for readmission, Ms. McLaughlin timely petitioned for readmission.

512. Plaintiff based her petition on two issues:

    A. First, Ms. McLaughlin argued that the FIU Law *Regulations* are inherently unfair on its face because it fails to provide the opportunity of remediation only at the end of the second semester while providing remediation for other 1L first semester students.

B.  Second, Prof. Brown used non-academic standards to grade Ms. McLaughlin's LSV II due to personal animus.  Ms. McLaughlin stated that Prof. Brown specifically stated that she would not apply the rubric standard to her assignments.

513.  FIU Law *Regulations*' disparate treatment is inconsistent with the standard of all other Florida law schools.

514.  FIU Law *Regulations* fail to provide an academically dismissed student access to any records or the opportunity to review final grades or exams in preparation for the ASC hearing.

515.  FIU Law *Regulations* fail to provide any procedure or remedy for students to challenge grades or review grades for inaccuracies or miscalculations.

516.  On May 23, 2017, Ms. McLaughlin wrote a letter to Dean Ansah requesting permission for her attorney to be present at the hearing.  See Exhibit #30.

517.  Ms. McLaughlin, also, requested that her LSV 2 grade be reviewed prior to the hearing.

518.  FIU Law, through its agent Dean Ansah, response was cursory.  See Exhibit #30.

519.  On May 31, 2017, Plaintiff arrived at the ASC hearing with the counsel of her choice.

520.  FIU Law *Regulations* permits the possibility of the ASC hearing to be attended by the student's attorney.  See Exhibit #6- Paragraph #1604(3).

521.  Ms. McLaughlin requested that her attorney attend the ASC petition hearing again, in person.

522.  Ms. McLaughlin presented a Notice of Representation to Prof. Wasserman who refused to accept it.

523. As described in *ante* and hereby incorporated, Prof. Wasserman, refused and physically blocked the Plaintiff's attorney access to the ASC hearing while wearing basketball shorts and sneakers.

524. Professor Wasserman gave Ms. McLaughlin an ultimatum, that she either attend the hearing without counsel or she would have no hearing at all and forfeit her chance for readmission to FIU Law.

525. Ms. McLaughlin, faced with a coercive choice, was forced to attend the ASC hearing by herself and without the benefit of counsel.

526. Plaintiff alleges that Ms. McLaughlin was severely disadvantaged without the assistance of her attorney.

527. Ms. McLaughlin, a 21 year old first year law student, faced the Academic Standards Committee hearing alone against five experienced law professors including the Defendants, Prof. Wasserman and Prof. Schrier.

528. As mentioned above, Prof. Wasserman gave Ms. McLaughlin a grade of "D" in Civil Procedure. As mentioned above, Prof. Schrier gave Ms. McLaughlin a grade of "B-" in LSV I.

529. Plaintiff alleges that the ASC hearing was biased on its face because the committee members were Ms. McLaughlin's previous instructors with non-neutral pre-determined bias.

530. Plaintiff alleges that the ASC hearing was unfair because FIU did not permit Ms. McLaughlin access to her education records including grades and exam scores to adequately argue her case for readmission.

531. FIU Law was in sole control of Ms. McLaughlin's academic records including final exam grading.

532.   Ms. McLaughlin did not have the benefit of reviewing her education records, grades, exam or any document at all.

533.   FIU Law *Regulations* require "clearly convincing" evidence to overcome a strong presumption against readmission.  See Exhibit #6- Paragraph #1602.

534.   It is improbable, if not impossible, to provide "clear and convincing" evidence without access to Ms. McLaughlin's educational records.

535.   Ms. McLaughlin faced a very rude, antagonistic, and contentious interrogation led by Prof. Wasserman, Chair of the ASC.

536.   Ms. McLaughlin argued that Prof. Brown grading was biased and based on non-academic standards.

537.   Ms. McLaughlin alleges that Prof. Brown had confronted her and stated that her support of President Trump was "immoral."

538.   Ms. McLaughlin asked that the ASC review Prof. Brown's grading for inaccuracies and non-academic application of the rubric.

539.   Prof. Wasserman stated that the Academic Standards Committee has "no jurisdiction to review grades."

540.   Prof. Wasserman stated that any grade dispute, grievance or inquiry would not be considered at the ASC hearing.

541.   Ms. McLaughlin argued that it would be reasonable and fair to grant her another semester as a remedial student considering that she had not received any previous remediation and because other similarly situated students have received remediation.

542.   Prof. Wasserman summarily denied Ms. McLaughlin's request.

543.   Prof. Wasserman and Prof. Schrier both antagonistically berated Ms. McLaughlin for over thirty (30) minutes while Ms. McLaughlin respectfully withstood the assault.

544.   Ms. McLaughlin states that the ASC hearing was a stressful and scarring experience that she did not deserve or provoke.

545.   Ms. McLaughlin alleges that the ASC hearing was pre-determined because the hearing was conducted by the professor defendants that are alleged to have tampered with Ms. McLaughlin's grades because of political animus.

546.   Ms. McLaughlin alleges the ASC hearing was a sham because the committee never undertook a review of any of Ms. McLaughlin's grades for accuracy and computational errors.

547.   Ms. McLaughlin was denied readmission without benefit of a summary of evidence or reason for the decision.

548.   FIU is likely to argue that Ms. McLaughlin's academic dismissal was purely based on academic reasons and meant to conform to the American Bar Association's accreditation requirements that a student may continue enrollment only if the law student can manage the law school curriculum, are able to successfully graduate, and can be expected to pass the bar.

549.   Ms. McLaughlin states that those criteria were not met in this case, because Ms. McLaughlin has graduated from an accredited law school.

550.   Plaintiff alleges that FIU through its agents purposely disadvantaged Ms. McLaughlin to fraudulently maintain an academic dismissal in retaliation for her political beliefs.

551.   Ms. McLaughlin alleges that FIU's unconstitutional and unlawful actions were not motivated by Ms. McLaughlin's academic ability, but by an unlawful goal of culling FIU's

law school student body of conservative students and preventing Ms. McLaughlin from ever

becoming an attorney that would support a conservative political agenda.

**Facts: FIU, THE GOVERNING UNIVERSITY, VIOLATED FERPA LAW TO COVER-UP LAW PROFESSORS' MALFESEANCE**

552.    FIU, the governing university, hereinafter known as FIU, violated FERPA by failing to

provide proper notice to law students, failing to timely provide all educational records,

failing to grant a neutral FERPA hearing, obstructing the plaintiff from placing an

explanatory statement on the educational records and infringing the plaintiff's right to advice

of counsel.

553.    At the time of Ms. McLaughlin's matriculation, FIU failed to provide FERPA notice to

law students.

554.    In 2016, FIU Law did not make any mention of FERPA on the College of Law website;

or in the FIU Law *Regulations*; or on any published material concerning the law school.

555.    The governing university does provide FERPA notice separately to the undergraduates on

the undergraduate website and FIU School of Medicine provides separate FERPA notice on

the medical school website.

556.    In FIU's response to the DOE notice of investigation, FIU failed to provide any proof that

the College of Law provided FERPA notice in 2016-2017 on their website.

557.    Subsequently, FIU Law modified the College of Law website to show a FERPA notice in

response to Ms. McLaughlin's FERPA complaint in 2018.

558.    In fact, FIU attempted to defraud the DOE by providing evidence of FERPA notice for

the following year, 2018, not in dispute.

559.   FIU has argued that the governing university and the College of Law are the same entity and that FERPA notice to the undergrads is sufficient notice to the law students.  See Exhibit #40.

560.   FIU Law acts like a separate entity and does not direct law students to the undergraduate website.

561.   However, FERPA notice requirements are that a student is ***reasonably likely*** to receive Notice of FERPA rights pursuant to 34 CFR 99.7(b).

562.   Ms. McLaughlin asserts that FIU fails to defeat Ms. McLaughlin's DOE complaint that they failed to provide proper or adequate FERPA notice.

563.   From June to August 2017, Ms. McLaughlin's counsel made several requests to obtain all of Ms. McLaughlin's academic records from FIU Law.

564.   On June 16, 2017, Ms. McLaughlin requested all of her student records pursuant to FERPA.  See Exhibit #37.

565.   On June 21, 2017, Isis Carbajal, General Counsel, acknowledged Ms. McLaughlin's FERPA request and apologized for not having responding sooner but that they would make the records available promptly pursuant to FERPA.  See Exhibit #37.

566.   As of July 18, 2017, FIU had failed to provide a single student records or after (32) thirty-two days and several requests.  See Exhibit #38.

567.   FIU was in violation of FIU Regulation 108 of their own published (30) thirty day requirement to make available FERPA educational records as stated on the FIU undergraduate website.  See Exhibit # 28.

568.   As of August 4, 2017, or (49) forty-nine days later, FIU still owed Ms. McLaughlin student records.

569.   FIU has failed to defeat Ms. McLaughlin's complaint that FIU failed to provide all her educational records within the statutory limit or within FIU's policy.

570.   FIU made the request process extremely burdensome because FIU was reluctant to disclose evidence of FIU Law nefarious acts.

571.   Additionally, FIU intentionally misrepresented to the DOE that Ms. McLaughlin requested educational records on June 27, 2017, in its answer to the notice of investigation.

572.   FIU's falsehood can only be attributed to either FIU's poor record keeping or more likely a purposeful deception.

573.   FIU Regulation 108 states that if the accuracy of educational records remains in dispute the matter will be referred for a FERPA hearing.

574.   FIU disregarded FIU Regulation 108 and failed to refer the dispute for a FERPA hearing.

575.   FIU failed to determine if all of Ms. McLaughlin's educational records are accurate pursuant to 34 CFR 99.20(b).

576.   On August 25, 2017, FIU admits that all of Ms. McLaughlin's grades have not been reviewed for inaccuracies, miscalculation or recording errors.  See Exhibit #11.

577.   On December 21, 2017, FIU admits that only LSV 2 grade was reviewed.  See Exhibit #12.

578.   On July 11, 2018, FIU admitted for the third time that they only reviewed one grade for inaccuracies.  See Exhibit #40.

