# EXHIBIT 1



# Ave Maria School of Law

## Fides et Ratio

Omnibus has Litteras Lecturis Salutem in Domino

Quum praeceptorum suorum iudicio omnia requisita ad gradum conferendum
peracta sunt Ave Maria School of Law auctoritate publica sibi ad id delegata

### Christina Marie McLaughlin

ad gradum

### Juris Doctoris

provexit laureaque insignuit et singulis juribus et privilegiis ad istum
gradum pertinentibus donavit in cuius rei testimonium has litteras Scholae
sigillo munitas et manu subscriptas dabamus

Datum Naples Florida die XVII Mensis Decembris Anno Domini MMXIX



Thomas S. Monaghan
Praefectus Consilii Gubernatorum





Decanus Decanus

# EXHIBIT 2

New Window   Help   Personalize Pag

Request Header   Request Detail   Report Results   Report Errors

Find | View All   1 of 1

Seq Nbr:      1

ID:           5972109    Christina McLaughlin

Law Record Unofficial

Name      :  Christina McLaughlin

Student ID:  5972109

SSN       :  ████████████████

Birthdate :  ████████████████

Sex       :  Female

Florida International University

Identifying Code: 009635


- - - - -   Beginning of Law Record   - - - - -

Program     :  Law Juris Doctor (Day)

2016-07-05  :  Active in Program

            2016-07-05 : Juris Doctor (Day) Major

                        Fall Term 2016

Session   : Regular Academic Session

| LAW | 5000 | Contracts | 4.00 | 4.00 C | 8.000 |
| LAW | 5501 | Constitutional Law | 4.00 | 4.00 D | 4.000 |
| LAW | 5700 | Torts | 4.00 | 4.00 B+ | 13.320 |
| LAW | 5792 | Legal Skills & Values I | 3.00 | 3.00 B- | 8.010 |

TERM GPA :    2.220    TERM TOTALS :   15.00   15.00   33.330

CUM  GPA :    2.220    CUM  TOTALS :   15.00   15.00   33.330

Good Standing

Spring Term 2017

Session : Regular Academic Session

| LAW | 5100 | Criminal Law | 3.00 | 3.00 C~ | 5.010 |
| LAW | 5259 | Intro International & Comp Law | 3.00 | 3.00 C~ | 5.010 |
| LAW | 5300 | Civil Procedure | 4.00 | 4.00 D | 4.000 |
| LAW | 5400 | Property | 4.00 | 4.00 C+ | 9.320 |
| LAW | 5793 | Legal Skills & Values II | 2.00 | 2.00 C+ | 4.660 |

TERM GPA : 1.750      TERM TOTALS : 16.00   16.00    28.000

CUM  GPA : 1.980    · CUM  TOTALS : 31.00   31.00    61.330

Dismissed

Program   :  Law Juris Doctor (Day)

2017-05-19  :  Dismissed

2017-05-19 : Juris Doctor (Day) Major  ·

Law Career Totals

CUM  GPA :   1.980     CUM  TOTALS :   31.00   31.00     61.330

- - - - -  Non-Course Milestones  - - - -

Program    :  Law Juris Doctor (Day)

Community Service

    Milestone Status: Not Completed

Class Rank

    Milestone Status: Not Completed

Save      Notify.                                       Add    Update/Display

Request Header | Request Detail | Report Results | Report Errors

# EXHIBIT 3



Christina McLaughlin <cmcla012@fiu.edu>

## Dismissal from the College of Law

5 messages

**Donna Yff** <yffd@fiu.edu>                                                           Fri, May 19, 2017 at 3:24 PM
To: "cmcla012@fiu.edu" <cmcla012@fiu.edu>
Cc: Tawia Ansah <tansah@fiu.edu>, Dannett Morfa-Moldovan <dmorfamo@fiu.edu>, Michelle Pestaina
<pestam@fiu.edu>

Dear Christina, Dear Adrian, I regret to inform that you that having earned a cumulative grade point
average of 1.980 you have been dismissed from the College of Law with the right to appeal.

Dean Ansah will be sending you a formal letter in the near future.

Best,

Donna P. Yff

Registrar

College of Law

Florida International University

Miami, Florida 33199

**Christina McLaughlin** <cmcla012@fiu.edu>                                 Fri, May 19, 2017 at 3:30 PM
To: Donna Yff <yffd@fiu.edu>

Dear Donna,

I would like to exercise my right to appeal.  Please, direct me to the exact procedure to initiate an appeal.

Thank you
Christina McLaughlin
[Quoted text hidden]

**Donna Yff** <yffd@fiu.edu>                                                           Fri, May 19, 2017 at 3:46 PM
To: Christina McLaughlin <cmcla012@fiu.edu>

As I mentioned below Dean Ansah will send you the letter with the specifics.

Best,

Donna P. Yff

Registrar

College of Law

Florida International University

Miami, Florida 33199

**From:** Christina McLaughlin [mailto:cmcla012@fiu.edu]
**Sent:** Friday, May 19, 2017 3:31 PM
**To:** Donna Yff <yffd@fiu.edu>
**Subject:** Re: Dismissal from the College of Law

Dear Donna,

I would like to exercise my right to appeal.  Please, direct me to the exact procedure to initiate an appeal.

Thank you

Christina McLaughlin

On Fri, May 19, 2017 at 3:24 PM, Donna Yff <yffd@fiu.edu> wrote:

> Dear Christina, I regret to inform that you that having earned a cumulative grade point average of 1.980 you have been dismissed from the College of Law with the right to appeal.
>
> Dean Ansah will be sending you a formal letter in the near future.
>
> Best,
>
> Donna P. Yff
>
> Registrar
>
> College of Law
>
> Florida International University
>
> Miami, Florida 33199

---

**Christina McLaughlin** <cmcla012@fiu.edu>                    Fri, May 19, 2017 at 3:56 PM
To: Donna Yff <yffd@fiu.edu>

Dear Donna,

I am respectfully requesting that you direct me to a written policy and procedure concerning the appeals
process today.  I want to begin preparation and due diligence immediately.  I cannot wait for Dean Ansah's
letter to begin preparation.  I request, again, to please direct me to any FIU written sources promptly.  Time
is of the essence and it would be deleterious to waste an entire weekend waiting for the letter.

Thank you for your cooperation in advance,

Christina McLaughlin
[Quoted text hidden]

---

**Donna Yff** <yffd@fiu.edu>                                  Fri, May 19, 2017 at 3:58 PM
To: Christina McLaughlin <cmcla012@fiu.edu>

Christina, you can find this in the Academic Policies.


Best,


Donna P. Yff

Registrar

College of Law

Florida International University

Miami, Florida 33199


**From:** Christina McLaughlin [mailto:cmcla012@fiu.edu]
**Sent:** Friday, May 19, 2017 3:56 PM

[Quoted text hidden]

[Quoted text hidden]

# EXHIBIT 4



FLORIDA
INTERNATIONAL
UNIVERSITY

May 23, 2016

Ms. Christina McLaughlin
1236 Pocantico Lane
Naples, Florida 34110-0923

> Sent via Certified Mail, Return Receipt Requested
> Article Number: 7009 1680 0001 3731 9706 and
> Via Electronic Delivery.

Dear Ms. McLaughlin:

Under §1601 of the Academic Policies and Regulations, a "student (full-time or part-time) who fails to earn a cumulative grade point average of 2.00 or better upon completion of the second or any subsequent semester shall be excluded from the College subject to provisions of §1602." Separately, §1602 also provides that "a student who is excluded under §1601 but who has earned a cumulative grade point average of 1.80 or above may petition the Academic Standards Committee for readmission. *There shall be a strong presumption against readmission…*" (emphasis added).

I regret to inform you that you have been dismissed from the College of Law under §1601 because your cumulative grade point average at the end of the spring 2017 semester was 1.980. Because your grade point average is 1.80 or above, you may petition for readmission under §1602. If you choose to avail yourself of this option, you must submit your written petition to me by 12:00pm noon on Tuesday, May 30, 2017, by email at tansah@fiu.edu. I will confirm receipt of your email. I will then transmit your petition to the Academic Standards Committee.

In support of your petition, and at your option, you have the right to appear before the Academic Standards Committee. The Committee will commence its meetings for this purpose on May 31, 2017, in RDB 2080. **If you wish to appear before the Committee, please indicate this clearly in your email to me. You will then be contacted to schedule a time for your hearing, which will likely last no more than ten (10) minutes.**

Before preparing your petition, please carefully review the College of Law's standards for continuation, in particular §§1601-1606. You can find these provisions in the Academic Policies and Regulations on the College of Law's website. In particular, please note that your written petition must include evidence suggesting satisfaction of the readmission standards; this evidence cannot be presented for the first time at the hearing. The burden of meeting the procedural requirements and persuading the Academic Standards Committee that readmission is appropriate rests entirely with you. It is a serious burden.

I am sorry to be the bearer of bad news.

Very truly yours,

Tawia Ansah
Associate Dean for Academic Affairs

cc:   Professor Howard Wasserman, Chair, Academic Standards Committee
      Associate Dean Angelique Ortega Fridman

COLLEGE OF LAW
Office of the Dean

Modesto A. Maidique, 11200 S.W. 8th St., RDB 2015 • Miami, FL 33199 • Tel: 305-348-1118 • Fax: 305-348-1159 • www.fiu.edu

Florida International University is an Equal Opportunity/Access Employer and Institution • TDD via FRS 1-800-955-8771

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ms. Christina McLaughlin

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

☐ Agent
☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

HUGH McLAUGHLIN

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7009 1680 0001 3731 9706

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**Tawia B. Ansah**
Associate Dean for Academic Affairs
FIU College of Law
11200 SW 8 Street, RDB Hall 2024
Miami, FL  33199

# EXHIBIT 5

Levin College of Law

Homepage        Life At UF Law        Office of Student Affairs        Current Students

**Academic Policies**

# ACADEMIC POLICIES

## OFFICE OF STUDENT AFFAIRS

### Current Students

Order of the Coif

Fees & Expenses

Financial Aid

Academic Calendar

Academic Policies

Course Schedules

Academic Advising

Exam Schedules

Forms & Applications

ONE.UF

First Day Assignments

**Levin College of Law**

Class Recap Video [FLE]

UF Law Student Handbook

New Students

Transfer Students

Additional Information

STUDENT ORGANIZATIONS

CAMPUS

CAREER SERVICES

SOCIAL MEDIA

MORE ABOUT UF

MORE ABOUT GAINESVILLE

CONTACT STUDENT AFFAIRS

Click to view the student handbook

# Academic Policies

**NOTE:** The information on this site is subject to modification by the College of Law faculty and University of Florida administration. Students are required to acquaint themselves with modifications posted on the Administrative Bulletin Board and in Student Affairs.

# Registration
## Levin College of Law

Students register for classes through the University of Florida automated ONE.UF system during dates listed on the Levin College of Law Academic Calendar (found inside the front cover of the student handbook as well as online). Dates for drop/add are usually different for the law school and main campus. It is the student's responsibility to use the law school's academic calendar. A $100-$200 late fee is assessed for registration and/or payment after the specified period in the law school academic calendar.

The Office of Student Affairs registers first- and second- semester students for their classes. Students in the third semester or higher take responsibility for their own registration.

# Maximum and Minimum Loads

The J.D. at UF is a full time program. Students must be enrolled for at least 12 and no more than 16 hours. However, with approval from the Assistant Dean for Student Affairs for good cause shown, students may drop to 10 hours (without losing full-time status) or less, or register for 17. Students who drop below the minimum without administrative approval may be suspended.

In keeping with accreditation standards, a petition for a reduced load cannot be granted for the purpose of enabling a student to hold part-time employment. In addition, a student must be enrolled in at least six hours to be eligible for student tickets to athletic events.

# Credit Hour Policy

In compliance with ABA Standard 310, for each credit hour earned, a student must receive 15 hours of classroom or direct faculty instruction and complete at least 30 hours of out-of-class work per semester. Thus, for a typical three credit course, a student will spend 45 hours per semester in the classroom (including time spent taking the exam) and a minimum of 90 hours on out-of-class work to obtain credit.

**Levin College of Law**

This policy applies to students obtaining credit for non-classroom experiences such as clinics, externships and co-curricular activities. Students will provide time keeping records to their professor, supervisor, or faculty advisor demonstrating compliance with the above requirements.

# Attendance

ABA Standards require regular and punctual class attendance. Therefore, class attendance is an essential function of legal education and a primary obligation of each student, whose right to continued enrollment in the course and to take the exam is conditioned upon a record of attendance satisfactory to the professor. College of Law policy permits dismissal from the law school of students whose lack of attendance causes their course load to drop below the minimum requirement of 12 credits per semester. Petitions for readmission under an exception to the minimum course load rule will be granted only for good cause shown.

# Computer Requirement

UF policy requires all new students to have access to, and on-going use of, a computer. Click here for the computer policy and hardware/software recommendations.

**Software Copyright Policy**

The principles for using and managing software derive from U.S. copyright law, the Florida Computer Crimes Act and legal agreements in the form of licenses and purchase agreements. That foundation makes the basic policy governing software clear:

All faculty, staff and students of the university are required and expected to obey laws and legal agreements governing software use. Failure to do so can lead to monetary damages and/or criminal penalties for the individual violator. Because such violations are also against university policies and rules, disciplinary action will be taken as appropriate.

# Drop/Add Policies
## Levin College of Law

Between the end of the official drop/add period and the date designated by the registrar's office as the last day for withdrawing without receiving failing grades in all courses, each student is allowed to drop two courses, other than required first-year courses, as follows: no more than one per semester, providing a student's course load does not fall below twelve semester hours in the semester in which a course is dropped.

Exceptions to the above policy must be approved by the Assistant Dean for Student Affairs. As to any exception, the burden is upon the student to demonstrate that a serious problem has arisen for which documentation is provided and over which the student has no control. Approval to drop a course in excess of the two permitted by this policy will not be granted if the course is to be dropped because: a) the student registered for too many hours; b) the student wishes to drop the course simply to avoid a low grade which would lower the average; c) the student has determined that the course is no longer needed.

Students become liable for fees the last day of drop/add. To drop a class after the drop/add period, students may petition for the drop. If granted, a "W" will appear on the student's transcript. Failure to attend a class does not constitute a drop. Fees will be refunded only in exceptional circumstances (see "Refund of Fees"). Also in exceptional circumstances, a student may petition to add a class after drop/add. For late registration, a $100 late fee will be assessed by University Financial Affairs. Students must be properly registered to receive course credit.

# Refund of Fees

Tuition fees will be refunded if:

- notice of withdrawal from the university is approved prior to the end of the drop/add period and written documentation is received from the student;

- credit hours are dropped during the drop/add period;

- courses are canceled by the university;

- the student is involuntarily called to active military duty;

· the student or member of the immediate family (parent, spouse, child, sibling) dies;

**Levin College of Law**

· the student's illness, as confirmed in writing by a physician, prevents completion of the semester; or

· other exceptional circumstances occur, and the student obtains approval from the university president or designee(s).

Refunds must be requested by petition in Student Affairs and accompanied by proper documentation. Refunds first will be applied against any university debts and to the appropriate federal Title IV program for students receiving financial aid. Any remaining funds will be returned to the student.

# Graduate Course Option

Students may take courses specified in the Graduate Course Option only if the student, through the exercise of due diligence, cannot take a course containing substantially the same subject matter at the College of Law. With advance approval, students may enroll in up to two courses in the UF Graduate School and/or UF undergraduate foreign language programs for up to six credits toward law school graduation. Although the grade is not computed in a student's grade point average, a "B" or higher must be earned to receive credit. Students on academic probation are not eligible for the option. Students enrolled in the Joint Degree Program are not eligible for this option. (Transfer or transient students who have received more than 23 credit hours for work at their previous law school may not be eligible for the option and should contact the Assistant Dean for Student Affairs.)

# Grades

Grades are recorded permanently by the Office of the University Registrar. The grade point average (GPA) is determined by computing the ratio of grade points of semester hours of work attempted in courses in which letter grades are assigned. Students receive grade points according to the following scale:

**Grade**              **Points**

A (Excellent)          4.0

## Levin College of Law

A-                     3.67

B+                     3.33

B (Good)               3.0

B-                     2.67

C +                    2.33

C (Satisfactory)       2.0

C-                     1.67

D+                     1.33

D (Poor)               1.0

D-                     0.67

E (Failure)            0.0

Per faculty policy, the mandatory mean grade for all course sections is 3.15-3.25, inclusive. If the mean GPA for students enrolled in the course section (determined as of the beginning of the semester) is above 3.2, the lower end of the range is 3.15 and the upper end of the range may be .05 higher than the mean GPA of the students enrolled in the course. If the mean GPA of the students enrolled in the course section (determined as of the beginning of the semester) is below 3.2, the lower end of the range may be .05 lower than the mean GPA of the students enrolled in the course and the upper end of the range shall be 3.25.

The mean grade specified in this section shall be recommended rather than mandatory with respect to any seminar (classified as LAW 6936) and any course section of 15 or fewer students.

**Levin College of Law**

In no event, however, may the mean grade exceed 3.6, except as follows: If the mean GPA (determined at the beginning of the semester) for students enrolled in a course section after the last day to drop a class is above 3.55, the mean grade for the course section may exceed 3.6, but may not exceed the mean GPA of the students enrolled in the course section plus .05.

Grades awarded to LL.M. students, exchange students, and graduate students, and grades of E are excluded from calculation of the mean grade.

# Grade Distribution

Except as otherwise provided, the distribution of the final grades awarded in all required courses in which more than 15 students are enrolled and in which letter grades are awarded must fall within the following percentages:

| | |
|---|---|
| A | 5 to 15% |
| A- | 10 to 20% |
| B+ | 20 to 35% |
| B | 20 to 35% |
| B- | 5 to 15% |
| C+ and below | 0 to 20% |

# Honors and Awards

**Academic Honors**

In cases of superior scholarship and intellectual attainments, the Juris Doctor degree may be awarded Summa Cum Laude, Magna Cum Laude or Cum Laude. Qualifying GPAs are based on all work attempted in law courses.

Honors requirements are as follows:

· Cum Laude: Grade point average of 3.30 or higher.

**Levin College of Law**

· Magna Cum Laude: Grade point average of 3.70 or higher.

