UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:  1:20-cv-22942-KMM

CHRISTINA MCLAUGHLIN,

       Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES, et al.

       Defendants.

_____/

## DEFENDANT, HOWARD WASSERMAN'S, MOTION TO DISMISS THE AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

       Defendant, HOWARD WASSERMAN, by and through undersigned counsel, pursuant to the Federal Rules of Procedure and the S.D. Fla. Local Rules hereby by files this Motion to Dismiss the Amended Complaint and Incorporated Memorandum of Law and in support states:

1.      This is a purported civil rights action seeking $25 Million Dollars as well as other relief arising from Plaintiff's academic dismissal from Florida International University College of Law on May 19, 2017. (D.E. #10 at ¶¶ 103,145). The Amended Complaint alleges eleven (11) counts against seventeen (17) Defendants. Professor Wasserman is the only Defendant sued both in his individual capacity ("personally" as identified by Plaintiff) and official capacity. Though somewhat unclear, there appears to be nine (9) causes of action against him: Count I[1] – First Amendment violation brought pursuant to 42 U.S.C. § 1983; Count II - Due Process violations brought under 42 U.S.C. § 1983; Count III – Equal Protection violation brought under 42 U.S.C. § 1983; Count VI – denial of assistance to counsel; Count VII – fraud; Count VIII – civil conspiracy; Count IX – breach of fiduciary duty; Count X – negligence; and, Count XI – defamation. Dismissal of the Amended Complaint in its entirety must be granted.

2.      The Amended Complaint, comprised of 115 pages plus 421 pages of exhibits, is an impermissible shotgun pleading which includes a myriad of conclusory allegations and immaterial facts, combines causes of actions under a single count, and asserts multiple claims against multiple

---

[1] Plaintiff labels her counts as "causes of action". For ease of reference, this Motion refers to each as "count".

defendants without specifying which of the defendants each claim is brought against, requiring dismissal under *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015).

3.      In Count I, Plaintiff has failed to show protected speech or protected conduct or a causal connection between her grade and any protected conduct. Without a specific protected conduct, there is no First Amendment right to be violated. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). While it is not exactly clear which theory of liability is at issue in this count, there is no materially similar Supreme Court or Eleventh Circuit caselaw that has clearly established the right alleged, according to Plaintiff, to have been violated. Therefore, qualified immunity should be granted.

4.      The due process claims fail in Count II because, again, there has not been a clearly established constitutional right that was violated.  Plaintiff did not have a substantive property interest in a continuing law school education. *See Doe v. Valencia Coll.*, 903 F.3d 1220 (11th Cir. 2018); *McKinney v. Pate,* 20 F.3d 1550 (11th Cir. 1994); *Ellison v. Bd. of Regents of Univ. Sys. of Georgia*, 2006 WL 664326 at *1 (S.D. Ga. 2006). Second, Plaintiff failed to seek all state remedies, which is fatal to her claim of insufficient procedure. *Watts v. Florida Intern. Univ.*, 495 F.3d 1289 (11th Cir. 2007).

5.      Plaintiff's equal protection claim must be dismissed because she did not allege she was a member of a recognized protected class, and she failed to identify similarly situated students who were treated more favorably. *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009). Also, Wasserman enjoys qualified immunity because it is not clearly established a deprivation of equal protection can occur on the basis of political affiliation. *See e.g. Chandler v. Georgia Pub. Telecommunications Com'n*, 917 F.2d 486, 489 (11th Cir. 1990).

6.      Plaintiff's purported denial of the assistance of counsel under federal law as pled in Count VI is equally unavailing as no such right exists under the circumstances pled. *Nash v. Auburn*, 812 F.2d 655, 664 (11th Cir. 1987); *Haberle v. University of Alabama, Birmingham* 803 F.2d 1536, 1539 (11th Cir. 1986).

7.      The claim for fraud in Count VII, fails to meet the heightened pleading standard of particularity under Fed.R.Civ.P. 9(a). *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008). Plaintiff has alleged no statement on Wasserman's behalf with particularity that could form the basis of the fraud claim. *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). Without the statements, the claim necessarily fails and must be dismissed.

8.      As a matter of law, the civil conspiracy claim fails because no underlying tort is properly pled. *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018). Plaintiff has not identified the alleged tortious conduct that was agreed upon by Wasserman and any other professor, and if any tort has been alleged, it fails on its own merit, precluding a basis for a conspiracy. Count VIII is further barred because the intracorporate conspiracy doctrine precludes the claim in light of the allegations against Wasserman. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)(en banc). *Dickerson v. Alachua County Com'n*, 200 F.3d 761, 767 (11th Cir. 2000).  Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring amongst themselves or with the corporation.   This doctrine extends to public, government entities as well. *See Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001).

9.      Count IX claiming a breach of fiduciary duty must be dismissed as a fiduciary duty by Wasserman to Plaintiff cannot be established under the circumstances of the case. A fiduciary duty requires elements of trust, confidence, and an undertaking by a stronger part to advise, counsel, and protect the weaker party. *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So.2d 1063 (Fla. 3d DCA 1993). All Plaintiff has alleged is a typical student-professor relationship, which has never been held to, standing alone, establish a fiduciary duty. . *Morrison v. Univ. of Miami*, 2016 WL 3129490 at *7 (S.D. Fla. 2016).

10.     In her negligence claim, Plaintiff only references Wasserman's educational duties, such as recording grades or investigating grade challenges. (D.E. #10 ¶¶ 305-08, 988-90). Plaintiff's negligence claim is in actuality a claim for educational malpractice, which is not recognized in Florida. *Tubell v. Dade Cnty. Pub. Sch.*, 419 So.2d 388 (Fla. 3d DCA 1982). If a cognizable negligence claim is pled, Wasserman would otherwise be entitled to sovereign immunity under Florida Statute § 768.28(9)(a) based on his alleged conduct occurring within the course and scope of his employment. *Kastritis v. City of Daytona Beach Shores*, 835 F. Supp. 2d 1200 (M.D. Fla. 2011).

