UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:  1:20-cv-22942-KMM

CHRISTINA MCLAUGHLIN,

       Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES, et al.
       Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND
INCORPORATED MEMORANDUM OF LAW**

       Defendants, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES ("FIU BOT"), THE BOARD OF GOVERNORS FOR THE STATE UNIVERSITY SYSTEM OF FLORIDA ("BOG"), CLAUDIA PUIG, MARK B. ROSENBERG, R. ALEX ACOSTA, TAWIA BAIDOE ANSAH, JOYCELYN BROWN, ROSARIO L. SCHRIER, THOMAS E. BAKER, SCOTT F. NORBERG, NOAH WEISBORD, MARCY ROSENTHAL, NED C. LAUDENBACH[1], and IRIS ELIJAH, (collectively "Defendants"), by and through undersigned counsel pursuant to the Fed.R.Civ.P. and the S.D. Fla. Local Rules file this Motion to Dismiss the Amended Complaint and Incorporated Memorandum of Law and state:

1.      This is a purported civil rights action seeking $25 Million Dollars as well as other relief arising from Plaintiff's academic dismissal from Florida International University College of Law on May 19, 2017. (D.E. #10 at ¶¶ 103,145). The Amended Complaint alleges eleven (11) counts against seventeen (17) Defendants. Although unclear as to which claims are made against the Defendants, Plaintiff alleges ten (10) counts against these Defendants: Count I[2] – First Amendment violation brought pursuant to 42 U.S.C. § 1983; Count II - Due Process violations brought under 42 U.S.C. § 1983; Count III – Equal Protection violation brought under 42 U.S.C. § 1983; Count

_____

[1] The correct spelling for the following Defendants is: "MARCI ROSENTHAL" and "NED C. LAUTENBACH".

[2] Plaintiff labels her counts as "causes of action". For ease of reference, this Motion refers to each as "count". By the face of the caption, Count IV appears to only be made against the U.S. Department of Education.

V – education records violations; Count VI – denial of assistance to counsel; Count VII – fraud; Count VIII – civil conspiracy; Count IX – breach of fiduciary duty; Count X – negligence; and Count XI – defamation. Dismissal of the Amended Complaint in its entirety must be granted.

2.      The Amended Complaint, comprised of 115 pages plus 421 pages of exhibits, is an impermissible shotgun pleading which includes a myriad of conclusory allegations and immaterial facts, combines causes of actions under a single count, and asserts multiple claims against multiple defendants without specifying which of the defendants each claim is brought against, requiring dismissal under *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).

3.      The federal claims against the state entities, FIU BOT and BOG, as well as the Individuals named in their official capacity must be dismissed because the state is not a "person" under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995). The Eleventh Amendment bars any federal claims for monetary damages including punitive damages under this federal statute. *See Williams v. Bd. of Regents of Univ. Sys. Of Ga.*, 477 F.3d 1282, 1301 (11th Cir. 2007); *Gould v. Fla. Atl. Univ. Bd. of Trustees*, No. 10-81210-CIV, 2011 WL 13227893, at *2 (S.D. Fla. June 14, 2011). Moreover, because this entire suit is predicated on Plaintiff's academic dismissal, prospective relief permissible under *Ex parte Young*, 209 U.S. 123 (1908) is not sought in this case. Plaintiff has improperly alleged injunctive and declaratory relief to "adjudicate the legality of *past* conduct"—not an ongoing violation of federal law. *Summit Med. Associates, P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999).

4.      The official-capacity claims against the Individual Defendants are tantamount to claims against FIU BOT as well as BOG, which are redundant and require dismissal with prejudice. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *also Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991). All of the Individual Defendants are or were either employed by or agents of FIU BOT or BOG. (D.E. #10 at ¶¶ 165, 175, 197, 211, 230, 317, 340, 363, 398, 419, 442, 448). Regardless of the relief sought or whether the official-capacity claims are brought under federal or state law, they are, in actuality, claims against FIU BOT and BOG that are also named Defendants in this matter. *Riles v. Augusta-Richmond County Comm'n*, 2017 WL 3597488 at *3 (S.D. Ga. 2017); *Stephens v. Geoghegan*, 702 So. 2d 517, 527 (Fla. 2d DCA 1997); *See Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359, 1369 (M.D. Fla. 1999).

5.      Count I, claiming a violation of the First Amendment, is vaguely pled as it does not identify the theory upon which it is grounded: suppression of speech, retaliation, discrimination, or some other theory.[3] In this post-secondary educational setting, the count is also deficient because absent from the Amended Compliant is any specificity related to Plaintiff's protected speech or conduct actually known to each Defendant, without more than a conclusory allegation; thereby, failing to articulate a causal link for her academic dismissal and any events thereafter. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). *Smith v. Mosley*, 532 F.3d, 1270 (11th Cir. 2008); *see also Maggio v. Sipple*, 211 F.3d (11th Cir. 2000)(recognizing that First Amendment retaliation claims involve "legal determinations that are fact-specific"). The allegations do not show a plausibility that the Defendants caused her dismissal for anything other than her deficient academic performance, an area of judgment ill-suited for judicial review. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 87-90 (1978).

6.      Plaintiff's substantive and procedural due process claims in Count II do not rise to the level of a constitutional violation. First, Plaintiff did not have a substantive property interest in a continuing law school education. *See Doe v. Valencia Coll.*, 903 F.3d 1220 (11th Cir. 2018); *McKinney v. Pate,* 20 F.3d 1550 (11th Cir. 1994); *Ellison v. Bd. of Regents of Univ. Sys. of Georgia*, 2006 WL 664326 at *1 (S.D. Ga. 2006). Second, Plaintiff failed to seek all state remedies, which is fatal to her claim of insufficient procedure. *Watts v. Florida Intern. Univ.*, 495 F.3d 1289 (11th Cir. 2007).

7.      The Equal Protection claim in Count III must be dismissed because Plaintiff has not established she was a member of a protected class based on her political affiliation and has not identified similarly situated people who were treated more favorably than she, which are required

---

[3] Ironically, the notion that Plaintiff was systemically targeted "because she openly supported and volunteered for the Republican party, conservative candidates for local elections, and then candidate President Donald J. Trump" is unsupported in light of the fact that FIU BOT's Dean for the College of Law at the material time, RENE ALEX ACOSTA, was nominated to President Trump's Cabinet as the Secretary of Labor in early 2017 and confirmed by the U.S. Senate on April 27, 2017. (D.E. #10 at ¶¶ 1, 197). Notably, because of this timeline, Acosta was not present for the material allegations of the Complaint: as of his leaving, Plaintiff had not received her second-semester grades, had not been dismissed, had not had a readmission hearing, had not been in any alleged FERPA dispute, had not been allegedly defamed. Any claim against him is legally insufficient to withstand dismissal.

elements for the cause of action. *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170 (11th Cir. 2009); *Chandler v. Georgia Pub. Telecommunications Com'n*, 917 F.2d 486, 489 (11th Cir. 1990).

8.      Count V fails the Family Educational Rights and Privacy Act ("FERPA") does not provide for a private cause of action, and this Court lacks jurisdiction to hear it. *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).