579.   FERPA states that an educational institution must determine if the educational records are accurate and then make a finding.

580.   FIU cannot possibly determine if Ms. McLaughlin's educational records including her transcript without having reviewed all grades for inaccuracies, miscalculations, or misreporting.

581.   FIU must provide a FERPA hearing if a student believes that her educational records are inaccurate or misleading.

582.   Ms. McLaughlin notified FIU's President Rosenberg that she believed her educational records are inaccurate.

583.   FIU failed to provide a FERPA hearing pursuant 34 CFR 99.20(c).

584.   FIU denied Ms. McLaughlin's right to place an explanatory statement on her educational record.

### Facts: FLORIDA BOARD OF GOVERNORS

585.   On December 4, 2017, the Florida Board of Governors (FBG) received Ms. McLaughlin's complaint.

586.   On December 6, 2017, Ms. Isis Elijah, FBG's assistant counsel answered the complaint. See Exhibit #14.

587.   Ms. Elijah failed to disclose that she was FIU's former employee (six months previous) and personal friend of FIU's current general counsel.  Ms. Elijah failed to disclose that she appeared concurrently on FIU's website.

588.   On December 11, 2017, Ms. McLaughlin objected to Ms. Elijah's participation or control of the complaint's investigation because of probable bias and possibly conflict of interest. See Exhibit #16.

589.   FBG did not answer Ms. McLaughlin's objections.

590.    The FBG never reached out or communicated with Ms. McLaughlin at all except for the final determination.

591.    On January 26, 2018, the FBG made that determination without ever conducting an investigation or an inquiry into any facts.  See Exhibit #17.

592.    The FBG admits that it made its determination without any response from FIU.

593.    In fact, the letter of determination stated that FIU's "**unsolicited response** bore no material influence on the determination."  See Exhibit #17.

594.    The admitted fact that the FBG failed to request a response from FIU confirms that the FBG failed to investigate.

595.    The admitted fact that the FBG failed to request a response from FIU demonstrates that the determinations letter was predetermined and a sham.

596.    The FBG through the Office of Inspector General made a determination as a matter of law concerning legal issues of fundamental constitutional rights when it has no authority to make such determinations.

597.    The FBG's forwarding of the complaint to Office of Inspector General is a severe dereliction of duty.

598.    The FBG dismissal was addressed from Rebekah Weeks, Investigation and Audit Specialist.

599.    The alleged author, Ms. Rebekah Weeks (an Audit Specialist) is not an attorney.

600.    The Office of Inspector General has no legal right to make determinations based on the interpretation and application of federal constitutional rights and FERPA.

601.   The Inspector General's office has no authority to make determinations on student complaints' concerning Florida unconstitutional infringement of freedom of speech, political expression, and tortious act.

602.   The determination letter admits to reviewing allegations concerning civil rights and FERPA rights.

603.   The Office of Inspector General determined that FIU acted in "good faith" to comply with request of educational records.

604.   The determination failed to acknowledge that FIU took more than (45) forty-five days and several detailed request to provide incomplete educational records.

605.   The Office of Inspector General determined that the student failed to initiate and complete a "grievance" process.

606.   The Office of Inspector General failed to acknowledge that the grievance process in not a FERPA hearing and insufficient procedure for allegations of due process violations, fraud, and malfeasance.

607.   The determination failed to acknowledge that FIU admitted to reviewing only one grade for computational error several months after Ms. McLaughlin's dismissal despite the fact that Ms. McLaughlin's complaint alleged fraudulent acts by several professors and in several different classes.

608.   The determination failed to review or acknowledge Ms. McLaughlin's claims of a hostile educational environment.

609.   Ms. McLaughlin asserts that the letter of determination was arbitrary and capricious because the FBG made no investigation; disregarded FIU's response which clearly admits an

inadequate review of Ms. McLaughlin's educational record and failed to communicate with Ms. McLaughlin.

610.    The FBG's determination lacked basic fairness and neutrality.

611.    FBG did not offer Ms. McLaughlin an opportunity for rebuttal.

612.    On February 6, 2018, Ms. McLaughlin disputed the determination in detail.  See Exhibit #41.

613.    Ms. McLaughlin received no answer to the rebuttal.

614.    Ms. McLaughlin alleges that the FBG never had any good faith intention to properly investigate Ms. McLaughlin's complaint and was only interested in protecting FIU.

615.    The FBG failed in its statutory mandate to protect the student, Ms. McLaughlin.

## **Facts: U.S. DEPARTMENT OF EDUCATION**

616.    The DOE has failed to timely and effectively process Ms. McLaughlin's FERPA complaint.

617.    As of the filing of this complaint, the DOE has failed to make a finding for 952 days since the DOE was in receipt and 779 days since the DOE sent a Notice of Investigation and 601 days since the DOE stated that the investigation was nearing completion.

618.    DOE failure to take action has de facto denied Ms. McLaughlin the opportunity to access and review her education records and have a neutral hearing and place an explanatory statement on her educational records.

619.    Ms. McLaughlin alleges that she has faced a loss of reputation due to the DOE's failure to make a determination in her complaint.

620.    Ms. McLaughlin likely lost out on important educational and employment opportunities.

621.    DOE has facilitated FIU perpetrating the fraud of disseminating inaccurate educational records such as her transcript and grades because FIU continues to release an inaccurate transcript.

622.    The DOE failed to act as an intermediary to facilitate the resolution of the dispute.

623.    The DOE was in timely receipt of Ms. McLaughlin's complaint on December 4, 2017.

624.    The complaint was addressed to both the Office of Civil Rights and FPCO.

625.    The DOE forwarded the complaint to the OCR.

626.    The DOE failed to forward the complaint to the FPCO.

627.    The DOE admitted mishandling Ms. McLaughlin's complaint. See Exhibit #23.

628.    On March 8, 2018, OCR denied the complaint for lack of jurisdiction.

629.    As per OCR's instructions, I contacted Cerrone Lockett, Esq. at the OCR for information.

630.    On March 13, 2018, Ms. Lockett stated "I don't know anything about the Department of Education.  I don't know anything about the Family Policy Compliance Office.  I am just an attorney in Atlanta."

631.    Ms. Lockett replied to the inquiry about a direct contact person or telephone number or email by stating, "I don't know and I don't know have any telephone numbers for the FPCO and I can't look it up."  She then referred Ms. McLaughlin to main website.

632.    On March 30, 2018, the DOE emailed a nasty, unhelpful response to our inquiry requesting a status update concerning the complaint addressed to the FPCO.  See Exhibit #42.

633.     Mr. Frank Miller, Deputy Director FPCO, laid the blame of the DOE mishandling of the complaint on Ms. McLaughlin, the student.

634.  The DOE misdated Ms. McLaughlin's complaint with a date that would have placed her complaint beyond the statutory filing limit.

635.  The DOE did not apologize nor did they try to expedite or mitigate the unnecessary more than 120 day delay due to the DOE's admitted mishandling of the complaint

636.  On April 17, 2018, Ms. McLaughlin sent a letter #1 of complaint directly to Secretary Elisabeth DeVos, and Mr. Dale King, Director FPCO.  See Exhibit #43.

637.  On October 18, 2018, Ms. McLaughlin sent letter #2 of complaint directly to Secretary DeVos concerning the DOE's mishandling of the Notice of Investigation.  See Exhibit #44.

638.  On December 7, 2018, Ms. McLaughlin sent letter #3 of complaint directly to Secretary DeVos.  See Exhibit #45.

639.  On April 22, 2019, Ms. McLaughlin sent letter #4 of complaint directly to Secretary DeVos concerning the excessive delay in making a findings letter.  See Exhibit #46.

640.  The DOE provided reliance that the DOE would expedite Ms. McLaughlin's complaint.

641.  On May 3, 2018, Mr. Dale King responded and provided reliance that the DOE would expedite Ms. McLaughlin's complaint.

642.  Ms. McLaughlin alleges that FPCO had direct communication with FIU Law and did not inform Ms. McLaughlin of the communication nor allow her a chance to respond or provide clarifying information.

643.  On May 29, 2018, the DOE sent FIU a Notice of Investigation.

644.  The DOE's violated rule 34 CFR 99.65 by substantially exceeding the permissible communication because Mr. King provided FIU a detailed blueprint of defenses and justification in the notice of investigation.

645.  The DOE provided FIU a complete blueprint of defenses and justifications with citations.

646.    FIU availed itself of the FPCO's justification by quoting the notice of investigation extensively.

647.    In fact, FIU quoted the notice of investigation more than five times and used three large block quotes.

648.    The DOE misrepresented Joint Statement in Explanation of Buckley/Pell Amendment Vol 120 Page 39862 through 39866 by cherry picking one sentence to favor FIU.

649.    The DOE's notice of investigation mischaracterized the reliance on the Joint Statement as authority by intentionally omitting the pertinent statement which allows grades to be reviewed for inaccuracy and misleading information pursuant to FERPA. See Exhibit #47.

650.    The DOE's notice of investigation is an overt demonstration of the bias against the student complainant.

651.    Contrastingly, the DOE never provided Ms. McLaughlin with any guidance or information during this entire complaint process.

652.    On July 11. 2018, FIU filed a response that admitted to failing to investigate, failing to provide reasonable notice, denying the assistance of counsel.

653.    FIU stalled and dragged their feet to provide access to all of Ms. McLaughlin's educational records within the statutory mandated 45 days violating 34 CFR 99.10(b) because FIU intended to prevent Ms. McLaughlin's readmission to FIU by the Fall semester.

654.    FIU violated 34 CFR 99.7(b) because FIU Law failed to provide students FERPA notice that was reasonably likely to inform law students of their rights.

655.    In fact, FIU attempted to defraud the DOE by providing evidence of the law school's FERPA notice for the year after Ms. McLaughlin's matriculation 2018 and pass it off as compliance for 2016.

656.    FIU Law changed their law school website in response to Ms. McLaughlin's complaint and then FIU misrepresented that the website existed while Ms. McLaughlin was a student without ever providing any evidence or documentation.

657.    Again, FIU attempted to defraud the DOE by claiming that FIU had not received a request for records until June 27, 2017 and then delivering all records by August 4, 2017 and thereby, remaining in compliance.