· Summa Cum Laude: Grade point average of 3.90 or higher.

## Order of the Coif

The Levin College of Law is one of a select group of law schools with a chapter of the Order of the Coif, the national academic honor society for law. The top 10 percent of a blend of all graduating classes—summer, fall, spring—within a fiscal year are chosen for the award, upon faculty approval. Notice is usually provided the fall following the prior year's graduations.

### Dean's List

To recognize excellent academic performance, students who achieve at least a 3.30 semester grade point average in the spring or fall semester will be named to the Dean's List. Students must be enrolled in at least 12 semester credits of graded law courses to be eligible. Any courses that is treated as a pass/fail or s/u course for purposes of computing your grade point average must be treated as a non-graded course.

### Book Awards

Established by individuals and law firms, Book Awards provide financial support to the college and recognize outstanding academic performance. Recipients are chosen by their professors based on  exam grades and are recognized with an inscribed plaque.

# Exams/Exam Numbers/Grades

Exams generally are given at the end of the semester during the exam period. Student Affairs oversees collection of exams. Re-examinations are not allowed. Grades are posted on ONE.UF.

Approximately one week before the end of classes each term, students must go online to obtain a confidential exam ID number for use on final exams. The same number is used for all exams taken in that specific term. There is a link to the exam number page from the Student Affairs web site or go to ONE.UF

**Levin College of Law**

Faculty initially evaluate exams without knowing the identity of the test-taker. Later, they may match exam numbers with student names and adjust final grades to reflect class participation and other relevant factors. Students have an opportunity to review, within a reasonable time, written work upon which a grade is based. Approximately two weeks after the beginning of each term, students may request in writing from Student Affairs their final exam grades for the previous term to determine whether any adjustments were made in assigning final course grades.

# Exam Accommodations for Students with Disabilities

Reasonable exam accommodations are available to students with permanent or temporary disabilities. To receive accommodations, students should contact the Disability Resource Center, located in 0020 Reid Hall. You may reach Disability Resources at 392-8565 or accessuf@dso.ufl.edu. Once the appropriate documentation is evaluated by Disability Resources, a recommendation is then made and forwarded to the College of Law Assistant Dean for Student Affairs.

# Foreign Language Exam Accommodations

The Levin College of Law is committed to access and legal education for qualified, international students whose first language is not English. Students who have been educated abroad and who have received their undergraduate degree or equivalent from an institution in which English was not the official language, are eligible for a language accommodation. Students who meet this criteria may submit a language accommodation request to the Assistant Dean for Students, who upon confirmation that the student meets the criteria, will grant a language accommodation during the examination period.

# Delay in Taking Exams

## Levin College of Law

Students may request to delay an exam(s) under certain circumstances. Please read the descriptions below to select your appropriate circumstance. Also note that students are not permitted to take exams before the scheduled exam time.

**Multiple Examinations**

A student may reschedule an examination if a student has in class examinations that meet the following criteria:

· 2 exams beginning less than 20 hours apart. Note: Examinations that BEGIN more than 20 hours apart (for example, at 8:30 a.m. on one day and 8:30 a.m. on the following calendar day), DO NOT constitute a conflict under this rule.

· 3 exams within 3 consecutive days

· 4 exams which must be completed within 5 days

Please note that application of this policy to take home exams will be considered on a case-by-case basis.

Students are responsible for submitting the request for an exam delay. All requests to reschedule an exam due to a conflict must be submitted to the Office of Student Affairs, and delayed examinations should be rescheduled to be taken as soon as reasonably possible with the sound discretion of the administration.

**Emergency Delay (accident/illness/death)**

In case of illness, contact the Assistant Dean for Student Affairs. If permission is granted, a written statement from the treating physician stating the student was too ill to take the exam at the scheduled time must be presented before the exam may be taken late. For serious reasons other than illness, a student should contact the Office of Student in advance and speak with the Assistant Dean for Students. Only after the student is notified the request has been granted may the student miss a scheduled exam. Arrangements must be made with Student Affairs for taking the exam late. The Assistant Dean for Students shall

specify the date and time when a student with an excused absence may sit for the examination.

**Levin College of Law**

# Typing Exams or Taking Exams by Computer

Rooms are provided to allow students to type final exams. Students may be allowed to use computers for a final examination provided that approved software has been installed on such computers which prevents access to any stored information in the computer or on the Internet other than that specifically allowed for that examination. Use of computers during a final examination is at the discretion of the instructor for that course. Faculty should consult with the Assistant Dean for Student Affairs to make sure there are appropriate testing areas to accommodate students using their computers.

# Policy on Religious Holidays

The College of Law respects students' observance of major religious holidays. If an instructor has an attendance policy limiting the number of absences, reasonable alternative means shall be established by the instructor to satisfy the attendance policy and accommodate the religious obligations of the student.

# Student Employment

As a full-time law school, the College of Law adheres to American Bar Association policy requiring students to devote substantially all of their working hours to the study of law. Academic schedules and minimum load requirements are designed to reflect this policy. It is highly recommended that first-year students refrain from employment. It is also recommended that no student be employed more than 20 hours per week under any circumstances.

## Jury Duty
### Levin College of Law

Students have a duty to appear when notified of selection for service as a juror on Trial Practice or clinic trials. Periodic notices of selection are posted on the official Student Affairs bulletin boards. Unexcused failure to serve will result in loss of registration priority for all courses upon which enrollment limitations are placed, including seminars and clinical programs. A student who wishes to regain registration priority must perform jury service as arranged through the Trial Practice or Clinic office.

# Repeating Courses

Except as provided herein, a student who has passed a course cannot repeat it. A student who has failed a course may repeat it only in exceptional circumstances as permitted by the associate dean for Student Affairs. This rule does not apply to students who do not receive a passing grade the first time they are enrolled in Civil Procedure (LAW 5301), Constitutional Law (LAW 5501), Contracts (LAW 5000), Criminal Law (LAW 5100), Property (LAW 5400), or Torts (LAW 5700), Legal Research (LAW 5803) and Legal Writing (LAW 5792), Appellate Advocacy (LAW 5793), Professional Responsibility (LAW 6750), or Legal Drafting (LAW 6955). These courses must be completed with a passing grade in order to graduate. If such students remain in good standing, they must retake such course(s) the next time they are offered. This rule also does not apply to Journal of Law and Public Policy (LAW 6526), Journal of Technology Law & Policy (LAW 6930), Moot Court (LAW 6951), Law Review (LAW 6950), Trial Team (LAW 6366), and International Law Journal (LAW 6949), which may be repeated for up to three credits each.

# Departure and Re-entry

A student who has been evaluated on at least one full semester of work (or one semester and the required first summer term for spring entrants) may withdraw or depart, retaining the right to re-enter within five years of the ending date of the last term in which the student earned credit. Students who wish to re-enter must obtain a re-application form from the Office of the University Registrar, 222 Criser Hall. After five years, unless the Dean

**Levin College of Law**

grants an exception for special circumstances, a student who desires to return and is otherwise entitled to continue in the college must apply for admission as a beginning student or with advanced standing as appropriate.

A student who registers as a beginning student but withdraws prior to completion of a full semester's work must submit a new application for admission and compete for a seat in a subsequent class. A student who withdraws from the college during two successive terms in which the student has begun attendance shall be precluded from further enrollment unless, for good cause shown, the Dean approves further enrollment.

# Academic Probation and Exclusion

Students who fall below a 2.0 GPA at the end of the fall or spring semesters will be put on academic probation. If they remain below a 2.0 at the end of the summer term, or if they are below 2.0 at the end of the spring term and do not enroll in the summer term, they will be excluded from the college at the end of the summer or spring term, respectively. Students who are academically excluded may petition the Academic Standards Committee for readmission by the date designated by the Assistant Dean for Student Affairs. The Academic Standards Committee will not entertain a petition from a student who has received a grade of "I*" in one-fourth or more of the credit hours for which the student was enrolled in the term prior to exclusion. The decision of the Academic Standards Committee is final and may incorporate appropriate terms and conditions.

On occasion, when a student has a GPA below 2.0 at the end of the first semester, the Dean, after consultation with the student, may require the student to repeat courses during the following term. The Dean also may require that a student on probation take less than a prescribed course load and less than the minimum hours required of full-time students under ABA accrediting standards, in order for the student to meet the terms of probation.

# Petition for Exception to Academic Policies

Reasonable requests for exceptions to academic policies which are consistent with the college's goals and obligations will be granted upon a showing of good cause. Students must submit a Student Petition Form to the Assistant Dean for Student Affairs. The student

Levin College of Law

is urged to discuss the particulars of the situation with the Assistant Dean, who will render a decision. Any appeals must be filed with the Academic Standards Committee within five class days of the Assistant Dean's decision. The decision of the Academic Standards Committee may be reviewed by the full faculty at the request of a committee member. Action by the faculty represents final disposition of the matter.

# Transfer of Credits Policy

Transfer of credits will be permitted based on the following criteria:

A student may request to transfer up to 29 hours of classes taken at another ABA accredited institution. The credits you earn will be accepted towards your J.D. degree at the Levin College of Law, provided that you adhere to the following rules:

· A student will not receive credit for any Levin College of Law required courses taken at another law school without prior written permission.

· A student will not receive credit for a course taken at the Levin College of Law if the same course was taken at another law school and those credits were transferred.

· A student will receive credit for elective courses only if the student earns a grade of 2.0, "C", or its equivalent or higher in the course. The grades will appear as "S" grades on the UF transcript and will not be calculated in the grade point average.

· A student will receive credit for fulfilling the Advanced Writing Requirement only if a UF Law faculty member certifies the final paper as meeting the Levin College of Law writing requirement.

**APPLY NOW**                    **FACULTY & RESEARCH**

**Levin College of Law**

**SOCIAL MEDIA**



    

University of Florida Levin College of Law

309 Village Drive

PO Box 117620

Gainesville, FL 32611

(352) 273-0804

Text-Only Version

---

## RESOURCES

---

## WEBSITE

---

## QUICK LINKS

MIAMI LAW

2009-2010

# Student Handbook and Honor Code

UNIVERSITY OF MIAMI

SCHOOL of LAW



Volume 80

## 9.  ACADEMIC STANDARDS, PROBATION, AND DISMISSAL

Candidates for the J.D. degree are expected to satisfy minimum performance standards as described below. Students must have a grade-point average of 2.0 or better to be in good academic standing.

### First Semester

Students whose grade-point average is below 2.000 (excluding the grades in Legal Research and Writing I) at the end of the first semester are automatically placed on academic probation. In addition, all students who receive at least one grade of "F" or two grades of "D" must meet with the Dean of Students.

### Second Semester

A student on academic probation after the first semester who raises his or her cumulative GPA to at least 2.000 (excluding grades in Legal Research and Writing I and II) at the end of the second semester will be taken off probation as of the next regular registration period.

A student on academic probation after the first semester whose cumulative grade-point average (excluding grades in Legal Research and Writing I and II) falls below 2.000 at the end of the second semester will be dismissed. However, a student who was on academic probation after the first semester, whose grade-point average in the second semester was at least 2.500 and whose cumulative grade-point average is at least 1.800 (in both cases excluding grades in Legal Research and Writing I and II) may register for a third semester. Such a student remains on academic probation.

A student not on academic probation at the end of the first semester, whose cumulative grade-point average (excluding grades in Legal Research and Writing I and II) falls below 2.000 but is at least 1.800 at the end of the second semester will be placed on academic probation for the third semester.

A student not on academic probation at the end of the first semester, whose cumulative grade-point average (excluding grades in Legal Research and Writing I and II) falls below 1.800 at the end of the second semester will be automatically dismissed.

### After the Second Semester

A student on academic probation who raises his or her cumulative GPA to at least 2.000 (excluding grades in Legal Research and Writing I and II) at the end of a fall or spring semester will be taken off probation as of the next regular registration period.

A student, whether or not on academic probation, will be automatically dismissed at the end of any semester or summer session after the second semester in which his or her cumulative GPA falls below 1.800 (excluding grades in Legal Research and Writing I and II).

A student on academic probation will be automatically dismissed at the end of any fall or spring semester after the second semester in which his or her cumulative grade-point average falls below 2.000 (excluding grades in Legal Research and Writing I and II).

A student not currently on academic probation, and who has not previously been on academic probation, will be automatically placed on academic probation at the end of any fall or spring semester after the second semester in which his or her cumulative grade-point average falls below 2.000 but is at least 1.800 (excluding grades in Legal Research and Writing I and II).

A student not currently on academic probation, and who has previously been on academic probation, will be automatically dismissed at the end of any fall or spring semester after the second semester in which his or her cumulative grade-point average falls below 2.000 (excluding grades in Legal Research and Writing I and II).

### Academic Probation

A student placed on academic probation must obtain the permission of the Dean of the School of Law before enrolling in the Summer Abroad Programs. Permission is not likely to be granted.

A student placed on academic probation (including those who are placed on academic probation after they register but before the beginning of classes) must have his or her class schedule approved by the Dean of Students prior to registration, or may be required to drop-and-add to conform to any requirements placed by the Dean of Students.

The Dean of Students, in the case of automatic probation for academic reasons, or the Academic

# EXHIBIT 6

TABLE OF CONTENTS

ACADEMIC POLICIES AND REGULATIONS

Preface

Introduction

PART I.      GENERAL PROVISIONS

    A.      Defined Terms
        001.   Defined terms

    B.      General Principals
        010.   Compliance with applicable law
        011.   Disclaimer

PART II.     RESIDENCY AND GENERAL ENROLLMENT REQUIREMENTS

    A.      Two Divisions: Full-Time/Day and Part-Time/Evening
        101.   Two divisions; transfer from one division to the other

    B.      Time for Completion of J.D. Requirements
        201.   Time for Completion of J.D. Requirements

    C.      Minimum and Maximum Course Loads
        301.   Minimum course load
        302.   Maximum course load
        303.   Extraordinary circumstances
        304.   Exception to minimum course load requirement:  full-time students
        305.   Exception to minimum course load requirement:  part-time students

[Sections 401 et seq. reserved.]

    D.      Attendance and Punctuality
        501.   General rule
        502.   Specific attendance and punctuality requirements
        503.   Record of Attendance
        504.   Maintain current address information

    E.      Employment
        601.   Restrictions applicable to full-time students
        602.   Employment by part-time students

PART III.   SPECIFIC COURSE AND ENROLLMENT REQUIREMENTS

   A.   Required Courses
      701.  Foundation curriculum (first year of full-time program and first three semesters of part-time program)
      702.  Upper level requirements
      703.  Pro bono requirement
      704.  Experiential Course Requirement

   B.   Changes in Course Schedule
      801.  Records Office requirement
      802.  Add/drop period
      803.  Requirements during add/drop period
      804.  Restrictions on changes after add/drop period
      805.  Effects of late course withdrawal
      806.  Enrollment at overlapping times prohibited

   C.   Auditing
      901.  Auditing

PART IV.   STANDARDS FOR GRADING AND GRANTING CREDIT

   A.   Grading System
      1001.  General rule
      1002.  Grading system and grade point equivalents
      1003(a).Anonymous grading
      1003(b). Hybrid Courses
      1004.  Adjustment to grades based on class participation
      1005.  Reporting of grades
      1006.  Class rank

   B.   Grade Normalization
      1101.  Foundation curriculum
      1102.  Upper level courses
      1103.  Grades of C, D, and F
      1104.  Exceptions

   C.   Changes in Grades
      1201.  General rule:  computation error as basis for grade change
      1202.  Exception:  grade change involving re-enrollment
      1203.  Exception:  grade change involving misconduct

   D.   Credit
      1301.  No credit for failing grades
      1302.  Maximum credit for non-classroom work

E.    Incompletes
      1401.  Missed examinations
      1402.  Non-examination courses
      1403.  Removal of incomplete

PART V.    STANDARDS FOR CONTINUATION AND GRADUATION

A.    Academic Probation After First Semester
      1501.  Academic Probation – lower than 2.00 grade point average
      1502.  Exclusion after First Semester
      1503.  Readmission Standard and Procedure
      1504.  Start-over for students readmitted after dismissal at the end of
             the first semester

B.    Exclusion and Readmission After Second or Any Subsequent Semester
      1601.  Exclusion – lower than 2.00 grade point average
      1602.  Readmission standard
      1603.  Start-over for students readmitted after dismissal at the end of
             the first year
      1604.  Readmission procedure
      1605.  Petitions for reconsideration and absence of appeal
      1606.  Reconsideration

C.    Probation and Academic Supervision After Third or Subsequent Semester
      1701.  Probation – 1.80 to 1.99 grade point average
      1702.  Academic supervision requirements
      1703.  Required retaking of courses with grade of F

[Sections 1801 et seq. reserved.]