11.     Absolute immunity bars the defamation claim because the alleged statements from Wasserman, to the extent they can be identified (demonstrating another pleading deficiency), were made within the orbit of his duties as a public employee of BOT. *McNayr v. Kelly*, 184 So. 2d 428, 433 (Fla. 1966); *Florida State Univ. Bd. of Trustees v. Monk*, 68 So. 3d 316, 319 (Fla. 4th DCA 2011). Arguably, the statute of limitations also expired over a year prior to filing this claim based

on the last possible date of any statement made by Wasserman related to Plaintiff. *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan,* 629 So.2d 113, 114–15 (Fla. 1993).

12.    This suit in Wasserman's official capacity is tantamount to a claim against the government and is functionally equivalent. *Kentucky v. Graham*, 473 U.S. 159 (1985); *also Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991).[2] Regardless of the relief sought or whether the official-capacity claims are brought under federal or state law, they are, in actuality, claims against FIU BOT that is also named as a Defendant in this matter. *Stephens v. Geoghegan*, 702 So. 2d 517, 527 (Fla. 2d DCA 1997); *See Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359, 1369 (M.D. Fla. 1999). This Court should dismiss the Amended Complaint.

## **MEMORANDUM OF LAW**

### *Dismissal Standard*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant may move to dismiss a complaint for "failure to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a defendant's motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain enough factual allegations to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 570. The facts found in the complaint must "state a claim to relief that is plausible on its face." *Id.*

This pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court's holding in *Ashcroft v. Iqbal* requires the trial courts to "identify allegations of the complaint that because of their conclusory nature are not entitled to the assumption of truth." *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1238 (S.D. Fla. 2013) (citing *Ashcroft*, 556 U.S. 662). Allegations "full of self-serving hyperbole, personal attacks, and formulaic, implausible conclusions" must be disregarded. *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1224 (S.D. Fla. 2013).

---

[2] The federal claims against Wasserman in his official capacity must also be dismissed because the state **nor** its **officials** acting in their **official** capacities are 'persons' under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995).

### *Qualified Immunity*

The qualified immunity analysis will apply to Counts I, II, and III. The qualified immunity defense may be raised on a motion to dismiss, and it will be found if the complaint "fails to allege the violation of a clearly established constitutional right." *Smith v. Siegelman*, 322 F.3d 1290, 1294 (11th Cir. 2003); " *Randall v. Scott*, 610 F.3d 701, 714 (11th Cir. 2010). Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless that official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and quotation marks omitted).

For a public official to be entitled to qualified immunity, the official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Penley ex rel. Estate of Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010). This occurs when a public official's "actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). Based on the allegations, Wasserman's interaction with Plaintiff is limited to her time in the Spring semester 2017 Civil Procedure course where she was graded on her performance and when Wasserman served on the Academic Standards Committee ("ASC") when Plaintiff petitioned for readmission. (D.E. #10 at ¶¶268-270, 286). Wasserman, at all times, was acting within his discretionary authority as an employee of the state, in particular a professor at FIU.

Courts determine whether qualified immunity is appropriate via a two-part test, and a court can conduct the test in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). One part of the test is "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736. The other part is whether the constitutional violation was clearly established at the time of the alleged wrongful conduct. *Pearson*, 555 U.S. at 816. If either part of the test fails, the public official is entitled to qualified immunity. *Id.* "A government official's conduct violates clearly established law when, at the time of the alleged conduct, the contours of the right are sufficiently clear that every 'reasonable official would have understood that what he is doing

violates that right.'" *Mikko v. City of Atlanta*, 857 F.3d 1136, 1146 (11th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

## I.   <u>THE SHOTGUN PLEADING MUST BE DISMISSED</u>

This Amended Complaint is flawed in the same way the Eleventh Circuit described various forms of "shotgun pleadings" in its in-depth analysis in *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Complaints that violate either Federal Rules of Civil Procedure 8(a)(2) or 10(b) or both "are often disparagingly referred to as 'shotgun pleadings.'" *Id.* at 1320. The most common type of shotgun pleading incorporates all paragraphs into each subsequent count. *Id.* The three other typical types are complaints filled with "conclusory, vague, or immaterial facts", complaints that do not separate counts and prayers for relief, and complaints that assert multiple claims against multiple defendants without specifying attributable acts or omissions or which defendants the claims are brought against. *Id.* at 1321-23. The term also refers to pleadings that are "replete with factual allegations and rambling legal conclusions." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008).

Each cause of action in the 115-page Amended Complaint (excluding 421 pages of exhibits) incorporates by reference Paragraphs 1-757. (D.E. #10 ¶¶ 758, 787, 856, 872, 895, 908, 922, 929, 947, 982, 1044). The prayer for relief is one single entry at the conclusion of the Amended Complaint. *Id.* at pp. 113-14. A complaint similar to the one at issue here was deemed a shotgun pleading in light of the single entry for relief, the incorporation of allegations throughout the counts, and the first cause of action starting on page 42. *Rayes v. Willingham*, 2016 WL 6080826 at *3 (M.D. Fla. 2016). In accordance with *Weiland*, the Amended Complaint also falls into the second and fourth categories, given it is full of immaterial facts and unclear on who or what entity each claim is brought against. As an example, the captioned "First Cause of Action" includes: factual allegations; (D.E. #10 ¶¶ 767, 769, 776, and 778); is predicated on the Florida Constitution[3] and the First and Fourteenth Amendments of the U.S. Constitution; alleges a general violation of free-speech rights, but does not explain whether it is grounded in retaliation or other free-speech theories; fails to list exactly who the claim is brought against; and, alleges a private cause of action for FERPA violations under Florida law (*Id.* ¶¶ 773-75), but only identifies