9.      Plaintiff's purported denial of the assistance of counsel under federal law as pled in Count VI is equally unavailing as no such right exists under the circumstances pled. *Nash v. Auburn*, 812 F.2d 655, 664 (11th Cir. 1987); *Haberle v. University of Alabama, Birmingham* 803 F.2d 1536, 1539 (11th Cir. 1986).

10.      Sovereign immunity bars all of the state law torts alleged in Counts VII, Count VIII, Count IX, and Count XI. *See* § 786.28(9), Fla. Stat. Under Florida law, the state enjoys sovereign immunity and cannot be sued unless the Florida legislature has waived that privilege. *Zainulabeddin v. Univ. of S. Florida Bd. of Trustees*, 749 Fed. Appx. 776, 786 (11th Cir. 2018), *cert. denied,* 139 S. Ct. 2019 (2019). Since claims for fraud, civil conspiracy, breach of fiduciary duty, and defamation all require an element of malice, bad faith, or a knowing disregard, sovereign immunity has not been waived and therefore the claims must be dismissed. *Id.*; *Boggess v. School Board of Sarasota County*, 2008 WL 564641 at *5 (M.D. Fla. 2008); *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984)(waiver of sovereign immunity applies only to express written contracts).

11.      Moreover, Plaintiff's claim for civil conspiracy independently fails because no underlying tort is properly pled. Civil conspiracy in Florida is not a freestanding claim and requires an underlying tort. *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018). Plaintiff has not identified the alleged tortious conduct that was agreed upon by the Defendants, and if any tort has been alleged, it fails on its own merit, precluding a basis for a conspiracy. Additionally, Plaintiff's claim for breach of fiduciary duty must also be dismissed because the duty does not arise by way of student status at a graduate school. *Morrison v. Univ. of Miami*, 2016 WL 3129490 at *7 (S.D. Fla. 2016).

12.      Finally, Count X alleging negligence must also be dismissed as a matter of law because actually provide statutorily compliant pre-suit notice under Fla. Stat. § 768.28(6)(c). *See Woodburn v. State of Florida Dept. of Children and Family Services*, 854 F. Supp. 1184, 1208 (S.D. Fla. 2011)(citing *Levine v. Dade County Sch. Bd.*, 442 So. 2d 210, 213 (Fla. 1983)); *Fletcher*

*v. City of Miami,* 567 F. Supp. 2d 1389, 1393 (S. D. Fla. 2008) (dismissing claim against city where complaint failed to "cite Section 768.28(6)(a) or otherwise reference any attempt to provide the required statutory notice"). Under this Count, Plaintiff bases her claim on the state's academic conduct and decisions relating to her education. It is well-settled, that negligence claims are barred when premised on educational malpractice. *See Newman v. Socata SAS,* 924 F. Supp. 2d 1322, 1324-25 (11th Cir. 2013); *see also Rohn v. Palm Beach County School Bd.,* 2012 WL 6652940, at *3 (S.D. Fla. Dec. 21, 2012); *Tubell v. Dade Cnty. Pub. Sch.,* 419 So. 2d 388, 389 (Fla. 3d DCA 1982). Dismissal of all counts is appropriate.

## MEMORANDUM OF LAW

### *Dismissal Standard*

Under the Federal Rules of Civil Procedure, a First Amended Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A defendant may move to dismiss a First Amended Complaint for "failure to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a defendant's motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain enough factual allegation to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 570. The facts found in the First Amended Complaint must "state a claim to relief that is plausible on its face." *Id.*

This pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Supreme Court's holding in *Ashcroft v. Iqbal* requires the trial courts to "identify allegations of the First Amended Complaint that because of their conclusory nature are not entitled to the assumption of truth." *Spence-Jones v. Rundle,* 991 F. Supp. 2d 1221, 1238 (S.D. Fla. 2013) (citing *Iqbal,* 556 U.S. 662). Allegations "full of self-serving hyperbole, personal attacks, and formulaic, implausible conclusions" must be disregarded. *Id.* at 1224.

## I.    THE SHOTGUN PLEADING MUST BE DISMISSED

This Amended Complaint is flawed in the same way the Eleventh Circuit described various forms of "shotgun pleadings" in its in-depth analysis in *Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313, 1323 (11th Cir. 2015). Complaints that violate either Federal Rules of Civil Procedure 8(a)(2) or 10(b) or both "are often disparagingly referred to as 'shotgun pleadings.'" *Id.*

at 1320. The most common type of shotgun pleading incorporates all paragraphs into each subsequent count. *Id*. The three other typical types are complaints filled with "conclusory, vague, or immaterial facts", complaints that do not separate counts and prayers for relief, and complaints that assert multiple claims against multiple defendants without specifying attributable acts or omissions or which defendants the claims are brought against. *Id*. at 1321-23. The term also refers to pleadings that are "replete with factual allegations and rambling legal conclusions." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008). The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard. *Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir. 2001).

Each cause of action in the 115-page Amended Complaint (excluding 421 pages of exhibits) incorporates by reference Paragraphs 1-757. (D.E. #10 ¶¶ 758, 787, 856, 872, 895, 908, 922, 929, 947, 982, 1044). The prayer for relief is one single entry at the conclusion of the Amended Complaint. *Id*. at pp. 113-14. A complaint similar to the one at issue here was deemed a shotgun pleading in light of the single entry for relief, the incorporation of allegations throughout the counts, and the first cause of action starting on page 42. *Rayes v. Willingham*, 2016 WL 6080826 at *3 (M.D. Fla. 2016). In accordance with *Weiland*, the Amended Complaint also falls into the second and fourth prongs, given it is full of immaterial facts and unclear on who or what entity each claim is brought against. As an example, the captioned "First Cause of Action" includes: factual allegations; (D.E. #10 ¶¶ 767, 769, 776, and 778); is predicated on the Florida Constitution[4] and the First and Fourteenth Amendments of the U.S. Constitution; alleges a general violation of free-speech rights, but does not explain whether it is grounded in retaliation or other free-speech theories; fails to list exactly who the claim is brought against; and, alleges a private cause of action for FERPA violations under Florida law (*Id*. ¶¶ 773-75), but only identifies violations from FIU BOT and the Department of Education. (*Id*. ¶¶ 764, 770, 782). This is typical of the remaining causes of action. Plaintiff uses the term "Defendants" to refer to every named Defendant sixteen (16) times without regard to the plausibility of every named defendant being implicated. (*Id*. ¶¶ 100, 103, 850-51, 868-70, 906-07, 926, 930, 945, 978-79, 983, 985).

---

[4] Private causes of action under the Florida constitution are not recognized. *Tucker v. Resha*, 634 So. 2d 756, 758 (Fla. 1st DCA 1994), approved, 670 So. 2d 56 (Fla. 1996).