658.    Ms. McLaughlin had provided the DOE the indisputable emails that educational records were requested on June 16, 2017 and that Ms. Carbajal, FIU General Counsel, acknowledged receipt and expressed her understanding by stating "I am coordinating with the Law School the review of records available to your client pursuant to FERPA."  See Exhibit #38.

659.    FIU was in violation of 34 CFR 99.10(b), prima facie, because FIU made available the last incomplete batch of records on August 4, 2017 or (48) forty-eight days later.

660.    FERPA permits an educational institution to give more rights to students at their discretion such that FIU imposed itself a duty to provide FERPA records within (30) thirty days instead of (45) forty-five days.

661.    FIU was also in violation of FIU Regulation 108, which states that all FERPA must be made available within (30) thirty days of request because FIU did not begin to provide educational records until July 20, 2017 or (34) thirty-four days after the initial request.

662.    FIU made the process of obtaining FERPA educational records exceptionally burdensome and Ms. McLaughlin was forced to make multiple detailed requests and multiple calls to enforce a vested right granted to her by federal law.  See Exhibit #48 and #49.

663.    FIU never finished providing all the educational records Ms. McLaughlin requested because FIU was trying to cover up FIU Law professors' malfeasance.

664.    FIU, through its agents, admits to denying Ms. McLaughlin's rights to a fair FERPA hearing with an impartial arbiter; denied her the opportunity to place a statement on her educational record; and denied the assistance of counsel.

665.    FIU, through its agent Ms. Iris Elijah, admitted that FIU "refused to consider Ms. McLaughlin's request for a hearing."  See Exhibit #40.

666.    Ms. Elijah contends that FERPA does not require a hearing for the review of grades, but fails to rely on any statute, regulation or case law for its assertion.

667.    FIU failed to disclose that the Joint Statement clearly says that student complainants may "challenge the accuracy of institutional records which record the grade which was actually given.  Thus, the parent or student could seek to correct an improperly recorded grade."  See Exhibit #47- Joint Statement p. 39862.

668.    Additionally, FIU fails to comply with case law in that FERPA permits the challenge of ministerial error in grade assignments.  *See Tarka v. Cunningham*, 917 F.2d 890, 891 (5h Cir. 1990).

669.    On August 17, 2017, Ms. McLaughlin had undisputedly challenged the accuracy and manner in which her grades were recorded directly to FIU's Pres. Rosenberg and stated that her "final grades are inaccurate and misleading: specifically grades provided by Prof. Brown, Wasserman, Baker and Schrier, a least."

670.    Ms. McLaughlin made it very clear that she believed that she may not have received proper credit for all her assignment and that some professors may have tampered with scantron scores and improperly recorded them.

671.    As per 34 CFR 99.20(b) an educational institution is required to "decide" whether to amend educational records.

672.    FIU denial of a FERPA hearing was arbitrary and capricious because FIU never reviewed all her records for inaccuracy to correctly "decide" whether to amend Ms. McLaughlin's educational records.

673.    As of December 21, 2017, FIU through its General Counsel admits to failing to review all of Ms. McLaughlin's educational records and grades for computational errors despite (6) six months having elapsed.

674.    It is impossible for FIU to know whether Ms. McLaughlin's concerns and allegations had any merit without a proper review of all her grade calculations and grade recording.

675.    FIU's "decision" to not amend Ms. McLaughlin educational record was not based on any factual and thorough review.

676.    After FIU's arbitrary "decision" to not amend Ms. McLaughlin's educational records then FERPA vests the right to a FERPA hearing in the student if the student **believes** that her records are inaccurate or misleading pursuant to 34 CFR 99.20(c).

677.    FIU also violated FIU Regulation 108 because the dispute remained "unsettled" necessitating a FERPA hearing.

678.    FIU violated 34 CFR 99.21 by denying Ms. McLaughlin the opportunity to present evidence before a neutral arbiter to correct her educational records and possibly be reinstated as a law student and continue her law school education at FIU.

679.    In the event of an adverse decision, FIU violated 34 CFR 99.21(b)(2) by denying Ms. McLaughlin her right to place an explanatory statement on her educational records and thus giving Ms. McLaughlin a better chance of admission to another law school.

680.    FIU violated 34 CFR 99.22(d) by denying Ms. McLaughlin the assistance of counsel of her choice in a dispute concerning the accuracy of her educational records.

681.    FERPA does not vest in the educational institution the right to redefine a FERPA dispute about the accuracy of educational records to a student grievance and thus avoiding all statutory compliance.

682.    FIU, through its agent Marci Rosenthal, intended to disadvantage Ms. McLaughlin and unethically obtain discovery because FIU was in possession of a Notice of Intent to Litigate.

683.    FIU's response contained no less than ten (10) untruth, mischaracterization and omissions.

684.    FIU's response perpetrated a fraud on the DOE by submitting evidence of FERPA compliant notice of academic year 2018 instead of the disputed academic year 2016-17.

685.    In fact, FIU Law changed its website and other printed material in response to Ms. McLaughlin's complaint and tried to dodge detection by fraudulently claiming that the evidence existed in 2016.

686.    DOE has knowledge that FIU failed to substantiate FERPA compliance of providing reasonable notice to law students in violation of 34 CFR 99.7(b) and yet has taken no action against FIU.

687.    Despite, FIU having taken corrective action to add FERPA notice on the law school website, DOE has a statutory duty to make a finding that at the time of Ms. McLaughlin's matriculation FIU was in violation of 34 CFR 99.7(b).

688.    FIU outright intentionally deceived the DOE by stating that no record exists of Ms. McLaughlin request of FERPA records on June 16, 2017.

689.    Ms. McLaughlin had provided absolute proof of an email request of educational records on June 16, 2017 and FIU General Counsel's response stating that she was "coordinating

with the Law School the review of records available to your client **pursuant to FERPA**."
[emphasis added].  See Exhibit #38.

690.    FIU intentionally misrepresented the date of the request to fraudulently place FIU in compliance 34 CFR 99.10(b) (providing educational records within forty-five (45) days).

691.    FIU will likely claim that this misstatement was a mere oversight or that FIU lost that email thread.

692.    However, FIU has shown a pattern of repeated deception and unethical behavior that lends the defense of mistake as incredulous.

693.    Nevertheless, if FIU lost the sentinel email thread concerning providing access to educational records, it is prima facie evidence of failure to maintain adequate record-keeping.

694.    FIU blatantly lied again in that FIU stated Ms. McLaughlin had recanted her request to review and copy her educational records and requested that they be mailed on July 18, 2017; FIU failed to provide not one single document in support of this statement.

695.    FIU admitted in their response that FIU still owed educational records on August 7, 2018 or a total of fifty-two (52) days from the request date.

696.    DOE has knowledge that FIU admits violating 34 CFR 99.10(b) (providing educational records within forty-five (45) days) and continues to fail to take any action against FIU.

697.    FIU admitted that they denied review of educational records because grades and exam scores are not covered under FERPA.

698.    The challenge of grade miscalculation or misreporting of multiple choice exams scores or failure to account for completed assignment in grade calculations is governed under FERPA. *See Tarka v. Cunningham*, 917 F.2d 890, 891 (5th Cir. 1990) (FERPA permits the challenge of ministerial errors in grade assignments).

699.   The Joint Statement states that "It is intended only that there be procedures to challenge the accuracy of institutional records which record the grade which was actually given.  Thus, the parents or student could seek to correct an improperly recorded grade."  See Exhibit #47-Joint Statement Vol 120 Page 39862 through 39866

700.   FIU failed to cite any case law or authority that supports their contention that no dispute involving grades is governed by FERPA.

701.   The DOE is aware that FIU denied a FERPA hearing because FIU decided not to amend Ms. McLaughlin's grades upon reviewing only one grade (LSV 2) for inaccuracies and failed to take an action.

702.   The DOE is aware that FIU is in violation of 34 CFR 99.20(b) by failing to properly decide whether to amend the education record without conducting a proper review and failed to take any action.

703.   The DOE is aware that FIU is in violation of 34 CFR 99.21 for failing to afford Ms. McLaughlin a neutral arbiter, an evidentiary hearing and a written finding and failed to take any action.

704.   The DOE is aware that FIU failed to allow Ms. McLaughlin to place an explanatory statement on her educational records in violation of 34 CFR 99.21 and failed to take any actions.

705.   The DOE is aware that FIU denied the assistance of counsel as per Ms. McLaughlin's request in violation of 34 CFR 99.22(d) and failed to take any action.

706.   The DOE has failed to reject FIU's contention that the challenge of misleading and inaccurate grades is proper according to the Joint Statement.

707.    It is very clear that the DOE is aware that FIU is in FERPA violation and continues to fail to take any statutorily mandated action against FIU because of the excessively cozy relationship with FIU.

708.    The DOE is aware that FIU unethically used the holding of *Ewing* and *Horowitz* to deny Ms. McLaughlin the assistance of counsel because FIU knows that neither of these cases applies to FERPA.

709.    The DOE never notified Ms. McLaughlin of FIU's answer to the notice of investigation.

710.    On August 29, 2018, Ms. McLaughlin sent a letter requesting the status of the investigation.

711.    Ms. McLaughlin alleges that at every step the DOE failed to communicate with Ms. McLaughlin and keep her informed of any developments with the investigation.

712.    The DOE delayed and stalled any action on Ms. McLaughlin.  The DOE's conduct can best be characterized as "pulling teeth" to get any communications *i.e.* the DOE was in possession of FIU's answer for fifty-eight (58) day without notifying the student complainant or taking any action.

713.    On October 5, 2018, Ms. McLaughlin rebutted FIU's answer.

714.    Ms. McLaughlin's rebuttal delineated all of FIU's inaccuracies, mistruths, and misrepresentations as stated *ante* and vigorously complained about the DOE mistreatment of the plaintiff.

715.    On October 18, 2018, Ms. McLaughlin sent a letter to Secretary DeVos, again formally complaining of the FPCO's bias, unhelpful and purposely obstructive actions.