D.    Graduation Requirements
      1901.  General requirements
      1902.  Additional semester to meet 2.00 grade point requirement
      1903.  Completion of requirements by graduation date

PART VI.    HONORS

      2001.  Dean's list
      2002.  Degree award

PART VII.    CREDIT FOR WORK AT OTHER COLLEGES AND LAW
             SCHOOLS

      2101.  Transfer credit generally
      2102.  Transfer students – maximum transferable credit hours
      2103.  Students with foreign degrees

2104.   Transfer credit for course work in other law school program
2105.   Students visiting foreign law schools
2106.   Students enrolled in courses in another graduate program
2107.   Joint degree students
2108.   Designation of transfer credit on transcript

PART VIII.   CREDIT FOR NONCLASSROOM WORK

A.   Independent Study
2201.   General description
2202.   Eligibility
2203.   Maximum credit
2204.   No duplication of credit or credit for paid work
2205.   Grading
2206.   Faculty Supervision

B.   Moot Court
2301.   Credit for moot court competitions
2302.   Credit for Moot Court Board of Advocates
2303.   Eligibility
2304.   Grading

C.   Law Review
2401.   General
2402.   Eligibility: prerequisites
2403.   Eligibility: grades
2404.   Credit hours for Law Review participation
2405.   Grading
2406.   Law Review Constitution and Bylaws

PART IX.   LEAVES OF ABSENCE AND WITHDRAWAL

A.   Leaves of Absence
2501.   Leaves of absence; bases
2502.   Leaves of absence: application procedure

B.   Withdrawal
2601.   Withdrawal: application procedure
2602.   Effect of withdrawal

PART X.   EXAMINATIONS

A.   Examination Schedule
2701.   Taking examination: general rule
2702.   Delayed taking: compelling reasons
2703.   Delayed taking for health reasons: required procedure

2704.  Delayed taking for non-health reasons: required procedure
2705.  Delayed taking: final date
2706.  Rescheduled taking
2707.  Failure to take examination: administrative F

B.  Rules Applicable During Examinations
2801.  Assigned rooms
2802.  Use of materials by examinees
2803.  Beginning and ending writing
2804.  Communication only with proctor
2805.  Leaving room during examination
2806.  Delayed takers: no communication regarding examination
2807.  Past examinees: no communication with delayed takers
2808.  Violations of regulations: discipline
2809.  Additional policies and procedures

C.  Special Accommodations
2901.  Special accommodations

PART XI.  RECORDING

A.  Prohibitions Against Recording by Students
3000.  Classes
3001.  Events
3002.  Meetings
3003.  Violations of regulations: discipline

B.  Recording by FIU Law Professors, Staff Members, or Administration
3004.  Classes
3005.  Events

C.  Recording of FIU Law First-Year Classes for Major Religious Holidays
3006.  Requests to record first-year classes
3007.  Availability of actual recordings
3008.  No other classes will be recorded by FIU Law

D.  Use of Actual Recordings
3009.  Actual recordings cannot be shared
3010.  Written use agreement
3011.  Violations of regulations: discipline

E.  Students with Disabilities
3012.  Special Accommodations


ABA APPENDIX

ACADEMIC POLICIES AND REGULATIONS

### Preface

These Academic Policies and Regulations were promulgated and codified by the Florida International University College of Law in February 2002, and have been periodically amended since that time.

Students should read these regulations carefully; all students are presumed to have full knowledge of their contents.

### Introduction

These regulations are divided into 10 parts. Each part is designated by a roman numeral and a title in capital letters. These parts are divided into one or more subparts. Each subpart is designated by a capital letter and an underlined title in initial caps. The "ABA Appendix" lists those sections of these Policies and Regulations that are related to, based upon or compelled by regulations of the American Bar Association and the specific ABA regulation that is related to the contents of the listed section.

## PART I.      GENERAL PROVISIONS

A.      Defined Terms

001.    **Defined Terms**

**Add/drop period** – The period at the beginning of each semester designated in writing by the Registrar, during which students may, generally, change courses without obtaining permission of the Dean. (§ 802)

**Administrative F** – A grade of "F" entered on a student transcript for a course by the Records Office at the direction of the Dean because the student withdrew from the course after the add/drop period without permission of the Dean, the student initially received an incomplete in the course and did not follow the required procedures to remove the incomplete, or because, without prior authorization, the student failed to take a scheduled examination, or because the student violated the Code of Student Conduct. (See §§ 805, 1203, 2602, 2701, and 2807.) Administrative F grades may be accompanied by a notation on the transcript of the reason the student received the F grade.

**College** – The Florida International University College of Law.

**Course** – An offering of the College for which a student is authorized to receive credit which counts toward the minimum number of credit hours needed for graduation.

7

**Course Credit Hours** – A credit hour is an amount of work that reasonably approximates: (1) not less than 50 minutes of classroom or direct faculty instruction and 120 minutes of out-of-class student work per week for fifteen weeks, or the equivalent amount of work over a different amount of time; or (2) at least an equivalent amount of work for other credit-bearing academic activities such as field placements, law review, trial advocacy, and board of advocates.

**Dean** -- The Dean of the College of Law or such person as the Dean may designate.

**Faculty** – The faculty of the College of Law.

**Foundation course** – A course required in the first year of the full-time division and the first three semesters of the part-time division.  The foundation courses are Torts (4 credit hours), Contracts (4 credit hours), Property (4 credit hours), Civil Procedure (4 credit hours), Criminal Law (3 credit hours), Constitutional Law (4 credit hours), Introduction to International and Comparative Law (3 credit hours), and Legal Skills and Values I (3 credit hours) and II (2 credit hours).  These foundation courses comprise the foundation curriculum.  (See § 701)

**Full-time student** – Either a student enrolled in a minimum of 12 credit, or a student enrolled in less than 12 credit hours who qualifies for such enrollment under § 301, 303 or 304 and who is employed for fewer than 20 hours per week. (§ 301)

**Good academic standing** – Describes the status of a student whose cumulative grade point average is 2.00 or above. (§§ 1501, 1502, 1601, 1701)

**Independent study** – An arrangement between a faculty member and a student under which a student produces written work that has gone through multiple drafts under the supervision of the faculty member.  Independent studies are graded on a credit/fail basis. (§§ 2301-2306)

**Leave of absence** – An absence of a semester or more permitted in writing by the Dean to an enrolled student that interrupts the normal course of a student's progress to graduation in consecutive semesters.  (§§ 2601-2602)

**Part-time student** – A student who is enrolled in a minimum of six credit hours and who is not a full-time student; or a student who qualifies for enrollment in fewer than 8 credit hours under §§ 301, 303, or 305.  (§301)

**Records Office** – The FIU College of Law Student Records Office.

**Student** – Unless otherwise specified, a student of the FIU College of Law.

**Upper level** – Describes a student who has completed the foundation curriculum, or a course other than a course in the foundation curriculum.

**Withdrawal** -- A voluntary termination of enrollment at the College of a student in good standing approved by the Dean, having the consequence that the student may not re-enroll at the College unless readmitted. (§§ 2701-2702) [Compare withdrawal from a course, §§ 804, 805]

B.    General Principles

010.   **Compliance with applicable law.** These Academic Policies and Regulations shall be interpreted and applied so as not to violate applicable law, including but not limited to laws establishing the rights of persons with disabilities.

011.   **Disclaimer.** The College of Law reserves the right to modify these Academic Policies and Regulations. Nothing in these Academic Policies and Regulations may be considered as setting forth terms of a contract between a student or prospective student and the College of Law.

## PART II.    GENERAL ENROLLMENT REQUIREMENTS

A.    Two Divisions: Full-Time/Day and Part-Time/Evening

101.   **Two divisions; transfer from one division to the other.** The College of Law offers both a full-time/day division and a part-time/evening division. Ordinarily, full-time students will earn the J.D. degree in three years and part-time students in four years (including at least two summer sessions). Students are admitted to either the full-time/day division or the part-time/evening division, and may transfer from one division to the other only for good cause and with approval of the Dean, space permitting. Except for compelling reason and with written approval of the Dean, students must take the first 31 hours of law school course work in the division to which they were admitted.

B.    Time for Completion of J.D. Requirements

201.   The requirements for the J.D. degree may be completed no earlier than 24 months and not later than 84 months after a student has commenced law study at the College of Law or at a law school from which the College of Law has accepted transfer credit.

C.    Minimum and Maximum Course Loads

301.   **Minimum course load.** Except as provided in § 304, a student must be enrolled in a minimum of 12 credit hours each semester, and be employed for no more than 20 hours per week, to be considered a full-time student for purposes of these regulations. Except as provided in § 303 or 305, a student must be enrolled in a minimum of six credit hours in the fall/spring semester or a minimum of five credits

during the summer session to be considered a part-time student for purposes of these regulations.

302.   **Maximum course load.**  Except as provided in § 303, a full-time student may not enroll in more than 16 credit hours of courses, and a part-time student may not enroll in more than 11 credit hours of courses in one semester.

303.   **Extraordinary circumstances.**  In extraordinary circumstances, the Dean may grant permission for a part-time student to enroll in fewer than six credit hours of courses; for a part-time student to enroll in 12 hours of courses; and for a full-time student to enroll in more than 16 credit hours of courses in one semester.

304.   **Exception to minimum course load requirement: full-time students.**  A student may take fewer than 12 credit hours in the student's final semester of enrollment at the College and still be considered a full-time student, if the student needs fewer than 12 credit hours to complete the 90 credit hours required for graduation.

305.   **Exception to minimum course load requirement: part-time students.**  A part-time student may take fewer than six credit hours in the student's final semester of enrollment at the College if the student needs fewer than seven hours to complete the 90 credit hours for graduation.

[Sections 401 et seq. reserved.]

D.   Attendance and Punctuality

501.   **General rule.**  A student enrolled in any course must regularly and punctually attend class.  Except when an instructor has established more exacting attendance requirements pursuant to §502, a student who is absent for more than 15% of the class hours in a semester (one class hour equals 50 minutes) shall be deemed not to have regularly attended class, and shall receive a reduction of a letter grade (e.g., A- to B+) for every absence beyond 15% of the class hours in the course.   The Dean shall grant exceptions to this policy for: (1) absences due to medical and other emergencies, or (2) absences, with two weeks advance notice to the course instructor, due to religious holidays or approved co-curricular activities.  The Dean may grant exceptions to this policy in other extraordinary circumstances.

502.   **Specific attendance and punctuality requirements.**  An instructor may establish more exacting attendance, and punctuality, requirements in the instructor's course and, during the add/drop period, shall notify the students of those requirements in the course syllabus or by some other form of written notice.

503.   **Record of attendance.**  Faculty members shall keep records of attendance in their classes.

504. **Maintain current address information.** Each student is required to provide and keep current the student's mailing address with the Records Office.

E. Employment

601. **Restrictions applicable to full-time students.** A full-time, first-year student should not undertake any employment, because the rigorous demands of law study require the full energy and time of the student. No student may be employed for more than 20 hours in any week in which the student is enrolled in more than 12 class hours. This restriction may be waived prospectively by the Dean or the Dean's designee upon written request for good cause shown.

602. **Employment by part-time students.** While it is recognized that many part-time students will be employed while attending law school, the rigorous demands of law study require the part-time student to devote substantial energy and time, especially during the first three semesters. Thus, part-time students should work no more than 40 hours per week and preferably fewer hours if possible.

## PART III.   SPECIFIC COURSE AND ENROLLMENT REQUIREMENTS

A. Required Courses

701. **Foundation curriculum (first year of full-time program and first three semesters of part-time program).** All students must successfully complete the foundation curriculum, which consists of 31 credit hours taken in the first year of the full-time program or the first three semesters of the part-time program. The foundation curriculum is composed of the following courses: Contracts (4 credit hours), Torts (4 credit hours), Property (4 credit hours), Constitutional Law (4 credit hours), Civil Procedure (4 credit hours), Criminal Law (3 credit hours), Introduction to International and Comparative Law (3 credit hours), Legal Skills and Values I (3 credit hours), and Legal Skills and Values II (2 credit hours).

702. **Upper level requirements.** All students must successfully complete the following upper level courses: Legal Skills and Values III (2-3 credit hours), Professional Responsibility (3 credit hours), and at least one seminar that entails the writing of a multi-draft paper, and the Experiential Course Requirement (6 credit hours) as provided in Section 704. In furtherance of the curricular emphases in Legal Skills and Values and in International and Comparative Law, students also must satisfy a distributional requirement by taking at least two Litigation or Alternative Dispute Resolution courses and at least one course in International and Comparative Law. Courses will be assigned to these areas by the faculty as they are approved for inclusion in the curriculum

703.   **Pro bono requirement.** All students must satisfy a pro bono service requirement through the College's Pro Bono Program. The requirement, to be completed by full-time students during the second year of law school and by part-time students during the fourth through seventh semesters of law school, entails 30 hours of useful legal-related community service in a program established or approved by the College.

704.   **Experiential Course Requirement**

All juris doctorate candidates entering fall 2016 and thereafter must successfully complete, with a passing grade C or above, a minimum of six credits hours of experiential course work.

(a)   "Experiential course" means a clinical course, externship placement, trial advocacy course, or appellate advocacy course, or other simulation course.

(b)   No student may enroll in more than twenty (20) credit hours of experiential courses, with a maximum of twelve (12) credit hours in trial advocacy courses, twelve (12) credit hours of clinical courses, or twelve (12) credit hours of externship placements, or twelve (12) credits hours in simulation courses.

(c)   (1) Except as provided in sub-paragraph (c)(2), no student may enroll in any experiential course until completion of 45 credit hours towards graduation. (2) The requirements of paragraph (c)(1) shall not apply to the Judicial Externship Placement, trial advocacy course, or appellate advocacy course.

(d)   Enrollment in any experiential course is subject to satisfaction of all requirements of the particular experiential course.

(e)   The requirements of paragraphs (b), (c) and (d) of this section are non-waivable, except for good cause shown.

(f)   The Associate Dean for Academic Affairs shall report to the faculty on all waivers granted of the requirements of paragraphs (b), (c), and (d).

B.   Changes in Course Schedule

801.   **Records Office requirement.** All changes in student schedules, including changes from one section of a course to another and any change pursuant to the procedures required or authorized in §§ 803 through 806, must be processed through the College of Law Records Office.

802.   **Add/drop period.** The Dean shall designate in writing the "add/drop" period as well as any add/drop period policies and procedures in addition to those set forth in these Academic Policies and Regulations. Copies of such policies and procedures will be made available to all students.

803.   **Requirements during add/drop period.** Except where the instructor has established limitations on dropping, a student may drop a course through the last day of the add/drop period without the permission of the instructor. Failure to attend class does not constitute a drop; however, a student who fails to attend each

class meeting of a course in which the student is enrolled during the add/drop period may be administratively dropped from the course by the Dean.

804. **Restrictions on changes after add/drop period.** The per credit hour tuition fee will be fully refunded for courses dropped during the official add/drop period. A student who withdraws from the College of Law after this deadline will receive WI grades and no tuition will be refunded. After the add/drop period, a student must receive written permission from the Dean upon a showing of good cause to withdraw from a course on the student's schedule. A student must obtain written permission of the Dean upon showing a compelling reason to add a course to the student's schedule after the add/drop period.

805. **Effects of late course withdrawal.** Except as provided in § 804, a student who withdraws from a course after the add/drop period shall receive an F in the course.

806. **Enrollment at overlapping times prohibited.** No student may enroll in courses scheduled to meet at the same hour or at overlapping times.

C.   Auditing

901. **Auditing.** Students may audit courses in which space is available with permission of the instructor and the Dean. Permission should not be sought unless the student intends to attend class regularly for the entire semester. No record is kept of courses audited, and no fees are charged to students.

Auditing by non-College of Law students is generally not allowed, and may be allowed only in extraordinary circumstances with the approval of the Dean and the instructor, space permitting and under terms prescribed by them and upon payment of the required tuition and fees. Any certification of auditing of this type shall state that the College of Law makes no representation as to the individual's qualifications, attendance, or comprehension of the materials.

## PART IV.    STANDARDS FOR GRADING AND GRANTING CREDIT

A.   Grading System

1001. **General rule.** Student performance in all courses offered by the College shall be graded in accordance with the grading curve set forth in §§ 1101-1104 below and counted in a student's cumulative grade point average.

1002. **Grading system and grade point equivalents.** All courses except those graded on a credit/fail basis will be graded on the following system: A = 4.00 grade points per credit hour; A- = 3.67; B+ = 3.33; B = 3.00; B- = 2.67; C+ = 2.33; C = 2.00; C- = 1.67; D = 1.00; and F = 0.00.

Other transcript grade notations are as follows: AF = administrative F; P = satisfactory (pass); IN = incomplete; IP = in progress; W = withdrawal; AW = administrative withdrawal; AU = audit.

1003(a). **Anonymous grading**.   All examinations are graded anonymously.   Papers submitted for credit in a course, seminar, or independent study and work involving evaluation of student performance during the course of the semester need not be graded anonymously.

1003(b). **Hybrid Courses**. A hybrid course is a course that offers the student the option of being graded anonymously based on the students examination performance, graded non anonymously based on the submission of a multi-draft research paper, or graded non anonymously based on a serial writing option, i.e, the submission of a minimum of four separate papers completed throughout the semester.  The purpose of the hybrid course is to improve student writing by providing students with feedback on multiple drafts of a research paper or on several shorter papers. The requirements of the research paper are established by section 702 of the Academic Polices and Regulations.  The requirements of the serial writing option, including the length of each paper and the degree of independent research to be conducted by the student, will be determined by the supervising faculty member.

1004.   **Adjustment of grades based on class participation.**  An instructor may make an adjustment of one grade level for a student's classroom performance during any course.  Such grade is in addition to any examination grade, or grade derived from papers, projects, or other graded course work, and has the effect of increasing or decreasing the course grade to the next higher or lower grade (e.g., from C to C+ or C-).  The instructor wishing to grade classroom performance under this section must announce the criteria for such grading within the first two weeks of class.  At the conclusion of anonymous grading, the instructor will receive a grade adjustment sheet for all students in the course.  If the instructor has complied with this section, the instructor may raise or reduce the grade of a student by one grade level (e.g., from C+ to B-).  No grade may be decreased from a "C-" or "D."

A faculty member may calculate the distribution of grades prior to adjustments of grades based on class participation pursuant to this section and will be deemed to have satisfied the grading policy distributions, so long as the number of grades raised does not exceed the number of grades lowered by more than 10%. Otherwise, a faculty member must calculate the distribution of grades to include all of the adjustments to satisfy the grading policy.

1005.   **Reporting of grades.**  The cumulative grade point average of any student is determined by multiplying each grade given for every graded course taken at the College by the total number of semester hours assigned to that course, adding the products and dividing the total by the number of graded credits attempted.  Grade point averages are calculated to the third or thousandth decimal place.  Grade point averages are calculated for every student upon the submission of course grades for

each semester and summer session, where applicable.  No course taken on a non-graded basis that is not failed shall be considered in computing a student's grade point average.  No course taken at another law school shall be considered in computing a student's grade point average.

1006. **Class rank.**  Full-time and part-time students shall be ranked separately in the division in which they completed the last semester.  Class rankings are available only after the conclusion of the spring semester.  At the request of the student, the student's class rank may be released to third parties.

B.   Grade Normalization

1101. **Foundation curriculum:**  In all foundation curriculum courses, the following four distributional requirements must be met: (i) between 40 and 50 percent of the grades shall be B or above; (ii) at least 20% of the grades shall be B+ or above; (iii) between 10 and 15 percent of the grades shall be A- or A; and (iv) between 10 and 15 percent of the grades shall be C- or below.