---

[3] Private causes of action under the Florida constitution are not recognized. *Tucker v. Resha*, 634 So. 2d 756, 758 (Fla. 1st DCA 1994), approved, 670 So. 2d 56 (Fla. 1996).

violations from FIU BOT and the Department of Education. (*Id*. ¶¶ 764, 770, 782). This is typical of the remaining causes of action. Plaintiff uses the term "Defendants" to refer to every named Defendant sixteen (16) times without regard to the plausibility of every named defendant being implicated. (*Id*. ¶¶ 100, 103, 850-51, 868-70, 906-07, 926, 930, 945, 978-79, 983, 985).

The Amended Complaint also repeats factual allegations incessantly and makes allegations irrelevant to any causes of action. The "summary" of the case before the section on jurisdiction and venue is 103 paragraphs which necessarily contains the same allegations in the remainder of the Amended Complaint. Plaintiff alleges the same purported failure to review her grades ten times. (D.E. #10 ¶¶ 33, 41-42, 45, 59, 125, 390, 557, 591). Here, there is "a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324. The Amended Complaint fails to make a plain and short statement showing entitlement to relief. It does not put Wasserman on notice of the particular claims against him. The Amended Complaint, in its entirety, must be dismissed as a matter of law.

## II.   COUNT I: PLAINTIFF HAS NOT SHOWN PROTECTED CONDUCT OR VIOLATION OF A CLEARLY ESTABLISHED RIGHT TO SUPPORT A FIRST AMENDMENT CLAIM

"First Amendment claims are particularly difficult to maintain under § 1983 as it is only the 'extraordinary' First Amendment claim that survives a qualified immunity defense." *Bd. of Regents of State v. Snyder*, 826 So. 2d 382, 388 (Fla. 2d DCA 2002) (citing *Dartland v. Metro. Dade County*, 866 F.2d 1321, 1323 (11th Cir. 1989). A university classroom is not an open public forum during instructional time. *Keeton v. Anderson-Wiley*, 664 F.3d 865, 872 (11th Cir. 2011). The purpose of academic freedom is to preserve the "free marketplace of ideas" and protect the individual professor's classroom method from the arbitrary interference. *Parate v. Isibor*, 868 F.2d 821, 830 (6th Cir. 1989). "[A]cademic freedom and political expression [are] areas in which government should be extremely reticent to tread." *Sweezy v. State of N.H. by Wyman*, 354 U.S. 234, 250 (1957). Educators have broad discretion in the areas of curriculum and grading. *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 271 (1988) ("[e]ducators are entitled to exercise greater control over" activities that "may fairly be characterized as part of the school curriculum" than other forms of student expression); *Virgil v. Sch. Bd. of Columbia Cty., Fla.*, 862 F.2d 1517,

1520 (11th Cir. 1989) ("In matters pertaining to the curriculum, educators have been accorded greater control over expression than they may enjoy in other spheres of activity.").

The Supreme Court and the Eleventh Circuit have repeatedly advised courts should defer to educators' professional judgment in such areas. *See, e.g., Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985) (When reviewing "the substance of a genuinely academic decision," judges "may not override [the faculty's professional judgment] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."); *Bishop v. Aronov*, 926 F.2d at 1075 ("Federal judges should not be ersatz deans or educators."). "University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Horowitz*, 435 U.S. at n. 6 (1978) (Powell, J., concurring).

First Amendment rights of students and teachers must be "applied in light of the special characteristics of the school environment." *Tinker,* 393 U.S. at 506. But often the issue "lies in the area where students in the exercise of First Amendment rights collide with the rules of the school authorities." *Id*. Under an education-setting First Amendment theory, Plaintiff has not alleged any protected expression or conduct. Constitutionally protected First Amendment expression requires something overt or at least identifiable, such as wearing a black armband to school in protest of the war in Vietnam and being suspended from school for doing so. *Tinker*, 393 U.S. 503, 504 (1969). *See also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1260 (11th Cir. 2004) (student's expressive conduct was refusing to recite the pledge of allegiance but instead stand silent with a fist raised); *Denno v. Sch. Bd. of Volusia County, Fla.,* 218 F.3d 1267, 1274 (11th Cir. 2000) (student brought to school and displayed a Confederate flag and was punished for doing so); *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 685 (1986) (student was not engaging in protected speech when he gave a profanity-laden graduation speech).

Wasserman is entitled to qualified immunity because a constitutional violation under the First Amendment has not been pled under these circumstances. Here, Plaintiff admittedly did not engage in any on-campus speech (D.E. #10 ¶1). She has also failed to allege any speech that is constitutionally protected because she has not alleged what that speech was. She alleged no political expression whatsoever to Wasserman. Her vague allegations amount to a statement that she felt intimidated to speak up in his class. (D.E. # 10 ¶ 275).

First Amendment retaliation or discrimination claims also require protected conduct and causation, among other things. *Bennett*, 423 F.3d at 1250; *Redding v. Tuggle*, 2007 WL 2462641 at *20 (N.D. Ga. 2007). Again, Plaintiff has failed to plausibly allege that conduct. She also fails to plausibly allege causation, by baldly claiming in a conclusory manner Wasserman "was aware" she supported Donald Trump and the Republican Party. (D.E. #10 ¶ 276); *see also Maggio v. Sipple*, 211 F.3d (11th Cir. 2000)(recognizing that First Amendment retaliation claims involve "legal determinations that are fact-specific"). There are no facts showing a causal connection between this purported knowledge and Wasserman assigning a "D" grade or being one of the votes on the ASC. Absent from the complaint is any fact supporting that his awareness could have been a motivating factor. There is only Plaintiff's unsupported conclusion the two must be related.