The Amended Complaint also repeats factual allegations incessantly and makes allegations irrelevant to any causes of action. The "summary" of the case before the section on jurisdiction and venue is 103 paragraphs which necessarily contains the same allegations in the remainder of the Amended Complaint. Plaintiff alleges the same purported failure to review her grades ten times. (D.E. #10 ¶¶ 33, 41-42, 45, 59, 125, 390, 557, 591). There are allegations about Plaintiff's presence at a speech from Barack Obama. (*Id.* ¶ 155). She alleges a law professor having a "sexual affair" with students. (*Id.* ¶¶ 38, 205, 408-411, 416).   Here, there is "a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324.[5] Though length in and of itself does not make a complaint deficient, here there are repeated allegations, irrelevant allegations, conclusions of law, and multiple claims levied against apparently every Defendant. The Amended Complaint fails to make a plain and short statement showing entitlement to relief. It does not put Defendants on notice of the particular claims and allegations against them. The Amended Complaint, in its entirety, must be dismissed as a matter of law.

## II.   FEDERAL CLAIMS AGAINST THE DEFENDANTS DO NOT SURVIVE DISMISSAL

### A. The State and Its Officials Are Not a Person Under 42 U.S.C. § 1983

All of the federal claims, Counts I, II, and III, are not actionable. Both FIU BOT and BOG are recognized as arms of the State of Florida. *See* § 1001.706, Fla. Stat. (2019); § 1001.72, Fla.

---

[5] The Amended Complaint expressly states Plaintiff did not have a sexual affair with Weisbord. (D.E. #10 ¶ 410). The allegations referencing the purported sexual affair, based on rumored hearsay, are unrelated to any claim, irrelevant to the case, scandalous, and they must be stricken. A "court may order stricken from any pleading ... any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Scandalous generally refers to an allegation that "unnecessarily reflects on the moral character of an individual or states anything that is repulsive language." *S.E.C. v. Lauer*, 2007 WL 1393917 at *1 (S.D. Fla. 2007). The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or confusing materials, and avoid delving into immaterial matters, and courts have broad discretion in determining whether to strike portions of a pleading. *Liberty Media Holdings, LLC v. Wintice Group, Inc.*, 2010 WL 2367227 at *1 (M.D. Fla. 2010); *Hutchings v. Fed. Ins. Co.*, 2008 WL 4186994 at *2 (M.D. Fla. 2008). As such striking Paragraphs 38, 205, 408-411, and 416 is appropriate.

Stat. (2019). It is well-settled, that Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties". *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Specifically, in *Will*, the Court held "neither a State **nor** its **officials** acting in their **official** capacities are 'persons' under § 1983". 491 U.S. at 71. *See also Lumpkin v. Attorney Gen., Fla.*, 703 F. App'x 715, 718 (11th Cir. 2017) (affirming dismissal of § 1983 claim because "the State of Florida is no 'person' for purposes of section 1983") (citing *Will*, 491 U.S. 58)); *Taylor v. Dep't of Pub. Safety*, 142 F. App'x 373, 374-75 (11th Cir. 2005) (affirming dismissal of § 1983 claims against state agencies because they are not "persons" for purposes of § 1983); *McGuire v. Fla. Lottery*, 520 F. App'x 850, 851 (11th Cir. 2013) (affirming dismissal of § 1983 complaint because the Florida Lottery does not constitute a "person" under § 1983 and enjoys immunity as a state agency pursuant to the Eleventh Amendment).

Without the State's (or a state agency's or instrumentality's) explicit waiver of immunity, the Eleventh Amendment bars any § 1983 claims. *Gould v. Fla. Atl. Univ. Bd. of Trustees*, No. 10-81210-CIV, 2011 WL 13227893, at *2 (S.D. Fla. June 14, 2011). In this case, FIU BOT and BOG, as state agencies or instrumentalities, have not waived immunity. *See also* Fla. Stat. § 768.28(2) ("state agencies or subdivisions"); Fla. Stat. § 768.28(18) ("No provision of this section, or of any other section of the Florida Statutes, whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court."); *see also Williams v. University System of Georgia*, 477 F.3d 1282, 1301-1302 (11th Cir. 2007)(affirming dismissal of student's § 1983 claims against university and board of regents as being barred by the Eleventh Amendment). Dismissal for FIU BOT and BOG must be granted.

Similarly, to the extent any federal claims are made against the Individual Defendants, dismissal is appropriate for CLAUDIA PUIG, MARK B. ROSENBERG, R. ALEX ACOSTA, TAWIA BAIDOE ANSAH, JOYCELYN BROWN, ROSARIO L. SCHRIER, THOMAS E. BAKER, SCOTT F. NORBERG, NOAH WEISBORD, MARCI ROSENTHAL, NED C. LAUTENBACH, and IRIS ELIJAH, because the claims are **only** made against them in their official capacities. *See generally* D.E. #10. "A state, a state agency, and a state official sued in his official capacity are not "persons" within the meaning of § 1983, thus damages are unavailable."

*Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995); *Grier v. Allen*, 2019 WL 4440130, at *9 (S.D. Ga. Aug. 15, 2019) (dismissing § 1983 official-capacity claims against Department of Correction employees on the basis they were not persons); *Anderson v. Bd. of Regents of Univ. Sys. of Georgia*, 2010 WL 427652 at *2 (N.D. Ga. 2010) (dismissing § 1983 official-capacity claims against state-university employees and officials because they were not persons).

### B. Sovereign Immunity Bars all Viable Claims as Prospective Relief Cannot Be Pled

Congress has never abrogated the states' Eleventh Amendment immunity for Section 1983 claims. *Williams v. Bd. of Regents of Univ. Sys. Of Ga.*, 477 F.3d 1282, 1301 (11th Cir. 2007). Plaintiff's claims for compensatory damages and punitive damages against the state are barred by the Eleventh Amendment. *See Bell-Babineaux v. Fla. Dep't of Juvenile Justice*, 2014 WL 281971 at *4 (M.D. Fla. 2014). Importantly, Plaintiff has not requested prospective injunctive relief, but rather retrospective relief. "First, the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law." *Summit Med. Associates, P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999). "In other words, a plaintiff may not use the doctrine to adjudicate the legality of *past* conduct." *Id.* (emphasis added).

This entire lawsuit revolves around Plaintiff's academic dismissal from FIU and cannot be subject to an ongoing constitutional violation. "*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the *past*, as well as on cases in which the relief against the state official directly ends the violation of federal law." *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986). There are no claims for prospective relief where a plaintiff "seek[s] either damages or declaratory judgment[s] as to *past* acts on the part of the defendants." *Williams v. Hillman*, CV 08-0081-KD-C, 2008 WL 11425746, at *3 (S.D. Ala. June 17, 2008). "Where . . . a plaintiff cannot show that she is likely to suffer future harm from the defendants' conduct, she 'does not have standing to seek prospective relief even if [s]he has suffered a past injury.'" *Weissenbach v. Tuscaloosa County Sch. Sys.*, 7:17-CV-001642-LSC, 2018 WL 5848047, at *3 (N.D. Ala. Nov. 8, 2018) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003). As such, dismissal with prejudice on the basis of Eleventh Amendment immunity is appropriate.