716.    On November 1, 2018, Ms. McLaughlin received a phone call from Mr. Michael Hawes, the new Director of the FPCO, who admitted that there certainly "was no parity between

student and the educational institution treatment" and characterized the FPCO actions as "unfortunate."

717.    Mr. Hawes also stated that he could not confirm or deny whether the FPCO was in possession of Ms. McLaughlin's full complaint with exhibits.

718.    It is outrageous that the FPCO was uncertain about the status of the complaint's documentation after more than twenty-one (21) months.

719.    On November 21, 2018, the DOE, through its agent Mr. Michael Hawes, in response to Ms. McLaughlin's email asking for a status update emailed that "We are nearing completion, and expect to have a response to you shortly."

720.    Mr. Hawes failed to respond to subsequent emails on November 27, and December 7, 2018 asking for a status update.

721.    On December 9, 2018, Ms. McLaughlin sent letter #4 to Secretary DeVos, complaining about the failure to respond and properly communicate and the excessive delay in processing Ms. McLaughlin's complaint.

722.    On December 20, 2018, Mr. Hawes emailed that DOE had a few conversation with FIU, in which FIU admits that Ms. McLaughlin did indeed make a FERPA request on June 16, 2017 and that FIU began to provide partial records on July 27, 2017.

723.    FIU statement is an undisputable admission that they violated FIU Regulation 108 as per FIU FERPA regulation.

724.    FIU deceptively did not address the fact that FIU provided records in incomplete batches through August 7, 2017 or more than fifty-two (52) days after the initial request in violation of 34 CFR 99.10(b).

725.   FIU also admits that they misplaced Ms. McLaughlin's FERPA request and that FIU "was unable to locate, has since been located."

726.   FIU's admission of misplacing the sentinel email, where Ms. McLaughlin makes a FERPA request, is an admission of inaccurate record keeping.

727.   FPCO cannot possibly interpret FERPA's legislative intent to mean that an educational institution can string a student for more than a month, give incomplete records and require multiple detailed requests to overly burden and exasperate the student.

728.   FIU also blatantly lied to FPCO about FERPA notice on the law school website in 2016 and failed to provide any proof.

729.   On December 21, 2019, Mr. Hawes called asking for a copy FIU's *Academic Policies and Regulations* (which was included with the original complaint).

730.   On January 9, 2019, Mr. Hawes assured Ms. McLaughlin's counsel that her complaint was one of the FPCO top five priorities.

731.   On March 22, 2019, Mr. Hawes again emailed, "I apologize for the delay, but we are still working through some issues regarding your daughter's [Ms. McLaughlin] case with our General Counsel's office.  I hope to have more news soon."

732.   On April 24, 2019, Mr. Hawes replied by email and stated "Please forgive the tardiness of my reply to your email . . . . Your daughter's investigation is still under review by our General Counsel's office, but I did receive word this morning that there has been movement on the case.  I will let you know as soon as we are able to issue the findings letter."

733.   On April 29, 2019, Mr. Hawes emailed that Ms. McLaughlin's complaint was still "at the top of my list."  See Exhibit #50.

734.   The DOE never contacted the Ms. McLaughlin again for another six (6) months.

735.   The Plaintiff alleges that the DOE purposefully and maliciously used stall tactics to disadvantage Ms. McLaughlin and favor FIU, the educational institution.

736.   On October 9, 2019, the DOE mailed Ms. McLaughlin requesting confirmation that the DOE was in possession of all submitted documents.

737.   Ms. McLaughlin alleges that the DOE continues to use baseless and frivolous requests to stall producing a findings letter.

738.   On October 24, 2019, Ms. McLaughlin responded to Mr. Miller by email and fax confirming that the FPCO was in possession of all submitted documents substantively.

739.   Again, Ms. McLaughlin also contested that the DOE has maliciously stalled the determination because of discrimination against Ms. McLaughlin.

740.   The DOE has failed to provide regular status updates.

741.   The DOE has left Ms. McLaughlin in the dark on the progress of her complaint and failed to effectively communicate with Ms. McLaughlin.

742.   The DOE has intentionally stalled making a determination on Ms. McLaughlin's complaint in order to prevent Ms. McLaughlin from filing suit within the statute of limitations.

743.   The Inspector General's Report states that any complaint older than six (6) months is considered "backlogged." See Exhibit #51

744.   The DOE's actions have shown callous disregard for Ms. McLaughlin's complaint.

745.   The DOE's actions demonstrate a bias favoring educational institutions against the rights of the students.                                                                    .

746.   FERPA's statutory enforcement obligations under 29 US Code Section 1232g(f) and (g) are to appropriately enforce and resolve FERPA complaints.

747.    The DOE failed to protect Ms. McLaughlin's vested rights as FERPA intended.

**FIRST CAUSE OF ACTION**
**VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREEDOM OF**
**SPEECH AND POLITICAL EXPRESSION**

748.    Plaintiff repeats and re-alleges each of the facts and allegations contained in paragraph 1
to 747 in this complaint.

749.    The First Amendment's Freedom of Speech Clause prohibits the federal government
from suppressing students' right to freedom of speech and political expression.

750.    The First and Fourteenth Amendment of the U. S. Constitution and Florida's Constitution
prohibits the State of Florida through the Florida Board of Governors and its public
universities to infringe conservative students' exercise of political expression.   See US
Constitution Amendment 1 and 14 and Fla. Const. Art. 1 Sec. 4.

751.    The First and Fourteenth Amendment and Florida's Constitution prohibits the
governments' discrimination based on political viewpoint in any form including the
expulsion of a conservative student for her political beliefs.

752.    The Fourteenth Amendment and the Florida Constitution prohibit FIU's abuse of power
that expels students for conservative political beliefs.

753.    The First Amendment prohibits FIU, as a governmental agency to use HOSTILE
EDUCATIONAL ENVIRONMENT as an instrumentality to infringe Ms. McLaughlin's
right to freedom of political expression.

754.    FIU Law sanctions a system that permitted the unbridled authority by its law professors
to use non-academic standards to determine Ms. McLaughlin's matriculation based on
political discrimination.

755.   FIU permitted a hostile educational environment that offended and threatened conservative, Trump supporting students.

756.   FIU, permitted a biased and intimidating classroom environments that stifled the free and uninhibited exchange of ideas.

757.   FIU, the governing university, colluded with the offending law professors and the FIU Law administrators to cover-up and validate the unconstitutional expulsion due to political retaliation and for Ms. McLaughlin's support of President Trump.

758.   FIU failed to investigate allegations of political discrimination and retaliation to maintain Ms. McLaughlin's unconstitutional expulsion.

759.   FIU withheld material educational records and denied a FERPA hearing to cover-up professor malfeasance and political discrimination.

760.   FBG discriminated and infringed the Plaintiff's right to freedom of political expression by failing to investigate the Plaintiff's complaint and by lacking a fair and neutral system to process student complaints of violation of constitutional rights.

761.   DOE's actions and failure to act aided FIU's infringement of Ms. McLaughlin's right to free speech and right to political expression.

762.   DOE showed a detrimental bias based on political beliefs towards Ms. McLaughlin's FERPA complaint from the outset and throughout the complaint process.

763.   Ms. McLaughlin has a private cause of action under Florida's incorporation of FERPA pursuant to FL Stat 1002.22.

764.   Florida's private cause of action provides an equitable remedy of permitting a FERPA complainant access to her educational records; a hearing with a neutral arbiter and the opportunity to place an explanatory statement concerning inaccurate or misleading records.

765.   Ms. McLaughlin asserts that a neutral FERPA hearing would have revealed inaccurate and/or fraudulent grading motivated by political engineering and the attempt to suppress conservative political expression.

766.   The DOE initiated a Notice of Investigation (finding Ms. McLaughlin's FERPA complaint to have merit) then intentionally failed to finish a findings letter would have given clarity as to the legal basis for private cause of action against FIU.

767.   The DOE actions or failure to act delayed and stalled a determination on the FERPA notice of investigation for more than thirty (30) months in an attempt to deny Ms. McLaughlin's right to enforce her right under Florida statute 1002.22.

768.   The DOE purposely suppressed any favorable determination to facilitate FIU infringement of Ms. McLaughlin's right to free speech.

769.   The DOE purposely failed to make a timely determination of Ms. McLaughlin's FERPA complaint to prevent or at least weaken Ms. McLaughlin's legal right to enforce her rights to freedom of political retaliation and discrimination.

770.   The DOE policy of favoring universies over conservative students aids and abets universities to widely infringe conservative students' freedom of speech with impunity.

771.   The DOE weaponized FERPA law to facilitate the university systems to infringe and suppress the plaintiff's fundamental Constitutional rights to free speech.

772.   Accordingly, the DOE actions or lack of action have violated the Plaintiff's right to freedom of speech and expression of political viewpoint guaranteed by the First Amendment.

773.   The United States and State of Florida has no legitimate or compelling interest to support the discrimination and infringement of speech through expulsion of a law student because of the student's political beliefs.

774.    The common use of the classroom as the venue for leftist-political indoctrination has morphed the teacher-student relationship from educator, advisor, and friend to an adversarial, repressive, coercive and punitive relationship.

775.    Accordingly, the Plaintiff has suffered and continues to suffer economic injury and irreparable harm.

776.    The Plaintiff is entitled to an award of monetary damages and equitable relief.

**SECOND CAUSE OF ACTION**
**VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT AND FLORIDA**
**CONSTITUTIONAL RIGHT TO DUE PROCESS**

777.    Plaintiff repeats and re-alleges each of the facts and allegations contained in paragraph 1 to 776 in this complaint.

778.    The Fourteenth Amendment to the United States Constitution and the Florida Constitution guarantees the Plaintiff the right to due process to a property interest.

779.    The Fourteenth Amendment to the United States Constitution and the Florida Constitution guarantees the Plaintiff the right to due process to a property interest in her good name and reputation.

780.    The Fourteenth Amendment to the United States Constitution and the Florida Constitution guarantees the Plaintiff the right to due process to a liberty interest in free speech and political expression.