1102. **Upper level courses:**  In all upper level courses with an enrollment of 15 or more students, the following three distributional requirements must be met: (i) between 45 and 55 percent of the grades shall be B or above; (ii) at least 25 percent of the grades shall be B+ or above; and (iii) between 15 and 20 percent of the grades shall be A- or A.

1103   **Other grades.**  After satisfaction of the grade normalization requirements set forth in §§ 1101-1102, the distribution of other grades of (B-, C+, C, C-, D, and F) is at the instructor's discretion.

1104. **Exceptions.**  Departure from the grade normalization requirements set forth in §§ 1101-1103 may be permitted by the Dean upon written request of a faculty member explaining the reasons for the departure.

C.   Changes in Grades

1201. **General rule: computation error as basis for grade change.**  An instructor may change the grade for a course only in cases of computational error subsequently reported to the Records Office by the instructor.  The instructor shall report all such changes to the Records Office no later than the conclusion of the semester following the course.

1202. **Exception: grade change involving re-enrollment.**  Notwithstanding the provisions of § 1201, the grade for a course in which a student is required or permitted to re-enroll pursuant to the standards for continuation and graduation shall be averaged with the grade earned for the initial enrollment for the purpose of computing grade point average.   Both the grade earned on the initial enrollment and the grade earned on the re-enrollment shall appear on the student's transcript.

1203.  **Exception: grade change involving misconduct.**  In accordance with the College of Law Student Conduct Code, the Dean may administratively change a grade to an F as a sanction for student misconduct on an examination, in the preparation and submission of a paper, or in the performance of other responsibilities for a course.

D.  Credit

1301.  **No credit for failing grades.**  A student shall receive no credit for a grade of F.

1302.  **Maximum credit for non-classroom work.**  Except in extraordinary circumstances and with the approval of the Dean, students may receive no more than a total of six credit hours for any non-graded courses and independent studies in which the majority of the work is performed outside of the classroom.  Such academic programs are: Moot Court Board, moot court competitions, and the FIU Law Review.  Credits earned in excess of the six credit hour limitation shall not be counted toward the 90 credit hours required for graduation, but shall be recorded on the student's transcript.

E.  Incompletes

1401.  **Missed examinations.**  The Dean may authorize a student to receive an incomplete when the student is unable to take or complete an examination during the regularly scheduled examination period because of illness, accident, or other extraordinary circumstances.  An incomplete is a temporary notation on a transcript that can be removed only pursuant to § 1403.

1402.  **Non-examination courses.**  The instructor in a non-examination course may grant an incomplete to a student for good cause as determined by the instructor.  Such incompletes do not require the approval of the Dean.  An incomplete is a temporary notation on a transcript that must be removed pursuant to § 1403.

1403.  **Removal of incomplete.**  An incomplete must be removed from the student's record by the last day of the semester that follows the semester in which the student received the incomplete.  Unless the Dean authorizes continuance of the incomplete on the student's record, an incomplete that is not removed in accordance with the preceding rules shall be converted to a grade of administrative F and the student shall receive no credit for the course.

V.  **STANDARDS FOR CONTINUATION AND GRADUATION**

A.  Academic Probation after First Semester

1501.  **Academic probation – lower than 2.00 grade point average.**  Except as provided in § 1502, a student who earns a grade point average of less than 2.00 at

the close of the first semester may enroll in the following semester at the College, but shall be on academic probation and must adhere to the following conditions: submission of the student's schedule to the Dean for approval; participation and regular attendance in any academic support program or course prescribed by the faculty; re-enrollment in any foundation course in which the student received a grade of F; [See § 1703. Required retaking of courses with grade of F]; regular attendance in all classes [See § 501. General rule]; prohibition against the student serving as a member of any faculty student committee or as an officer of a law school student organization; if the student's outside workload is determined to be a factor contributing to the student's academic performance, reduction of the student's outside workload as determined by the Academic Standards Committee; and such additional terms and conditions of probation as the Committee may establish. To continue to the second year, a student who has earned a grade point average below 2.00 at the close of the first semester must increase the student's cumulative grade point average to 2.00 or above by the end of the second semester.

1502.   **Exclusion after First Semester.**  A full-time J.D. student who fails to earn a cumulative grade point average of 1.60 or better upon completion of the first semester shall be excluded from the College subject to the provisions of § 1503. The Dean shall notify a dismissed student of the student's dismissal by letter sent to the student's last known address.

1503.   **Readmission Standard and Procedure.**  A student who is excluded under § 1502 may petition the Academic Standards Committee for readmission. There shall be a strong presumption against readmission and the Committee shall not grant readmission except under the most compelling and extraordinary circumstances, and then only if the Committee is clearly convinced that (a) the student will be able to successfully complete the curriculum and pass a bar examination, and (b) any personal problems or other factors that contributed to the student's poor academic performance are not likely to recur.  The procedures stated in § 1604 shall govern petitions under this section.  The excluded student may attend classes while the petition is pending.

1504.   **Start-over for students readmitted after dismissal at the end of the first semester.** There shall be a presumption that a student who is readmitted pursuant to § 1503 must start over, that is, return to law school as an entering first-year student. The grades earned by the student before readmission and start-over shall be excluded from the student's grade point average after starting over.  In unusually compelling and extraordinary circumstances, the Academic Standards Committee may permit a student to continue to the second semester of law school subject to § 1501.

B.      Exclusion and Readmission After Second or Any Subsequent Semester

1601. **Exclusion – lower than 2.00 grade point average.** A student (full-time or part-time) who fails to earn a cumulative grade point average of 2.00 or better upon completion of the second or any subsequent semester shall be excluded from the College subject to the provisions of § 1602. The Dean shall notify a dismissed student of the student's dismissal by letter sent to the student's last known address.

1602. **Readmission standard.** A student who is excluded under § 1601 but has earned a cumulative grade point average of 1.80 or above may petition the Academic Standards Committee for readmission. There shall be a strong presumption against readmission and the Committee shall not grant readmission except under the most compelling and extraordinary circumstances, and then only if the Committee is clearly convinced that (a) the student will be able to successfully complete the curriculum and pass a bar examination, and (b) any personal problems or other factors that contributed to the student's poor academic performance are not likely to reoccur.

1603. **Start-over for students readmitted after dismissal at the end of the first year.** There shall be a presumption that a student who is readmitted after the first year (and before the beginning of the second year) must start over, that is, return to law school as an entering first-year student, no earlier and no later than the calendar year following the calendar year in which the student was dismissed and readmitted. The grades earned by the student before readmission and start-over shall be excluded from the student's grade point average after starting over. In unusually compelling and extraordinary circumstances, the Academic Standards Committee may permit a student to continue to the third semester of law school subject to §§ 1701 and 1703 regarding probation and retaking of courses in which the student earned a grade of F.

1604. **Readmission procedure.** All requests for readmission shall be made to the Dean, who shall refer them to the Academic Standards Committee. Requests must be made in writing and mailed or delivered to the Dean's office within such time specified by the Dean. The request for readmission must set forth evidence suggesting satisfaction of the readmission standards stated in this section.

The Academic Standards Committee shall adhere to the following procedures with readmission decisions:

1. All petitioners who have a right to petition for readmission shall, upon request in the petition, be given a hearing on a date set by the Committee.

2. The hearing shall not substitute for or excuse the written petition. The hearing will be informal. The petitioner should briefly outline points not made in the petition, present any written or oral evidence

supporting his or her petition, and be willing to answer any questions or supply any information requested by the Committee.

3. Except as agreed by the student and the Committee, the hearing will be closed to any other person not on the Committee.

4. The Committee will discuss the petition outside the presence of the petitioner. The Committee may invite the Associate Dean for Academic Affairs and Associate Dean for Admissions and Student Services to serve as resources for the Committee's deliberations. Readmission will be granted only by affirmative vote of a majority of the members present.

5. The student will be informed in writing of the Committee action within three business days following the hearing. The student cannot expect to be informed of the Committee action personally on the day of the hearing.

1605. **Petitions for reconsideration and absence of appeal.** The Committee's decision to deny readmission or certification to the faculty is final and may not be appealed to any College or FIU officer or body. Except as provided in § 1606, a petition for reconsideration will not be granted.

1606. **Reconsideration.** A student denied readmission may file a petition for reconsideration only once and only if there existed a compelling reason for the student's failure to maintain good academic standing that was unknown to the student at the time of the student's hearing before the Academic Standards Committee. In extraordinary circumstances the Committee, by unanimous vote of Committee Members present, may certify a petition for reconsideration to the full faculty, which may grant such a petition by a majority vote.

C.   Probation and Academic Supervision After Second or Subsequent Semester

1701. **Probation – 1.80 to 1.99 grade point average.** A student with a cumulative grade point average below 2.00 as of the end of any semester or summer session who is permitted to continue in law school shall be on probation. The terms and conditions of probation shall be as provided in § 1501. To continue to the next semester, a student who is readmitted under §§ 1602-1604 must increase the student's cumulative grade point average to 2.00 or above by the end of the semester for which the student has been readmitted.

1702. **Academic supervision requirements.** A student who ranks within the bottom 20% of her or his class at the close of the second or any subsequent semester may enroll in the following summer session and semester at the College, but must adhere to the following conditions: submission of the student's schedule to the Dean for approval; re-enrollment in any foundation course in which the student received a

grade of F [See § 1703.  Required retaking of courses with grade of F]; and regular attendance in all classes [See § 501.  General rule].  If the student's outside workload is determined to be a factor contributing to the student's academic performance, the student shall make every reasonable effort to reduce such workload.

1703.   **Required retaking of courses with grade of F.**  Any student who earned an F in a foundation course but who is permitted to continue in the College is required to re-enroll in that course.  Grading and credit for the re-enrollment shall be governed by the provisions of §§ 1202 and 1302.

[Sections 1801 et seq. reserved.]

D.   Graduation Requirements

1901.   **General requirements.**  In order to graduate from the College of Law, a student must:

1.   earn a cumulative grade point average of 2.00 or greater for all graded course work;

2.   pass all required courses, and earn a grade of C or better in Professional Responsibility;

3.   complete at least 90 credit hours of law school course work with passing grades, of which at least 78 credit hours were in graded courses.  No more than 13 credit hours of "D" grade work can be applied to the 90 credit hours of course work.

4.   in the event the student has either been subject to continuation requirements imposed under these regulations or been subject to readmission requirements imposed under these regulations, either have satisfied those requirements, or have been excused from doing so by the Dean, who may excuse the satisfaction of such requirements in compelling circumstances;

5.   satisfy the pro bono service requirement established by § 703.

6.   satisfy all requirements for the degree within the time periods specified in § 201.

1902.   **Additional semester to meet 2.00 grade point requirement.**   Subject to § 201 regarding maximum years to qualify for degree, a student who fails to earn a cumulative grade point average of 2.0 upon completion of 90 credit hours of course work may petition the Academic Standards Committee for permission to continue his or her studies for an additional semester.  To be permitted to continue, the

student must persuade the Committee that the student is capable of successful completion of the curriculum. Such permission shall be granted only in compelling circumstances. In making this readmission determination, the Committee should consider the factors set forth in § 1602 for readmission to continue to the second and subsequent year. If the Committee readmits a student, it may impose any conditions it deems appropriate.

1903. **Completion of requirements by graduation date.** All requirements for graduation must be completed prior to the date of graduation for a degree to be granted at that time. The Dean may waive this requirement in extraordinary circumstances.

## VI. HONORS

2001. **Dean's List.** All students who attain an average of 3.00 or better in any semester (but not summer sessions) are named to the Dean's List for that semester. Full-time students must earn at least 12 hours of credit for the semester with a minimum of six credit hours in graded courses. Part-time students must earn at least eight hours of credit for the semester with a minimum of five credit hours in graded hours. [See § 2108. Designation of transfer credit on transcript.]

2002. **Degree awards.** The awards of *summa cum laude, magna cum laude,* and *cum laude* are awarded on the following criteria:

    1.    *Summa cum laude* – a student whose cumulative grade point average is 3.75 or higher.

    2.    *Magna cum laude* -- a student whose cumulative grade point average is below 3.75 but is 3.50 or higher.

    3.    *Cum laude* -- a student whose cumulative grade point average is below 3.50 but is 3.25 or higher.

Students who complete the degree requirements at the conclusion of the summer session or the fall semester of any year will be considered for the above honors with the subsequent spring graduating class.

## VII. CREDIT FOR WORK AT OTHER COLLEGES AND LAW SCHOOLS

2101. **Transfer credit generally.** As provided in the following sections, a student may transfer credits for a course taken at another law school if the student earned a grade of C or higher in the course at the other law school.

2102. **Transfer students – maximum transferable hours.** A student may transfer to the College after completing the first-year curriculum in good academic standing at an ABA accredited law school. Except as permitted by the Dean for good cause, a transfer student may transfer a maximum of 32 credit hours.

2103. **Students with foreign degrees.** A student who has earned a professional degree from a foreign institution that is equivalent to a J.D. in the United States may apply to the Dean for advanced standing. On a case-by-case basis, the Dean may award transfer credit for work completed at the foreign institution. The Dean may waive enrollment in a required course only on a showing that the course substantially duplicates work already completed. [See §§ 701-702.] Required Courses.] In no event may a student receive credit for more than 30 hours of course work at a foreign law school.

2104. **Transfer credit for course work in other law school programs.** On a case-by-case basis, the Dean may award transfer credit for course work taken at another law school, law school summer program, foreign summer law program, or foreign law school. A student wishing to receive transfer credit for such work must seek the Dean approval in advance of enrolling in the other law school program. In making a determination regarding whether to approve such enrollment, the Dean shall consider, among other factors, the rigor of the course work and the student's grade point average. The Dean may waive enrollment in a required course only on a showing that the course substantially duplicates work already completed. In no event will the Dean approve transfer credit in an amount greater than 44 credit hours.

2105. **Students visiting foreign law schools.** With the permission of the Dean, a student who has completed the foundation curriculum may visit at a foreign law school under terms and conditions approved by the Dean and by the Office of the Consultant on Legal Education of the American Bar Association. A student who visits at a foreign law school may transfer a maximum of 16 credit hours.

2106. **Students enrolled in courses in another graduate program.** With the advance written approval of the Dean, a student may receive up to six hours of credit toward the J.D. degree for appropriate and relevant graduate level courses taken in another graduate program, provided that the student earns a B or above in such course or courses. The credit for such course or courses will be entered on the student's College transcript as a "pass" with the designation "P." No credit will be given for a course in which the student earned a grade of B- or below.

2107. **Joint degree students.** A student who is admitted to a joint degree program may transfer a maximum of nine credit hours from the other graduate school unit participating in the joint degree program.

2108. **Designation of transfer credit on transcript.** Transfer credit for a course in which a student earned a grade of C or better (or the equivalent) at the other law school

will be entered on the student's College transcript as a "pass" with the designation "P." No transfer credit will be given for a course in which the student earned a grade of C- or below.

## VIII. CREDIT FOR NONCLASSROOM WORK

A. Independent Study

2201. **General description.** An upper level student may earn credit for independent study supervised by an instructor in accordance with the provisions in §§ 2202-2206 below.

2202. **Eligibility.** To be eligible for an independent study, a student must have a cumulative grade point average of at least 2.40, unless the supervising instructor and the Dean jointly approve the independent study project in advance. To enroll in an independent study, the student must present to a faculty member a prospectus describing in detail the project, the resources to be consulted, and the final product that student will be produce. The faculty member must review and approve the proposal prior to the student's enrollment.

2203. **Maximum credit.** A student may earn credit toward the J.D. degree for no more than two independent study projects. A student may receive no more than two hours of credit for a single independent study project.

2204. **No duplication of credit or credit for paid work.** A student shall not receive independent study credit if the student is otherwise receiving or has received credit for the project. A student shall not receive independent study credit if the student is receiving monetary consideration for the project.

2205. **Grading.** Independent studies shall be graded on a pass/fail basis.

2206. **Faculty supervision.** Except with the approval of the Dean, only full-time faculty members may supervise independent study projects. A faculty member should supervise no more than three independent study projects in a single semester, and all projects must be in an area in which the faculty member is or has been teaching or working unless there are no other faculty members possessing that expertise.

B. Moot Court

2301. **Credit for moot court competitions.** An upper level student may earn up to two credits for satisfactory participation in a moot court, trial or other intercollegiate competition approved by the Dean.

2302. **Credit for Moot Court Board of Advocates.** A student may earn one credit hour per semester on a pass/fail basis, up to a maximum of two credit hours, for

satisfactory participation as a member of the Board of Advocates. Students should register for credit in the semester they serve as a member of the Board of Advocates. In addition to other sanctions authorized by written Board of Advocates procedures, a member may receive a grade of "F" in a semester of unsatisfactory service. The Board of Advocates faculty advisor will determine, with the advice of the chairperson of the Board of Advocates, whether credit is to be received for Board of Advocates service.

2303. **Eligibility.** Subject to the following exceptions, a student must have a cumulative grade point average of at least 2.50 at the time of selection in order to serve with or without academic credit as a Board member or to participate in an intercollegiate competition. With the prior joint approval of the Dean and the faculty supervisor, a student with a cumulative grade point average below 2.50 may participate in a competition. The faculty advisor to the Board of Advocates, at the Director's discretion, may invite a student with a cumulative grade point average below 2.50 but not less than 2.20 at the time of selection to become a member of the Moot Court Board if the student has otherwise demonstrated exceptional qualifications.

2304. **Grading.** Credit for work as a Board member shall be granted on a ~~credit~~pass/fail basis.

C. Law Review

2401. **General.** A student invited to join the FIU Law Review may earn credit for participation on the staff of that journal in accordance with the provisions of this Subpart VIII C.

2402. **Eligibility: prerequisites.** Successful completion of the foundation curriculum, in accordance with rules established in the Law Review Bylaws, is a prerequisite to participation on the staff of the FIU Law Review. Successful participation in law review work for at least two semesters shall be a prerequisite to a student's serving as an editor of the Law Review.

2403. **Eligibility: grades.** The Law Review may grant membership to students who have earned above a cumulative GPA of 2.67 and a combined GPA of 2.67 in LSV I and II, in accordance with rules established in the Law Review Bylaws. In order to serve as an editor on the Law Review, a student must have earned above a cumulative GPA of 2.67 at the time of election.