Under the other prong of the qualified immunity analysis, neither the Eleventh Circuit nor the Supreme Court have held giving a nonfailing grade is an adverse action or likely to deter a person from exercising free-speech rights. More importantly, neither court has ever held giving a particular grade to a person of a political affiliation is a constitutional violation. No similar case with a purported fact pattern like this exists, requires that Wasserman be entitled to qualified immunity. Controlling precedent on student First Amendment rights generally deals with punishment for identifiable on-campus speech such as in *Tinker* and *Fraser*. And even those standards can be so unclear in application as to establish qualified immunity. *Braswell v. Bd. of Regents of Univ. Sys. of Ga.*, 369 F. Supp. 2d 1371, 1380 (N.D. Ga. 2005). "Off-campus, online speech by university students, particularly those in professional schools, involves an emerging area of constitutional law." *Hunt v. Bd. of Regents of Univ. of New Mexico*, 792 Fed. Appx. 595, 601 (10th Cir. 2019). Even in the light most favorable to Plaintiff, a reasonable official could not have been on notice that his actions would violate a clearly established First Amendment right. Dismissal with prejudice must be granted.

## III.   COUNT II: PLAINTIFF HAS NOT SHOWN CLEARLY ESTABLISHED DUE PROCESS RIGHTS SHE WAS DEPRIVED OF

### a. There Is No Liberty Or Property Interest In A Continuing Law-School Education

Any recovery under § 1983 on substantive due process grounds is barred because the right to post-secondary educational enrollment is not encompassed in the "fundamental rights" protected by the United States Constitution. *See McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir. 1994). Substantive rights under the Fourteenth Amendment's Due Process Clause only "protects those

rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *Id.* (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). To have a substantive due process claim, Plaintiff must have been denied a substantive right created by the Constitution. *McKinney*, 20 F.3d at 1556. It is clear in the Eleventh Circuit that there is no substantive due process right to continued post-secondary education. *Doe v. Valencia Coll.*, 903 F.3d 1220, 1235 (11th Cir. 2018) (citing *Plyler v. Doe*, 457 U.S. 202, 221 (1982). These rights are created by state tort and/or employment law, if at all, and therefore are not fundamental rights created by the Constitution. *Id.* at 1556-60. Specifically, Florida does not recognize this right.

   "No court has recognized a substantive property or liberty interest in a college education. Courts instead have observed that 'concerns of federalism, judicial capacity, and academic freedom counsel against the recognition of such an interest.'" *Ellison*, 2006 WL 664326 at *1 (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 251 n. 2 (6th Cir. 2003). "Considerations of profound importance counsel restrained judicial review of the substance of academic decisions." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). "A claim to a property right is dubious at best [and] [e]ven if one assumes the existence of a property right, however, not every such right is entitled to the protection of substantive due process." *Id.* at 229 (Powell, concurring). "The interest asserted by respondent [of continued enrollment] is essentially a state-law contract right. It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution." *Id.* at 229-30. It is not clearly established a dismissal from a law school, even as alleged here as wrongful, is a violation of an individual's substantive due process rights. Again, Plaintiff has wholly failed to establish an actual constitutional violation and qualified immunity must be granted.

   **b. Plaintiff Has Not Shown a Deprivation of her Due Process Rights**

   "Because a violation of procedural due process is not complete 'unless and until [a] State fails to provide due process[,] the state may cure a procedural deprivation by providing a later procedural remedy.'" *Watts v. Florida Intern. Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007) (quoting *McKinney*, 20 F.3d at 1557). A procedural due process violation becomes actionable "[o]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation." *Id.* The Plaintiff has made no allegation that she was denied relief from these procedural deficiencies in a Florida state court. D.E. #10 at ¶ 112. Because Plaintiff has not taken advantage of these processes, her claim is not yet "ripe". *McKinney*, 20 F.3d at 1560; *see also Hunt v. City of Mulberry*, 173 F.

Supp. 2d 1288, 1293 (M.D. Fla. 2001) (dismissing with prejudice a due process claim on the Plaintiff's failure to seek state court judicial review with an insufficient explanation for the failure to do so). A student dismissed from a public university for academic reasons is entitled to less process than a student dismissed for disciplinary reasons. *Haberle v. Univ. of Alabama in Birmingham*, 803 F.2d 1536, 1539 (11th Cir. 1986). There is no requirement for a pre-dismissal hearing at which the student may contest the basis for an academic dismissal. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 87-90 (1978). "The decision-making process need only be careful and deliberate." *Haberle*, 803 F.2d at 1539. "[T]he determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Horowitz*, 435 U.S. at 90.

Plaintiff failed to exhaust all of her State remedies so as to properly allege a procedural due process violation. *McKinney*, 20 F.3d at 1563. Also, no clearly established law could have put Wasserman on notice that he could have violated Plaintiff's due process right by participating in the readmission hearing after an academic dismissal, which constitutionally does not require even a hearing. In fact, in the Amended Complaint, Plaintiff "urges" the court to go beyond what is clearly established in *Ewing* and *Horowitz*. (D.E. #10 ¶ 849). Qualified immunity must be granted and this Court should dismiss the Count.