## III.   OFFICIAL CAPACITY CLAIMS AGAINST THE INDIVIDUALS ARE REDUNDANT AND MUST BE DISMISSED

Suing the Individual Defendants in their official capacities is redundant as official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)) (internal quotations omitted); *see also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant...."). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id*. (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

The official-capacity claims are redundant and must be dismissed because "any judgment against the government employee would actually be satisfied by the underlying government entity. As a result the plaintiff is not prejudiced by the dismissal." *Prickett v. DeKalb County*, 1998 WL 928308 at *2 (N.D. Ga. 1998). The presence of redundant defendants also diminishes judicial efficiency. *Id*. Here, there are two named government entities, FIU BOT and BOG, where the Individuals Defendants were either employed or served as agents in their official capacities. Each of the claims against each person in that official capacity is, in actuality, a claim against FIU BOT or the BOG, requiring dismissal.

Plaintiff has requested monetary and injunctive relief, but this does not change the redundancy analysis. Although unclear as to what relief pertains to which claim or Defendant, Plaintiff seeks injunctive and declarative relief in addition to damages. However, "there is no rule that a court make a distinction between the types of damages sought in assessing whether a claim for relief is duplicative under *Busby*." *Riles v. Augusta-Richmond County Comm'n*, 2017 WL 3597488, at *3 (S.D. Ga. 2017). "If such a distinction existed, one would expect courts applying *Busby* to dismiss only the money-damages claims against the government officials in their official capacities, while allowing the injunctive and declaratory claims to proceed to trial." *M.R. v. Bd. of Sch. Com'rs of Mobile County*, CIV.A. 11-0245-WS-C, 2012 WL 2931263, at *3 (S.D. Ala. July 18, 2012)(finding "[T]his case is about claims for injunctive relief against the Board, and plaintiffs cannot repackage those same claims against the Individual Defendants in their official capacities to bring them twice, at the cost of unnecessary redundancy, inefficiency, and risk of confusion."). These cases do not exist. *Id*.

As such, courts in this Circuit dismiss official-capacity claims as redundant even when injunctive relief is sought. *Riles v. Augusta-Richmond County Comm'n*, CV 116-214, 2017 WL 3597488, at *3 (S.D. Ga. Aug. 21, 2017) ("Simply put, Plaintiff's official capacity claims against Defendants Smith and Houck are redundant of his claims against the County no matter the damages sought."); *Daniel v. Huntsville City Bd. of Educ.*, 5:16-CV-1919-CLS, 2017 WL 1282319, at *4 (N.D. Ala. Apr. 6, 2017) ("[T]here is no case law support for plaintiff's argument that the official capacity claims for injunctive relief against the individual members of the Board should remain pending, even though they are redundant of the claims asserted against the Board itself.); *Murray v. Birmingham Bd. of Educ.*, 2:13-CV-822-KOB, 2013 WL 5923725, at *2 (N.D. Ala. Oct. 31, 2013) ("Plaintiffs identify no legal authority declining to apply the rule in *Busby* where claims of injunctive relief exist, and the court is aware of none that would apply to the circumstances of this case).

Official-capacity suits operate in the same manner under state law. "A suit against a defendant in his official capacity is, in actuality, a suit against the governmental entity which employs him." *Stephens v. Geoghegan*, 702 So. 2d 517, 527 (Fla. 2d DCA 1997); *see also* Fla. Stat. 768.28(9)(a). Thus, state-law tort claims made against individuals in their official capacity are claims against the city or state and redundant. *See Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359, 1369 (M.D. Fla. 1999) (noting the true defendant in a case in which police officers were sued in their official capacities for battery, false arrest, and negligent and intentional infliction of emotional distress was the city employing the officers); *Vasconez v. Hansell*, 871 F. Supp. 2d 1339, 1342 (M.D. Fla. 2012) (dismissing state-law claims against a sheriff because the exclusive remedy under Florida law was a suit against the government entity); *Hoffman v. Beseler*, WL 8751750 at *3 (M.D. Fla. 2017) (dismissing all state and federal claims against sheriff's deputies as redundant); *Braden Woods Homeowners Ass'n, Inc. v. Mavard Trading, Ltd.*, 277 So. 3d 664, 671 (Fla. 2d DCA 2019)("Plaintiffs are not seeking damages, and they are seeking the same injunctive and declaratory relief against Barnott and the County [and] . . . the suit against Barnott in his official capacity is redundant, and he would be bound as an employee of the County by any injunctive or declaratory relief granted."). Dismissal with prejudice against each Individual Defendant must be granted.

## IV.   COUNT I: PLAINTIFF HAS NOT ALLEGED ANY PROTECTED ACTIVITY OR A CAUSAL CONNECTION BETWEEN ANY ACTIVITY AND HER DISMISSAL

The immediate problem with Plaintiff's First Amendment cause of action is it is unclear exactly who it is levied against and on which First Amendment theory it stands. There is no specification whether it is premised on a suppression of speech, retaliation, discrimination, or some other theory. First Amendment rights of students and teachers must be "applied in light of the special characteristics of the school environment." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). But often the issue "lies in the area where students in the exercise of First Amendment rights collide with the rules of the school authorities." *Id.*

Under an education-setting First Amendment theory, Plaintiff has not alleged any protected expression or conduct. Plaintiff has simply generally alleged she was a "Trump supporter" and was known as such. (D.E. #10 ¶¶ 156, 285). Constitutionally protected First Amendment expression requires something overt or at least identifiable in this setting. This includes conduct such as wearing a black armband to school in protest of the war in Vietnam and being suspended from school for doing so. *Tinker*, 393 U.S. 503, 504 (1969); s*ee also Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (holding students "cannot be punished merely for expressing their personal views on the school premises" but had not had their rights violated when the school deleted portions of the school newspaper); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1260 (11th Cir. 2004) (student's expressive conduct was refusing to recite the pledge of allegiance but instead stand silent with a fist raised); *Denno v. Sch. Bd. of Volusia County, Fla.,* 218 F.3d 1267, 1274 (11th Cir. 2000) (student brought to school and displayed a Confederate flag and was punished for doing so); *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 685 (1986) (student was not engaging in protected speech when he gave a profanity-laden graduation speech).

Notably, "[a] university classroom is not an open public forum during instructional time" and it is well established educators have broad discretion in the areas of curriculum and grading. *Keeton v. Anderson-Wiley*, 664 F.3d 865, 872 (11th Cir. 2011); *Hazelwood Sch. Dist.*, 484 U.S. at 271. As such, "the decision of an individual professor as to the proper grade for a student in his course" is a determination that "requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial ... decisionmaking." *Board of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 90 (1978). "In cases under § 1983 involving educational institutions, federal district courts do not sit as super schoolboards [or] as a super doctoral faculty committee." *Kashani v. Purdue Univ.*, 763 F.Supp. 995, 997 (N.D. Ind. 1991). Plaintiff has not

alleged any on-campus speech since she "never demonstrated her political beliefs on campus", but she also has not established the constitutionally protected speech. (D.E. #10 ¶1).