781.    Ms. McLaughlin was a matriculated post-graduate law student in good standing.

782.    Ms. McLaughlin's law school education is a property interest according to Florida law.

783.    Ms. McLaughlin has a property interest in her good name and reputation. *See Horowitz*, 435 U.S. at 78.

784.    Ms. McLaughlin has a liberty interest in her right to speech and political beliefs.

785.    The Fourteenth Amendment and the Florida Constitution prohibits state universities from exercising an academic expulsion process that provides no due process or a procedure that is arbitrary and capricious.

786.    An academic dismissal from law school is a denial of Ms. McLaughlin's liberty interest because such a stigma to her good name, reputation, and honor is severely impaired and rarely results in an expelled law student's readmission to another law school.

787.    Accordingly, despite Ms. McLaughlin's readmission to another law school and repeat the 1L year caused embarrassment and hardship.

788.    FIU's arbitrary actions have made Ms. McLaughlin less attractive for employment and less career opportunity.

789.    Several provisions of FIU Law *Regulations* violated the Fourteenth Amendment and the Florida Constitution right to due process because the *Regulations* are a substantial departure from accepted norms. *See Ewing*, 474 U.S. at 225.

790.    The FIU Law *Regulations* Section 1601 violates the Fourteenth Amendment and the Florida Constitution because the provision uses the compulsory term "shall exclude a student whose GPA falls below 2.00" prior to any notice or hearing.

791.    FIU Law's *Regulations* Section 1601 fails to provide due process because no process is provided prior to the actual taking of the Plaintiff's property interest in her law school education.

792.    In this case, Ms. McLaughlin had a GPA of 2.21 at the end of Fall Semester 2016 and was never placed in a remedial program.

793.    Ms. McLaughlin never received any communication from FIU professors or administration that she may be in peril of expulsion.

794.   FIU Law did not provide notice to Ms. McLaughlin of the possibility of non-eligible students capriciously receiving the benefit of remediation.

795.   FIU Law failure to provide proper notice that she was at risk of academic dismissal because their capricious action of admitting students above a 2.0 into the remedial program indicated to Ms. McLaughlin that she was a student that did not necessitate remediation or was at risk of expulsion.

796.   FIU Law knew or should have known that Ms. McLaughlin was at risk of academic expulsion and was constitutionally obligated to provide proper notice of the potential takings of her legal career.

797.   Alternatively, FIU Law knew that Ms. McLaughlin was at risk of expulsion without notice and deliberately cut off student admissions at Ms. McLaughlin's GPA to prevent her from benefitting from the program.

798.   FIU Law knew that their actions placed Ms. McLaughlin at higher risk of expulsion and deliberately failed to give notice to Ms. McLaughlin of a risk of expulsion before the actual expulsion.

799.   The plain language of FIU Law's *Regulations* Section 1601 does not reasonably provide a student in the Plaintiff's circumstances fair warning that an expulsion is imminent and final prior to any notice or hearing to the extent that FIU Law jerry-rigged the determination of remediation.

800.   Additionally, FIU Law's *Regulations* relies on the word "earn" a cumulative GPA in Section 1601 and 1602.

801.   Ms. McLaughlin contests and disputes that her GPA is earned accurately.

802.    Ms. McLaughlin claims that she did not properly receive credit for all of her assignments; that her grades were miscalculated; that at least one professor used non-academic standards for grading and that at least one professor fraudulently tampered with her grades.

803.    Ms. McLaughlin alleges that FIU Law's dismissal was based on bad faith, ill will, or the impermissible ulterior motive of discriminating based on political opinion.

804.    Ms. McLaughlin's due process rights were violated because FIU Law professors did not actually exercise responsible professional judgment but instead relied on biased political recrimination.

805.    Ms. McLaughlin states that her GPA of 1.98 was not "earned" and that her "earned" GPA is higher than 2.00.

806.    FIU Law fails to give law students any procedure to challenge grade inaccuracies especially when expulsion is at stake.

807.    FIU Law creates a non-rebuttable presumption that FIU administration and professors have infallibly recorded each grade accurately.

808.    FIU Law shifts the burden of proof for readmission to the student.

809.    FIU Law mandates a "strong presumption against readmission" of a student appellant. See Exhibit #6- Paragraph #1602.

810.    FIU Law places a compulsory standard of proof on the student appellant to prove by "clearly convincing" evidence that the student should be readmitted.   See Exhibit 6- Paragraph #1602.

811.    FIU Law requires that a student appellant provide evidence of "the most compelling and extraordinary circumstances" of personal problems or other factors.

812.   FIU Law denies students' any access to evidence of grades or any other educational records.

813.   FIU Law denied Ms. McLaughlin the assistance of the counsel of her choice.

814.   FIU Law allowed less than one week to submit a petition for readmission.

815.   FIU Law infringed Ms. McLaughlin's procedural due process right because she was not giving a reasonable opportunity to respond under the above circumstances.

816.   FIU Law fails to cite or rely on any case law, statute or rule that permits the standard of proof after expulsion to be raised to "clearly convincing."

817.   FIU Law fails to cite or rely on any case law, statute or rule that permits a "strong presumption" against a student appellant.

818.   FIU Law fails to cite or rely on any case law, statute or rule that permits FIU to base their decision on "compelling and extraordinary circumstances" of the student's personal life and problems.

819.   FIU Law's academic dismissal was not reached with fairness and impartiality.

820.   FIU Law's Academic Standards Committee decides readmission without making any determination about the accuracy of educational records.

821.   FIU Law's "Academic Standards" Committee does not review academic performance.

822.   FIU Law's "Academic Standards" Committee decides readmission based on non-academic standards such as personal issues.

823.   FIU has admitted that it failed to review all her grades for inaccuracies.

824.   FIU Law's post-dismissal hearing is final and not intended to provide an opportunity to discover facts and make an accurate determination.

825.   FIU Law arbitrarily expelled Ms. McLaughlin without verifying that all of her grades were properly awarded, calculated, and recorded.

826.   Ms. McLaughlin alleges that FIU Law did not know at the time of her expulsion whether Ms. McLaughlin "earned" the alleged GPA.

827.   Therefore, FIU Law's *Regulations* Section 1601 through 1606 was unlawful and unconstitutional as applied to the plaintiff.

828.   The FIU Law's *Regulations* dismissal and petition for readmission process violates all standards of due process.

829.   The *Ewing* Court grants excessively broad discretion to universities which FIU has weaponized to claim that they have unquestionable discretion to academically expel students. *See Ewing*, 474 U.S. at 225 n. 11 (Universities have wide range of discretion in grades and academic performance).

830.   Since the *Ewing* decision, leftist professors and universities have increasingly used the holding to abuse their power and unfettered academic discretion as a weapon to retaliate and discriminate against conservative students.

831.   FIU Law failed to use careful and deliberate consideration of the accuracy of Ms. McLaughlin's grades.

832.   FIU Law's *Regulations* fails to provide any process for a student to request or review educational records.

833.   FIU Law's *Regulations* fails to provide their law students any process to challenge or review grades for possible educational records inaccuracies or misleading information.

834.   FIU Law's *Regulations* fails to provide any process which ensures that all assignments, exams, and grades were properly scored and calculated.

835.    In total, FIU Law's academic expulsion process poses a high risk of an erroneous deprivation of fundamental, substantive, and procedural due process rights.

836.    FIU Law fails to provide for any safeguards against mistakes, inadvertence, negligence or malfeasance by FIU administrators or professors.

837.    FIU Law implements an expulsion process that is arbitrary and overzealously dismisses law students without regard for fairness.

838.    The lack of clear criteria or fair standards in FIU Law's *Regulations* renders these regulations and associated practices, unconstitutionally vague and in violation of Ms. McLaughlin's right to due process of law under the Fourteenth Amendment.

839.    Ms. McLaughlin urges the Court to go further than *Horowitz* and *Ewing* and provide procedural safeguards that prevent educational institutions from committing the violations of rights pervasive in this complaint.

840.    Defendants showed callous disregard for the severe deprivation of property and liberty rights.

841.    Defendants owed a constitutional duty to meaningful hedge against erroneous actions

842.    Ms. McLaughlin's dismissal which suggested that published and suggested Ms. McLaughlin lacked the intellectual capacity to complete an accredited law school curriculum requires greater procedural protections.

843.    Ms. McLaughlin urges that the Court find that the value of procedural protections in law student academic dismissals far outweigh the minor restrictions on academic discretion.

844.    Because of FIU's actions, Plaintiff has suffered and continues to suffer irreparable harm.

845.    Plaintiff is entitled to an award of nominal and compensatory damages and equitable relief.

**THIRD CAUSE OF ACTION**
**VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT AND FLORIDA**
**CONSTITUTIONAL RIGHT TO EQUAL PROTECTION OF THE LAW**

846.    Plaintiff repeats and re-alleges each of the facts and allegations contained in paragraph 1

to 844 in this complaint.

847.    The Fourteenth Amendment to the United States Constitution and the Florida

Constitution guarantees the Plaintiff equal protection of the laws, which prohibits Florida

from treating the student Plaintiff differently than similarly situated students based on

political beliefs.

848.    The government may not treat someone disparately as compared to similarly situated

persons when such disparate treatment is based on the students' political views and burdens a

fundamental right to freedom of political expression.

849.    Plaintiff alleges that FIU Law misappropriated her status as a law student (through an

expulsion) because law professors and administration loathed Ms. McLaughlin's

conservative political viewpoint.

850.    Plaintiff alleges that FIU Law favored similarly situated students with whom the

professors and administration agreed with their political views.

851.    FIU permitted an unconstitutional violation of equal protection by targeting Ms.

McLaughlin for her political beliefs.

852.    FIU failed to review her grades for inaccuracies and/or miscalculations because FIU

intended to discriminate against Ms. McLaughlin for her conservative political beliefs.

853.    FIU violated Ms. McLaughlin's right to equal protection under color of law because FIU

Law *Regulations* codifies a jerry-rigged scheme which denied meaningful notice of

impending dismissal as compared to other similarly situated 1L students who were placed on probation and given counseling.

854.   FIU denied Ms. McLaughlin a uniform application of academic standards and arbitrarily expelled Ms. McLaughlin without using general accepted principles of fair play in her dismissal.