2404. **Credit hours for Law Review participation.** A student may earn credit for participation on the Law Review, service on the editorial board, and by writing a note or comment, in accordance with rules established in the Law Review Bylaws.

2405. **Grading.** Credit for participation on the Law Review shall be granted on a pass/fail basis.

2406. **Law Review Constitution and Bylaws.**  The Law Review Constitution may be amended only by a two-thirds vote of the Law Review Faculty Advisory Committee.  The Law Review Bylaws may be amended only by a majority vote of the Law Review Faculty Advisory Committee.

## IX. LEAVES OF ABSENCE AND WITHDRAWAL

A.    Leaves of Absence

2501. **Leaves of absence; bases.**  Depending on the circumstances, the Dean may grant a student a one or two semester leave of absence from the College for the following reasons:

   1.   The student is unable to complete a semester or to enroll in the following semester as a result of medical, personal, or financial difficulties.

   2.   The student chooses to interrupt his or her studies after the student has completed the foundation curriculum in order to fulfill the requirements of a joint degree program or to pursue another extraordinary educational opportunity.

   3.   The Dean determines that there is other good cause for the leave of absence.

2502. **Leaves of absence: application procedure.**  A student shall request a leave of absence from the Dean no later than the beginning of the examination period of the semester during which the student wishes the requested leave to begin.  A student who fails to request a leave of absence within this time, and who also fails to take a scheduled examination in any course without the Dean's prior authorization, shall receive an administrative F in such course.

B.    Withdrawal

2601. **Withdrawal: application procedure.**  The Dean may approve a student's withdrawal from the College upon receipt of a request no later than the beginning of the examination period of the semester in which the withdrawal is requested, provided that the student is not subject to exclusion under the standards for continuation and graduation set out in §§ 1501-1703. A student who fails to request a withdrawal within this time and who fails to take a scheduled examination in any course without prior authorization of the Dean shall receive an administrative F such courses.

2602. **Effect of withdrawal.** A student who has withdrawn from the College may re-enroll only after application and readmission to the College.

## X. EXAMINATIONS.

A. Examination Schedule

2701. **Taking examination: general rule.** All examinations must be taken on the date and at the time set forth in the examination schedule, except when a delayed or rescheduled examination is authorized under §§ 2702-2706. No examination may be administered prior to the time set forth in the examination schedule.

2702. **Delayed taking: compelling reasons.** The Dean may authorize a delay in a student's examination if the student submits compelling reasons for the delay based upon health reasons, accident, personal emergency, or other extraordinary circumstances.

2703. **Delayed taking for health reasons: required procedure.** A student who seeks a delay in an examination for health reasons must be seen by the FIU Health Care and Wellness Center. If it is not possible for the student to be seen by Health Care and Wellness Center prior to the examination, the student must either report to the Center as soon as practical or be seen by a private physician who will contact the Center. The Center will submit a memorandum to the Records Office that confirms the student's visit to the Center or a private physician and that sets forth a medical opinion about the student's condition.

2704. **Delayed taking for non-health reasons: required procedure.** All requests for delays in examinations for extraordinary circumstances other than health must be approved by the Dean.

2705. **Delayed taking: final date.** All delayed examinations must be taken by the close of the examination period for that semester, unless otherwise authorized by the Dean.

2706. **Rescheduled taking.** A student may reschedule an examination only when that student has two exams on the same day or one exam each day for three consecutive days.

2707. **Failure to take examination: administrative F.** A student who, without authorization, fails to take an examination shall receive an administrative F for the examination.

B. Rules Applicable During Examinations

2801.   **Assigned rooms.** Except for take-home examinations, all students shall write their examinations in the room(s) assigned by the Records Office. Each student shall sign in and sign out of the examination room as directed by the examination proctors.

2802.   **Use of materials by examinees.** Students shall not consult any materials during an examination, including but not limited to books, notes, outlines, papers, computer files, prior examinations or answers prepared for prior examinations; provided, that when an instructor authorizes the use of outside materials during an examination, the student may consult the outside materials specifically designated by the instructor.

2803.   **Beginning and ending writing.** No student may begin writing or typing an examination until the proctor or the instructor has issued an instruction to begin. Every examinee will stop writing or typing immediately upon announcement by the proctor or instructor that the examination has ended.

2804.   **Communication only with proctor or Office of the Registrar.** All questions and requests for clarification during an examination shall be directed to the proctor or the Office of the Registrar. No student shall converse with another for any purpose in an examination room after an examination has begun.

2805.   **Leaving room during examination.** After an examination has begun, a student may leave the examination room for the purpose of going to a restroom or relaxing in a nearby corridor. Under no circumstances may a student leave the building during the course of an examination until his or her examination materials have been turned in to the proctor.

2806.   **Delayed takers: no communication regarding examination.** A student who is authorized to take a delayed examination shall not ask any student who has taken the examination about the contents thereof and shall take all necessary measures to avoid overhearing discussions about the contents of the examination.

2807.   **Past examinees: no communication with delayed takers.** A student who has taken an examination shall not reveal or discuss the contents of the examination with any student in the class whom the former knows has not yet taken the examination.

2808.   **Violations of regulations: discipline.** A student who violates §§ 2806-2807 or who violates one of the examination rules promulgated by the Records Office or the Dean has also violated the Code of Student Conduct and therefore is subject to discipline in accordance with the provisions of that Code.

2809. **Additional policies and procedures.** The Records Office and the Dean shall have authority to publish other procedures to govern the administration of examinations and shall make such rules available in writing to all students.

C.   Special Accommodations

2901. **Special accommodations.** Students in need of special accommodations because of a physical or learning disability must obtain approval from the designated University office. To be eligible for special arrangements, students must complete and submit a request to the Dean, who will forward it to the designated University office, by the end of the fifth week of the semester in which accommodation is sought. The Dean shall determine and administer the accommodation to be given on account of any disability.

XI. **RECORDING**

Definitions

For purposes of Part XI, "record" or "recording" means the act of capturing audio and/or still images and/or moving images, or streaming audio and/or still images and/or or moving images through the use of any device; "actual recordings" means the resulting product, including any copies of the first recording, that can be seen and/or heard at a later date with the assistance of a device.

A.   Prohibitions Against Recording by Students

3000. **Classes.** A student must not record an FIU Law class or externship placement (or any part of a class or externship placement) without the express written permission of the professor.

3001. **Events.** A student must not record any FIU Law event (or any part of an event) at FIU Law unless otherwise permitted by the event organizer.

3002. **Meetings.** A student must not record a professor, staff member, or administrator of FIU Law during an out-of-class meeting or conference without the express written permission of the professor, staff member, or administrator.

3003. **Violations of regulations: discipline.** A student who violates §§ 3000-3002 has also violated the Code of Student Conduct and therefore is subject to discipline in accordance with the provisions of that Code.

B.   Recording by FIU Law Professors, Staff Members, or Administration

3004. **Classes.** A professor may record his/her FIU Law class (or any part of the class), or permit the recording of his/her FIU Law class, including student participation

in that class, for professional-development purposes, pedagogical purposes, to comply with the recommendations of the FIU Disability Resource Center, or for any other purpose the professor deems appropriate. The professor may store, reproduce, post, or share the actual recordings.

3005. **Events.** A professor, staff member, or administrator may record any event (or any part of an event) at FIU Law, including student participation in that event. FIU Law may store, reproduce, post, or share the actual recordings for any reason.

C. Recording of FIU Law First-Year Classes for Major Religious Holidays

3006. **Requests to record first-year classes.** FIU Law, through the Office of Student Services, will arrange for the recording of all first-year classes that are held during major religious holidays. A student who wants to request a recording under this section must email the Office of Student Services at least two weeks before the class meeting and provide the course name(s), professor name(s), date(s), time(s), and room number(s) for the class(es) to be recorded. The Office of Student Services will contact the professor for permission to record his/her class; the professor has sole discretion to grant or deny permission. Classes missed due to travel will not be recorded.

3007. **Availability of actual recordings.** The actual recordings made under § 3006 will be available for a period of ten (10) days following the class meeting, and will be available only to the requesting student(s). Once the actual recordings are taken down, there will be no further student access to them. If a professor uses classroom management software that has media-streaming capabilities, the actual recording may be uploaded to the professor's classroom management software, and the professor has discretion on how long and to whom to make that actual recording available.

3008. **No other classes will be recorded by FIU Law.** Other than the recordings made under § 3006, FIU Law will not record any classes at the request of a student under any circumstances. If a student wants to request a class recording for a medical or other disability-related reason, the student must make the request to the FIU Disability Resource Center, which will make a recommendation to FIU Law. A professor may adopt a different standard for recording requests in his/her class, and provide notice of that standard in his/her syllabus. If a professor's syllabus is silent on this topic, then the rules in Part IX apply.

D. Use of Actual Recordings

3009. **Actual recordings cannot be shared.** A student who has access to an actual recording of an FIU Law class cannot make a copy of the recording, share, post

29

on a website, or distribute the actual recording or professional transcript of the actual recording in any way.

3010.   **Written use agreement.** A professor may request that a student who has access to an actual recording or professional transcription of an FIU Law class or event submit a written use agreement that he/she will comply with these rules and any other rules that the professor may impose on the use of the actual recording or professional transcription.

3011.   **Violations of regulations: discipline.** A student who violates § 3009 or the terms of the written use agreement executed under § 3010 has also violated the Code of Student Conduct and therefore is subject to discipline in accordance with the provisions of that Code.

E.   <u>Students with Disabilities</u>

3012.   **Special Accommodations.** If the Disability Resource Center recommends that a student receive an accommodation that includes recording of a class or professional transcription of a class, § 3000 will not apply to that student; that student must comply with the remainder of Part XI, including §§ 3009-3011.

## ABA APPENDIX

| Academic Policy/Regulation | ABA Standard |
|---|---|
| § 010 | Standard 213 |
| § 201 | Standard 304 |
| § 302 | Standard 304 |
| § 501 | Standard 304 |
| § 601 | Standard 304(f) |
| §§ 701-702 | Standard 302(a)-(b) |
| §§ 804, 806 | Standard 304 |
| §§ 1501-1903 | Standard 303(a), (c) |
| § 1901 | Standard 304(b) |
| §§ 2201-2405 | Standard 305(a), (b) |

# EXHIBIT 7

Christina M. McLaughlin

████████████

May 22, 2017

Dean Tawia Baidoe Ansah
Acting Dean
Florida International University- School of Law
Rafael Diaz Balart Hall
11200 SW 8th Street
Miami, FL 33199

    Re:   Academic Dismissal Appeal
       Delivered via Federal Express Tracking 7791 9882 6794
       Email: tansah@fiu.edu
       Fax: (305) 348-1159

Dear Dean Ansah,

   I am formally requesting an appeal of my academic dismissal received on May 19, 2017. Please, be on notice that I am scheduled to begin a paid legal internship on June 2, 2017. This internship was obtained entirely on my own (without any FIU contribution) after 2 years of extensive networking. Any delay in starting this internship will damage my future career and earning potential. Therefore, I am requesting that my appeal hearing and final decision be expedited by June 2, 2017. Additionally, I am requesting that my mother, Diana McLaughlin, Esq., attend the hearing because she is completely aware of all the facts and upon whose counsel I rely upon.

   I dispute the academic expulsion for the following reasons: 1) FIU employs an intentional unfair policy that favors students in remedial category (G.P.A. < 2.0) to the detriment of students such as me that have a G.P.A. slightly > 2.0. 2) FIU permitted Professor Joycelyn Brown to unfairly and harshly grade my assignments in Spring Semester LSV lower than any other reasonable law professors would have graded.

**I.   FIU has a defacto, unfair, mandatory policy that favors students with G.P.A.s < 2.0 and is detrimental to students with G.P.A.s slightly above 2.0.**

   FIU was aware that I began law school one week after my 21st birthday. FIU was also aware that I had no practical legal life experience. Furthermore, FIU was well aware that I was

an education major and have never taken any college-level government, civics, or political science classes. In fact, the last government class I took was as a homeschooled student when I was 14 years old. I was aware that I had a steep learning curve entering the fall semester. Therefore, I dedicated myself to studying. I took law school very seriously and had excellent attendance.

My fall semester performance resulted in no failed classes; I achieved grades ranging from B+ to D. My G.P.A. was 2.2. I believe that given my unique challenges stated above, I had demonstrated that I was able to obtain proficiency in these very new legal concepts. Contrastingly, several dozen first year students obtained a G.P.A. below 2.0 and many failed a fall semester class. FIU has a policy of designating students with G.P.A.s below 2.0, based on fall semester grades, into a remedial probational program. FIU's policy institutionalized several unfair advantages for students with a G.P.A. below 2.0 and several disadvantages for students, like me, with G.P.A. slightly above 2.0:

1. The remedial students were required to take only four substantive law classes instead of five.
2. Instead of International Law, the remedial student's fifth class was a tutoring support class known as spring semester ISL. The primary reason for this class was to boost the remedial students G.P.A. and contained no substantive bar subject instruction. There was no detriment to the ISL class because the class received full 3 credits.
3. The fifth class (ISL) was graded as pass/fail, making it easier to raise the G.P.A.
4. The remedial students were intentionally scheduled with more time between final exams allowing them more time to study for the more difficult substantive law exams.
5. The remedial students were not segregated but were allowed to take class with the other students giving them a competitive, comparative advantage for exam grading.
6. The remedial students were placed on notice of probation and were allowed a full semester to remediate their grades.

Contrastingly, FIU instituted the following disadvantages for me. FIU's policy made it mandatory for me to take five substantive law classes instead of four. FIU did not allow me to attend the remedial tutoring class because of the mandatory scheduling conflict. FIU policy favored the remedial students by allowing them to have only four final exams instead of five during the finals week. Therefore, I had only four days between final exams while remedial students had seven days between their final exams. FIU policy forced me to compete, in the same class, with remedial and hybrid students who by definition had significantly more time to study for fewer classes. The students who had a G.P.A. < 2.0 as of **fall** semester were given notice of probation and were permitted an entire semester to improve their grades. When my G.P.A. dipped below 2.0 in the **spring** semester, I received an immediate expulsion and denied any opportunity to remediate grades. FIU's policy is completely inequitable because it has inherent biases and treats students with the same G.P.A. differently based on "semester" without sufficient justification.

Furthermore, FIU did not reach out to me through any counselor or agents to offer any assistance or advice. FIU failed to offer me any student or professor sponsored tutoring or study

aides. (In fact, I have called, emailed and personally visited the school counselors several times and have received no response.) FIU did not allow me to opt into the remedial category. FIU failed to offer any curriculum to allow for a fair comparison against the remedial students. My fall semester performance of 2.2 G.P.A. was achieved through dedication and diligence to learning concepts I was exposed to for the first time. That dedication and diligence was not rewarded but rather punished by FIU's institutional preference and advantages given to the remedial students and by FIU's lack of attention or concern for my individual circumstance.

But for a 0.2 (Two tenths) difference in G.P.A. after fall semester, I would have benefitted from all of the above advantages afforded to students placed in the remedial category. But for my diminished performance in the spring semester instead of the fall semester, I received an immediate expulsion, no notice, and no opportunity to remediate my grades in the following semester. All of the above discriminatory and unfair policies were deliberately designed and mandated by FIU, likely for the purpose of enhancing law school rankings and not in the interest of fairness and the students' best interest.

I submit that, although, I am responsible for my own grades, my cumulative G.P.A. of 1.98 is in part due to FIU's intentional structured discrimination and disadvantages placed on students in my category. I allege that FIU could have structured a reasonable and fair policy that would not have disadvantaged me in the following simple ways:

1. FIU could have had a policy that made International Law a Pass/Fail grade to have parity with the Pass/Fail ISL remedial class: Under this policy, I would then have earned a G.P.A. of 2.01.
2. FIU could have had a policy that made International Law an elective or moved the International Law requirement to the 2L year, especially since remedial students are not required to take International Law at all as a 1L. Under this policy, I would have elected not to take International Law as a 1L and therefore would have had the same number of substantive law classes as the remedial students and my studying time would not have been diluted with the additional International Law class.
3. FIU could have had a policy of a mandatory curriculum that has the same number of substantive law classes to make parity between remedial or non-remedial categorization: Under this policy, I would have earned a G.P.A. of 2.01.
4. FIU could have had a policy that would give all students parity with the same number of finals and same amount of preparation time. Under this policy, I would have had seven days (remedial students) of preparation between Civil Procedure and Criminal Law instead of four days (non-remedial students).
5. FIU could have had a policy that permits students like me with a G.P.A. very close to remedial category to opt into the remedial program: Under this policy, my workload would have been lighter and at parity with the remedial students allowing much more time to study and lighter workload. Additionally, I would have benefitted from the ISL class. It is my understanding that there were several students who were placed in the remedial program with G.P.A. above 2.0 in explicit violation of FIU Academic Policy and Regulations. FIU gave these students the benefit of the remedial program in a capricious manner because it served its own interest to fill class size.

6. FIU could have had a policy that segregated the remedial and part-time students from the full-time and extra-workload non-remedial students: Under this policy, the remedial students would not be competing with students like me with a heavier work-load. There is an obvious unfairness created when exams are graded comparatively between students with different institutional advantages.
7. FIU could have a fair policy that permits students who fall below a 2.0 for the first time after their spring semester a probationary period of one semester in which they would be allowed to remediate their grades.

In other words, FIU's policies had a definitive and determinable consequence. I submit that but for a G.P.A of 1.98 (.02 or 2 one-hundredth below 2.0) happening in the spring semester, I would have been placed on probation and offered the opportunity of another semester to remediate my grades. It is my understanding (pursuant to information obtained from classmates) that many remedial students did improve their G.P.A. to above 2.0 so that they were not dis-enrolled and that there were several students with G.P.A.s above 2.0 who were dis-enrolled because their G.P.A. fell below 2.0 after being adversely subjected to the discriminatory detrimental policies stated above. I reserve the right to obtain all information and statistics concerning the above allegation for this academic year as well as previous years. I reserve the right to discover if any student was placed in the remedial category while earning a G.P.A > 2.0 for the fall semester.