## IV.   COUNT III: QUALIFIED IMMUNITY DEFEATS THE EQUAL PROTECTION CLAIM BECAUSE PLAINTIFF IS NOT A MEMBER OF A PROTECTED CLASS AND HAS NOT IDENTIFIED A SIMILARLY SITUATED COMPARATOR

Plaintiff's equal protection claim is she was treated unfavorably because of her conservative political viewpoint. This is mostly a restatement of her First Amendment Claim and does not constitute its own cause of action under the doctrine of equal protection. To the extent Plaintiff contends she was treated differently "because of her expressive activity, that claim arises under the First Amendment." *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997). *See, e.g., Thompson v. City of Starkville*, 901 F.2d 456, 468 (5th Cir.1990) (dismissing plaintiff's equal protection claim in retaliation case because it "amounts to no more than a restatement of his First Amendment claim"). "A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause." *Watkins*, 105 F.3d at 1354.

Her purported equal protection violation is based on holding conservative political beliefs rather than being a member of a protected class. A "plaintiff must prove that he was discriminated against by establishing that other similarly-situated individuals outside of his protected class were treated more favorably." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009). Specifically, a plaintiff must allege she "was discriminated against on account of [her] membership in an identifiable or protected class, such as race, religion, sex, or national origin." *Alford v. Consolidated Gov't of Columbus, Ga.*, 438 Fed. Appx. 837, 839 (11th Cir. 2011) (citing *Sweet v. Secretary Dep't of Corrs.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006)). Additionally, the Amended Complaint also fails to identify any comparators or similarly situated individuals who were treated more favorably. "If a plaintiff fails to show the existence of a similarly-situated [person], judgment as a matter of law is appropriate where no other plausible allegation of discrimination is present." *Arafat v. Sch. Bd. of Broward County*, 549 Fed. Appx. 872, 874 (11th Cir. 2013).

Plaintiff has not alleged she was part of a protected class. Equal protection jurisprudence has premised itself primarily on discrimination based on race, gender, and national origin. *See Gratz v. Bollinger*, 539 U.S. 244 (2003); *Rollins v. Board of Trustees of Univ. of Ala.*, 647 F. App'x 924, 938 (11th Cir. 2016); *Carr v. Board of Regents of Univ. Syst. of Ga.*, 249 F. App'x 146, 148 (11th Cir. 2007); *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 16–17 (1973). Political affiliation, or the status of being conservative or liberal, or Republican or Democrat, or in this case a Donald Trump supporter prior to election, is not explicitly a protected class for equal protection purposes. The Eleventh Circuit held two members of the Libertarian Party suing under equal protection to include themselves in a televised debate that featured only a Republican and Democrat nominee were not members of a protected class. *Chandler v. Georgia Pub. Telecommunications Com'n*, 917 F.2d 486, 489 (11th Cir. 1990); *see also Shuler v. Swatek*, 2011 WL 13187278 at *2 n. 3 (N.D. Ala. 2011) ("While Democrats in Alabama are indeed outnumbered . . . there is no support for the notion that Democrats are a protected class, even in Alabama.").

Based on the four corners of the Amended Complaint, Wasserman is entitled to qualified immunity. *See also Buford v. City of Atlanta, Ga.*, 2007 WL 2345262, at *3 (N.D. Ga. 2007) (granting officer's motion to dismiss equal protection claim on qualified immunity grounds because plaintiff did not allege any specific, non-conclusory facts that established any constitutional violation, let alone a clearly established violation); *Braswell v. Bd. of Regents of Univ. Sys. of Ga.*, 369 F. Supp. 2d 1371, 1380 (N.D. Ga. 2005) (granting defendants' motion to

dismiss on qualified immunity grounds because plaintiff had not identified any proper comparator in the allegations of the complaint); *Hayden v. Coppage*, 533 F. Supp. 2d 1186, 1195 (M.D. Ala. 2008) (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1210 (11th Cir. 2007)) (granting dismissal with prejudice of plaintiff's equal protection claim on the basis of qualified immunity for failure to allege anything beyond conclusory assertions regarding similarly situated comparators); *see also Griffin Indus., Inc.*, 496 F.3d at 1210 (reversing district court's denial of qualified immunity at motion to dismiss stage because plaintiff did not "properly allege that the individual defendants intentionally treated a similarly situated entity in a disparate manner"). All of Plaintiff's allegations underlying her equal protection claim against Wasserman relate to her political affiliation. Neither the Supreme Court nor the Eleventh Circuit has ever established political affiliation is a protected class for equal protection purposes. Dismissal with prejudice is appropriate.

## VI.    COUNT VI: PLAINTIFF DID NOT HAVE A RIGHT TO COUNSEL

Students who face disciplinary proceedings need be granted a "right to respond" to the relevant charges, but the procedural rights of such petitioners "are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial." *Nash*, 812 F.2d at 664. Disciplinary proceedings do not "afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Goss v. Lopez*, 419 U.S. 565, 583 (1975).  Courts have also established students are due even less procedural protections when they face academic dismissals. *Haberle*, 803 F.2d at 1539. "Critical to this caselaw is the recognition that classrooms are not courtrooms, and the law does not treat them as such." *Heenan v. Rhodes*, 757 F. Supp. 2d 1229, 1243 (M.D. Ala. 2010).

Indeed, "[w]here basic fairness is preserved, the [Circuit] has not required the cross-examination of witnesses and a full adversary proceeding." *Nash*, 812 F.2d at 664. "[P]rocedural due process in the context of a school disciplinary proceeding does not require all the trappings or procedural safeguards of a criminal trial because 'formalizing hearing requirements would divert both resources and attention from the educational process.'" *Nash v. Auburn*, 621 F.Supp. 948, 953 (M.D.Ala.1985). So, "the great majority of cases support the conclusion that students facing disciplinary charges have no absolute right to have an attorney present their case." *Id.* at 957 (collecting cases).