Under a First Amendment retaliation theory, Plaintiff must "show that (1) her speech was constitutionally protected; (2) she suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). To establish a causal connection, the plaintiff must show the defendant was subjectively motivated to take the adverse action because of the protected speech. *Smith v. Mosley*, 532 F.3d, 1270, 1278 (11th Cir. 2008). First Amendment claims of adverse conduct related to political association almost always occur in an employment context. *See e.g. Holley v. Seminole County Sch. Dist.*, 755 F.2d 1492, 1500 (11th Cir. 1985); *Branti v. Finkel*, 445 U.S. 507, 518 (1980). The elements are almost the same, requiring a showing of a constitutionally protected conduct, an adverse employment action, and a causal relationship between the protected conduct and the adverse employment action. *Redding v. Tuggle*, 2007 WL 2462641 at *20 (N.D. Ga. 2007). Causation requires a showing that the individual who made the employment decision knew of the protected activity. *Redding v. Tuggle*, 2007 WL 2462641 at *22 (N.D. Ga. 2007).

Here, Plaintiff runs into the same problem in that she cannot satisfy the first required element that her speech was constitutionally protected. Plaintiff alleges "[I]t became plainly evident to all the surrounding classmates that Ms. McLaughlin was a Donald Trump supporter." (D.E. #10 ¶ 156). This is not enough to demonstrate a First Amendment violation. She alleges in a conclusory manner that Individual Defendants (professors and administrators of FIU BOT) knew of her support for Donald Trump or Republicans, generally. (*Id.* ¶¶ 324, 353, 372, 406, 765, 767). In fact, the Amended Complaint is absent of any specific allegation that anyone heard or saw any specific political statement made by Plaintiff that may have been constitutionally protected. Also, while she makes a claim for a First Amendment violation against BOG, LAUTENBACH, and ELIJAH, there is absolutely **no** allegation of the kind supporting the claim even in a conclusory way. As such, there is no plausible causal relationship between any purported adverse conduct and any supposed protected speech. The sole motivating factor for Plaintiff's grades and resultant academic dismissal was her academic performance.

## V.   <u>COUNT II: DUE PROCESS CLAIMS FAIL BECAUSE THERE IS NOT A RECOGNIZED FUNDAMENTAL PROPERTY RIGHT IN CONTINUED POST-</u>

**SECONDARY EDUCATION AND PLAINTIFF DID NOT EXHAUST HER STATE REMEDIES**

**a. Substantive Due Process Rights**

Any recovery under § 1983 on substantive due process grounds is barred because the right to post-secondary educational enrollment is not encompassed in the "fundamental rights" protected by the United States Constitution. *See McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir. 1994). Substantive rights under the Fourteenth Amendment's Due Process Clause only "protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *Id.* (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). To have a substantive due process claim, Plaintiff must have been denied a substantive right created by the Constitution. *McKinney*, 20 F.3d at 1556. It is clear in the Eleventh Circuit that there is no substantive due process right to continued post-secondary education in Florida as it is not recognized. These rights are created by state tort and/or employment law, if at all, and therefore are not fundamental rights created by the Constitution. *Id.* at 1556-60.

Students in a public university do not have a fundamental constitutional right to continued enrollment despite Plaintiff's contention. *Doe v. Valencia Coll.*, 903 F.3d 1220, 1235 (11th Cir. 2018) (citing *Plyler v. Doe*, 457 U.S. 202, 221 (1982). "No court has recognized a substantive property or liberty interest in a college education. Courts instead have observed that 'concerns of federalism, judicial capacity, and academic freedom counsel against the recognition of such an interest.'" *Ellison v. Board of Regents of University of System of Georgia*, 2006 WL 664326 at *1 (S.D. Ga. 2006) (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 251 n. 2 (6th Cir. 2003). "Considerations of profound importance counsel restrained judicial review of the substance of academic decisions." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). "A claim to a property right is dubious at best [and] [e]ven if one assumes the existence of a property right, however, not every such right is entitled to the protection of substantive due process." *Id.* at 229 (Powell, concurring). "The interest asserted by respondent [of continued enrollment] is essentially a state-law contract right. It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution." *Id.* at 229-30.[6]

---

[6] As alleged in Paragraph 3, Plaintiff's reliance on *Barnes v. Zaccari*, 669 F.3d 1295, 1304 (11th Cir. 2012), is misplaced because it found a protected property interest under Georgia law where the state university's own policies allowed for disciplinary sanctions only for cause. *Id.* Thus,

**b. Procedural Due Process Rights**

"[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "Because a violation of procedural due process is not complete 'unless and until [a] State fails to provide due process[,] the state may cure a procedural deprivation by providing a later procedural remedy.'" *Watts v. Florida Intern. Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007)(quoting *McKinney*, 20 F.3d at 1557). A procedural due process violation becomes actionable "[o]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation." *Id.*

The Plaintiff has made no allegation that she was denied relief from these procedural deficiencies in a Florida state court. (*See* D.E. #10 at ¶ 112). Because Plaintiff has not taken advantage of these processes, her claim is not yet "ripe". *McKinney*, 20 F.3d at 1560; *see also Hunt v. City of Mulberry*, 173 F. Supp. 2d 1288, 1293 (M.D. Fla. 2001) (dismissing with prejudice a due process claim on the Plaintiff's failure to seek state court judicial review with an insufficient explanation for the failure to do so). Like *McKinney*, Plaintiff has not taken advantage of any available state remedies, instead opting to sue in federal court. 20 F.3d at 1563.

The appropriate remedy would have been to file a petition for certiorari upon the final decision of the final agency action to review the academic dismissal decision by FIU. "It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (citations omitted). However, she failed to avail herself to the process provided in state court. Therefore, she is barred from bringing this claim in federal court and it must be dismissed with prejudice.

**VI.**   **COUNT III: PLAINTIFF IS NOT A MEMBER OF A PROTECTED CLASS AND HAS NOT IDENTIFIED SIMILARLY SITUATED COMPARATORS BARRING THE EQUAL PROTECTION CLAIMS**

Plaintiff's primary equal protection claim is she was treated unfavorably because of her conservative political viewpoint. This is mostly a restatement of her First Amendment Claim and

"[U]ntil a student violate[d] [the policy], that student ha[d] a legitimate claim of entitlement to continued enrollment . . . under Georgia law." *Id.* at 1305.

does not constitute its own cause of action under the doctrine of equal protection. To the extent Plaintiff contends she was treated differently "because of her expressive activity, that claim arises under the First Amendment." *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997). *See, e.g., Thompson v. City of Starkville*, 901 F.2d 456, 468 (5th Cir.1990) (dismissing plaintiff's equal protection claim in retaliation case because it "amounts to no more than a restatement of his First Amendment claim"). "A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause." *Watkins*, 105 F.3d at 1354. Plaintiff also has not alleged similarly situated students who exercised their First Amendment rights were not retaliated against, which is fatal to her claim. *Grainger v. Worley*, 2005 WL 8175765 at *14 (M.D. Ala. 2005).

Plaintiff's equal protection violation is based on holding conservative political beliefs rather than being a member of a protected class. A "plaintiff must prove that he was discriminated against by establishing that other similarly-situated individuals outside of his protected class were treated more favorably." *Battle*, 559 F.3d at 1180. Specifically, a plaintiff must allege she "was discriminated against on account of [her] membership in an identifiable or protected class, such as race, religion, sex, or national origin." *Alford v. Consolidated Gov't of Columbus, Ga.*, 438 Fed. Appx. 837, 839 (11th Cir. 2011) (citing *Sweet v. Secretary Dep't of Corrs.,* 467 F.3d 1311, 1318-19 (11th Cir. 2006)).