855.   FBG failed to make a proper investigation of Ms. McLaughlin's complaint of discrimination and retaliation because the Board of Governors protected FIU's culpability in infringing Ms. McLaughlin's fundamental rights.

856.   FBG violated Ms. McLaughlin's right to equal protection because they also intended to discriminate against Ms. McLaughlin's conservative political belief.

857.   The DOE failed to make a determination on FIU's notice of investigation because the DOE intended to support FIU's unconstitutional infringement of freedom of speech, failure to provide procedural due process and equal protection of the law because the deep state DOE shares the anti-Trump, anti-conservative animus towards Ms. McLaughlin.

858.   Defendants' lack a compelling state interest for such disparate treatment.

859.   Defendants' policies and practices as applied are not narrowly tailored because discriminating against Ms. McLaughlin for her political views does not implicate any compelling or even legitimate government interest.

860.   Because of Defendants' actions Plaintiff has suffered and continues to suffer economic injury and irreparable harm.

861.   Plaintiff is entitled to an award of nominal and compensatory damages and equitable relief.

**FOURTH CAUSE OF ACTION**

## U. S. DEPARTMENT OF EDUCATION'S BREACH OF LEGAL OBLIGATION TO PROPERLY ENFORCE A STUDENT FERPA COMPLAINT

862.   Plaintiff repeats and re-alleges each of the facts and allegations contained in paragraph 1 to 860 in this complaint.

863.   DOE has a legal obligation to properly process Ms. McLaughlin's FERPA complaint.

864.   DOE breached that obligation by mishandling Ms. McLaughlin from the outset.

865.   DOE has a statutory legal obligation to timely respond to Ms. McLaughlin, a student complainant, pursuant to 20 U.S.C. 1232 (g).

866.   DOE has breached its legal obligation by failing to make a determination on Ms. McLaughlin's complaint for more than thirty (30) months since the complaint was filed.

867.   FERPA fails to state an exact time reference for responding to complaints.

868.   Although the statute doesn't state an exact time reference for responding to complaints, failing to respond after twenty-four (24) months is unreasonable.  See Exhibit #51.

869.   DOE has a statutory duty to complete a letter of findings determination after issuing a notice of investigation.

870.   DOE has failed to complete a letter of findings for more than twenty-three (23) months.

871.   DOE stated that the investigation was complete in January 2019 and that a complete determination would be forthcoming within a few weeks.

872.   DOE's failure to complete a findings letter by the time of this filing is a breach of legal obligation pursuant to the legislative intent.

873.   Ms. McLaughlin asserts that the DOE institutionally suppresses any educational institutions' unfavorable findings in breach of FERPA's legislative intent.

874.   Ms. McLaughlin's complaint was for the expressed purpose of enforcing her right to place an explanatory statement on her educational records.

875.   As a law school graduate, FIU's academic expulsion had to be disclosed to internships, clerkships and the Florida Bar applications.

876.   Ms. McLaughlin may be, also, likely required to disclose FIU's unlawful expulsion on all future employment applications.

877.   FIU's academic expulsion is a very derogatory characterization of Ms. McLaughlin's academic performance and heightens the level of scrutiny as to its accuracy.

878.   The IG report states that a failing to make a determination is harmful to the student.

879.   DOE's breach of fulfilling its legal obligations delayed and precluded Ms. McLaughlin placing an explanatory statement on her educational records.

880.   The DOE failure to make a determination is the proximate cause of Plaintiff being unable to place an explanatory statement.

881.   The DOE's failure to timely complete a finding letter continues to implicitly sanction FIU's violation of FERPA and permits FIU's continued harm with impunity.

882.   The DOE's breach of legal obligation to enforce Ms. McLaughlin's vested FERPA rights has caused irreparable harm to Ms. Ms. McLaughlin.

883.   Plaintiff has suffered and continues to suffer economic injury and irreparable harm.

884.   Plaintiff is entitled to an award of monetary damages and equitable relief.

## FIFTH CAUSE OF ACTION
## VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO FLORIDA'S STUDENT AND PARENTAL RIGHTS AND EDUCATIONAL CHOICES ACT

885.   Florida has incorporated all student rights pursuant to Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. s. 1232g. Fla. Stat. 1002.22(2).

886.   Plaintiff has a right to bring an action to enforce her rights by injunction. Fla. Stat. 1002.22(4).

887.    The State of Florida through FIU and the FBG failed to comply with FERPA.

888.    FIU and the FBG failed to give Ms. McLaughlin proper notice of her rights with respect to FERPA pursuant to Fla. Stat. 1002.22(2)(e).

889.    FIU and the FBG failed to give Ms. McLaughlin access to her educational records pursuant to Fla. Stat. 1002.22(2)(a).

890.    FIU and the FBG denied Ms. McLaughlin's right to challenge her education records as inaccurate or misleading in violation of Fla. Stat. 1002.22(2)(c).

891.    FIU and the FBG denied Ms. McLaughlin's right to a FERPA hearing pursuant to 20 U.S.C. s. 1232g and Fla. Stat. Fla. Stat. 1002.22(2).

892.    FIU and the FBG denied Ms. McLaughlin the right to place a statement on her educational records pursuant to FL. Stat. 1002.22(2)(c).

893.    As a result of FIU's and the FBG's violation of FL. Stat. 1002.22, Ms. McLaughlin has a permanent stain on her educational record and resume that is inaccurate and misleading.

894.    Ms. McLaughlin has had to disclose the academic dismissal to all job opportunities, internships and Florida Bar application.

895.    Because of Defendants' actions Plaintiff has suffered and continues to suffer injury and irreparable harm.

896.    Plaintiff is entitled to an equitable relief.  Plaintiff respectfully requests the Court to compel the Defendants to provide access to all her educational records and conduct a FERPA hearing and enforce Ms. McLaughlin's right to place an explanatory statement on her educational records.

**SIXTH CAUSE OF ACTION**
**FIU'S DENIAL OF PLAINTIFF ASSISTANCE OF COUNSEL VIOLATES FEDERAL LAW**

897. Plaintiff repeats and re-alleges each of the facts and allegations contained in paragraph 1 to 895 in this complaint.

898. FIU denied Plaintiff's right to counsel pursuant to 34 CFR 99.22(d).

899. FIU was aware of Ms. McLaughlin's Notice of Representation, Notice of Pending Litigation and her allegations of fraud and violations of due process.

900. FIU was aware that Ms. McLaughlin alleged that her educational records were inaccurate and misleading pursuant to FERPA.

901. FIU chose to ignore Ms. McLaughlin's representation and denied Ms. McLaughlin's attorney presence during meetings with FIU's agents.

902. Plaintiff alleges that FIU intended to disadvantage Ms. McLaughlin's legal rights to unethically obtain discovery.

903. Plaintiff alleges that FIU intended to prejudice Ms. McLaughlin during the pre-trial phase by placing Ms. McLaughlin in an adversarial position against Ms. Rosenthal, an experienced attorney litigator, FERPA expert (former DOE employee), and member of The Florida Bar.

904. Plaintiff alleges that FIU's denial of counsel was intended to cover-up bad faith, ill will, and impermissible and unconstitutional academic expulsion.

905. FIU purposely has usurped the holdings of *Ewing* and *Horowitz* to abridge Ms. McLaughlin's right to due process and the assistance of counsel.

906. FIU stated "It is well settled that students do not have the right to counsel in academic matters." And cited the above two Supreme Court decisions. *See Ewing*, 474 U.S. at 214; *See Horowitz*, 435 U.S. at 78.

907. FIU misrepresents the Court's holding of *Ewing* because academic dismissals require "the ordinary, well recognized principles of fair play." *Ewing*, 474 U.S. at 135 n. 4.

908.    FIU ignored the holding in *Bishop* in that Ms. McLaughlin's academic dismissal and letter of academic standing portrays her as intellectually incapable of achieving a juris doctorate requires greater procedural protections.  *Bishop v. Wood*, 426 U.S. 341 (1976).

909.    FIU's denial of the assistance of counsel has caused Plaintiff to suffer an unlawful academic expulsion and Plaintiff continues to suffer economic injury and irreparable harm.

910.    Plaintiff is entitled to an award of monetary damages and equitable relief.

## SEVENTH CAUSE OF ACTION
## FRAUD

911.    Plaintiff repeats and re-alleges each of the facts and allegations contained in paragraph 1 to 909 in this complaint.

912.    The elements of common law fraud in Florida are:  a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party.  *See e.g.*, *Tucker v. Mariani*, 655 So.2d 221, 225 (Fla. 1 DCA at 1995); *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984).

913.    FIU Law acted knowingly or in reckless disregard or in deliberate ignorance in making, using or causing to be made false records or statements concerning Ms. McLaughlin's attendance, class participation, assignments, exams, and grades.

914.    The FIU Law acted knowingly or in reckless disregard or in deliberate ignorance of the truth in causing Ms. McLaughlin's academic dismissal in violation of Fla. Stat. 68.082(2)(b).

915.    Defendants acted knowingly or in reckless disregard or in deliberate ignorance of the truth in affirming, maintaining and perpetuating Ms. McLaughlin's academic dismissal.

916.    Plaintiff is entitled to an award of nominal and compensatory damages and equitable relief.

917.    Pursuant to the common law of fraud in Florida, the Plaintiff is entitled to a remedy for the State's damages as well as any other relief the Court deems appropriate, to include, but not exclusive of punitive damages, prejudgment interest and costs.

## EIGHTH CAUSE OF ACTION
## CIVIL CONSPIRACY

918.    Plaintiff repeats and re-alleges each of the facts and allegations contained in paragraph 1 to 916 in this complaint.

919.    FIU professors conspired with one another, as well as other individuals and entities, to perpetrate an unlawful act upon Ms. McLaughlin or to perpetrate a lawful act by unlawful means, to wit: Defendants conspired to devise a fraudulent and unconstitutional grading scheme to cause Ms. McLaughlin an academic expulsion.

920.    The objective of the conspiracy was to deprive Ms. McLaughlin of her property right in a graduate law school education and her liberty right to an untarnished reputation.

921.    The objective was also discrimination to politically engineer FIU's graduating law school class towards a more liberal political ideology.