**II.   FIU permitted Professor Joycelyn Brown to unfairly and harshly grade my assignments in Spring Semester LSV lower than any other reasonable law professor would have graded.**

I dispute the spring semester Legal Skills and Values (LSV) grade of C+. I allege that Professor Joycelyn Brown graded me in an unfair and capricious manner. I allege that Prof. Brown applied the grading rubric incorrectly on at least two assignments. I allege that Prof. Brown graded me unfairly and harshly overall. Prof. Brown showed unprovoked personal animus towards me. The cause of such animus is to be determined. I allege that Prof. Brown graded me unfairly and improperly and that if I had received even a quarter grade higher such as B-, my G.P.A. would be at least 2.0 and I would not be the victim of an unfair academic expulsion. I submit the following facts as evidence of an unfair and improperly harsh grade.

1. I received a B- in fall semester LSV by Professor Rosario Schrier.
2. I have received above average grading in other writings samples submitted to other FIU law professors.
3. Prof. Brown scored the Spring Semester LSV Closed Universe persuasive assignment excessively harsh:
   a. Prof. Brown wrote on my graded paper "Your analysis is accurate and you employ persuasive writing techniques." However, Prof. Brown gave me the lowest possible score of 4 (range 4 – 17). Under the rubric category, "Application and Conclusion" (Analysis) A score of 4 is defined as "Not acceptable as currently written- Evidences poor understanding of concepts; lacks analytical or writing skill, or combination of these; needs extensive work and revision." Prof.

Brown's grading of the lowest possible score is prima facie evidence that her grading is unfairly low given the comment that she wrote on the paper twice.

b. Prof. Brown made only one grammar correction in the five page Closed Universe assignment i.e. "have" for "has" once. Prof. Brown gave me the next lowest possible score of 4 (range 3 – 10). Prof. Brown's grading of the next lowest possible score is prima facie evidence that her grading is unfairly harsh given only one correction. Nevertheless, Prof. Brown's correction was wrong. "Law Enforcement" is singular and therefore the proper verb is "has." The exceedingly low grading in light of the fact that there were no grammatical errors is even more egregious.

c. Prof. Brown made several corrections concerning spacing and fonts. Prof. Brown gave me a score of 1 (range 0 – 2.5). Under the rubric, a score of 1 is the next to lowest score which means the formatting does not meet even a low standard. During our post-grading conference, Prof. Brown admitted that there were no errors in spacing between sentences or formatting and her error in correction was due to an optical illusion. However, Prof. Brown refused to make any change in the grade that would even add 1 point to the grade on that assignment.

d. Prof. Brown made only two small corrections concerning citations. Prof. Brown gave me a score of 3 (range 1 – 7.5). Under the rubric, a score of 3 is the next to lowest score and means that the citations do not meet even average standards. Two corrections in citations do not justify the next to lowest score.

e. Prof. Brown told me she was very upset with me because, in her assessment, I did not apply CREAC to the assignment to her satisfaction. I attempted to demonstrate that I had structured the paper in CREAC, but that the "E" explanation of rules was shortened due to page restriction and more emphasis was placed on analysis. Prof. Brown was not satisfied with my explanation. She stated and confirmed that she had deducted points from all categories of the rubric because of the insufficient CREAC. I pointed out that there is a CREAC category called "ORGANIZATION" in the rubric with a range of 1 – 7 that addresses effective use of CREAC. Prof. Brown stated that she did give me the lowest possible score of 1 in that category and deducted additional points from all other categories because I didn't effectively use CREAC. As an education major and a Florida certified teacher, Prof. Brown shows a severe lack of understanding of the rubric system. The rubric system is meant to identify different components of an assignment. Prof. Brown threw out the entire rubric and capriciously refused to follow the grading system. She arbitrarily gave scores without regard to the actual constraints of the rubric.

f. Prof. Brown told me she intentionally gave me the lowest score in her class 23 out of 75 points (31%) in the class despite the fact that she admits that my writing skills are at least average. She stated she wanted my grade to reflect her dissatisfaction that I had not applied CREAC pursuant to her instructions. I explained to Prof. Brown that I had not intentionally disregarded her instructions to apply CREAC. Instead, I applied CREAC to the best of my understanding of her instructions. Prof. Brown did not accept my explanation and refused to make a single adjustment to the grade.

Prof. Brown applied the same capricious grading to my appellate brief draft, although, I had taken great effort to strictly apply CREAC and follow all other instructions. Prof. Brown, again, gave me the lowest grade in the class 100 out of 175 (57%) without adequate explanation. I availed myself of her after-class conference twice but both times she was very evasive about directions and failed to provide any constructive advice. Prof. Brown's standard answer to my specific questions was "It's a matter of style." I asked Prof. Brown to explain which style she preferred or how do I establish my own style and still meet the requirements of the rubric. Prof. Brown laughed at me and waved me off and ended the meeting. Additionally, Prof. Brown, generally, was very unprofessional in her classroom conduct. On the last day of class Prof. Brown's unprofessional conduct was on full display when she publically demeaned every student, one-by-one, individually, by making disparaging comments about their appearance or behavior. She disrespectfully pointed with her index finger at each person and publically performed this humiliating exercise under the guise of constructive advice. Prof. Brown publically chastised me for mumbling and lack of clear speech. I was extremely offended because I pride myself in my competence in articulation, diction and public speaking. The students are calling this incident "Brown's Roasting Day" and it is my understanding that the majority of students gave Prof. Brown a poor evaluation.

FIU is Prof. Brown's employer. FIU breached its duty to provide an experienced and well-trained teacher of legal writing skills. FIU breached its duty because Prof. Brown should have been adequately trained in the use of a rubric for grading. FIU breached its duty by allowing Prof. Brown to be biased and capricious in grading my assignments. Prof. Brown was at best evasive and unhelpful and at worst, insulting. Prof. Brown's dismal didactic performance went well beyond the scope of usual and customary conduct of a law school professor. I have requested from Prof. Brown the last assignment grading and rubric but have received no answer. I reserve the right to further investigation and discovery as to the allegations stated above.

## III. Conclusion

In conclusion, it is for the above stated rationale that I request an immediate hearing. I am filing a formal grievance against Prof. Brown. Furthermore, I am filing a formal request that my spring semester LSV assignments be reviewed by a different LSV professor and that my grade be reviewed. I am formally requesting that my standing as a student be reinstated pending the hearing and grade review. As stated above, I have a scheduled paid legal internship at stake that will be very significant to my career and standing in the community.

I understand that FIU's policy states that there is a strong presumption against reinstatement. Nevertheless, that presumption is rebuttable and my standing as a student in good standing should remain in place until this appeal has a final adjudication. I request that I be reinstated as a 2L in good standing because a fairly graded LSV would make my G.P.A . above 2.0. In the alternative, I request that I be reinstated as a 2L on probation and receive adequate counseling to remediate my grades next semester. I have never received a failing grade; therefore, there should be no requirement to repeat any class.

If it is not obvious already, let me plainly state, I love legal studies and have made huge progress in my grasp and understanding of the law. My G.P.A. does not fairly reflect the speed

of my learning curve. I allege that had I received the advantages given to the remedial student or at least not been burdened unfairly by FIU's policy, my G.P.A would have comfortably been above a 2.0. My G.P.A. does not measure my ethical standards, my maturity and my commitment to the study of law. I am extremely motivated to finish law school, pass the Florida Bar exam and contribute to the legal community. For example, a measure of my career motivation is the fact that I have procured a paying legal internship as a 1L, which is a rarity. I plan to make every effort and execute every strategic decision necessary to complete my 2L and 3L year in good standing.

I appreciate your prompt and careful review of this appeal. I am available to discuss any issue with you at any time at the above contact information. Thank you for your expedited attention.

Respectfully submitted,

C. McLaughlin

Christina McLaughlin
Class of 2019

# EXHIBIT 8



FLORIDA
INTERNATIONAL
UNIVERSITY

June 2, 2017

Ms. Christina McLaughlin
1236 Pocantico Lane
Naples, Florida 34110-0923

> Sent via Certified Mail, Return Receipt Requested
> Article Number: 7009 1680 0001 3731 9751 and
> Via Electronic Delivery.

Dear Ms. McLaughlin:

Thank you for submitting your petition for readmission to the Florida International University College of Law.

Per §1604(5), of the Academic Policies and Regulations, I must inform you that the Academic Standards Committee has denied your petition on academic grounds. As you know, the standards for readmission are very high.

It is with regret that I convey this difficult news to you. I wish you luck in your future endeavors.

Very truly yours,

Tawia Ansah
Acting Dean

cc:     Professor Howard Wasserman, Chair, Academic Standards Committee
Associate Dean Angelique Ortega Fridman

COLLEGE OF LAW
Office of the Dean

Modesto A. Maidique, 11200 S.W. 8th St., RDB 2015 • Miami, FL 33199 • Tel: 305-348-1118 • Fax: 305-348-1159 • www.fiu.edu

Florida International University is an Equal Opportunity/Access Employer and Institution • TDD via FRS 1-800-955-8771

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Ms. Christina McLaughlin

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☐ Addressee

B. Received by ( Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail ☐ Express Mail
   ☐ Registered ☐ Return Receipt for Merchandise
   ☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
   (Transfer from service label)

   7009 1680 0001 3731 9751

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Tawia B. Ansah
Associate Dean for Academic Affairs
FIU College of Law
11200 SW 8 Street, RDB Hall 2024
Miami, FL  33199

# EXHIBIT 9



**FIU** | FLORIDA
INTERNATIONAL
UNIVERSITY

June 9, 2017

Ms. Carolyn Barrientes
Associate Director of Admissions & Recruitment
Ave Maria School of Law
1025 Commons Circle
Naples, FL 34119

Re:     Christina M. McLaughlin

Under §1601 the Florida International University College of Law Academic Regulations and Policies a student "who fails to earn a cumulative grade point average of 2.00 or better upon completion of the second or any subsequent semester shall be excluded from the College." Separately, §1602 also provides that any student who has been excluded "but has earned a cumulative grade point of 1.80 or above may petition the Academic Standards Committee for readmission. There shall be a strong presumption against readmission and the Committee shall not grant readmission except under the most compelling and extraordinary circumstances, and then only if the Committee is clearly convinced that (a) the student will be able to successfully complete the curriculum and pass a bar examination, and (b) any personal problems or other factors that contributed to the student's poor academic performance are not likely to recur."

Ms. McLaughlin was dismissed at the end of the Spring 2017 semester after earning a cumulative grade point average of 1.980. She was eligible to appeal her dismissal to the Academic Standards Committee; however, her petition was denied.

We are unfamiliar with your school's admissions or readmissions criteria or academic policies and regulations and therefore take no position as to whether Ms. McLaughlin can or cannot complete the course of study at your school should she be admitted.

Sincerely,

Tawia B. Ansah
Acting Dean, College of Law
Professor of Law

COLLEGE OF LAW
Office of the Dean

Modesto A. Maidique, 11200 S.W. 8th St., RDB 2015 • Miami, FL 33199 • Tel: 305-348-1118 • Fax: 305-348-1159 • www.fiu.edu

Florida International University is an Equal Opportunity/Access Employer and Institution • TDD via FRS 1-800-955-8771

# EXHIBIT 10

**2336 Immokalee Road**
**Naples, FL 34110**
**Phone:  239.229.8481**
**Fax:  239.449.3397**
**Email: drdiana@dianamclaughlin.com**



August 17, 2017

Mark B. Rosenberg
President
Florida International University
Modesto A. Maidique Campus
11200 SW 8th Street
Miami, FL 33199
**DELIVERED VIA EMAIL TO president@fiu.edu and**
**Federal Express Tracking Number 7700 4368 0540**

Isis Carbajal de Garcia
Senior University Counsel
Florida International University
Modesto Maidique Campus PC 511
Miami, FL  33199
**DELIVERED VIA EMAIL TO isisc@fiu.edu**

Florida International University
Financial Aid Office
Enrollment Management and Services
Miami, FL

  Re:  FINAL NOTICE:  Christina M. McLaughlin, Former FIU School of Law 1L

Dear President Rosenberg,

  This correspondence serves as a response to an email received on 08/10/2017 regarding Satisfactory Academic Progress (attached) and is timely made by August 18, 2017. The links for the appeal form are not present on Christina McLaughlin's My FIU account. Therefore, Christina makes a fifth and final request for appeal of academic dismissal and request that FIU correct grades that Christina believes are inaccurate and purposely misleading.  Christina's repeated requests for a review of inaccurate grades since May 22, 2017 have been ignored.  FIU has caused irreparable harm to Christina because the fall semester started on August 14, 2017.

This correspondence also serves as a final notice of the intent to file a formal complaint against FIU for failure to comply with Family Educational Rights and Privacy Act (FERPA) with the Family Policy Compliance Office pursuant 20 U.S.C. 1232g. Additionally, Christina McLaughlin intends to file a complaint with the U. S. Department of Justice, Civil Right Division, for FIU's infringement of her fundamental rights of freedom of speech and association. FIU is already on formal notice of intent to file a complaint under federal and state law pursuant to malfeasance, tortious acts, and breach of fiduciary duty and at least but not limited pursuant to Fla. Stat. 1002.225 (3). (See correspondence to Ms. Carbajal 6/26/2017). As stated in previous correspondence, FIU must preserve all FIU Law School Fall and Spring semester 2016-2017 records, communications, notes and audio and video within classrooms, lounge and hallways by the bathrooms and transcripts or video of the ARC hearing.

**FIU failed to comply with FERPA and Florida law by**:

1. **Failing to provide all student records within 45 days of request.** Christina made a written request for all student records on 6/16/2017. Ms. Carbajal admits that 6 student records and a video are not yet provided. Ms. Carbajal stated that another email is forthcoming as well as mailing appellate oral argument video. We have not received any further communications or mailings after 61 days. (See correspondence received from Ms. Carbajal dated 8/4/2017). Obtaining all of Christina's student records has been more difficult to extract than a necrotic appendix. Initial requests were stalled. We stated that we would come to FIU to make copies but we were denied entry and Ms. Carbajal stated she would send copies via email. Initially, FIU provided only a few, incomplete records while on full notice of a grade dispute, clearly demonstrating the intent to obstruct our inquiry. After multiple requests, partial, incomplete student records arrived in four different email batches over several weeks. FIU, by its own admission, cannot locate all of Christina's student records, and, as of today, has failed to provide all FERPA defined student records.

2. **Failing to provide a formal hearing.** FIU Law School violates FERPA by having no stated policy or regulation that affords a **formal** hearing on Christina's fact-based and non-frivolous assertion that her final grades are inaccurate and misleading: specifically grades provided by Prof. Brown, Wasserman, Baker and Schrier, at least. The hearing held by the Academic Review Committee (ARC) was an **informal** hearing pursuant to FIU Law School Academic Policy and Regulation Section 1604(2). Additionally, Prof. Wasserman, the chair of the ARC, attended the hearing in basketball shorts, a sweat shirt and sneakers indicating the informal nature of the proceeding.

3. **Failing to provide Christina a fair and full opportunity to present evidence at a formal hearing.** The informal ARC hearing timing was less than two weeks from notice of dismissal and no access to student records were provided prior to the ARC hearing. Christina explicitly requested that her LSV II grade be reviewed prior to the hearing in her appeal and again in an email to Dean Ansah. The ARC was attended by at least one LSV professor, and yet her request was ignored. Furthermore, Prof Wasserman explicitly and affirmatively stated that the ARC would deny Christina's request to review the accuracy of Prof. Brown's LSV II grade because the "*ACADEMIC*

*REVIEW"* Committee had no "jurisdiction" to review grades and that FIU Law School had no written policy or regulation allowing grade reviews.

4. **Failing to allow Christina the assistance of counsel.** Christina placed FIU on notice twice that I would attend the ARC hearing, as her counsel, prior to the hearing. Before the hearing, Prof. Wasserman accosted myself and Christina in the hallway and stated that the ARC was aware that I was present and that they had voted to exclude me from the hearing. Additionally, I presented Prof. Wasserman a formal letter of representation as further proof that I was acting as Christina's attorney and he refused to accept the letter. Christina told Prof. Wasserman directly that she wanted and needed my presence at the ARC hearing and he categorically denied her request. Furthermore, Prof. Wasserman stated that this proceeding, concerning the dismissal from FIU Law School and thereby the potential end of her law career did not lend itself to the presence of an attorney because the hearing was non-adversarial and informal. FIU's denial of Christina's right to assistance of counsel is not only a violation of federal and state law, but it is also the most egregious violation of ethical legal standard. Christina reserves the right to file a complaint with the American Bar Association and the Florida Bar.

5. **Failing to conduct a hearing with independent and neutral individuals.** FIU's ARC hearing was conducted by two of Christina's professors (and Prof. Wasserman was chair and one of her former Civil Procedure professor). The individuals deciding Christina's future were, by definition, parties that have a direct interest in preserving their own grading. The obvious conflict of interest was neither addressed nor acknowledged. Furthermore, Prof. Wasserman conducted the hearing in a very hostile, aggressive and demeaning tone and affect. His demeanor was jarring and intimidating and seriously disturbed Christina (a 21 year old student). He often interrupted and disparaged Christina's statements. The hearing was more akin to a cross-examination of a hostile witness. Prof. Wasserman's actions were the final confirmation of Christina's suspicions that he has extreme personal animus towards her. Christina withstood 30 minutes of intense intentional distress at the hands of Prof. Wasserman, alone, and without the benefit of her attorney.

6. **Failing to provide a written decision based on evidence.** FERPA requires that the decision of a formal hearing be reduced to writing and be based on evidence. FIU failed to provide any written decision based **on evidence.** FIU failed to provide a summary of evidence and a reason for the ARC decision. FIU Law School's written policy and regulations mandates that a dismissed student has a "strong presumption against readmission." See section 1503. Furthermore, the written policy permits no appeals of the decision. See section 1605. The ARC's decision resulted in her dismissal without ever receiving a failing grade and **without ever** having been on academic probation. Christina was not offered any opportunity to remediate or to have a probationary semester. FIU, as a state school, has violated Christina's fundamental rights to due process.

7. **Failing to allow Christina an opportunity to place a statement in the official student record.** FIU failed to permit Christina to place a statement in her student record that disputes FIU's decision of academic dismissal. In fact, FIU intentionally omitted Christina's petition for reinstatement in their transfer of student records for the purpose of admission to another law school. We allege that FIU purposely omitted

the Petition for Readmission and did not permit an opportunity to place a statement of dispute to foreclose any chance she might have to be admitted to another law school.