The Supreme Court and Eleventh Circuit have not established a right to counsel in disciplinary hearings, and when academic dismissals require fewer protection than disciplinary ones, the necessary implication is students have no right to counsel for academic-dismissal or readmission hearings. Here, Plaintiff had no right to counsel, and the allegations of Wasserman preventing her attorney from attending the readmission hearing does not state a cause of action. (D.E. #10 ¶ 290-91). Further, her reliance on 34 CFR § 99.22 under FERPA is misplaced. (D.E. #10 at ¶ 909).[4] Because there is no federal law that would apply under the circumstances, Count VI must be dismissed.

## VII.   COUNT VII: THE ELEMENTS NECESSARY FOR A FRAUD CLAIM ARE NOT SATISFIED WITH ANY PARTICULARITY

In count VII, Plaintiff makes a Florida fraud claim presumably based on alleged misrepresentations about her academic performance in her student records. (D.E. #10 ¶¶ 924-26). How these pertain particularly to Wasserman is unclear, but, again, Plaintiff alleges Wasserman is being sued for fraud. (*Id*. ¶ 315). What Plaintiff has pled is seemingly a claim for fraudulent misrepresentation, and the required elements are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Yusem*, 44 So. 3d at 105; (D.E. #10 at ¶ 923). "Failure to allege a specific element of fraud in a complaint is fatal when challenged by a motion to dismiss." *Strack v. Fred Rawn Const., Inc.*, 908 So. 2d 563, 565 (Fla. 4th DCA 2005); *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808-09 (11th Cir. 2010)(affirming dismissal of fraudulent inducement claim based on failure to establish facts that reliance was reasonable). "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." *Besett v. Basnett*, 389 So.2d 995, 997 (Fla.1980).

---

[4] The allegations about what the FIU College of Law's Policies and Regulations permit in the hearing is immaterial as well. She alleges it was possible under § 1604(3) for there to be a situation in which her attorney could be present. (D.E. #10 ¶ 531). According to her, § 1604(3) states the meeting will be closed to any other person not on the Committee except "as agreed by the student and the Committee." (D.E. #10-1, Ex. 6). Plaintiff has not alleged the Committee at any time agreed for her counsel to be present at the meeting. Without that agreement, there was no requirement under the Policies and Regulations for Plaintiff's counsel to be at the academic hearing.

Allegations of fraud are subject to heightened pleading standards under Federal Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). Rule 9(b) requires fraud claims to specify the "who, what when, where, and how" of the alleged fraud. *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008). At minimum, to satisfy Rule 9(b), "the complaint must identify: '(1) precisely what statement were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of fraud.'" *Dimieri v. Medicis Pharmaceuticals Corp.*, No. 2:14-cv-176-FtM-38DNF, 2014 WL 3417364 at *7 (M.D. Fla. July 14, 2014) (citing *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)); *see also McLaren v. Celebrity Cruises, Inc.*, 2012 WL 1792632 at *10 (S.D. Fla. May 16, 2012) (dismissing negligent misrepresentation claim for failure to plead the alleged misrepresentations with particularity).

Plaintiff has not pled any false statement concerning a material fact attributable to Wasserman. The only statements alleged to in the Amended Complaint are Wasserman's statements made while teaching class and during the readmission hearing. *See* D.E. #10 ¶¶ 272-273, 294-303. Plaintiff has also not alleged any reliance on her part, in taking a statement from Wasserman as true, that led to a consequent injury because of that reliance. Because Plaintiff must plead each element of the fraud claim with specificity and has failed to do so, Count VII, as it pertains to Wasserman, must be dismissed.

## VIII.   COUNT VIII: THE UNDERLYING TORT REQUIREMENT BARS CIVIL CONSPIRACY AND THE INTRA-CORPORATE CONSPIRACY DOCTRINE PRECLUDES LIABILITY

In Count VIII, it is again unclear under which legal theory Plaintiff is attempting to bring a civil conspiracy claim. In any case, Plaintiff has specifically alleged Wasserman coordinated with other professors to academically dismiss Plaintiff because of her political affiliation. (D.E. #10 ¶ 283). If Plaintiff is bringing a state conspiracy claim, "Florida does not recognize civil conspiracy as a freestanding tort." *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018). "The gist of a civil conspiracy is not the conspiracy itself, but the underlying civil wrong occurring pursuant to the conspiracy and which results in the plaintiff's

damages." *Id*. (citing *Marriott Int'l, Inc. v. Am. Bridge Bahamas, Ltd.*, 193 So.3d 902, 909 (Fla. 3d DCA 2015)). That independent tort or wrong must "constitute a cause of action if the wrong were done by one person," *Phelan v. Lawhon*, 229 So. 3d 853, 858 (Fla. 3d DCA 2017), which effectively means where an alleged tort has been insufficiently pled or fails as a matter of law, it cannot be the basis of a conspiracy claim because that conspiracy claim relies of the viability of the underlying tort. *Buckner v. Lower Florida Keys Hosp. Dist*., 403 So. 2d 1025, 1027 (Fla. 3d DCA 1981). Here, Plaintiff has not identified the particular tort she purports to hold as the underlying tort allowing the conspiracy claim to survive.

Furthermore, if there is somehow a conspiracy claim that is properly pled, the intracorporate conspiracy doctrine precludes liability. *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)(en banc); *Dickerson v. Alachua County Com'n*, 200 F.3d 761, 767 (11th Cir. 2000). Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. This doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor." *Dickerson v. Alachua County Com'n*, 200 F.3d 761, 767 (11th Cir. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 603 (5th Cir. Nov. 1981)).