Plaintiff has not alleged she was part of a protected class. Equal protection jurisprudence has premised itself primarily on discrimination based on race, gender, and national origin. *See Gratz v. Bollinger*, 539 U.S. 244 (2003); *Rollins v. Board of Trustees of Univ. of Ala.*, 647 F. App'x 924, 938 (11th Cir. 2016); *Carr v. Board of Regents of Univ. Syst. of Ga.*, 249 F. App'x 146, 148 (11th Cir. 2007); *Lambert v. Bd. of Trustees of Univ. of Alabama*, 2019 WL 339178 at *9 (N.D. Ala. 2019); *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 16–17 (1973). Political affiliation, or the status of being conservative or liberal, or Republican or Democrat, or in this case a Donald Trump supporter prior to election, is not explicitly a protected class for equal protection purposes. The Eleventh Circuit held two members of the Libertarian Party suing under equal protection to include themselves in a televised debate that featured only a Republican and Democrat nominee were not members of a protected class. *Chandler v. Georgia Pub. Telecommunications Com'n*, 917 F.2d 486, 489 (11th Cir. 1990); *see also Shuler v. Swatek*, 2011 WL 13187278 at *2 n. 3 (N.D. Ala. 2011) ("While Democrats in Alabama are indeed outnumbered . . . there is no support for the notion that Democrats are a protected class, even in Alabama.").

Even assuming political affiliation would somehow be deemed a protected class, the Amended Complaint also fails to identify any comparators or similarly situated individuals who were treated more favorably. "If a plaintiff fails to show the existence of a similarly-situated [person], judgment as a matter of law is appropriate where no other plausible allegation of discrimination is present." *Arafat v. Sch. Bd. of Broward County*, 549 Fed. Appx. 872, 874 (11th Cir. 2013). Therefore, as a matter of law, in light of Plaintiff's lack of protected status on the basis of these facts, the claims must be dismissed with prejudice.

## VII.   COUNT V: NO ACTION IN THIS COURT CAN BE MAINTAINED FOR VIOLATIONS RELATED TO FERPA UNDER FEDERAL OR STATE LAW

Plaintiff alleges violations of her rights under FERPA, mainly contending FIU BOT has not complied with the production of "educational records" or allowed for a FERPA hearing and BOG has similarly failed to provide access. (D.E. #10 ¶¶ 41, 99, 563, 575-79, 899-904). To the extent Plaintiff is asserting causes of action via FERPA against Defendants, the Court does not have jurisdiction to hear such claims because FERPA does not create a private right of action. *Gonzaga Univ.*, 536 U.S. at 287. FERPA "lack[s] the sort of rights-creating language critical to showing the requisite congressional intent to create new rights" and rests its sole enforcement mechanism with the Secretary of Education. *Id*. at 287-288. The Secretary is directed to "deal with violations," not district courts. *Id*. at 288. Upon this holding and reasoning, district courts in this circuit have routinely dismissed claims based on FERPA violations. *Warren v. DeVry Univ., Inc.*, 2019 WL 2344144 at *1 (N.D. Ga. 2019), (FERPA "permit[s] no private cause of action."); *Davis v. Broward County, Fla.*, 2012 WL 279433 at *9 (S.D. Fla. 2012) ("the Act does not confer a private cause of action."); *Melinda v. DeKalb County Sch. Dist.*, 2009 WL 10699686 at *8 (N.D. Ga. 2009) ("individuals are not entitled to maintain private causes of action for violations of FERPA."); *Steven H. v. Duval County Sch. Bd.*, 1999 WL 1427666 at *1 (M.D. Fla. 1999); *A.A. v. Houston County Sch. Dist.,* 2006 WL 1193416, at *1 (M.D. Ga. 2006) ("To the extent Plaintiffs are asserting a claim pursuant to [FERPA], the Supreme Court has held there is no private right of action available under FERPA.").

As far as Plaintiff claims a right pursuant to Fla. Stat. § 1002.22, such a right also does not exist in this case. (D.E. #10 at ¶ 897). Section 1002.22(4) provides "[i]f any official or employee of an institution refuses to comply with this section, the aggrieved parent or student has an immediate right to bring an action in circuit court to enforce his or her rights by injunction." Fla.

Stat. § 1002.22(4). That same chapter defines an institution as "any public school, center, institution, or other entity that is part of Florida's education system under [Section] 1000.04(1), (3), and (4)." Fla. Stat. § 1002.22(1)(b). Those respective subsections 1, 3, and 4 refer to Florida K-12 schools, Florida School for the Deaf and Blind, and The Florida Virtual School. Fla. Stat. § 1000.04(1), (3), (4). The purposely **omitted** subsection (2) includes **state universities**. Fla. Stat. § 1000.04(2) ("Public postsecondary educational institutions include workforce education; Florida College System institutions; state universities; and all other state-supported postsecondary educational institutions that are authorized and established by law."). So, the right to bring an action in circuit court found in Plaintiff's cited statute does not apply to disputes with state universities. An agency such as BOG is also not listed as an institution for purposes of § 1000.04. Plaintiff has no right to bring this claim. The same applies to any claim pursuant to Fla. Stat. § 1002.225 as BOG is not a "postsecondary educational institution". Plaintiff has failed to state a claim for which relief can be granted, and such claims must be dismissed with prejudice.

## VIII.   COUNT VI: PLAINTIFF WAS NOT ENTITLED TO COUNSEL UNDER ANY FEDERAL LAW

This Count is particularly difficult to discern as reliance on 34 CFR § 99.22 under FERPA is again misplaced. (D.E. #10 at ¶ 909). Students who face disciplinary proceedings need only be granted a "right to respond" to the relevant charges, and the procedural rights of such petitioners "are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial." *Nash*, 812 F.2d at 664. Disciplinary proceedings do not "afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Goss v. Lopez*, 419 U.S. 565, 583 (1975). And students are due even less procedural protections when they face academic dismissals. *Haberle v. University of Alabama, Birmingham* 803 F.2d 1536, 1539 (11th Cir. 1986). So, there is no caselaw recognizing a right to counsel in disciplinary- or academic-dismissal proceedings. "Classrooms are not courtrooms, and the law does not treat them as such." *Heenan v. Rhodes*, 757 F. Supp. 2d 1229, 1243 (M.D. Ala. 2010). Indeed, "[w]here basic fairness is preserved, the [Circuit] has not required the cross-examination of witnesses and a full adversary proceeding." *Nash*, 812 F.2d at 664. "[T]he great majority of cases support the conclusion that students facing disciplinary charges have no absolute right to have an attorney present their case." *Nash v. Auburn*, 621 F.Supp. 948, 953 (M.D. Ala. 1985) (collecting cases).