922.    The objective was also to discriminate to prevent a conservative, Republican, Trump-supporting law student from graduating and providing political support to future election cycles as a FIU alumnus lawyer.

923.    FIU, as conspiracy participants, had actual or constructive knowledge of the unlawful act to expel Ms. McLaughlin for non-academic reasons and were playing a vital role in the maintenance and success of the unlawful expulsion.

924.    FIU, the governing university through its agents, conspired with FIU Law to conceal material educational records from Ms. McLaughlin to maintain an unlawful expulsion.

925.    FIU, the governing university through its agents, conspired with the FIU Law to frustrate enforcement of FERPA and to infringe the Plaintiff's vested right to a neutral FERPA hearing and placing an explanatory statement on her educational records.

926.    Florida Board of Governors (FBG), as conspiracy participants, had actual or constructive knowledge of the unlawful act to expel Ms. McLaughlin for non-academic reasons and played a vital role in the maintenance and success of the unlawful expulsion.

927.    FBG, as conspiracy participants with FIU, conspired with FIU to conceal material facts from Ms. McLaughlin and to obstruct a proper investigation to maintain an unlawful expulsion.

928.    FBG, as conspiracy participants, conspired with FIU to prevent enforcement of FERPA to infringe the Plaintiff's vested right to a neutral FERPA hearing and placing an explanatory statement on her educational records.

929.    FBG and FIU conspired to prevent any findings of FERPA violations or tortious acts which may cause a loss of reputation and/or liability.

930.    The U.S. Department of Education (DOE), as conspiracy participants, obtained actual or constructive knowledge of the unlawful act to expel Ms. McLaughlin for non-academic reasons and played a vital role in the maintenance and success of the unlawful expulsion.

931.    The DOE, as conspiracy participants with FIU, conspired with FIU to block a letter of determination on the Notice of Investigation.

932. The DOE, as conspiracy participants, conspired with FIU to infringe Ms. McLaughlin's vested right pursuant to a FERPA hearing and placing an explanatory statement on her educational records.

933. The DOE, as conspiracy participants, conspired with FIU to cover-up the university's malfeasance and unlawful conduct.

934. As a direct and proximate result of Defendants' participation in, and furtherance of, the conspiracy; Plaintiff has suffered damages.

935. Plaintiff is entitled to an award of nominal and compensatory damages and equitable relief.

## NINTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

936. Plaintiff repeats and re-alleges each of the facts and allegations contained in paragraph 1 to 934 in this complaint.

937. FIU Law and FIU, the governing university, had a fiduciary duty toward Ms. McLaughlin to refrain from discrimination and retaliation based on political beliefs.

938. FIU Law and FIU, the governing university, had a fiduciary duty because she was a matriculated graduate student and is the beneficiary of Ms. McLaughlin's paid tuition.

939. FIU Law and FIU, the governing university, had a fiduciary duty as the sole entity in control of Ms. McLaughlin's student records to provide transparency and accountability concerning the calculation and recording of her grades.

940. FIU Law had a fiduciary duty to answer communications from the student.

941. FIU Law breached their fiduciary duty by ignoring Ms. McLaughlin's emails, voicemails and in-person contact.

942.    FIU Law breached their fiduciary duty by allowing professors to freeze out Ms. McLaughlin by not answering her questions and ignoring her class participation.

943.    FIU Law breached their fiduciary duty toward Ms. McLaughlin by permitting its faculty to record inaccurate and/or fraudulent grades.

944.    FIU Law breached their fiduciary duty toward Ms. McLaughlin by creating unfair and unsanctioned obstacles for Ms. McLaughlin to be a successful student.

945.    FIU Law breached their fiduciary duty by creating a hostile classroom environment.

946.    FIU Law breached their fiduciary duty by infringing Ms. McLaughlin's right to due process in her expulsion from law school.

947.    FIU Law breached their fiduciary duty to maintain a fair and equitable process of academic expulsion as to spring semester 1L students.

948.    FIU Law breached their fiduciary duty by creating a hostile environment during her ASC meeting.

949.    FIU Law and FIU, the governing university, breached their fiduciary duty by not allowing her right to counsel at the ASC hearing and during her FERPA dispute.

950.    FIU Law and FIU, the governing university, breached their fiduciary duty by withholding Ms. McLaughlin's educational records in violation of FERPA laws.

951.    FIU, the governing university, breached their fiduciary duty toward Ms. McLaughlin through a respondeat superior relationship with FIU Law.

952.    FIU, the governing university, breached their fiduciary duty because they were aware of Ms. McLaughlin's grade disputes, grievances, and allegations and failed to take reasonable action to investigate and mitigate the plaintiff's harm.

953.    The Florida Board of Governors (FBG) owes a fiduciary duty to Ms. McLaughlin as a student because it is the governing body of Florida's state university systems.

954.    The FBG owes a fiduciary duty to objectively investigate student complaints in good faith.

955.    The FBG owes a fiduciary duty to take reasonable action to remediate a Florida University's wrong doing.

956.    The FBG breached its fiduciary duty by having predisposed determinations in favor of their Florida Universities against the student, Ms. McLaughlin.

957.    The FBG breached its fiduciary duty because it placed biased investigators and arbiters in charge of investigating and assessing the complaint.

958.    The US Department of Education (DOE) has a fiduciary duty toward student complainant pursuant to FERPA.

959.    The DOE has a fiduciary duty to timely, objectively, and thoroughly investigate Ms. McLaughlin's complaint.

960.    The DOE has a fiduciary duty to take reasonable action upon discovering a university's malfeasance and wrongdoing.

961.    The DOE has breached their fiduciary duty by failing to investigate Ms. McLaughlin's complaint neutrally with the goal of aiding FIU with the cover up of malfeasance.

962.    The DOE has breached their fiduciary duty because they have intentionally delayed making a determination for more than thirty (30) months to prevent Ms. McLaughlin from filing a legal claim against FIU within the statute of limitations.

963.    The DOE breached their fiduciary duty because after twenty-four (24) months of investigation they are aware of FIU's malfeasance and have failed to neither make a

determination on Ms. McLaughlin's claim nor take some remediating action for Ms. McLaughlin.

964.   FIU Law and FIU, governing university, through a theory of respondeat superior and their own direct fiduciary relationship with Ms. McLaughlin was a proximate cause to Ms. McLaughlin's damages.

965.   The FBG proximately caused Ms. McLaughlin to suffer damages because they failed to require FIU to remediate their wrong doing in any way.

966.   The DOE's breach of fiduciary duty is the proximate cause of Ms. McLaughlin's damages because they have aided FIU to cover-up their malfeasance.

967.   The Defendants' conduct in acting secretly and for an unlawful purpose was a material breach of the fiduciary duties existing between the plaintiff and each Defendant which arose from the special relationship of trust and confidence existing between the student and an educational institution.

968.    Ms. McLaughlin suffered damages of defamation, loss of income, loss of status as a summer legal intern, loss of a year's tuition, a year's work of lost income due to the delay in Ms. McLaughlin's graduation, additional tuition, fees expenses and irreparable damage to her good name, reputation and career because of Defendants' breach of fiduciary duty through overt actions and/or failure to act.

969.   These material breaches include the breaches of the duties of loyalty, fidelity, honesty, candor, fair dealing and full disclosure are owed to Ms. McLaughlin by FIU, the State University system, the FBG, the DOE and all named Defendants.

970.   Plaintiff is entitled to an award of nominal and compensatory damages and equitable relief.

## TENTH CAUSE OF ACTION
## NEGLIGENCE

971.    Plaintiff repeats and re-alleges each of the facts and allegations contained in paragraph 1
to 969 in this complaint.

972.    Plaintiff alleges that Defendants had a duty of care to the Plaintiff and that the
Defendants breached that duty of care which is the actual and proximate cause of Plaintiff's
damages.

973.    All Defendants have joint and severable liability.

974.    Defendants have a duty to treat Ms. McLaughlin neutrally and fairly without inherent
bias and rancor, or discrimination and retaliation.

975.    FIU had a duty to maintain a non-hostile educational environment without demeaning
and harassing students for their political beliefs.

976.    FIU had a duty to properly supervise all employees to prevent the type of abuse of power
exercised by FIU Law professors and staff.

977.    FIU had a duty to grade Ms. McLaughlin using established academic standards.

978.    FIU had a duty to maintain blind grading for all courses to prevent the exercise of bias
and unjust grading in subjectively graded exams and assignments.

979.    FIU had a duty to record grades accurately.

980.    FIU had a duty to maintain standard record keeping.

981.    FIU had a duty to apply its policies and regulations in an unbiased and neutral manner.

982.    FIU had a duty to give Ms. McLaughlin adequate due process before vacating her 1L
year credits and her status as a student in good standing.

983.   FIU had a duty to reasonably investigate any grade challenges and ensure that there were no clerical, technical, recording or intentional errors.

984.   FIU had a duty to review whether Professor Brown and other professors correctly applied the rubric when grading Ms. McLaughlin's assignments and exams because incorrect rubric points and totals is a computational error.

985.   FIU had a duty to review all of Ms. McLaughlin's grades for any negligent or intentional inaccuracies, miscalculations, or intentional fraudulent recording.

986.   FIU breached the duty of care to properly supervise and monitor law professors' conduct and actions.

987.   FIU breached the duty of care to maintain and keep accurate educational records.

988.   FIU breached the duty of care to properly record exam scores.

989.   FIU breached the duty of care by allowing the use non-academic standards for grading.

990.   FIU breached the duty of care by miscalculating final grades.

991.   FIU breached the duty of care by failing to review all of Ms. McLaughlin's grades for inaccuracies and computational errors.

992.   FIU breached the duty of transparency by failing to disclose the manner of grade calculations for the purpose of covering up tortious acts.

993.   FIU breached their duty of care by failing to treat Ms. McLaughlin with fairness in spite of her political beliefs.

994.   FIU breached their duty of care by permitting a hostile educational environment that demeaned and threatened Ms. McLaughlin because of her political beliefs.

995.   FIU breached their duty of care to properly supervise the law professors who abused their power by improperly "unblinding" exams; use of non-academic standards; tampering with grade recording to jerry-rig the law school rankings based on impermissible criteria.