8. **FIU has disregarded and trampled all essential elements of FERPA compliance.** FIU Law School's policy and regulations is a direct contradiction to rights guaranteed by FERPA. FIU Law School does not notify students of their rights under FERPA. FIU Law School failed to provide Christina any exit financial aid counseling. FIU purposely obstructed obtaining all student records, preventing Christina from obtaining the evidence she needs to prove her allegations. FIU may justify its actions by claiming to be innocently sloppy and disorganized. However, FIU Law School's written policy and regulations and deliberate actions support the claim that FIU jerry-rigged the rules to advance an agenda of producing lawyers with a leftist, liberal, progressive and international viewpoint. Christina alleges that FIU permitted its agents and professors to perpetrate nefarious acts to eliminate her from the university and terminate any possibility of a career as an attorney because of her conservative political beliefs. All of the above acts converge on the narrative that FIU specifically discriminated and retaliated against Christina because of her conservative political beliefs and support of President Trump and the Republican Party.

**FIU has intentionally violated Christina's fundamental rights of freedom of speech and association:**

Christina alleges several professors, especially but not limited to, Prof. Brown, Wasserman, Baker, and Schrier became aware of Christina's active involvement in the election campaigns for several Republican candidates on or about late October 2016. Christina alleges that at least those professors had intense, vitriol emotions against Christina because of their very open and public anti-Trump stances and political beliefs. We allege that those professors (mostly Wasserman and Brown) had opportunity and intent to unmask Christina's grades and grade her inaccurately. Additionally, we allege that those professors used the grade adjustment, section 1004, to downgrade all of her actual exam grades. We also allege that those professors used grade normalization, section 1101, to favor minority students and to specifically disfavor Christina. Christina alleges that she became the specific target of retaliation for the purpose of terminating her legal career and not permitting her to graduate from FIU Law School. The termination of Christina's legal career would obviate her potential to become an effective and powerful political advocate of the Republican agenda within 3 years and the next presidential election cycle.

Specifically, Christina also alleges that Prof. Brown purposely graded harshly and misapplied the rubric because of her personal animus towards Christina's political beliefs. Prof. Brown told Christina directly that she had deducted extra points in all rubric categories because of her dislike with her personal work. Christina alleges that any objective reading of assignments show that she met or surpassed the grading rubric. Prof. Brown refused to provide any academic or scholarly support and guidance. Prof. Brown dismissed Christina's requests for academic advice with a wave of her hand and laughing. Christina states that her LSV II assignments stand on its own, especially when compared against other students in her section.

Christina also states that she had to endure 10 months of a hostile educational environment.  Profs. Baker, Schrier, Weisborg, and Wasserman frequently proselytized their leftist political opinions during class time, often without any correlation to the syllabus.  Prof. Baker demeaned and denigrated Trump supporters as mentally retarded and even performed a skit acting as a mentally challenged 1L student who wore a "Make America Great Again" hat, stating the character's three American heroes were Forrest Gump, Napoleon, and Donald Trump.  Prof. Schrier gave a "FEEL THE BERN" speech.  Christina underwent a daily assault of political rants that made her feel attacked, harassed, and threatened.  These frequent liberal expositions were meant to rally students to the professor's political beliefs and to denigrate the opposing viewpoint.  FIU Law sanctioned rallies for Hillary Clinton and the Democratic Party within the building.  The student body was supported in their anti-Trump demonstrations.  Christina was the target of isolation and ostracized by professors and students alike.

Christina acknowledges that all persons have a right to their own political belief and speech.  However, they do not have the right to stifle someone else's speech by unjustifiably terminating their career and employing methods of intimidation.  Christina felt stifled and suppressed because challenging her professors' opinions and leftist political agenda would result in the retaliation which they ultimately exacted.  All of FIU, not just the law school, failed to follow the principle that a university should be a safe place of learning that allows young minds to develop their own opinions and should remain neutral on issues of public controversy to permit the widest and most inclusive dialogue.  Instead, FIU Law School became a place of liberal leftist indoctrination.  FIU Law School knew or should have known that the professors were enacting a policy of culling future attorneys who disagreed with a leftist liberal agenda.  Christina fell victim to this malfeasance.

FIU policies and regulations and subsequent mishandling of Christina's legitimate, substantive and material allegations of malfeasance and violation of federal and state law bear no resemblance to a fair and just process.  FIU has either assisted or been willfully blind to the intentional tortious acts of its professors.  In the best instant, FIU Law School culture of sloppy, capricious and arbitrary handling of student records, determination of student hearing and appeals is akin to a third world country's judicial system.  In the worst scenario, Christina has been the victim of a relentless, intentional, and institutionally sanctioned discrimination, retaliation and hostile learning environment because of her strong commitment to conservative political beliefs.

We expect a response by August 25, 2017, 5:00 p.m. as stated in your email.  Thank you for your careful and thoughtful attention to this matter.

Respectfully submitted,

DIANA MCLAUGHLIN, M.D., M.B.A., Esq.          Christina M. McLaughlin
Florida Bar Number:  84479
2336 Immokalee Road
Naples, FL  34110
Phone: (239) 229-8481
Fax:   (239) 449-3397
Email: drdiana@dianamclaughlin.com

# Fwd: Satisfactory Academic Progress - Status Notification

### Christina McLaughlin <cmcla012@fiu.edu>

Thu 8/10/2017 4:43 PM

To:Hugh McLaughlin <hugh@kmcnetwork.com>; Diana McLaughlin <dianamclaughlin@dianamclaughlin.com>;

---------- Forwarded message ----------
From: "Financial Aid Office (DO NOT REPLY)" <finaid@fiu.edu>
Date: Aug 10, 2017 4:23 PM
Subject: Satisfactory Academic Progress - Status Notification
To: "cmcla012@fiu.edu" <cmcla012@fiu.edu>
Cc:

### Satisfactory Academic Progress - Status Notification

### End of Summer 2017 Review

August 10, 2017                                             Panther ID:  5972109

# Dear Christina

Federal Regulations require that a student applying for Federal Financial Aid must meet Satisfactory Academic Progress (SAP) toward the completion of a degree. At the end of the Summer 2017 term, your academic record shows that you do not meet the SAP Standards, and are therefore ineligible to receive Federal Financial Aid until the standards are met, or until you submit a successful appeal.

Please review the Satisfactory Academic Progress checklists on your "To Do List" via my.fiu.edu for information on the specific standard(s) you do not meet.  Review the information regarding the appeal process prior to submitting your appeal.

**Federal Pace Criterion:**  Students must successfully complete at least 67% of the credit hours attempted at the University, inclusive of transfer credits accepted at FIU.  Failure to meet this criterion results in the suspension of all financial aid eligibility.

**Federal GPA Criterion (Academic Standing):**  Students must maintain the required cumulative grade point average (GPA) to continue as a degree seeking student.  Therefore, you must maintain an academic standing consistent with the University's Academic Retention Policy as outlined in the University Catalog. If you have been dismissed from the University, you fail to meet this criterion, which results in the suspension of all financial aid eligibility.

<u>Appeal Process for Federal GPA Criterion (Academic Standing)</u>: The Registrar's Office sends notices to students who have been dismissed from the University at the end of each term. This notice has information regarding the reinstatement process. Subsequently, students who do not meet the Financial Aid SAP Standards may also be eligible to appeal the suspension of financial aid eligibility.

<u>Undergraduate students</u>:  A link to the appeal process can be found on your To Do List.  You must follow the instructions for the appeal process and submit the required documentation.

<u>Graduate students</u>:  For Dismissal Reinstatement Appeals, submit the Petition for Exception to the University Graduate School. Please see your Academic Unit regarding the petition process.  If you are academically reinstated for the term, you may submit a Financial Aid appeal to the Financial aid Office for review. Please submit your Petition for Exception to the University Graduate School by their specific deadline.

NOTE: If you have failed **BOTH** the Pace and GPA criteria, you must follow the reinstatement appeal process outlined in the notice you received regarding your academic dismissal.

Complete appeals received by August 18, 2017 will have an appeal decision no later than August 25, 2017.

If you have any questions, you may contact the OneStop office at (305) 348-7000.

Sincerely,

Financial Aid Office

Enrollment Management & Services

# EXHIBIT 11



**Office of the General Counsel**

August 25, 2017

Diana McLaughlin
Attorney-at-Law
2338 Immokalee Road
Suite 230
Naples, FL  34110

   Re: *Christina McLaughlin*

Dear Ms. McLaughlin,

   This is in response to your letter dated August 17, 2017 concerning Christina McLaughlin.

   As your letter recognizes, you have received multiple emails with student records of Christina that you requested. You were also sent a video of Christina's presentation. As memorialized in my correspondence with you, some of the records you requested are not student records under the Family Educational Rights and Privacy Act (FERPA), and other records do not exist either because they were returned to Christina in the course of her studies at FIU, or because they are not maintained by FIU. Inasmuch as FERPA does not require the maintenance of all the records you requested, not having them does not constitute a FERPA violation. Contrary to your representations, FIU has adopted a regulation which sets forth students' FERPA rights and FIU has been responsive to your requests even in the midst of the summer when many professors are not working on campus and some are not even in the United States. When you were planning to come to FIU, you were welcomed to do so. When you changed your mind and decided to have the records sent to you, FIU agreed to do so and emailed them to you.

   The dismissal of Christina from the College of Law was in accordance with the established Academic Policies and Regulations. While you dispute the appropriateness of those procedures and wish they were different, the procedures comply with the due process procedures outlined in well-established legal precedent.

   Your statements that Christina's grades are the result of factors other than her performance have no basis in fact.  When Christina was advised of her dismissal, she requested a hearing pursuant to the College of Law Academic Policies and Procedures and said hearing was appropriately held. Prior to that time, Christina had not accessed the procedures available to grieve against faculty members. In your correspondence, you have made specific allegations concerning Professor Brown's grading in the LSV II class. In accordance with Section 1201 of Academic Policies and Procedures, the College of Law undertook a review of Christina's grade in that class to determine whether there were computation errors, and none were found.

The Petition Christina submitted in support of her request for readmission contained for the first time statements complaining about Professor Brown. She never filed a grievance against Professor Brown, which as provided in the College of Law procedures must begin with the student presenting the nature of his/her grievance to the professor. Further, the syllabus of the LSV II class provided to Christina as a student in that class also advised students to contact the LSV Program Director at any time with any questions or concerns. Christina never brought up any concerns to the attention of the Program Director. In your correspondence you have labeled the statement in the Petition as a grievance. Notwithstanding the fact that a Petition for readmission does not trigger the grievance process, Marci Rosenthal, Interim Associate Dean of the College of Law, has contacted Christina about her concerns regarding Professor Brown.

Students of all walks of life, religious and political views have successfully graduated from the College of Law and passed the Florida Bar at amazingly high numbers because of the demanding curriculum from which they have graduated. It is both insulting and completely unfounded for you even to suggest that a student's political affiliation is at the root of that student's failure to succeed at the College of Law. FIU is proud of its commitment to the freedoms guaranteed by the United States Constitution and the free and open exchange of ideas on this campus. This environment is well recognized in the academic community and no doubt contributed to President Trump's decision to appoint our College of Law Dean to the United States Cabinet. This is the very same Dean whose administration was in place during Christina's attendance at the College of Law.

The College of Law conducts its academic mission in accordance with law and in full adherence to all applicable policies and procedures. The College has facilitated the consideration of Christina for admission to another law school in accordance with her requests. The College of Law wishes Christina success in pursuing a professional career.

Christina's dismissal was based on academic performance and for no other reason. I would strongly encourage you to reconsider your threatened actions against FIU.

Sincerely,

Isis Carbajal de Garcia
Senior University Counsel

# EXHIBIT 12



**FIU** | Office of the
General Counsel

December 21, 2017

Vikki Shirley
General Counsel
State University System of Florida
Board of Governors
325 West Gaines Street
Tallahassee, Florida  32399-0400

Re:    Christina McLaughlin, dismissed Florida International University law student

Dear Ms. Shirley,

This is in response to the November 24, 2017 letter you received from Christina McLaughlin
addressed to your office and five other federal and state governmental agencies, which you
forwarded to our office for a response.

In order to address Ms. McLaughlin's seven-page letter in a cogent manner, I will respond first to
her allegations pertaining to her dismissal for academic reasons from the Florida International
University College of Law (hereinafter "COL").  The second portion of this letter will address her
allegations concerning the records provided to her pursuant to the Family Educational Rights and
Privacy Act (hereinafter "FERPA"), 20 U.S.C. s. 1232g, and Section 1002.225, Florida Statutes.

Dismissal from COL

Ms. McLaughlin alleges that the sole reason she was dismissed from the COL is because she is a
Republican and actively supported Republican candidates, particularly in her second semester of
law school.  There is not a scintilla of evidence to support Ms. McLaughlin's claims.  On the contrary,
the evidence reveals that the political affiliations of students, faculty, staff and visitors are
respected and their right to free expression is protected.  A few facts serve as testament to this
reality:

- FIU recognizes the Republican Law Students Association as one of its student organizations
  (https://law.fiu.edu/republican-law-student-association-rlsa/).
- Two members of Ms. McLaughlin's class who are officers of the Republican Law Students
  Association - Vice President of Finance Kathryn Wood and Vice President of Operations
  Megan Labgold - were celebrated and selected as members of the FIU Law Board of
  Appellate Advocates.
- The  Republican National Lawyers Association, whose purpose is to promote the principles
  of the Republican party among students at FIU College of Law, to recruit members for the
  GOP club and for the Republican Party, to aid in the election of Republican candidates at all

levels of government, and to develop political skills and leadership abilities among Republican students as preparation for future service to the Party, the State of Florida, and the country, is one of the COL clubs (https://law.fiu.edu/students/organizations/republican-national-lawyers-association/).

- The former Dean of the COL, under whose administration Ms. McLaughlin attended law school, Dean Alex Acosta, is a member of President Trump's Cabinet.
- Former Dean Acosta was the Commencement Speaker at the COL immediately following his appointment as President Trump's Cabinet member (Spring 2017). Other commencement speakers have likewise been well-recognized Republicans.
- The COL building – Rafael Diaz-Balart Hall - carries the name of a prominent Republican family in South Florida.
- FIU served as a site to numerous Republicans during the Trump campaign, including, but not limited to, Vice President Pence; the highest ranking member of Trump's Cabinet, Secretary of State Rex W. Tillerson; and Senator Marco Rubio (who also teaches at FIU).
- Republican student groups are advised and mentored by COL faculty.

As to the processes pursuant to which Ms. McLaughlin was dismissed, the record reflects that the COL acted responsibly in accordance with legally sound, duly adopted and published policies in dismissing her at the conclusion of her second semester. The COL has an obligation under the American Bar Association accreditation requirements to only continue the enrollment of students who can manage the law school curriculum, are able to successfully graduate, and can be expected to pass the Bar.  Accordingly, the COL has adopted Academic Policies and Regulations (hereinafter "academic policies") that are responsive to those mandates.  It was pursuant to those policies that Ms. McLaughlin was dismissed when her Grade Point Average (hereinafter "GPA") decreased from 2.2 in her first semester to 1.77 in her second semester.  Because Ms. McLaughlin's performance during the first semester was poor, a decrease in her performance to 1.77 GPA in her second semester resulted in her dismissal as her overall GPA at the end of her first year was below 2.0. The academic policies can be found at https://law.fiu.edu/wp-content/uploads/sites/21/2017/03/FIU-Law-Academic-Policies-Regulations-2017.pdf

Ms. McLaughlin's allegations that her dismissal was in violation of due process are not supported by well-settled case law concerning academic dismissals. The COL academic policies embody the standards established by the United States Supreme Court in the seminal cases upholding the dismissal of students based on academic performance: *University of Michigan v. Ewing*, 474 U.S. 214 (1985) and *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78 (1978). In accordance with COL academic policies, Ms. McLaughlin was:

1) Notified of her dismissal due to poor academic performance,
2) Given an opportunity to appear before the Academic Standards Committee, and
3) Notified in writing of the final decision.

Based on the *Ewing* and *Horowitz* standards, none of Ms. McLaughlin's claims of due process violations are valid.  For example, due process does not mandate that legal representation be afforded to students at academic hearings or meetings, as Ms. McLaughlin alleges.  Thus, the decision of the Chair of the Academic Standards Committee to not allow legal counsel at the

hearing was in accordance with the COL's academic policies and is constitutionally sound. The same decision was properly made by Interim Associate Dean for Academic Affairs Marci Rosenthal concerning the faculty grievance meeting. Ms. McLaughlin chose to forego meeting with Ms. Rosenthal allegedly because she could not have legal representation.[1] In doing so, Ms. McLaughlin failed to exhaust her administrative remedies, her statement to the contrary notwithstanding.

Finally, Ms. McLaughlin also raised issues concerning the award, downgrading, and appeal of grades. Her claims that two of her professors unmasked grades assignments as part of the final grading of her work are reckless and unfounded. In accordance with Section 1004 of the academic policies, grades may be upgraded or downgraded after the professor has issued the grades. Professors issue the grades without having access to the identity of students. Section 1004 sets forth the process as follows:

> 1004.   Adjustment of grades based on class participation. An instructor may make an adjustment of one grade level for a student's classroom performance during any course. . . **At the conclusion of anonymous grading**, the instructor will receive a grade adjustment sheet for all students in the course . . . [and] the instructor may raise or reduce the grade of a student by one grade level (e.g., from C+ to B-). [Emphasis added.]

Ms. McLaughlin made allegations concerning the grading in the LSV II class. Also, Ms. McLaughlin's attorney specifically stated in one of her numerous correspondences: "Christina is requesting that all her grades be reviewed by an objective third party." There is no provision for such review and no legal requirement that such review be undertaken. Section 1201 of the academic policies states the following in regards to the review of grades :

> 1201.   General rule: computation error as basis for grade change. An instructor may change the grade for a course only in cases of computational error subsequently reported to the Records Office by the instructor.

As stated in my August 25, 2017 letter to Ms. McLaughlin's attorney, the COL undertook a review of Christina's grade in LSV II to determine whether there were any computation errors, and none were found.