The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself. *See id.* at 767. Importantly, this doctrine is applied not only to private corporations but also to public, government entities. *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) *citing Dickerson,* 200 F.3d at 767. In the same way it is not possible for a person to conspire with himself, a single legal entity consisting of the corporation and its agents cannot conspire with itself. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). Here, there is no allegation Wasserman ever had any contact with The Board of Governors for the State University System of Florida ("BOG") or the U.S. Department of Education or had any knowledge of any alleged agreement between FIU BOT or BOG to confirm Plaintiff's dismissal. If the only facts alleged are coordinating with **only** FIU professors, the alleged conspiracy as it relates to Wasserman cannot be maintained.

IX.     **COUNT IX: NO FIDUCIARY DUTY EXISTS REQUIRING DISMISSAL**

To state a claim for breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach. See *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). Without an express agreement, a fiduciary relationship can be established where a party alleges "some degree of dependency on one side and some degree of an undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins*, 622 So.2d at 1065. A fiduciary relationship does not arise between a student and a university just because of the student's matriculated status. *Morrison v. Univ. of Miami*, 2016 WL 3129490 at *7 (S.D. Fla. 2016). By the same logic, it would not arise between a student and a professor.

Notably, a fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation." *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002). Thus, a typical example of the existence of a fiduciary duty is between an insurance broker or company and the insured. *See Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1280 (S.D. Fla. 2014); *see also Doe on Behalf of Doe v. Allstate Ins. Co.*, 653 So. 2d 371, 373–74 (Fla. 1995) ("In fulfilling its promissory obligation to defend, the insurer employs counsel for the insured, performs the pretrial investigation, and controls the insured's defense after a suit is filed on a claim. The insurer also makes decisions as to when and when not to offer or accept settlement of the claim."); *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994)(recognizing a fiduciary relationship between and bank and customer).

The duties Plaintiff alleges Wasserman had were to inform her of appeal or grievance rights, review grade accuracy, and investigate bias. (D.E. #10, ¶¶ 305-307). None of these allegations create the existence of a fiduciary duty. Plaintiff also has not expressly alleged a fiduciary duty. *See Crinnian v. Wakefield*, 2014 WL 12599821 at *3 (N.D. Ala. 2014) (dismissing a claim for breach of fiduciary duty because "[plaintiff] never expressly alleges that [defendant] owes a fiduciary duty to her in her individual capacity."). There is nothing in the Amended Complaint to show a special reliance on behalf of Plaintiff upon Wasserman, any kind of undertaking on Wasserman's behalf to counsel or protect Plaintiff, or any duty on Wasserman to act specially in Plaintiff's benefit. This is a professor-student relationship, the specific facts of which do not give rise to a fiduciary duty. Without a duty, there can be no breach.

**X.  COUNT X: EDUCATIONAL MALPRACTICE IS NOT A COGNIZABLE CLAIM AND AS A PUBLIC EMPLOYEE WASSERMAN IS SHIELDED BY FLA. STAT. §768.28**

Florida courts refuse to recognize a cause of action for educational malpractice, with Florida's Third District Court of Appeal first stating the lack of recognition in 1982. *Tubell,* 419 So.2d at 389. Sometimes a common-law negligence "claim is in essence one of educational malpractice, that is, failure to use reasonable care to provide an adequate education. This claim fails because Florida law recognizes no such cause of action." *C.P. v. Leon County Sch. Bd.*, 2005 WL 2133699 at *5 (N.D. Fla. 2005) *See, e.g., Fla. Dep't of Health & Rehab. Serv. v. B.J.M.*, 656 So.2d 906, 914 (Fla.1995) ("Courts, including those in Florida, have rejected claims of educational malpractice as a tort action for a variety of reasons, one being that it would offend the separation of powers between the three branches of government"); *Armstrong v. Data Processing Inst.*, 509 So.2d 1298, 1299 (Fla. 1st DCA 1987).

The allegations relating to this cause of action are based on academic decisions and conduct related to Plaintiff's performance in law school. In total, the allegations pertaining to Wasserman for negligence appear to allege Wasserman had a duty to grade using established standards, maintain blind grading, record grades accurately, investigate grade challenges, inform Plaintiff of grievance procedures, investigate professor bias, and carefully evaluate Plaintiff's readmission case. (*Id.* ¶¶ 988-90, 305-08). Count X amounts to claims of educational malpractice stemming from both Wasserman's grading, review, and subsequent denial of Plaintiff's petition for readmission to the law school.

Assuming there is a valid negligence claim pled, Wasserman is would otherwise be entitled to immunity under Florida Statute § 768.28(9)(a). *Elliott v. Dugger*, 579 So. 2d 827, 831 (Fla. 1st DCA 1991) ("768.28(9)(a) grants immunity to a state [employee] who merely acts with gross negligence and not the greater degree of culpability set forth in the statute"); *Kastritis v. City of Daytona Beach Shores*, 835 F. Supp. 2d 1200, 1225 (M.D. Fla. 2011) ("conduct meeting the "wanton and willful" standard in the context of § 768.28(9)(a), must be "worse than gross negligence" and "more reprehensible and unacceptable than mere intentional conduct"). Absent from the complaint is any allegation of bad-faith by Wasserman. Employees of public universities, acting within the scope of their employment, are therefore "clothed 'with individual immunity that is lost only as to torts committed in bad faith or with malicious purpose or in a manner exhibiting

wanton and willful disregard of human rights and safety.'" *Drudge v. City of Kissimmee*, 581 F. Supp. 2d 1176, 1195 (M.D. Fla. 2008) (quoting *Castellano v. Raynor,* 725 So.2d 1197, 1198 (Fla. 2d DCA 1999).