The allegations about what the FIU College of Law's Policies and Regulations permit in the hearing is immaterial as well. She alleges it was possible under § 1604(3) for there to be a situation in which her attorney could be present. (D.E. #10 ¶ 531). According to her, § 1604(3) states the meeting will be closed to any other person not on the Committee except "as agreed by the student and the Committee." (D.E. #10-1,  Ex. 6). Plaintiff has not alleged the Committee at any time agreed for her counsel to be present at the meeting. Without that agreement, there was no requirement under the Policies and Regulations for Plaintiff's counsel to be at the academic hearing. Because there is no federal law that would apply under the circumstances, Count VI must be dismissed.

## IX.   SOVEREIGN IMMUNITY BARS THE STATE LAW TORTS

Fla. Stat. § 768.28(9)(a) provides sovereign immunity to state entities for acts committed by governmental officials who are acting outside the course and scope of the employment or who are acting with "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Under Florida law, the state and its agencies have sovereign immunity and cannot be sued unless the Florida legislature has waived that privilege. *Zainulabeddin v. Univ. of S. Florida Bd. of Trustees*, 749 Fed. Appx. 776, 786 (11th Cir. 2018), *cert. denied,* 139 S. Ct. 2019 (2019). Although Florida has generally waived immunity for torts, it has retained immunity for torts allegedly committed in bad faith. *Id.* citing Fla. Stat. § 768.28(9).

### A. Counts VII, VIII, and XI: Fraud, Civil Conspiracy, and Defamation[7]

The counts that inherently are based on bad faith like fraud, civil conspiracy, and defamation require dismissal against the Defendants as a matter of law. Count VIII because it generally alleges and vaguely alleges fraud contrary to the "particularity" requirements found in Fed. R. Civ. P. 9(b); it incorrectly cites to the "Florida False Claims Act" under Fla. Stat. § 68.082(2)(b); and, it is otherwise precluded by sovereign immunity. *See* (D.E. #10 at ¶ 925). This

---

[7] Plaintiff's attempt to circumvent the two-year statute of limitation for defamation in Florida is demonstrated when she claims that the claim "began to run on the date of her graduation, December 17, 2019." (D.E. #10, ¶116). Despite this allegation implying tolling, the law is clear. Accrual for a defamation claim begins on the date of first publication, not the date of discovery. *Norkin v. The Florida Bar,* 311 F. Supp. 3d 1299, 1304 (S.D. Fla. 2018); *see also Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan,* 629 So.2d 113, 114–15 (Fla. 1993) (citing Fla. Stat. § 770.07).

is not a *qui tam* action and it appears Plaintiff misunderstands the intent of the statute while still referencing common law elements for fraud. *Id.* at ¶ 923. Under Florida law, bad faith must always be considered a necessary element of fraud. *Parker v. State of Florida Bd. Of Regents ex rel. Florida State University*, 724 So. 2d 163, 168 (Fla. 1st DCA 1998)(affirming that sovereign immunity protected Board from fraudulent misrepresentation because it was based on bad faith). There is simply no conceivable basis on how this case falls within the cited Florida statute because there is no case in this Circuit finding fraud against a state entity involving an academically dismissed student. In fact, the Eleventh Circuit specifically affirmed that sovereign immunity would apply in favor of another Florida state university in a negligent misrepresentation claim "if based on a theory of bad faith…because Florida has not waived immunity for torts involving fraud." *Zainulabeddin*, 749 Fed. Appx. at 786; *see also Cardwell v. Auburn University Montgomery*, 941 F.Supp.2d 1322, 1328-29  (M.D. Ala. 2013) Sovereign immunity shields the state from liability for actions done in bad faith or with a malicious purpose under Fla. Stat. § 768.28(9)(a). The claims against the Defendants must be dismissed.

Similarly, Plaintiff's civil conspiracy count is predicated upon "fraud" and requires the application of Florida's sovereign immunity for the Defendants. Specifically, Plaintiff claims: "Defendants conspired to devise a fraudulent and unconstitutional grading scheme to cause Ms. McLaughlin an academic expulsion." (D.E. #10 at ¶ 930). The allegations also include efforts to "conceal" and engage in a cover-up of "malfeasance". (*Id.* at ¶ 935, 938, 944). As such, the same sovereign immunity rationale applies since it is based upon fraud and dismissal of this claim must be granted.[8] *See supra.*

---

[8] Dismissal of the civil conspiracy count is required because no underlying tort has been properly pled. "Florida does not recognize civil conspiracy as a freestanding tort." *Banco de los Trabajadores,* 237 So. 3d at 1136. "The gist of a civil conspiracy is not the conspiracy itself, but the underlying civil wrong occurring pursuant to the conspiracy and which results in the plaintiff's damages." *Id.* (citing *Marriott Int'l, Inc. v. Am. Bridge Bahamas, Ltd.,* 193 So. 3d 902, 909 (Fla. 3d DCA 2015)). "The conspiracy is merely the vehicle by which the underlying tort was committed, and the allegations of conspiracy permit the plaintiff to hold each conspirator jointly liable for the actions of the coconspirators." *Tejera v. Lincoln Lending Services, LLC,* 271 So. 3d 97, 103 (Fla. 3d DCA 2019). That independent tort or wrong must "constitute a cause of action if there were done by one person," *Phelan v. Lawhon*, 229 So. 3d 853, 858 (Fla. 3d DCA 2017), which effectively means where an alleged tort has been insufficiently pled or fails as a matter of law, it cannot be the basis of a conspiracy claim because that conspiracy claim relies of the viability of the underlying tort. *Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So. 2d 1025, 1027 (Fla. 3d

Sovereign immunity bars the defamation claim in Count XI which confusingly appears to only be made against FIU within the Count. *See generally* D.E. #10 ¶¶ 1044-64. However, incorporated in the count are the allegations against the Defendants claiming "defamation of character" (D.E. #10 at ¶¶ 195, 209, 228, 226, 338, 361, 396, 417, 439, 459). "Pleading malice in a defamation action will bar recovery against a state agency pursuant to sovereign immunity under [Florida Statute] 768.28(9)(a)." *Boggess v. School Board of Sarasota County*, 2008 WL 564641 at *5 (M.D. Fla. 2008). Plaintiff alleges FIU BOT's publication was done with reckless disregard for the truth and a malicious intent. (D.E. #10 ¶¶ 1056, 1059).[9] The defamation claim is similarly barred.

## B. Count IX: Breach of Fiduciary Duty

Plaintiff alleges a number of reasons why the Defendants purportedly breached a fiduciary duty in Count IX; however, none of the allegations or exhibits present an express written contract.[10] In *Pan-Am Tobacco*, the Florida Supreme Court made it clear that § 768.28, Florida Statutes only waived sovereign immunity with respect to breaches of express written contracts. *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4 (Fla. 1985). Only those actions based on an express written contract and any express or implied covenants stemming from such written contracts may be brought against a state agency. *Id.; see also Champagne-Webber, Inc. v. City of*

---

[9] Interestingly, the status letter provided by FIU dated June 9, 2017 specifically states that FIU takes "no position as to whether Ms. Laughlin can or cannot complete the course of study at your school should she be admitted." (D.E. #10-1 at p.77).