996.   FIU breached their duty of care to accurately record the Plaintiff's grade and to maintain complete and accurate records.

997.   FIU breached their duty of care to implement an academic dismissal process which protects Ms. McLaughlin's right to procedural due process.

998.   FIU breached their duty of care to follow their own stated policies and regulations.

999.   FIU breached their duty of care by not properly implementing FERPA.

1000.   FBG had a duty to ensure Ms. McLaughlin's rights as a student are protected.

1001.   FBG had a duty to objectively and reasonably review Ms. McLaughlin's complaint.

1002.   FBG had a duty to properly, thoroughly and fairly investigate Ms. McLaughlin's complaint against FIU.

1003.   FBG had a duty to remove or recuse any and all staff from making any determination when a conflict of interest or a bias existed, in particular Iris Elijah.

1004.   FBG had a duty to properly and effectively communicate with Ms. McLaughlin, the student complainant.

1005.   FBG had a duty to take reasonable action upon determining whether FIU committed any unlawful act.

1006.   FBG had a duty to protect Ms. McLaughlin from any harm caused by FIU.

1007.   FBG is liable for FIU's negligent acts through a theory of respondeat superior.

1008.   FBG breached the duty of care by failing to protect the student from unlawful acts committed by the Florida university system.

1009.   FBG breached their duty to objectively and reasonably review Ms. McLaughlin's complaint.

1010.   FBG breached their duty of care because it failed to investigate or review the FERPA complaint by a competent and qualified person specifically Inspector General.

1011.   FBG breached the duty of care because the FBG permitted an unqualified person to make a determination as a matter of law.

1012.   FBG breached the duty of care because the FBG failed to make a determination of fact because the FBG made a determination without FIU's response.

1013.   Based on the identical complaint, the DOE found that Ms. McLaughlin's FERPA complaint did have merit and issued a Notice of Investigation.

1014.   The DOE is under no obligation to investigate complaints that are meritless on their face.

1015.   FBG's determination letter is in direct opposition to the DOE's Notice of Investigation as to the merits of Ms. McLaughlin's complaint of FIU's FERPA violations.

1016.   FBG breached the duty of care by failing to give Ms. McLaughlin's complaint of FIU's FERPA violations the proper merit and consideration.

1017.   FBG breached their duty to reasonably investigate and determine whether FIU committed unlawful acts because FBG had willful blindness to any FIU wrongdoing.

1018.   FBG breached their duty to carefully and deliberately consider all the legal merits of Ms. McLaughlin's complaint.

1019.   FBG breached the duty of care by failing to take remediating actions to protect Ms. McLaughlin from FIU's wrongful acts.

1020.   The DOE has breached its duty of care by failing to timely investigate Ms. McLaughlin's complaint because they negligently mishandled the complaint.

1021.   The DOE has admitted to making a clerical error in failing to assign a case number upon receipt.

1022.   The DOE has admitted to making a clerical error in failing to properly forward the Plaintiff's complaint to the FPCO.

1023.   These admitted clerical mistakes are negligence per se.

1024.   These admitted mistakes delayed a determination for at least five (5) months.

1025.   The DOE has not taken any reasonable measures to mitigate the Department's delay in processing Ms. McLaughlin's complaint.

1026.   The DOE breached their duty of care to reasonably and timely make a determination on the notice of investigation complaint because the DOE negligently mishandled the notice of investigation.

1027.   The DOE breached their duty of care to enforce the Plaintiff's vested rights pursuant to FERPA because they negligently failed to make a timely determination on FIU's Notice of Investigation.

1028.   The DOE breached their duty of care to make a final findings letter because the DOE has mishandled Ms. McLaughlin with gross negligence and reckless disregard for Ms. McLaughlin's statutory vested rights.

1029.   FIU's negligent acts are the actual and proximate cause of Ms. McLaughlin's academic expulsion and the resulting damages.

1030.   FBG's negligent acts are the actual and proximate cause of Ms. McLaughlin's continued academic expulsion, damage to her reputation and other resulting damages.

1031.   The DOE's negligent acts are the actual and proximate cause of Ms. McLaughlin's damages because they helped to prolong Ms. McLaughlin's harm indefinitely.

1032.   Plaintiff is entitled to an award of nominal and compensatory damages and equitable relief.

## ELEVENTH CAUSE OF ACTION
## DEFAMATION; FALSE LIGHT

1033.   Plaintiff repeats and re-alleges each of the facts and allegations contained in paragraph 1 to 1031 in this complaint.

1034.   An accredited law school's academic expulsion holds a student in the light of the American Bar Association standard in that academic expulsion is proper when a student is deemed as unlikely to successfully graduate from law school.  American Bar Association Section 308, 501(c).

1035.   FIU academically expelled Ms. McLaughlin on June 2, 2017.

1036.   Ms. McLaughlin successfully graduated from a different accredited law school, two and one-half years later, on December 17, 2019.

1037.   FIU's assessment that Ms. McLaughlin is unlikely to successfully graduate from law school was grossly misjudged, inaccurate, and false on its face.

1038.   FIU defamed Ms. McLaughlin by stating and publishing, on her permanent school record through her school transcript, as a non-rebuttable fact that Ms. McLaughlin was a failed law student and unlikely to graduate law school.

1039.   FIU defamed Ms. McLaughlin by stating and publishing, on a letter of student status, as a non-rebuttable fact that Ms. McLaughlin was a failed law student and unlikely to finish law school.

1040.   FIU defamed Ms. McLaughlin by representing Ms. McLaughlin in the "false light" that she does not have the capacity to successfully graduate law school.

1041.  FIU communicated the defamatory statement as true in Ms. McLaughlin's status letter and transcript.

1042.  FIU knew that Ms. McLaughlin disputed the accuracy of her grades and that her academic expulsion was in error.

1043.  FIU knew that she had reported malfeasance by liberal law professors wanting to discriminate and retaliate against Ms. McLaughlin, due to her conservative political beliefs, thereby making her expulsion unlawful.

1044.  FIU recklessly defamed Ms. McLaughlin because FIU failed to perform a proper and adequate review of Ms. McLaughlin's educational records as to the accuracy of her final grades causing an academic expulsion.

1045.   FIU showed reckless disregard for the truth because FIU never reviewed all of the transcript grades for miscalculations and/or inaccuracies.

1046.  FIU cannot possibly know whether or not Ms. McLaughlin's grades have any inaccurate recordkeeping or miscalculations due to their failure to review her grades.

1047.  FIU, at minimum, defamed Ms. McLaughlin when they did not properly and thoroughly investigate Ms. McLaughlin's allegations of unlawful use of non-academic standards and grade tampering that led to her expulsion.

1048.  Ms. McLaughlin alleges that FIU's publication of Ms. McLaughlin's expulsion had malicious intent or at least had reckless disregard for the truth because FIU intended to block Ms. McLaughlin from ever graduating from any law school.

1049.  Ms. McLaughlin suffered damages of reputation and her good name impeding her from education and career options.

1050.   Ms. McLaughlin suffered damages because the defamation forced her to forfeit her summer job at the State Attorney's Office because the State Attorney's Office requires a full-time student status.

1051.   Ms. McLaughlin suffered damages because the defamation precluded Ms. McLaughlin from obtaining admission as a 2L transfer student, and therefore forced Ms. McLaughlin to repeat her first year, and lose another year's worth of tuition.

1052.   As a direct and proximate result of FIU's defamation, Ms. McLaughlin has suffered damage and injury to her reputation, career, future earnings and diminished opportunities.

1053.   Plaintiff is entitled to an award of nominal and compensatory damages and equitable relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Ms. McLaughlin respectfully prays that this Court grant relief against the Defendants by:

A.   Injunctive relief granting the Plaintiff immediate access to her FIU Law student educational records, to an impartial FERPA hearing and the right to place a statement on her student record pursuant to Fla. Stat. 1002.22(4).

B.   A declaratory judgment that FIU violated the Plaintiff's rights of access to her student records, and to an impartial hearing pursuant to Fla. Stat. 1002.2(2)(a-e).

C.   A declaratory judgment that FIU Law *Academic Policies and Regulations* is unconstitutional on its face and as applied and deprived Ms. McLaughlin of her property right of a law school education and her liberty right to her reputation without due process of law pursuant to the Fourteenth Amendment to the U. S. Constitution and Florida Constitution Art. 1 Section 9.

D.  Nominal and compensatory damages for infringing Ms. McLaughlin's exercise of her right to freedom of political expression under the First Amendment to the U. S. Constitution and the Florida Constitution Art. I Section 4.

E.  Nominal and compensatory damages for Defendants' defamation of Plaintiff's reputation and damaging Ms. McLaughlin's career and future earnings.

F.  Compensatory damages for mental anguish and suffering due to Defendants' unlawful acts.

G.  Actual damages loss of paid summer internship summer 2017.

H.  Actual damages for the additional expense of her law school education incurred because of the unlawful expulsion.

I.  Actual damages for Ms. McLaughlin's student loans for 2016-2017, incurred and lost because of the unlawful expulsion.

J.  Actual damages for lost wages.

K.  Punitive damages for the Defendants' tortious acts.

L.  Plaintiff's reasonable attorney's fees, costs and other fees and other disbursements in this case pursuant to 42 U.S.C. 1988.

M.  Plaintiff prays that all actual, compensatory, and punitive damages exceed Twenty Five Million Dollars ($25,000,000.00).

N.  Any and all other relief the Court deems just and proper.

Respectfully Submitted

DIANA MCLAUGHLIN, Esq.

Attorney for Christina Marie McLaughlin
Florida Bar Number:  84479
10661 Airport Pulling Road
Suite 9
Naples, FL  34109
Phone: (239) 330-6332
Email: drdiana@dianamclaughlin.com

**VERIFICATION OF COMPLAINT**

I, Christina Marie McLaughlin, a citizen of the United States and a resident of the State of Florida, hereby declare under penalty of perjury pursuant to 28 U.S.C. Sec. 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and to the best of my knowledge the facts as alleged are true and correct.

Executed the _____ day of _____, 2020 at Naples, Florida.

_____

Christina M. McLaughlin

_____