Access to Student Records under FERPA

FIU is fully aware of its obligations under FERPA and Section 1002.225, Florida Statutes. The latter requires Florida public postsecondary educational institutions to provide "education records," as defined in FERPA; permits said institutions to charge for providing the records; and imposes sanctions for refusing to provide requested FERPA records. The record Ms. Mc Laughlin provided to your office reveals that FIU provided her the "education records" it maintains on her, as that term is

---

[1] Ms. McLaughlin irresponsibly further depicts Ms. Rosenthal's communications with her to schedule this academic meeting as possibly unethical. Ms. Rosenthal is not FIU's counsel. She is an academic administrator, as her title reflects, who was reaching out to her to process her complaint. The fact that Ms. Rosenthal is a lawyer does not mean that she cannot communicate in her administrative capacity with students who are represented by counsel. If that were to be required, few professors in the COL could communicate with his/her students once a student is represented by counsel, as most COL professors are lawyers and members of a Bar.

defined in the FERPA.  While FIU has the authority to charge for providing the records Ms. McLaughlin requested, FIU responded to her voluminous records request free of charge.  At no time did FIU refuse to provide "education records" as FERPA defines said term.

Ms. McLaughlin's portrayal of FIU's response to her records request is inaccurate. Records were made available for Ms. McLaughlin to review in person at FIU. She subsequently decided not to view the records personally, but rather have them emailed to her.  FIU submitted a good faith response to the request it had received. On July 31, 2017, Ms. McLaughlin's attorney made a detailed request which included records that are not available under FERPA (i.e., not maintained, already returned to Ms. McLaughlin in the course of the school year, or not education records). Four days later, on August 4, 2017,  the undersigned explained to Ms. McLaughlin's attorney the action taken with regard to each record requested and the reasons therefor. The letter also memorializes that records had already been provided to her.

Based on the foregoing, Ms. McLaughlin's allegations of constitutional violations, including denial of due process; violation of COL policies; and violations of FERPA and Section 1002.225, Fla. Stat., are unfounded and should be dismissed.  I am available to respond to any questions or concerns you may have.

Sincerely,

Isis Carbajal de Garcia
Senior University Counsel

# EXHIBIT 13

Christina M. McLaughlin
1236 Pocantico Lane
Naples, FL  34110


November 24, 2017

To:    Jefferson B. Sessions, III, U.S. Attorney General
        U.S. Department of Justice Civil Rights Division
        950 Pennsylvania Ave N.W.
        Educational Opportunity Section, PHB
        Washington, D.C. 20530

        U.S. Department of Education
        Office for Civil Rights and
        Family Policy Compliance Office
        Lyndon Baines Johnson Dept. of Education Bldg.
        400 Maryland Ave., SW
        Washington, D.C., 20202-1100

        Elizabeth D. DeVos, U.S. Secretary of Education
        Department of Education
        1111 East Broad Street
        Richmond, VA  23219

        Stephanie H. Leland
        Director of Equity and Civil Rights Compliance,
        Division of Florida Colleges
        Florida Department of Education
        325 West Gaines Street, Suite 1544
        Tallahassee, Florida 32399-0400

        State University System of Florida
        Board of Governors
        325 West Gaines Street
        Suite 1614
        Tallahassee, FL  32399-0400

        Office of Governor Rick Scott
        State of Florida
        The Capitol
        400 South Monroe Street
        Tallahassee, FL 32399-0001

From:  Christina M. McLaughlin      v.      Florida International University
                                        School of Law (FIU Law)



11200 SW 8th ST.
Miami, FL 33199

Re:   1. F.I.U. School of Law, through its professors, intentionally targeted Ms. McLaughlin for academic expulsion because of her strong support of the Republican Party and President Donald J. Trump.

2. F.I.U School of Law, through its professors, created a hostile and intimidating academic environment by routinely mocking and taunting supporters of President Trump.

3. F.I.U., through its agents, colluded in covering up various malicious and nefarious acts committed by law school professors by failing to provide all FERPA records in a timely manner.

4. F.I.U. School of Law, through its professors and agents refused to follow any administrative grievance and grade review policies and denied Christina due process procedural safeguards.

Dear Sir/Madam:

I have placed FIU on notice of my intent to file complaints with all appropriate state and federal agencies concerning my allegations of discrimination and retaliation. I certify that I have followed all of FIU's established procedures to resolve these complaints and that FIU either refused to follow the established procedure or created a sham of the process. I make all allegations in good faith and all information provided is true and accurate to the best of my knowledge. All related documents and communication, in my possession, are herein provided.

This regulatory complaint is timely filed because the last and final communication with FIU occurred on September 1, 2017. On August 17, 2017, my attorney sent a fifth and final demand letter directly to President Mark Rosenberg, President of F.I.U. This letter is the culmination of three months of failed and frustrated attempts at getting FIU to conduct themselves within federal and state law. We assert that FIU is not in compliance with the Family Educational Rights and Privacy Act (FERPA) pursuant to 20 U.S.C. 1232g. Additionally, I allege that FIU has infringed my fundamental right to freedom of expression. FIU is already on formal notice of my intent to file a complaint under federal and state law pursuant to malfeasance, tortious acts, and breach of fiduciary duty, pursuant to Fla. Stat. 1002.225 (3).

The substance of the complaints is that FIU Law, through its professors (at least Prof. Wasserman, Schrier, Baker, Brown, and Norberg) unmasked the blind grading numbers and intentionally downgraded ("bump" down) my course performance in order to manipulate my grades and leading to an academic expulsion. I assert FIU's tortious actions were retaliation because of my active participation in the Republican Party and my volunteer work for various Republican Party candidates. Consequently, in an effort to cover up the law school professors' malfeasance, FIU stalled and failed to provide all FERPA

records and failed to investigate or provide a formal hearing on my grievances.  FIU admits that there are still FERPA records pending delivery as of today.  FIU might claim that they have provided all FERPA records.  However, FIU's last FERPA record delivery was more than 45 days after my formal request in violation of federal law (Requested 6/16/2017 Made available 8/4/2017).

I was accepted to FIU Law in December 2015.  At that time, FIU Law had no knowledge of my political or ideological stance.  I became a 1L in August of 2016.  By the fall of 2016, I had become increasingly involved in the Collier and Lee County Republican Party.  I worked on several local Republican candidates' campaigns.  As of September 2017, I routinely Facebook posted pictures with various Republican Party members such as Governor Rick Scott, Congressman Francis Rooney, Ambassador John Bolton and State Representative Byron Donalds.  I continued attending Republican Party meetings throughout my 1L year.  I made no fanfare of my support for a conservative political agenda while at FIU; however I made no attempt to hide my conservative beliefs either.

In October 2016, I attended a President Obama political rally at FIU.  Although, I understood that I did not share President Obama's (or Hillary Clinton's) political ideology, I saw this as a unique opportunity to listen to the sitting President speak in person.  I respectfully listened to President Obama's speech but I did not demonstrate the same enthusiasm as the rest of the surrounding FIU Law students.  Clinton campaign representatives were demanding signatures and volunteers for her campaign.  When I refused to sign up, it quickly became evident to the law students around me that I was not a Hillary Clinton supporter.  I felt an immediate backlash.  The entire student body, with few exceptions, ostracized me and "froze me out."  I also noticed a sudden and perceptible change in the professors' attitudes towards me.  Prof. Baker and Prof. Norberg would no longer answer any of my academic questions.  Prof. Schrier (fall semester Legal Skills and Values instructor) became unhelpful and unresponsive.  The situation progressively deteriorated throughout the school year.  By spring semester, Prof. Brown (fall semester Legal Skills and Values instructor) explicitly told me, in a one-on-one conference, that she did not like me and was purposely ignoring the rubric and purposefully scoring my assignments punitively and harshly.  I expressed my concern directly to Prof. Brown without any resolution or attention during the semester.  In fact, Prof. Brown failed to answer any of my emails.  Additionally, I tried to speak to my academic advisor on several occasions and never received a response to emails or messages.  I personally went to the administrative office and left messages for my advisor which were never returned.  I chose not to take my grievance any further at that time because I was just trying to simply pass my 1L year without conflict or controversy and mostly because I feared additional reprisal.

I experienced demeaning stereotypical comments and frequent taunts and insults towards conservatives throughout the school year.  Prof. Baker performed a skit in the classroom in which he wore a red "Make America Great Again" hat and portrayed the average Trump supporter as a mentally challenged person.  In the skit, he equated Trump to Napoleon and Forrest Gump.  The skit mocked conservatives, such as myself, as feeble-minded and irrational war-mongers.  Prof. Schrier gave frequent "Feel the Berne" speeches in the classroom leading up to the Presidential election.  Prof. Wasserman used the

classroom to expound on his Anti-Trump blog. Prof. Wasserman is a well-known extreme Trump critic blogger which he often discussed in class. FIU Law sanctioned "Wear Blue Day" to promote Democratic Party candidates leading up to presidential elections. There were no comparable Republican Party rallies held at FIU Law. FIU law students who actively and publicly bashed the new Trump administration were clearly favored and supported. During the first few months of the Trump administration, the anti-Trump rhetoric on campus reached a fevered pitch. Prof. Wasserman would constantly rant about President Trump's "anti-muslim ban" and fueled "not my president" sentiments. As an active Trump supporter, I felt threatened and intimidated in the classroom and in the law school environment. FIU did not have any Republican rallies and I did not witness any Trump supporter demonstration anywhere on campus. Dean Acosta's departure was done without fanfare or any ceremony or best wishes. FIU failed to promote tolerance or respect for diverse political dialogue. FIU Law failed to meet their obligation to provide a safe and non-harassing learning environment.

I allege, with confidence, that these professors had intense and vitriol reactions against Trump supporters especially during the FIU sanctioned immigration protests. I allege that the above named professors became aware of my conservative, Republican beliefs and retaliated against me because of those beliefs. These professors are likely to argue that there may be a few other Republican 1L students who successfully passed their 1L year. However, I allege that I was targeted not just because I am a Republican but because I actively and vigorously worked and helped Republican candidates have successful campaigns. These professors were also aware that I continued to actively participate in the Republican Party during the very tumultuous FIU demonstrations against the Trump administration in the spring semester 2017. I became the local "poster-child" for the villainous Trump supporter. I strongly allege that FIU Law professors not only wished to retaliate against me for my conservative political beliefs but that they also intended to prevent me from ever becoming an attorney that would provide even greater assistance and support to the Republican Party. Obviously, FIU Law professors would be unable to entirely prevent me from participating in the Republican Party forever. But, there is no doubt that a "conservative lawyer" can be much more effective in support of a conservative political agenda. These professors have such deep seated resentment against Trump supporters that they could not stand by and allow FIU Law to graduate a politically active Republican lawyer like me.

It did not become apparent to me how FIU professors would target me for dismissal until after I received my academic expulsion. I allege that the method of changing my blind grades was quite simple and permitted by FIU Law's. Section 1004- permits instructors to reduce grades after student blind-grading numbers are unmasked. In fact, Prof. Norberg (Contracts-Fall Semester 2016) bumped my grade from a C+ to C without basis or rational. Both Prof. Schrier (Fall semester) and Brown (Spring semester) Legal Skills and Values instructors graded all of their assignments unmasked. Prof. Brown clearly wrote in her comment and rubric that she had unfairly graded my assignments to reflect her dislike for me. Both Prof. Baker and Wasserman have unmasked graded assignments as part of the final grade. Additionally, FIU Law does not permit any grade dispute or have any method of grievance, informal or formal hearing, nor does it give the student an opportunity to

place a statement on the record of a grade dispute.  Prof. Wasserman is the Chairman of the Academic Review Committee and acts as the *defacto* dean.  All communications to the recently appointed Acting Dean Ansah were immediately referred to Prof. Wasserman.  We allege that Prof. Wasserman, possibly with the consent or collusion of other instructors, had motive and opportunity to change one or more of my grades to accomplish the goal of computation of my G.P.A. to 1.98 and thus my academic expulsion by 0.02.  I was expelled without warning, without probation, despite never having received a failing grade in any class.

Upon further investigation and discussions with other students it became apparent that many 1L students were promoted to 2L after having received failing grades in several classes. My discussions discovered willful blindness to several irregularities during the academic year 2016-2017.  FIU Law violated several provisions of their own Policies and Regulations.  FIU Law violated section 1501 by permitting students with GPA above 2.0 (after the 1L fall semester) to participate in the remedial program.  Prof. Wasserman admitted this fact and stated that students with GPA above 2.0 were placed in remedial because they were the bottom 20% of the 1L class.  However, this is a misstatement because the number of remedial students was approximately the bottom 30%.  FIU Law Policies and Regulations do not permit this discretion.  This demonstrates FIU Law capricious application of the Rules and Regulations.  The benefits of the spring semester remedial program included one less fundamental course, and a course dedicated to tutoring and academic assistance taken as Pass/Fail.  All these advantages were given to students with low GPAs to assist them to raise their GPA.  I was never permitted to enter the remedial program.  In fact, I allege that my 2.2 GPA after fall semester was purposely contrived and fabricated by Prof. Wasserman and others to preclude me from receiving the benefits of the remedial program.  Furthermore, I strongly allege that my spring semester 1. 77 GPA was also fabricated and contrived to achieve a cumulative average for both semesters of 1.98 resulting in my immediate academic expulsion by 0.02.  The result of these actions is that the advantage of being placed in the remedial program was "cut-off" at me, making me the last student not permitted the benefits of additional tutoring assistance and reduced workload.  All of these actions were taken with the intent of targeting me for academic expulsion.

On May 19, 2017, I received an email informing me of an academic expulsion addressed to another student's name.  I never received a written notice of expulsion pursuant to Section 1601 until after the deadline for a petition for readmission. Nevertheless, I properly and timely filed a petition for readmission irrespective of the letter's receipt.  My expulsion was based solely on academic grounds.  I had excellent attendance and no student misconduct.  In fact, I conducted myself with the highest professional and ethical standards in school and outside of school.  My petition was based on a grievance against Prof. Brown because of my personal knowledge of Prof. Brown's unfair grading.  I also based my petition on the vagaries of the remedial program.  My petition was mailed and directed to the Acting Dean for FIU School of Law (Dean Ansah).

Additionally, I twice requested by email and letter sent directly to acting Dean Ansah that, I have my attorney attend the hearing and that my Legal Skills and Values

Spring semester be reviewed as correct and accurate.  My requests were ignored.  In fact, Prof. Wasserman prevented me from having assistance of counsel at the Academic Review Committee (ARC) hearing, refusing to accept my attorneys' letter of representation.  He literally blocked the door with his body and prevented my counsel from entering the room.  He stated that if my attorney attempted to enter the hearing he would default the hearing and my readmission would not be considered.  Thus Prof. Wasserman coerced me (a 21 year old 1L) to attend the meeting without the benefit of counsel.  Prof. Wasserman (chairman) attended the meeting in basketball shorts, a T-shirt and sneakers demonstrating Prof. Wasserman's contempt for the proceeding.  No LSV grade review was performed despite the fact that the hearing was attended by two LSV instructors.  The readmission hearing was conducted by the same professors I allege committed the tortious acts against me (Professors Schrier and Wasserman).  I allege that these professors had bias and animus towards me and could not possibly provide a fair and neutral hearing.  Prof. Wasserman conducted the hearing with overt hostility and aggression towards me and cross-examined me as if I were a hostile witness.  The readmission committee's decision is based on a strong presumption of expulsion and I was never afforded an opportunity for adequate rebuttal of that presumption, based on evidence.  At the time of the hearing, I had only the final grades from my classes and was not in possession of any other part of my academic record, therefore disadvantaging me in providing any evidence based rebuttal.  I was denied readmission the next day without the benefit of a summary of evidence or reason for the decision.

FIU began a series of indefensible acts for the purpose of obstructing any investigation and covering up the malfeasance of its professors.  My attorney and I spent the next three months attempting to obtain the actual results of my final exams to determine if my G.P.A. was accurately recorded (June to August 2017).  FIU never provided the full results of my examinations and continues to withhold several F.E.R.P.A. records.  However, in those records, there is evidence that my professors did "bump" my grade after unmasking.  FIU, through its senior counsel, was made aware of my grievances and took no action to remedy.  In one of FIU's final, egregious acts, on September 1, 2017, nearly three months after my initial expulsion and over one week into the new academic year, I was contacted by Marci Rosenthal, Interim Associate Dean for Academic Affairs, stating her intention was to hear more from me about my concerns with respect to Professor Brown only.  It is absolutely unconscionable that FIU would, after three months of delay and stalling tactics, initiate a grievance process.  Ms. Rosenthal told me "no legal counsel or other representatives will attend".  However, Ms. Rosenthal, was fully aware that I was represented by legal counsel, and that I intended on pursuing legal remedies and she failed to disclose that she is in fact an attorney and member of the Florida Bar.  This purposeful and likely unethical, omission again demonstrated FIU's deliberate, calculated, unethical intent to disadvantage me at every juncture of these proceedings.  How can a law school, where, by definition, all faculty is highly trained in legal studies and some faculty hold admissions to practice law in Florida, consistently strive to abridge my due process rights as a student?  In every step FIU Law, abridged my right to counsel; withheld information about my grades and the grading process; denied me a formal hearing where I could present evidence; failed to provide neutral arbiters without conflicts of interests; failed to give me written decisions based on facts and with written rational; and prohibited me from

placing a statement of objection in my academic records.  FIU, through its professors and agents, succeeded in preventing me from graduating from FIU Law and attempted to ban me from all other law schools by denying me the opportunity to place a disputing statement on my official school record.   FIU, through its professor and agents, intentionally and tortuously created the most harm and damage to me during the most important time of my life, which would likely determine my future career, status, and earning potential.

      Attached are copies of all correspondence, emails, and student records and FIU School of Law Policies and Regulations.  My attorney listed below represents my interests in all matters concerning this complaint against Florida International University, School of Law.  You may address all questions with my attorney.  We are requesting that the corresponding agencies' undertake an investigation of the above allegations.   Please, let me know if you need any other information.  Thank you for your expedited attention.

Respectfully submitted,

Christina Marie McLaughlin

Cc.    Diana McLaughlin, Esq.
       Florida Bar No. 84479
       2336 Immokalee Road
       Naples, FL 34110
       239-229-8481
       239-449-3397
       drdiana@dianamclaughlin.com