## XI.     COUNT XI: ABSOLUTE IMMUNITY BARS DEFAMATION[5]

Wasserman,  as a public official, enjoys absolute immunity for any alleged defamatory statements. Florida has accepted an expansive application of absolute immunity to statements made by public officials "in connection with the performance of the duties and responsibilities of their office." *McNayr v. Kelly*, 184 So. 2d 428, 433 (Fla. 1966); *Hauser v. Urchisin*, 231 So. 2d 6 (Fla. 1970)."Public officials who make statements within the scope of their duties are absolutely immune from suit for defamation." *Stephens v. Geoghegan*, 702 So. 2d 517, 522 (Fla. DCA 1997) (citing *City of Miami v. Wardlow*, 403 So. 2d 414, 415 (Fla. 1981)). This immunity "protects the statements of all public officials, regardless of the branch of government or the level of the official." *Monk*, 68 So. 3d at 319. All of the allegations against Wasserman individually relate to actions within the scope of his duties, therefore, the defamation claims fails as a matter of law.

Further, "[d]efamation under Florida law has these five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). For showing publication to a third party, a plaintiff "must allege the 'identity of the particular person to whom the remarks were made with a reasonable degree of certainty' to afford the defendant 'enough information to determine affirmative defenses.'" *Mennella v. Am. Airlines, Inc.*, 2019 WL 1429636 at \*4 (S.D. Fla. 2019).

---

[5] Plaintiff's attempt to circumvent the two-year statute of limitation for defamation in Florida is demonstrated when she claims that the claim "began to run on the date of her graduation, December 17, 2019." (D.E. #10, ¶116). Despite this allegation implying tolling, the law is clear. Accrual for a defamation claim begins on the date of first publication, not the date of discovery. *Norkin v. The Florida Bar*, 311 F. Supp. 3d 1299, 1304 (S.D. Fla. 2018); *see also Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan,* 629 So.2d 113, 114–15 (Fla. 1993) (citing Fla. Stat. § 770.07). It is unequivocal. The latest possible involvement by Wasserman would have been on the date she was denied readmission by FIU on June 2, 2017. (D.E. #10, ¶34, #10-1 Ex 8). This suit was filed July 16, 2020. The statute of limitations expired and she is over a year late to bring this claim.

Count XI, has no mention of Wasserman, nor is there any allegation about a statement Wasserman made to any third party, except for statements he made during the readmission hearing. Essentially, there is no identification of a defamatory statement from Wasserman nor to whom such a statement was made. Plaintiff appears to base her defamation claim from the FIU letter to another law school about her student status and the existence of her transcript. (D.E. #10 ¶ 1049-52). Neither of these is attributable to Wasserman. On the pleadings, the defamation claim fails because it does not meet any of the required elements, and it must be dismissed.

## XII.   OFFICIAL-CAPACITY CLAIMS ARE REDUNDANT

Suing Wasserman in his official-capacity is redundant as these suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). As such, courts in this Circuit dismiss official-capacity claims as redundant even when injunctive relief is sought. *Riles v. Augusta-Richmond County Comm'n*, CV 116-214, 2017 WL 3597488, at *3 (S.D. Ga. Aug. 21, 2017) ("Simply put, Plaintiff's official capacity claims against Defendants Smith and Houck are redundant of his claims against the County no matter the damages sought."); *Murray v. Birmingham Bd. of Educ.*, 2:13-CV-822-KOB, 2013 WL 5923725, at *2 (N.D. Ala. Oct. 31, 2013) ("Plaintiffs identify no legal authority declining to apply the rule in *Busby* where claims of injunctive relief exist, and the court is aware of none that would apply to the circumstances of this case).

Official-capacity suits operate the same under state law. "A suit against a defendant in his official capacity is, in actuality, a suit against the governmental entity which employs him." *Stephens v. Geoghegan*, 702 So. 2d 517, 527 (Fla. 2d DCA 1997); *see also* Fla. Stat. 768.28(9)(a). Thus, state-law tort claims made against individuals in their official capacity are claims against the city or state and redundant. *See Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359, 1369 (M.D. Fla. 1999; *Vasconez v. Hansell*, 871 F. Supp. 2d 1339, 1342 (M.D. Fla. 2012); *Hoffman v. Beseler*, WL 8751750 at *3 (M.D. Fla. 2017) (dismissing all state and federal claims against sheriff's deputies as redundant). Dismissal with prejudice against Wasserman must be granted since FIU BOT is in this suit.

WHEREFORE, HOWARD WASSERMAN, respectfully requests this honorable  Court grant this Motion to Dismiss the Amended Complaint and any other relief it deems appropriate.

I HEREBY CERTIFY that on this 2nd day of December, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> MARRERO & WYDLER
> *Counsel for Defendant*
> 2600 Douglas Road, PH-4
> Coral Gables, FL 33134
> (305) 446-5528
> (305) 446-0995 (fax)
>
> BY   /s/  Lourdes Espino Wydler
> OSCAR E. MARRERO
> F.B.N.:  372714
> oem@marrerolegal.com
> LOURDES ESPINO WYDLER
> F.B.N.:  719811
> lew@marrerolegal.com

**<u>SERVICE LIST</u>**

Diana McLaughlin, Esq.
10661 Airport Pulling Road, Suite 9
Naples, FL 34109
(239) 330-63332
drdina@dianamclaughlin.com
FBN:  84479
*Attorneys for Plaintiff*

JOHN S. LEINICKE
Assistant U.S. Attorney
UNITED STATES ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF FLORIDA
99 N.E. 4th Street
Miami, Florida  33132-2211
Office:  +1 305 961 9212
john.leinicke@usdoj.gov
*Attorneys for Defendants Department of Education and Secretary Devos*