DCA 1981). Here, it is unclear what underlying tort, if any, Plaintiff is alleging for her civil conspiracy claim. Plaintiff does mention tortious acts several times in a conclusory way, but these do not shed light upon which tort Plaintiff is basing her conspiracy claim. (*Id.* ¶¶ 177, 943). If the underlying tort relates to one of Plaintiff's causes of action, Plaintiff has not stated valid causes in any of them, let alone one quantifying as an underlying state tort.

[10] None of the allegations in the count also provide a legal basis to support such a duty especially in light of two cases from this Court recognizing that a university does not owe a fiduciary duty to its students solely based on their status as students. This Court has held that "the greater weight of authority appears to support . . . that a fiduciary duty does not simply arise because of students' status." *Morrison*, 2016 WL 3129490 at *7 (listing cases); *see also Orzechowitz v. Nova Se. Univ.*, 2014 WL 1329890 at *3 (S.D. Fla. 2014) ("The parties have not cited, and the undersigned has been unable to find, a case establishing a fiduciary relationship between a student and a university under Florida law."). There did not arise a fiduciary duty simply because Plaintiff was a matriculated graduate student.

*Ft. Lauderdale*, 519 So. 2d 696, 698 (Fla. 4th DCA 1988). In *Champagne-Webber*, a Florida appellate court held that the trial court correctly dismissed a quantum meruit count because the decision in *Pan-Am Tobacco* bars implied in fact contract claims against the sovereign. *Champagne-Webber, Inc.,* 519 So. 2d at 697. Similarly, another Florida appellate court held that the complaint was properly dismissed below on the basis of sovereign immunity and the failure to allege an express written contract. *Charity v. Board of Regents of the Div. of Universities of the Florida Dept. of Educ.*, 698 So.2d 907, 908 (Fla. 1st DCA 1997). Consistent with Fla. Stat. § 768.28, sovereign immunity applies to this claim when a written express contract supporting a fiduciary duty by any of the Defendants does not exist.

**X**.     **COUNT X: NEGLIGENCE FAILS BECAUSE PLAINTIFF DID NOT SATISFY STATUTORY COMPLIANCE AND EDUCATIONAL MALPRACTICE CLAIMS ARE NOT RECOGNIZED IN FLORIDA**

Under Count X of the Amended Complaint, Plaintiff brings a claim of negligence against Defendants alleging that they were negligent in a variety of ways relating to Plaintiff's time as a student at FIU and issues related to her complaints about her education records or education. *See generally* D.E. #10 ¶¶ 985-1043. However, Plaintiff has failed to satisfy the pre-suit notice requirements of Fla. Stat. § 768.28 for the state entities. Additionally, Count X also does not state a proper cause of action as the allegations amount to a claim of educational malpractice, which is prohibited under Florida law.

**A. Plaintiff has not complied with the pre-suit notice requirements of Fla. Stat. § 768.28**

In order for the limited waiver to apply against the state, a plaintiff must strictly comply with all of the statute's notice requirements as a condition precedent to filing suit and allege such compliance in the complaint. *See Woodburn v. State of Florida Dept. of Children and Family Services,* 854 F. Supp. 1184, 1208 (S.D. Fla. 2011) (citing *Levine v. Dade County Sch. Bd.*, 442 So. 2d 210, 213 (Fla. 1983)); *Fletcher v. City of Miami,* 567 F. Supp. 2d 1389, 1393 (S. D. Fla. 2008).

The Amended Complaint lacks any allegation on Plaintiff's compliance with the pre-suit notice requirements of Fla. Stat. § 768.28. A plaintiff must strictly comply with all of the statute's notice requirements as a condition precedent to filing suit and allege such compliance in the complaint. *See Woodburn*, 854 F. Supp. at 1208. Plaintiff has only generally alleged her notices of intent to commence litigation. (D.E. # 10 ¶¶ 130, 422. 692, 910). She also attached the notices.

(D.E. #10 at Ex. 13, 28, 36). Based on the face of these notices, the Plaintiff's date of birth, place of birth, social security number, or information of any unpaid prior adjudicated claim against the State, as required by § 768.28(6)(c). *See Fletcher v. City of Miami,* 567 F. Supp. 2d 1389, 1393 (S.D. Fla. 2008) (dismissing claim against city where complaint failed to "cite Section 768.28(6)(a) or otherwise reference any attempt to provide the required statutory notice").

### B. Educational malpractice is not a cognizable cause of action

Even if Plaintiff were to provide pre-suit notice as required under Fla. Stat. § 768.28 for the state entities, Count X is still subject to dismissal for failure to state a proper cause of action. It is well established by both Florida, as well as federal courts interpreting state law, that Florida does not recognize negligence claims based on educational malpractice. *See Newman v. Socata SAS,* 924 F. Supp. 2d 1322, 1324-25 (11th Cir. 2013); *see also Rohn v. Palm Beach County School Bd.,* 2012 WL 6652940, at *3 (S.D. Fla. Dec. 21, 2012); *Tubell v. Dade Cnty. Pub. Sch.,* 419 So. 2d 388, 389 (Fla. 3d DCA 1982). Here, the allegations of Count X are generally premised on academic decisions and conduct relating to Plaintiff's enrollment or the evaluation of her complaints related to her education at FIU.

Because negligence founded on educational malpractice is not a cognizable cause of action, Count X must be dismissed with prejudice. *Rohn,* 2012 WL 6652940, at *3 (dismissing with prejudice state law negligence claim for educational malpractice because such claims are not cognizable under Florida law); *C.P. v. Leon County School Bd.,* 2005 WL 6074568, at *5 (N.D. Fla. Aug. 27, 2005) (dismissing with prejudice a disabled plaintiff's negligence claim against school board premised on an alleged failure to provide accommodations and failure to use reasonable care to provide adequate education).

WHEREFORE, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, THE BOARD OF GOVERNORS FOR THE STATE UNIVERSITY SYSTEM OF FLORIDA, CLAUDIA PUIG, MARK B. ROSENBERG, R. ALEX ACOSTA, TAWIA BAIDOE ANSAH, JOYCELYN BROWN, ROSARIO L. SCHRIER, THOMAS E. BAKER, SCOTT F. NORBERG, NOAH WEISBORD, MARCI ROSENTHAL, NED C. LAUTENBACH, and IRIS ELIJAH, respectfully request this Court grant this Motion to Dismiss and any other relief it deems appropriate.

I HEREBY CERTIFY that on this 2nd day of December, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

MARRERO & WYDLER

*Counsel for Defendants*
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
(305) 446-0995 (fax)


BY   /s/  Lourdes Espino Wydler
OSCAR E. MARRERO
F.B.N.:  372714
oem@marrerolegal.com
LOURDES ESPINO WYDLER
F.B.N.:  719811
lew@marrerolegal.com


## SERVICE LIST

Diana McLaughlin, Esq.
10661 Airport Pulling Road, Suite 9
Naples, FL 34109
(239) 330-63332
drdina@dianamclaughlin.com
FBN:  84479
*Attorney for Plaintiff*

JOHN S. LEINICKE
Assistant U.S. Attorney
UNITED STATES ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF FLORIDA
99 N.E. 4th Street
Miami, Florida  33132-2211
Office:  +1 305 961 9212
john.leinicke@usdoj.gov
*Attorneys for Defendants Department of Education and Secretary Devos*