**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-22942-KMM

CHRISTINA MCLAUGHLIN,

     Plaintiff,

v.

FLORIDA INTERNATIONAL
UNIVERSITY BOARD OF TRUSTEES,
*et al.*,

     Defendants.

_____/

## OMNIBUS ORDER

THIS CAUSE came before the Court upon Defendants United States Department of Education ("DOE") and Secretary of Education's (collectively, "the Federal Defendants") Motion to Dismiss ("Federal Defs.' Mot.") (ECF No. 44) and Memorandum in Support ("Mem. in Supp.") (ECF No. 44-1); Defendants Florida International University Board of Trustees ("FIU BOT"), Board of Governors for the State University System of Florida ("BOG"), Claudia Puig ("Puig"), Mark B. Rosenberg ("Rosenberg"), R. Alex Acosta ("Acosta"), Tawia Baidoe Ansah ("Ansah"), Joycelyn Brown ("Brown"), Rosario L. Schrier ("Schrier"), Thomas E. Baker ("Baker"), Scott F. Norberg ("Norberg"), Noah Weisbord ("Weisbord"), Marci Rosenthal ("Rosenthal"),[1] Ned C. Lautenbach ("Lautenbach"),[2] and Iris Elijah's ("Elijah") (collectively, "the State Defendants") Motion to Dismiss ("State Defs.' Mot.") (ECF No. 47); and Defendant Howard Wasserman's ("Wasserman") Motion to Dismiss ("Def. Wasserman Mot.") (ECF No. 46). Plaintiff Christina

---

[1] Incorrectly sued as Marcy Rosenthal. *See* (ECF No. 47).

[2] Incorrectly sued as Ned C. Laudenbach. *See id.*

McLaughlin ("Plaintiff") filed Responses in Opposition.[3] ("Resp. to Federal Defs.' Mot.") (ECF No. 52); ("Resp. to State Defs.' Mot.") (ECF No. 53); ("Resp. to Def. Wasserman") (ECF No. 54). The Federal Defendants, the State Defendants, and Defendant Wasserman filed Replies. ("Federal Defs.' Reply") (ECF No. 59); ("State Defs.' Reply") (ECF No. 61); ("Def. Wasserman Reply") (ECF No. 60). The Motions are now ripe for review.

## I.   BACKGROUND[4]

In this action, Plaintiff alleges a myriad of constitutional violations against numerous defendants. *See generally* Am. Compl. Plaintiff, a Florida resident, was enrolled as a first-year law student ("1L year") at Florida International University ("FIU") Law during the 2016-2017 academic year. *Id.* ¶¶ 143–144. During her 1L year, Plaintiff was a candid supporter of the Republican party on social media. *Id.* ¶¶ 151–152. At a "Hillary Clinton for President" rally held at FIU in the Fall of 2016, "[i]t became plainly evident to all the surrounding classmates that [Plaintiff] was a Donald Trump supporter." *Id.* ¶¶ 153–156. Thereafter, Plaintiff "noted an almost immediate difference in attitude and behavior from classmates, professors, and FIU administration" and "FIU Law began an intentional hostile, discriminatory and retaliatory campaign" against Plaintiff. *Id.* ¶¶ 156–158. After former President Trump's inauguration, Plaintiff "felt threatened and stifled to voice any comments in support of President Trump for fear

---

[3]  In each Response, Plaintiff requests a sixty (60) minute in-person hearing before the Court because the Amended Complaint is "very complicated" and "[a]n in-person hearing would also create a more specific and lengthy video appellate record for possible interlocutory review." Resp. to Federal Defs.' Mot. at 2; Resp. to State Defs.' Mot. at 2; Resp. to Def. Wasserman at 2. Local Rule 7.1(b)(2) provides that "[t]he Court in its discretion may grant or deny a hearing as requested." S.D. Fla. L.R. 7.1(b)(2). The Court sees no need to set a hearing regarding the pending motions here.

[4]  The following background facts are taken from Plaintiff's First Amended Complaint ("Am. Compl.") (ECF No. 10) and are accepted as true for purposes of ruling on this Motion to Dismiss. *Fernandez v. Tricam Indus., Inc.*, No. 09-22089-CIV-MOORE/SIMONTON, 2009 WL 10668267, at *1 (S.D. Fla. Oct. 21, 2009).

of further retaliatory action especially concerning grades." *Id.* ¶¶ 159–160.  Plaintiff "felt unsafe to show any expression of her political allegiance such as wearing a 'Trump/Pence' shirt or hat because of the vitriol expressed by the law professors." *Id.* ¶ 161.

A brief overview of each named Defendant and the allegations against them follows:

1. The DOE "failed to timely and effectively process [Plaintiff's] FERPA[5] complaint" and, as of the date of the Amended Complaint, "failed to make a finding for 952 days since the DOE was in receipt [of the complaint,] 779 days since the DOE sent a Notice of Investigation and 601 days since the DOE stated that the investigation was nearing completion."  The DOE has "intentionally stalled making a determination of [Plaintiff's] complaint in order to prevent [Plaintiff] from filing suit within the statute of limitations." *Id.* ¶¶ 627–757.

2. The Secretary of Education is named as the recipient of several letters sent by Plaintiff.  The Secretary of Education is sued in her official capacity. *Id.* ¶¶ 647–650, 725, 731.

3. The FIU BOT is the governing body of FIU and Puig is its Chair.  The FIU BOT "defended, supported, and sanctioned all actions taken by professors, deans, employees, and agents referred to in [the Amended Complaint]."  Each member of the FIU BOT is sued in their official capacity. *Id.* ¶¶ 164–174.

4. The BOG is the governing body of all public Florida universities, Lautenbach is its Chair, and Elijah served as its Assistant General Counsel.  The BOG "defended, supported, and sanctioned all actions taken by professors, deans, employees and agents referred to in [the Amended Complaint]" and "failed to protect [Plaintiff], a lawfully matriculated student, from the nefarious acts committed by one of the

---

[5]  The Family Educational Rights and Privacy Act, 20 U.S.C. § 1232(g).

Florida Universities." Elijah had an "excessively close relationship with FIU" and "knew or should have known to recuse herself from any participation, involvement, direction or control of [Plaintiff's] complaint." Each member of the BOG is sued in their official capacity. *Id.* ¶¶ 441–460.

5. Rosenberg is the President of FIU who (i) failed to redress Plaintiff's complaint; (ii) unfairly dismissed Plaintiff's request for a FERPA hearing; (iii) converted Plaintiff's FERPA challenge to a student grievance; and (iv) "victim shamed" Plaintiff—all of which was done "to conceal, divert, and cover-up the felonious acts committed by FIU Law professors." Rosenberg is sued in his official capacity. *Id.* ¶¶ 175–196.

6. Acosta is the Dean of FIU Law who either allowed or ignored law professors' actions, which included (i) "using non-academic standards for grading"; (ii) "tampering with scantron tabulation"; and (iii) "unauthorized grade unblinding to fraudulently mis-record[] grades." Acosta is sued in his official capacity. *Id.* ¶¶ 197–210.

7. Ansah was FIU Law's interim Dean at the time of Plaintiff's academic dismissal, who Plaintiff characterizes as "a well-known out-spoken, anti-conservative, anti-Trump critic" and whose actions "demonstrate[] the depth of anti-Trump/anti-conservative ideology among Ansah and other FIU Law professors." Ansah (i) "failed to substantively respond to Plaintiff's reasonable attempts to learn about the readmission procedure and to have counsel present"; and (ii) "depicted [Plaintiff] as a failed 1L student without any mention of the fact that [Plaintiff] had not been placed on remediation or ever failed any class." Ansah is sued in his official capacity. *Id.* ¶¶ 211–229.

8.  Brown was an interim FIU Law professor during the Spring 2017 semester who (i) "is a radical leftist who either belongs to or provides support for several radical leftist organizations"; (ii) gave Plaintiff a final grade of "C+"; (iii) told Plaintiff that her support for Donald Trump was "immoral"; (iv) told Plaintiff her assignments were downgraded rather than graded according to the rubric; and (v) "intentionally lowered [Plaintiff's] grades to retaliate and politically engineer the student body class."  Brown is sued in her official capacity. *Id.* ¶¶ 230–267.

9.  Schrier is an FIU Law professor who (i) gave Plaintiff a final grade of "B-"; (ii) "gave several 'Feel the Bern' speeches promoting socialism during regular classroom time"; (iii) "engaged in political indoctrination and attempted to sway the students to voting for the Democratic nominee"; (iv) gave Plaintiff lower academic grades and became "inhospitable" after learning about Plaintiff's support for President Trump and the Republican Party; (v) "used non-academic standards to grade [Plaintiff's] assignments"; (vi) participated in and voted to deny Plaintiff's readmission during her readmission hearing; and (vii) "discriminated and retaliated against [Plaintiff] because of her political beliefs."  Schrier is sued in her official capacity.[6] *Id.* ¶¶ 317–339.

10.  Baker is an FIU Law professor who (i) gave Plaintiff a final grade of "D"; (ii) "performed a skit demeaning Trump supporters" during class; (iii) "made his

---

[6]  The Amended Complaint is ambiguous in terms of whether Schrier is sued only in her official capacity, or both in her individual and official capacity. *Compare* Am. Compl. at 1 (identifying Wasserman as the only Defendant sued in both his official capacity and "personally"), *with id.* ¶ 338 (stating that "Schrier is sued personally and in her official capacity").  To the extent Plaintiff sought to sue Schrier both in her individual and official capacity, this ambiguity may not have placed Schrier on notice of the breadth of the claims against her.  It is notable that counsel for State Defendants filed a separate Motion to Dismiss on behalf of Wasserman. *See* Wasserman Mot. at 1 ("Professor Wasserman is the only Defendant sued both in his individual capacity . . . and official capacity.").  The Court resolves this ambiguity in Schrier's favor.

classroom a hostile educational environment and stifled [Plaintiff's] freedom of speech and political expression in his classroom"; (iv) after learning of Plaintiff's support for President Trump and the Republican Party, "graded her exam unblinded and failed to use anonymous grading to record [Plaintiff's] exam scores"; (v) "intentionally lowered [Plaintiff's] grades to retaliate and politically engineer the student body class"; (vi) "used non-academic standards to record [Plaintiff's] final grade"; (vii) "fraudulently tampered with [Plaintiff's] Scantron score to record a fraudulent exam score"; and (viii) "colluded with other professors to unlawfully expel" Plaintiff.  Baker is sued in his official capacity.  *Id.* ¶¶ 340–362.

11. Norberg is an FIU Law professor who (i) gave Plaintiff a final grade of "C"; (ii) "is a vocal anti-Trump leftist and used his classroom to espouse anti-Trump rhetoric"; (iii) "was one of 10 FIU Law professors to sign [an] anti-Trump/anti-Kavanaugh letter"; (iv) after learning of Plaintiff's support for Republican candidates, "developed animus for [Plaintiff] for her political beliefs"; (v) "erroneously 'bumped down' [Plaintiff's] final grade" from a "C+" to a "C" due to confusion over a missing assignment that Plaintiff had in fact turned in; (vi) "fraudulently tampered with Scantron exam scores"; (vii) "used non-academic standards to score unblinded essay exams"; and (viii) "colluded with other professors and administrators to effectuate an unlawful academic dismissal."  Norberg is sued in his official capacity.  *Id.*  ¶¶ 363–397.

12. Weisbord was an FIU Law professor who (i) gave Plaintiff a final grade of "C-"; (ii) "used his classroom to accuse President Trump of being a criminal in violation of International and Humanitarian laws"; (iii) "accused President Trump of being a war criminal"; (iv) was "well-known" to have inappropriate sexual relationships

with other 1L students in Plaintiff's class; (v) "used non-academic standards and unblinded grading" in favor of those he had sexual affairs with and unfavorably for Plaintiff; and (vi) due to the "influence of sexual affair and political discrimination," partly caused the 0.02 percent grade point average ("GPA") deficit that resulted in Plaintiff's academic expulsion. Weisbord is sued in his official capacity. *Id.* ¶¶ 398–418.

13. Rosenthal was FIU Law's interim Assistant Dean of Academic Affairs who (i) was directed "to act as FIU's agent concerning [Plaintiff's] complaint"; (ii) "failed to disclose to the Plaintiff that [Rosenthal] is a member of the Florida Bar and may legally represent clients"; (iii) violated the Florida Bar's Rule of Ethics because Rosenthal "knew or should have known that [Plaintiff] was represented by counsel and that [Plaintiff] intended to pursue legal action against FIU Law" and Rosenthal contacted Plaintiff "directly" without obtaining the consent of Plaintiff's attorney; (iv) "used [Rosenthal's] enormous disparity in status and knowledge [as a former DOE employee and expert on FERPA law] in an attempt to overpower and potentially bully [Plaintiff]; and (v) "purposely denied [Plaintiff] assistance of counsel." Rosenthal is sued in her official capacity. *Id.* ¶¶ 419–440.

14. Wasserman is an FIU Law professor who (i) is "a publically [sic], well-known, anti-Trump blogger"; (ii) "engaged in political indoctrination"; (iii) gave Plaintiff a final grade of "D"; (iv) "used non-academic standards to grade [Plaintiff's] exams"; (v) "graded [Plaintiff's] exam unblinded and failed to use anonymous grading to record [Plaintiff's] exam scores"; (vi) "intentionally lowered [Plaintiff's] grades to retaliate and politically engineer the student body class"; (vii) "did not apply the objective grading rubric to [Plaintiff's] written exams"; (viii) "tampered

with [Plaintiff's] multiple-choice Scantron results to manufacture a fraudulent exam score"; (ix) "coordinated with other professors and FIU staff to unlawfully cause an academic dismissal"; (x) "planned a hit-job to force [Plaintiff] out of law school because of her support for candidate Donald Trump"; (xi) as the senior professor who supervised all grading and academic standing, "had access, opportunity and authority to jerry-rig students' education records and class standing"; (xii) "chaired and conducted [] Plaintiff's [Academic Standards Committee ("ASC")] readmission hearing"; (xiii) "refused to allow [] Plaintiff's attorney from attending the ASC readmission hearing"; and (xiv) "breached his duty to carefully and deliberately evaluate [Plaintiff's] academic performance before denying her petition for readmission . . . because he had predetermined the outcome making the ASC hearing a sham proceeding." Wasserman is sued both in his individual and official capacity. *Id.* ¶¶ 268–316.

On May 19, 2017, Plaintiff was academically dismissed from FIU Law despite being a student in good standing. *Id.* ¶¶ 145–146. Plaintiff alleges that (1) "her academic dismissal violated her [right to] due process because FIU never placed [Plaintiff] on notice of the risk of academic dismissal before the academic dismissal was final; (2) FIU Law's policy regarding notice of expulsion and remediation for 1L students in their Spring semester violated Plaintiff's right to equal protection; (3) FIU Law violated Plaintiff's rights to due process and equal protection by offering students with higher GPAs the opportunity to participate in remediation and "cut[ting] off the benefit of remediation at [Plaintiff's] ranking"; (4) FIU Law violated Plaintiff's right to procedural due process because its regulations create a strong presumption against readmission, create a non-rebuttable presumption of FIU Law infallibility, and deny access to educational

records but require clear and convincing evidence for readmission; and (5) FIU, as the governing university over FIU Law, violated FERPA in several respects.  *Id.* ¶¶ 461–626.

The causes of action include violation of Plaintiff's First Amendment right to freedom of speech and political expression (Count I), *id.* ¶¶ 758–786; violation of Plaintiff's Fourteenth Amendment and Florida constitutional rights to due process (Count II), *id.* ¶¶ 787–855; violation of Plaintiff's Fourteenth Amendment and Florida constitutional rights to equal protection of the law (Count III), *id.* ¶¶ 856–871; breach of a legal obligation to properly enforce a student FERPA complaint (Count IV), *id.* ¶¶ 872–894; violation of Plaintiff's FERPA rights (Count V), *id.* ¶¶ 895–907; denial of Plaintiff's right to assistance of counsel under federal law (Count VI), *id.* ¶¶ 908–921; fraud (Count VII), *id.* ¶¶ 922–928; civil conspiracy (Count VIII), *id.* ¶¶ 929–946; breach of fiduciary duty (Count IX), *id.* ¶¶ 947–981; negligence (Count X), *id.* ¶¶ 982–1043; and defamation (Count XI), *id.* ¶¶ 1044–1064.  Plaintiff seeks injunctive relief; declaratory judgment; nominal damages; compensatory, actual, and punitive damages in excess of $25 million dollars; and attorneys' fees and costs.  *Id.* at 113–14.

Now, the Federal Defendants, the State Defendants, and Defendant Wasserman move to dismiss the various claims against them.  *See generally* Federal Defs.' Mot.; State Defs.' Mot.; Def. Wasserman Mot.

## II.    LEGAL STANDARD

### A.    12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.* (internal citations omitted).   Such

jurisdiction must be proven by a preponderance of the evidence. *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010). "Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms": facial and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (per curiam). "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion, meaning that the court must consider the allegations of the complaint to be true." *Fru Veg Marketing, Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1179 (S.D. Fla. 2012). The burden is on the party seeking to invoke the Court's jurisdiction to establish that jurisdiction exists. *Kokkonen*, 511 U.S. at 377. If the Court determines that it lacks subject matter jurisdiction, it must dismiss the claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

### B.    12(b)(6) Standard

A court may also dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted). The court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007). A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

    **C.**    **Impermissible Shotgun Pleading Standard**

    The United States Court of Appeals for the Eleventh Circuit has described impermissible shotgun pleadings at length:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (citation omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. "Courts in this district and the Eleventh Circuit have warned litigants that shotgun pleadings tend to impede the orderly, efficient, and economic disposition of disputes as well as the court's overall ability to administer justice." *Pyatt v. Fla. Int'l Univ. Bd. of Trs.*, 1:20-CV-24085-BLOOM/Otazo-Reyes, 2020 WL 6945962, at *4 (S.D. Fla. Nov. 25, 2020) (citation and internal quotation marks omitted).

**III.**    **DISCUSSION**

    The Federal Defendants argue that the Court should dismiss the claims against them under Rule 12(b)(1) for lack of subject matter jurisdiction, or alternatively under Rule 12(b)(6) for failure

11

to state a claim upon which relief may be granted.  *See generally* Federal Defs.' Mot.  The State Defendants and Defendant Wasserman move to dismiss the Amended Complaint as an impermissible shotgun pleading as well as on substantive grounds.  *See generally* State Defs.' Mot.; Def. Wasserman Mot.  These arguments are addressed in turn below.

### A.    Federal Defendants

The Federal Defendants set forth both a facial and factual attack on subject matter jurisdiction.  Mem. in Supp. at 5.   Specifically, Federal Defendants argue that Plaintiff's constitutional claims against them—Counts I and III—fail because the United States has not explicitly waived sovereign immunity.  *Id.* at 6.  As to the remaining tort claims—Counts IV, VII, VIII, IX, and X—the Federal Defendants argue that these claims cannot proceed because (1) neither the DOE nor the Secretary of Education are proper defendants; (2) Plaintiff failed to exhaust her administrative remedies under FERPA; (3) there is no basis for Plaintiff's intentional tort claims of fraud and civil conspiracy to commit fraud as the United States has not waived sovereign immunity; (4) FERPA does not provide subject matter jurisdiction; (5) the "discretionary function" exception bars all of Plaintiff's potential FTCA claims; and (6) there is no private party analog to the alleged conduct, thus negating any government liability under the FTCA.  *Id.* at 7–15.

Plaintiff first argues that sovereign immunity is explicitly waived for constitutional claims, citing 5 U.S.C. § 702 and 28 U.S.C. § 1331.  Resp. to Federal Defs.' Mot. at 4–5.  Regarding the tort claims, Plaintiff argues that (1) the DOE and Secretary of Education are proper defendants; (2) Plaintiff was not required to exhaust her administrative remedies; (3) Plaintiff alleges a claim of discrimination based on her support of former President Trump, which is a constitutional violation and statutory right under FERPA; (4) Plaintiff's complaint is based on First and Fifth Amendment constitutional violations; (5) there is no "discretionary function" exception to the

Federal Defendants' duty to issue a final determination letter to Plaintiff; and (6) Plaintiff has facially pled claims against Federal Defendants under both Federal and State law.  *Id.* at 5–10.

       1.   <u>Constitutional Claims—Counts I and III</u>

The Federal Defendants argue that the constitutional claims against them fail because the United States has not explicitly waived its sovereign immunity.  Mem. in Supp. at 6.  In response, Plaintiff argues that (1) citing 5 U.S.C. § 702, "the United States has explicitly waived sovereign immunity"; (2) citing 28 U.S.C. 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United  States"; and (3) citing 28 U.S.C. 1346(b)(1), "the Court shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  Resp. to Federal Defs.' Mot. at 4–5 (internal quotation marks omitted).

"Under settled principles of sovereign immunity, the United States, as a sovereign, is immune from suit, save as it consents to be sued . . . ."  *United States v. Dalm*, 494 U.S. 596 (1990) (citations and internal quotation marks omitted).   Such immunity extends to United States' agencies.  *Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n*, 453 F.3d 1309, 1315 (11th Cir. 2006) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).   Further, such immunity generally applies in an official capacity suit, which is akin to a suit against the official's agency or entity.  *Nalls v. Bureau of Prisons of U.S.*, 359 F. App'x 99, 100 (11th Cir. 2009) (per curiam).   "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'"  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).   "[A] plaintiff bears the burden of establishing subject matter

jurisdiction . . . and, thus, must prove an explicit waiver of immunity." *Ishler v. Internal Revenue*, 237 F. App'x 394, 398 (11th Cir. 2007) (per curiam) (citation omitted).

Here, the DOE, as an agency of the United States, and the Secretary of Education, as an official of the United States, are immune from suit under the principles of sovereign immunity, and Plaintiff fails to prove that immunity has been explicitly waived. *Ishler*, 237 F. App'x at 398. Plaintiff invokes 5 U.S.C. § 702 for the first time in her response and argues that she "intends to seek equitable relief that the DOE must issue a findings letter through writ of mandamus."[7] Resp. to Federal Defs.' Mot. at 5. However, Plaintiff's Amended Complaint fails to plead entitlement to such relief and quite clearly seeks monetary damages—in excess of $25 million dollars—in connection with the alleged constitutional violations. *See* Am. Compl. at 114–15. Specifically, Plaintiff seeks "an award of monetary damages and equitable relief" as to Count I, and "an award of nominal and compensatory damages and equitable relief" as to Count III. *Id.* ¶¶ 786, 871. Plaintiff's vague prayer for "equitable relief" in addition to damages is of no consequence. Section 702 is not to be read so broadly such that sovereign immunity is waived any time a plaintiff seeks equitable relief, whether in addition to or in lieu of monetary damages. *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–65 (reversing the judgment of the court below and clarifying that a suit *may* fall within § 702's waiver of immunity if it is one seeking *specific* relief, not money damages, and that the "interpretation of § 702 thus hinge[s] on the distinction between specific relief and substitute relief, not between equitable and nonequitable categories of remedies").

---

[7] Plaintiff's Amended Complaint contains no such claim. Accordingly, this argument is impermissibly raised, and the Court will not consider it for the purposes of the instant motion. *See Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (per curiam) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss.").

Accordingly, the constitutional claims must be dismissed with prejudice as to the Federal Defendants for lack of subject matter jurisdiction under the principles of sovereign immunity. *Ishler*, 237 F. App'x at 398.

2.   Counts IV, VII, VIII, IX, and X

The Federal Defendants assert several bases upon which Plaintiff's remaining tort claims against them also cannot proceed.  Mem. in Supp. at 7–15.  Specifically, the Federal Defendants argue that (1) neither the DOE nor the Secretary of Education are proper defendants in this action because "the exclusive remedy for a state law tort claim against a federal employee acting within the scope of his or her employment is an action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2672" ("FTCA"); (2) Plaintiff failed to exhaust her administrative remedies under FERPA as is required under the FTCA because she "did not present the prerequisite administrative claim [to] the DOE"; (3) there is no basis for Plaintiff's intentional tort claims of fraud and civil conspiracy to commit fraud as the United States has not waived sovereign immunity; (4) FERPA does not provide a private right of action; (5) the "discretionary function" exception bars all of Plaintiff's potential FTCA claims; and (6) there is no private party analog to the alleged conduct, thus negating any government liability under the FTCA.  *Id.*

Plaintiff argues that (1) the DOE and Secretary of Education are proper defendants because her claims "are not exclusively under the FTCA" as she "alleges violation of her rights under the U.S. Constitution as well as tort claims," and a possibility exists that the DOE and Secretary of Education "are not acting within the scope of their employment"; (2) Plaintiff was not required to exhaust her administrative remedies because "the exhaustion requirement does not apply to actions based on constitutional torts" and "Plaintiff is not requesting review of a final agency action"; (3) "Plaintiff intends to make a *Bivens* challenge because she does not have any adequate remedy for

15

the harm caused by the Federal Defendants' unconstitutional actions"[8]; (4) Plaintiff need not rely on FERPA to provide a private right of action because her "entire complaint is based on First and Fifth Amendment violations of unlawful discrimination"; (5) there is no "discretionary function" exception to the Federal Defendants' duty to issue a final determination letter to Plaintiff; and (6) Plaintiff has facially pled claims against Federal Defendants under both Federal and State law. *Id.* at 5–10.

"[T]he FTCA was designed to provide redress for ordinary torts recognized by state law." *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001) (citation and internal quotation marks omitted). "An action against the United States under the FTCA is the exclusive remedy for employment-related torts committed by employees of the federal government." *Caldwell v. Klinker*, 646 F. App'x 842, 846 (11th Cir. 2016) (per curiam). The FTCA "makes clear that where a federal employee acts within the scope of his or her employment, an individual can recover only against the United States . . . ." *Burns v. United States*, 809 F. App'x 696, 699 (11th Cir. 2020) (per curiam) (quoting *Matsushita Elec. Co. v. Zeigler*, 158 F.3d 1167, 1169 (11th Cir. 1998)) (internal quotation marks omitted). "[W]here the United States Attorney General certifies that the employee-defendant was acting within the scope of his employment at the time of the alleged wrong, the burden shifts to the plaintiff to prove otherwise." *Small v. United States*, No. 13-cv-22836-UU, 2014 WL 12537139, at *2 (S.D. Fla. Mar. 3, 2014).

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). As a prerequisite to filing suit, a "claimant shall first have presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a).

---

[8] Again, Plaintiff's Amended Complaint contains no such claim. Accordingly, this argument is impermissibly raised and the Court will not consider it for the purposes of the instant motion. *See Burgess*, 600 F. App'x at 665.

As an initial matter, the Court finds that DOE and Secretary of Education are not the proper parties here. *Burns*, 809 F. App'x at 699. The Court construes the Federal Defendants' argument that the United States is the proper party—submitted by the United States Attorney for the Southern District of Florida—as certification that the DOE and Secretary of Education were acting within the scope of their employment as it relates to the alleged conduct giving rise to this action. Plaintiff provides nothing more than the mere possibility that the DOE and Secretary of Education were not acting within the scope of their employment, with no facts in support of such a possibility. Thus, Plaintiff failed to meet her burden to prove that the DOE and the Secretary of Education were not acting within the scope of their employment when the alleged wrong occurred. *See Small*, 2014 WL 12537139, at *2. The Court finds it prudent to dismiss the DOE and Secretary of Education and substitute the United States as the proper party. *See Burns*, 809 F. App'x at 699.

Next, as to the exhaustion of remedies requirement, Plaintiff's argument that "filing a claim against the DOE would be futile" because the DOE has not yet issued a final decision on her FERPA complaint is without merit. Plaintiff cites to no authority establishing a futility exception. *See generally* Resp. to Federal Defs.' Mot. Further, DOE's purported delay in issuing Plaintiff a final decision on her FERPA complaint is inapposite to the requirement that she exhaust her administrative remedies under the FTCA prior to bringing suit. To the extent that Plaintiff is concerned about indefinite delay in responding to an administrative claim under the FTCA, the relevant statute provides that "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." § 2675(a).

Accordingly, the tort claims against the Federal Defendants must be dismissed for Plaintiff's failure to exhaust her administrative remedies. *See Caldwell*, 646 F. App'x at 846–47. While this failure alone requires that the Court dismiss the tort claims against the Federal

Defendants, the Court briefly addresses some of the remaining arguments related to subject matter jurisdiction because they warrant dismissal with prejudice.[9]

The federal government's waiver of immunity from tort suits based on state court claims is not without bounds. *See Zelaya v. United States*, 781 F.3d 1315, 1321–22 (11th Cir. 2015) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)) ("[I]n offering its consent to be sued, the United States has the power to condition a waiver of its immunity as broadly or as narrowly as it wishes, and according to whatever terms it chooses to impose."). One such statutory exception is the intentional tort exception, which excludes "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." § 2680(h). "In determining whether the exception applies, it is the substance of the claim and not the language used in stating it which controls." *Alvarez v. United States*, 862 F.3d 1297, 1302 (11th Cir. 2017) (quoting *Zelaya*, 781 F.3d at 1334) (internal quotation marks omitted). Counts VII and VIII of the Amended Complaint allege fraud and civil conspiracy, respectively. *See generally* Am. Compl. Both fraud and civil conspiracy, as specifically pled here, fall squarely within the intentional tort exception as they contain elements of misrepresentation and deceit. *See id.* ¶¶ 922–946; *Omegbu v. United States*, 475 F. App'x 628, 629 (7th Cir. 2012).

Accordingly, Counts VII and VIII must be dismissed with prejudice as to Federal Defendants.

The remaining claims against the Federal Defendants—Counts IV (breach of legal obligation to properly enforce a student FERPA complaint), IX (breach of fiduciary duty), and X (negligence)—are rooted in DOE's purported failure to timely resolve Plaintiff's FERPA

---

[9] Finding several grounds to dismiss the claims based on a lack of subject matter jurisdiction, the Court declines to analyze the additional bases for dismissal under Rule 12(b)(6).

complaint.  However, FERPA does not provide a private right of action.  *See*, *e.g.*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 289–90 (2002); *Martes v. Chief Exec. Officer of S. Broward Hosp. Dist.*, 683 F.3d 1323, 1326 n.4 (11th Cir. 2012) (quoting *Gonzaga*, 536 U.S. at 290) ("To be clear, *Gonzaga* declined to find a private right of action in FERPA because the relevant provisions 'contain no rights-creating language, they have an aggregate, not individual focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions.'").  Without citing any legal authority in support, Plaintiff's argument that *Gonzaga* and its progeny applies only to actions against educational institutions is unfounded.

Accordingly, Counts IV, IX, and X must be dismissed with prejudice as to the Federal Defendants.

### B.    State Defendants

The State Defendants first argue that Plaintiff's Amended Complaint is a shotgun pleading and must be dismissed.  State Defs.' Mot. at 5–7.  Further, the State Defendants argue that (1) the federal claims against them do not survive dismissal; (2) the official capacity claims against the individuals are redundant and must be dismissed; (3) the First Amendment claim (Count I) fails because Plaintiff has not alleged any protected activity or a causal connection between any activity and her dismissal; (4) the due process claim (Count II) fails because there is no recognized fundamental property right in continued post-secondary education and Plaintiff did not exhaust her administrative remedies; (5) the equal protection claim (Count III) fails because Plaintiff is not a member of a protected class and has not identified similarly situated comparators; (6) the FERPA claim (Count V) fails because no action in this Court can be maintained for violations related to FERPA under federal or state law; (7) the denial of assistance of counsel claim (Count VI) fails because Plaintiff was not entitled to counsel under any federal law; (8) sovereign immunity bars the state law tort claims (Counts VII, VIII, IX, and XI); and (9) the negligence claim (Count X)

fails because Plaintiff did not comply with statutory notice requirements, and educational malpractice claims are not recognized in Florida. *Id.* at 7–23.

In response, Plaintiff argues that the Amended Complaint places the State Defendants on sufficient notice with particularity.  Resp. to State Defs.' Mot at 2–3.  Next, Plaintiff argues that (1) the federal claims survive dismissal in equity, and her harm is ongoing; (2) the official capacity claims against the individuals are separate and distinct from the claims against the FIU BOT and the BOG and are therefore not redundant; (3) the First Amendment claim (Count I) survives because she has alleged protected speech and a causal connection between her political activity and her dismissal; (4) the due process claim (Count II) survives because she has a property right in her law school education, and FIU did not provide Plaintiff with procedural due process; (5) the equal protection claim (Count III) survives because Plaintiff identified similarly situated comparators; (6) the FERPA claim (Count V) survives because the Florida Statutes confer a private cause of action; (7) the denial of assistance of counsel claim (Count VI) survives because universities do not have the right to deny students assistance of counsel, and such assistance is permitted under federal law; (8) Florida has waived sovereign immunity in tort cases (Counts VII, VIII, IX, and XI); and (9) the negligence claim (Count X) survives because Plaintiff did satisfy statutory pre-suit notice requirements, and this claim is not based on educational malpractice.

1.   Impermissible Shotgun Pleading—Counts I, II, III, V, VI, VII, VIII, IX, X, and XI

As an initial matter, Plaintiff's Amended Complaint is indeed an impermissible shotgun pleading and must be dismissed on that basis.  There are several examples that highlight the deficiencies therein—*e.g.*, each cause of action is inherently vague in terms of which Defendant it specifically applies to, there are a number of factual statements that are wholly irrelevant to Plaintiff's claims, and it is unreasonably difficult to ascertain which causes of action apply to which Defendants, and specifically on what basis.  One thing is abundantly clear—a short and plain

statement this is not.  Accordingly, the Court finds sufficient grounds to dismiss the Amended Complaint in its entirety as a shotgun pleading.  *See Pyatt*, 2020 WL 6945962, at *5.  However, except as otherwise provided in this Order, the Amended Complaint is dismissed without prejudice on this basis.  *See Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 955 (11th Cir. 2019).

> 2.  <u>Constitutional Claims—Counts I, II, and III</u>

The State Defendants argue that Plaintiff's constitutional claims must be dismissed because both the FIU BOT and the BOG are recognized arms of the State of Florida and they have not explicitly waived immunity.  State Defs.' Mot. at 7–9.  The State Defendants argue this holds true for Defendants Puig, Rosenberg, Acosta, Ansah, Brown, Schrier, Baker, Norberg, Weisbord, Rosenthal, Lautenbach, and Elijah to the extent that they are sued in their official capacities.[10]  *Id.* at 8–9.  Plaintiff argues that the State Defendants deprived her of her property rights under § 1983, and that she has properly pled that the State Defendants are "liable for the codified, facially unconstitutional 'FIU Law Regulations' and other pervasive actions done under official government policy."  Resp. to State Defs.' Mot. at 3.  Moreover, Plaintiff argues that she seeks both injunctive and monetary relief, and that "she continues to suffer the embarrassment and damage to her career for an unlawful academic dismissal."  *Id.* at 4.  Plaintiff argues that her "unlawful academic dismissal is an on-going constitutional violation."  *Id.*  Plaintiff argues that she "intends to have a jury declare FIU COL Regulations unconstitutional and deprive law students of basic procedural due process protection of their property right in continued enrollment . . . at a fair and unbiased law school."  *Id.*

The Eleventh Amendment to the United States Constitution bars § 1983 claims against the State absent a waiver of immunity.  *Gould v. Fla. Atl. Univ. Bd. of Trs.*, No. 10-81210-CIV-RYSKAMP/VITUNAC, 2011 WL 13227893, at *2 (S.D. Fla. June 14, 2011).

---

[10]  Only Defendant Wasserman is sued in both his individual and official capacity.

"Section 1983 does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations for civil liberties." *Id.* at *3 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). "In Florida, sovereign immunity is the general rule, not the exception." *Fin. Healthcare Assocs., Inc. v. Pub. Health Tr. of Miami-Dade Cnty.*, 488 F. Supp. 2d 1231, 1235–36 (S.D. Fla. 2007). "Even if a state could consent to suit, Florida has not waived its § 1983 immunity." *Gould*, 2011 WL 13227893, at *3. Further, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71 (reasoning that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

"An exception to Eleventh Amendment immunity exists under the *Ex parte Young* doctrine, which permits suits against state officers seeking prospective relief to end continuing violations of federal law." *Nicholl v. Att'y Gen. Ga.*, 769 F. App'x 813, 815 (11th Cir. 2019) (per curiam) (citation and internal quotation marks omitted). "The *Ex parte Young* doctrine applies only when a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Id.* (citation and internal quotation marks omitted). "The *Ex parte Young* doctrine is inapplicable when a plaintiff seeks to adjudicate the legality of past conduct." *Id.* (citation and internal quotation marks omitted).

Plaintiff's constitutional claims against State Defendants FIU BOT and BOG, as well as those against the individual State Defendants sued in their official capacity, are not cognizable because they are subject to sovereign immunity. *See Pyatt*, 2020 WL 6945962, at *10 (dismissing with prejudice claims against FIU BOT and those sued in their official capacity as nonactionable). Further, Plaintiff's allegation that she suffers ongoing harm that entitles her to injunctive relief under the *Ex parte Young* doctrine is without legal support. *See Nicholl*, 769 F. App'x at 815–16 (affirming the district court's dismissal of the plaintiff's complaint and finding that the *Ex parte*

*Young* doctrine was not applicable where the plaintiff sought redress for an alleged violation of federal law resulting in a particular grade in a completed course). Plaintiff cites to no legal authority in support of her ongoing harm theory that warrants a different result here. *See generally* Resp. to State Defs.' Mot. Plaintiff has since completed law school at another academic institution, which makes her argument regarding alleged ongoing harm all the more speculative. To the extent that Plaintiff seeks to challenge FIU Law's policies and regulations as they apply to future law students, she lacks standing to do so. *See Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1283 (11th Cir. 2001) ("[T]o have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.").

Accordingly, Counts I, II and III must be dismissed with prejudice as to State Defendants FIU BOT, BOG, and the individual State Defendants sued in their official capacity.[11]

### 3. FERPA Claim—Count V

The State Defendants argue that FERPA does not provide a private right of action citing the same general principles argued by the Federal Defendants in reliance on *Gonzaga*. *See supra* Section III.A.2.; State Defendants' Mot. at 17–18. Further, to the extent Plaintiff seeks to assert a right pursuant to Florida Statutes § 1002.22, the State Defendants argue that statute does not apply to disputes involving state universities. *Id.* Plaintiff argues that § 1002.225(3) "confers a private cause of action in equity," and seeks leave to amend her complaint accordingly.

As discussed above, FERPA does not provide a private right of action. *See supra* Section III.A.2 at 19; *see also Gonzaga*, 536 U.S. at 289 (quoting 20 U.S.C. § 1232; 34 C.F.R. § 99.60 (a)–(b)) ("Congress expressly authorized the Secretary of Education to '*deal with violations*' of the

---

[11] Finding that dismissal without prejudice is warranted based on sovereign immunity, the Court declines to analyze the additional grounds for dismissal based on the substantive components of Plaintiff's constitutional claims.

Act, § 1232g(f) (emphasis added), and required the Secretary 'to establish or designate [a] review board' for investigating and adjudicating such violations, § 1232g(g).  Pursuant to these provisions, the Secretary created the Family Policy Compliance Office (FPCO) 'to act as the Review Board required under the Act [and] to enforce the Act with respect to all applicable programs.'").  Plaintiff's FERPA claim is not actionable in this Court.

Plaintiff's attempt to assert jurisdiction under § 1002.225(3) fares no better.  Section § 1002.225(3) provides in relevant part that "[i]f any public postsecondary educational institution refuses to comply with this section, the aggrieved student has an immediate right to bring an action in circuit court to enforce his or her rights by injunction."  Thus, to the extent Plaintiff seeks to assert a claim under § 1002.225(3), she may do so in circuit court, but not before this Court.

Accordingly, Count V must be dismissed with prejudice as to the State Defendants.

####     4.   Denial of Counsel Claim—Count VI

The State Defendants argue that "there is no caselaw recognizing a right to counsel in disciplinary- or academic-dismissal proceedings," and Plaintiff's reliance on FERPA "is again misplaced."  State Defs.' Mot. at 18–19.  Plaintiff argues that she "intends to challenge the legal axiom that law students can be pervasively and perniciously denied assistance of counsel in the face of an academic dismissal and in today's polarized and vitriolic educational environment."  Resp. to State Defs.' Mot. at 11.  Plaintiff argues that "FERPA law 23 C.F.R. [§] 99.22(d)[] states that students 'may, at their own expense, be assisted or represented by one or more individuals of his or her own choice, including an attorney.'"  *Id.*  Plaintiff argues that "[t]his is a case of first impression to determine whether a university may deny the assistance of counsel under FERPA."  *Id.* at 12.

Again, as discussed above in *supra* Sections III.A.2 and III.B.3., FERPA does not provide a private right of action and therefore this claim is not subject to redress before this Court.  *See*

*Gonzaga*, 536 U.S. at 289–90.  Accordingly, Count VI must be dismissed with prejudice as to the State Defendants.

     5.  <u>Tort Claims—Counts VII, VIII, IX, and XI</u>

       *a.  Fraud, Civil Conspiracy, and Defamation*

The State Defendants argue that "[a]lthough Florida has generally waived immunity for torts, it has retained immunity for torts allegedly committed in bad faith."  State Defs.' Mot. at 19 (citing § 768.28(9)(a)).  Specifically, the State Defendants argue that because the claims alleging fraud, civil conspiracy, and defamation all require an element of bad faith or malicious purpose, they must be dismissed as a matter of law.  *Id.* 19–21.  Plaintiff does not directly respond to the State Defendants' arguments regarding fraud, civil conspiracy, and defamation.  Resp. to State Defs.' Mot. at 12–13.  Rather, Plaintiff argues that "FIU's policy of not reviewing educational records and grades before final dismissal or upon a challenge of that dismissal intentionally negates the possibility that FIU could make a clerical error or [sic] records suffered through a technical 'glitch.'"  *Id.* at 13.  Plaintiff alludes to such a policy as creating a "known dangerous condition" which, if the state fails to remedy such a condition, would render sovereign immunity inapplicable. *Id.*

"Under Florida law, the state and its agencies have sovereign immunity and cannot be sued unless the Florida legislature has waived that privilege*." Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 749 F. App'x 776, 786 (11th Cir. 2018) (per curiam) (citing *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984)).  "Although Florida has generally waived immunity for torts, it has retained immunity for torts committed in bad faith by its employee."  *Id.* (citing § 768.28(9)).  "Florida has not waived immunity for torts involving fraud."  *Id.*  Similarly, "[p]leading malice in a defamation action will bar recovery against a state agency pursuant to sovereign immunity under

[§] 768.28(9)(a)." *Boggess v. Sch. Bd. of Sarasota Cnty.*, No. 8:06-CV-2245-T-27-EAJ, 2008 WL 564641, at *5 (M.D. Fla. Feb. 29, 2008) (citation omitted).

Here, Plaintiff's claims of fraud, civil conspiracy predicated on fraud, and defamation all include elements of bad faith or malicious intent. In her claim of fraud, Plaintiff recites the elements of fraud under Florida law which requires, in part, knowledge that a statement is false and intent by the person making the false representation that it will induce another to act on it. Am. Compl. ¶ 923. In her claim of civil conspiracy, Plaintiff very specifically alleges bad faith and malice where she states that "FIU professors conspired with one another, as well as other individuals and entities, to perpetrate an unlawful act upon [Plaintiff] or to perpetrate a lawful act by unlawful means, to wit: Defendants conspired to devise a fraudulent and unconstitutional grading scheme to cause [Plaintiff] an academic expulsion." *Id.* ¶ 930. Finally, in her defamation claim, Plaintiff alleges, in part, that "FIU's publication of [Plaintiff's] expulsion had malicious intent or at least had reckless disregard for the truth because FIU intended to block [Plaintiff] from ever graduating from any law school." *Id.* ¶ 1059. Each of these claims very clearly asserts the type of bad faith and malice for which Florida has retained immunity. *See Zainulabeddin*, 749 F. App'x at 786 (11th Cir. 2018).

Accordingly, Counts VII, VIII, and XI must be dismissed with prejudice as to the State Defendants.

### b. *Breach of Fiduciary Duty*

The State Defendants argue that Plaintiff's allegations fail to show the breach of an express written contract, as is required to sustain a breach of fiduciary duty claim. State Defs.' Mot. at 21–22. In her response, Plaintiff does not directly respond to the argument that there be an express written contract. Resp. to State Defs.' Mot. at 13–14. Rather, Plaintiff argues that "Florida courts

may still recognize a fiduciary duty based on the specific action of parties where there is no specific fiduciary duty established under the law." *Id.*

"[W]here the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of contract." *Pan-Am Tobacco Corp.*, 471 So. 2d at 5. The absence of the sovereign immunity defense applies "only to suits on express, written contract into which the state agency has statutory authority to enter." *Id.* at 6.

Plaintiff fails to assert the existence of an express written contract upon which a breach of fiduciary duty claim can stand. Plaintiff's status as a student is not sufficient to sustain this cause of action. *See Morrison v. Univ. of Miami*, No. 1:15-cv-23856-UU, 2016 WL 3129490, at *7 (S.D. Fla. Jan. 19, 2016) (finding that "a fiduciary duty does not simply arise out of students' status"). Accordingly, Count IX must be dismissed with prejudice as to the State Defendants.

### 6.   Negligence Claim—Count X

The State Defendants argue that Plaintiff's negligence claim fails because she did not comply with pre-suit notice requirements set forth in § 768.28. State Defs.' Mot. at 22–23. Specifically, the State Defendants argue that Plaintiff's notices of intent to commence litigation are insufficient to satisfy statutory pre-suit notice requirements. *Id.* Further, the State Defendants argue that even if Plaintiff had complied with the statutory pre-suit notice requirements, the negligence claim still fails because educational malpractice is not a cognizable cause of action. *Id.* at 23. The State Defendants argue the negligence claim should be dismissed with prejudice because the allegations "are generally premised on academic decisions and conduct relating to Plaintiff's enrollment or the evaluation of her complaints related to her education at FIU." *Id.* Plaintiff argues that she did in fact comply with pre-suit notice requirements, citing to the Amended Complaint ¶ 130 and Exhibit 28. Resp. to State Defs.' Mot. at 14. Plaintiff further argues that

State Defendants are "mischaracterizing" her negligence claim and it "is not exclusively based on discretionary academic decisions such as grading or academic placement." *Id.* at 14–15. Specifically, Plaintiff argues that she "properly pled a breach of the duty to supervise employees, maintaining accurate record-keeping and comply with their own policies and regulation as published [sic]." *Id.* at 15.

"To maintain a claim in tort against the State or one of its agencies, a plaintiff must meet the requirements of § 768.28, which waives the government's sovereign immunity with respect to tort actions." *Woodburn v. State of Fla. Dep't of Child. & Fam. Servs.*, 854 F. Supp. 2d 1184, 1207–08 (S.D. Fla. 2011). "The statute sets out mandatory procedures that one must follow before suing pursuant to the waiver." *Id.* at 1208. Specifically, the statute provides in relevant part:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also . . . presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services of the appropriate agency denies the claim in writing. . . . The failure of the Department of Insurance or the appropriate agency to make final disposition of a claim within 6 months after it is filed shall be deemed a final denial of the claim for purposes of this section.

§ 768.28(6)(a), (d). Satisfaction of the requirements set forth above "is a condition precedent to maintaining a lawsuit." *Fletcher v. City of Miami*, 567 F. Supp. 2d 1389, 1393 (S.D. Fla. 2008) (citation and internal quotation marks omitted).

Here, Plaintiff sent a letter to the Florida Department of Financial Services on February 6, 2018. Am. Compl. ¶ 130, Ex. 28. That letter included (1) a copy of Plaintiff's notice of intent to initiate litigation, (2) a copy of the complaint Plaintiff sent to the BOG, (3) responses from the BOG's Inspector General and FIU's General Counsel, and (4) Plaintiff's rebuttal to their findings. *Id.* Ex. 28. On the face of the exhibit presented, and as State Defendants argue, Plaintiff's letter to the Florida Department of Financial Services was missing certain components required by § 768.28(6)(c)—specifically, date of birth, place of birth, social security number, or information

regarding any unpaid prior adjudicated claim against the State. *See id.* Moreover, the letter seems less like a claim seeking relief from the appropriate agency under § 768.28, and more like what it is specifically characterized as therein—a notice of pending litigation. *See id.* ("The purpose of this letter is to place your department on notice of pending litigation."). Plaintiff's reliance on *Wagatha v. City of Satellite Beach* is misplaced. *See Wagatha*, 865 So. 2d 620, 622 (Fla. Dist. Ct. App. 2004) ("A plaintiff must plead compliance with the statute, although a general averment will suffice."). While a "general averment" in a complaint may suffice to overcome a motion to dismiss, it does not serve as a waiver of the otherwise applicable statutory requirements. Here, Plaintiff's flaw is not that she has said too little in the Amended Complaint, but that she has said too much by way of the exhibits attached thereto which demonstrate that the statutory pre-suit notice requirements have not been met. The Eleventh Circuit has consistently held that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (per curiam) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)) (internal quotation marks omitted). And, because the time to comply with the pre-suit requirements has expired, this claim must also be dismissed with prejudice. *See Fletcher*, 567 F. Supp. 2d at 1393 (quoting *Wagatha*, 865 So. 2d at 622) (internal quotation marks omitted) ("[W]here the time for such notice has expired so that it is apparent that the plaintiff cannot fulfill the requirement, the trial court has no alternative but to dismiss the complaint with prejudice.").

Accordingly, Count X must be dismissed with prejudice as to the State Defendants. Finding sufficient grounds to dismiss the negligence claim for failure to strictly comply with § 768.28, the Court does not reach the remaining basis for dismissal—*i.e.*, whether this claim amounts to anything more than an allegation of educational malpractice.


### C.    Defendant Wasserman

Defendant Wasserman first argues that Plaintiff's Amended Complaint is a shotgun pleading and must be dismissed.  Wasserman Mot. at 6–7.  Further Defendant Wasserman argues that (1) as to the First Amendment claim (Count I), Plaintiff has not shown protected conduct or violation of a clearly established right to support a First Amendment claim; (2) as to the due process claim (Count II), Plaintiff has not shown clearly established due process rights that she was deprived of; (3) as to the equal protection claim (Count III), Plaintiff is not a member of a protected class and has not identified a similarly situated comparator; (4) as to the denial of assistance of counsel claim (Count VI), Plaintiff did not have a right to counsel; (5) as to the fraud claim (Count VII), the elements necessary to support a fraud claim are not satisfied with any particularity; (6) as to the civil conspiracy claim (Count VIII), the underlying tort requirement bars civil conspiracy and the intra-corporate conspiracy doctrine precludes liability; (7) as to the breach of fiduciary duty claim (Count IX), no fiduciary duty exists; (8) as to the negligence claim (Count X), educational malpractice is not a cognizable claim and, as a public employee, Defendant Wasserman is shielded by § 768.28; (9) as to the defamation claim (Count XI), absolute immunity bars defamation; and (10) the official capacity claims are redundant.[12]  *Id.* at 6–20.

Plaintiff argues that the Amended Complaint is not a shotgun pleading, and that it places Defendant Wasserman on sufficient notice with particularity.  Resp. to Def. Wasserman Mot. at 3–4.  Plaintiff further argues that (1) Plaintiff has alleged protected speech and a causal connection between her political activity and dismissal in support of the First Amendment claim; (2) Plaintiff has a property right in continuing her law school education and FIU provided no procedural due process in connection with her dismissal; (3) Plaintiff has identified similarly situated comparators

---

[12]  For the same reasons set forth in *supra* Section III.B., all claims against Defendant Wasserman in his official capacity must be dismissed with prejudice.  Thus, the redundancy argument is moot.

in support of the equal protection claim; (4) no case law exists that affirmatively grants a university

the right to deny a student's discretion to avail herself of the assistance of counsel; (5) Plaintiff's

claim of fraud is pled with particularity and specificity; (6) as to the civil conspiracy claim

Defendant Wasserman's intra-corporate conspiracy doctrine fails; (7) Defendant Wasserman

breached his fiduciary duty to Plaintiff; (8) Plaintiff's negligence claim is not based on educational

malpractice; and (9) absolute immunity does not bar the defamation claim because Wasserman is

sued personally and is not a public official.

### 1. Impermissible Shotgun Pleading—Counts I, II, III, VI, VII, VIII, IX, X, and XI

As discussed above in *supra* Section III.B.1., Plaintiff's Amended Complaint is an

impermissible shotgun pleading and must be dismissed accordingly.   However, except as

otherwise provided in this Order, the Amended Complaint is dismissed without prejudice on this

basis.  *See Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 955 (11th Cir. 2019).

### 2. Qualified Immunity—Counts I, II, and III

Defendant Wasserman argues that he is subject to qualified immunity as to Counts I, II,

and III.  Def. Wasserman Mot. at 5.  Plaintiff disputes Defendant Wasserman's qualified immunity

defense, arguing that "Plaintiff clearly asserts the infringement of several constitutional rights in

her complaint, particularly her liberty right in her First Amendment right to free speech," and

Defendant Wasserman's "unlawful acts were well beyond the scope of his discretion and authority

as a professor."   Resp. to Def. Wasserman Mot. at 3.

"Qualified immunity provides complete protection for government officials sued in their

individual capacities where their conduct 'does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'"  *Quinette v. Reed*, 805 F.

App'x 696, 701 (11th Cir. 2020) (per curiam) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)).  A government official "is entitled to qualified immunity where his actions would be

objectively reasonable to a reasonable [official] in the same situation." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 638–41 (1987)). To assert a qualified immunity defense, a government official must have been acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Id.* (citation omitted). Once the government official establishes that they were acting within the scope of their discretionary authority, the burden shifts to the plaintiff to show that the defendants violated a clearly established constitutional right. *See Carter v. Butts Cnty., Ga.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (citation omitted). Courts employ a two-step inquiry to determine whether government officials are entitled to qualified immunity: (1) the facts alleged in the complaint show the official's conduct violated a constitutional right, and (2) the right was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S 223, 232 (2009). Courts need not address these steps in sequential order. *See id.* at 236.

Further, it is proper for courts to dismiss a complaint because the defendants are entitled to qualified immunity. Indeed, the Supreme Court has urged courts to apply qualified immunity at the earliest possible stage of litigation because the defense is immunity from the burdens of defending a lawsuit, not just immunity from damages or liability. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991). As such, "[a]lthough the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citation omitted). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citation omitted).

As an initial matter, the Court finds that Defendant Wasserman was acting within the scope of his discretionary authority because all the allegations against him relate to him carrying out his professorial duties—instructing a classroom, grading exams, and serving on an academic dismissal

committee.  Accordingly, the burden shifts to Plaintiff to show that Defendant Wasserman violated clearly established constitutional rights.  *Carter*, 821 F.3d at 1319.

      *a.  First Amendment Claim—Count I*

Defendant Wasserman argues that "[u]nder an education-setting First Amendment theory, Plaintiff has not alleged any protected expression or conduct."  Def. Wasserman Mot. at 8. Specifically, Plaintiff "admittedly did not engage in any on-campus speech" and Plaintiff "failed to allege any speech that is constitutionally protected because she has not alleged what that speech was."  *Id.*  According to Defendant Wasserman, at most Plaintiff alleges that "she felt intimidated to speak up in [Defendant Wasserman's] class."  *Id.*  Plaintiff argues that she "clearly alleges that [Defendant] Wasserman's use of the classroom as a leftist propaganda machine was an intimidating suppression of [Plaintiff's] freedom to express her conservative, Republican speech." Resp. to Def. Wasserman Mot. at 4.  Plaintiff further argues that she has "clearly pled that [Defendant] Wasserman's fraudulent grading to result in [sic] a fraudulent academic dismissal was meant to infringe her right to be a lawyer that would likely defend conservative values in the courts and in the public arena."  *Id.*

"First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students."  *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).  "It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."  *Id.*  "To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that here is a causal connection between the retaliatory actions and the adverse effect on speech."  *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (citation omitted).  "A plaintiff suffers adverse action if the defendant's allegedly

33

retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254.

Here, Plaintiff's raises two possible ways in which her First Amendment rights were violated.  First, Plaintiff alleges that Defendant Wasserman's actions had a chilling effect on her right to free speech, inasmuch as she alleges that she "felt intimidated to freely express an opposing political viewpoint in his classroom."  Am. Compl. ¶ 275.  However, Plaintiff's subjective discomfort sharing her political viewpoints during her first year of law school does not a constitutional violation make.  Plaintiff cites to no authority in support of this vaguely asserted proposition. *See generally* Resp. to Def. Wasserman Mot.  Thus, Plaintiff fails to meet her burden to show that any of Defendant Wasserman's actions in the classroom were violative of Plaintiff's clearly established constitutional rights in this context.

Second, Plaintiff alleges that Defendant Wasserman retaliated against her for exercising her First Amendment rights by "using non-academic standards to grade her exams," grading her exams "unblinded," and intentionally lowering her grades "to retaliate and politically engineer the student body class"—all of which was apparently done because Defendant Wasserman "was aware of [Plaintiff's] support of President Trump and the Republican Party." *Id.* ¶¶ 276–280.  The flaw in Plaintiff's argument, however, is that her allegations are wholly conclusory and lack any factual support.  Plaintiff does not specifically plead what constitutionally protected speech resulted in the retaliation that allegedly followed.  In her response, Plaintiff argues that "she was punished for her very public advocacy of Republican candidates and then-candidate Trump on social media, in her hometown, and other off-campus activities during her 1L year."  Resp. to Defendant Wasserman Mot. at 4.  She then leaps to the conclusion that Defendant Wasserman—now in the on-campus setting—was aware of such advocacy and thus retaliated against her because of it.  Plaintiff's "public advocacy," whether on social media, in her hometown, or during other off-campus

activities, is far too vague to allow the Court to determine whether Plaintiff's speech was constitutionally protected. Thus, the Court cannot find that the first prong of the retaliation analysis is satisfied, *see Bennett*, 423 F.3d at 1250, and Plaintiff fails to meet her burden to show that any of Defendant Wasserman's actions in the classroom were violative of Plaintiff's clearly established constitutional rights in this context as well. *See Carter*, 821 F.3d at 1319.

Accordingly, Count I is dismissed without prejudice as to Defendant Wasserman.

   b.   *Count II—Due Process Claim*

Defendant Wasserman argues that Plaintiff does not have a liberty or property interest in a continuing law school education, and thus there is no substantive due process violation. Def. Wasserman Mot. at 9–10. As to any procedural due process violation, Defendant Wasserman argues that Plaintiff's claim is premature as she has not exhausted her State remedies. *Id.* at 10–11. Further, Defendant Wasserman argues that "[t]here is no requirement for a pre-dismissal hearing at which [a] student may contest the basis for an academic dismissal." *Id.* at 1. Plaintiff argues that she does have a property interest in her law school education, citing to a case involving a Georgia university. Resp. to Def. Wasserman Mot. at 5–6. Plaintiff does not discuss her failure to exhaust State remedies, however she argues that the "Procedural Due Process Clause grants [Plaintiff] the opportunity to present her case and have its merits fairly judged." *Id.* at 7.

"The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). "[S]tudents at a public university do not have a fundamental right to continued enrollment." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1235 (11th Cir. 2018) (citing *Plyler v. Doe*, 457 U.S. 202, 221 (1982) ("Public education is not a 'right' granted to individuals by the Constitution.")). "No court has recognized a substantive property or liberty interest in a college

35

education." *Ellison v. Bd. of Regents of Univ. Sys. of Ga.*, No. CV 105-204, 2006 WL 664326, at *1 (S.D. Ga. Jan. 12, 2006).

"[A] violation of procedural due process is not complete 'unless and until [a] State fails to provide due process.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007) (quoting *McKinney*, 20 F.3d at 1557). "Only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation become actionable." *Id.*

Plaintiff relies on *Barnes v. Zaccari* for the proposition that she held a property interest in her law school education. *Barnes*, 669 F.3d 1295 (11th Cir. 2012). However, Plaintiff's reliance on *Barnes* is misplaced. In *Barnes*, a university policy imposed a "for cause" requirement for the imposition of disciplinary sanctions, and the student in question was dismissed on disciplinary, not academic, grounds. *Id.* at 1304–05. Plaintiff cites to no other authority, or any corollary FIU Law policy, that shows she had a clearly established property interest in continuing her law school education at FIU Law. Further, Plaintiff ignores entirely her failure to exhaust State administrative remedies. Plaintiff has failed to meet her burden to show that Defendant Wasserman violated Plaintiff's clearly established due process rights. *See Carter*, 821 F.3d at 1319.

Accordingly, Count II is dismissed without prejudice as to Defendant Wasserman.

   c.   *Count III—Equal Protection Claim*

Defendant Wasserman argues that Plaintiff's equal protection claim fails because Plaintiff has not alleged that she is part of a protected class, and Plaintiff did not identify any comparators or similarly situated individuals who were treated more favorably. Def. Wasserman Mot. at 11–13. Plaintiff first reasserts arguments related to Counts I and II—First Amendment and due process violations. Resp. to Def. Wasserman Mot. at 7. Next, Plaintiff argues that she "suspects certain identifiable students received [] favorable treatment, but refrains from naming them until such time as evidence is verified." *Id.* at 8.

"In order to state an equal protection claim, the plaintiff must prove that he was discriminated against by establishing that other similarly-situated individuals outside of his protected class were treated more favorably." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009).   Courts generally look to race, religion, gender, or national origin to determine whether the plaintiff is a member of a protected class.   *See Rollins v. Bd. of Trs. of Univ. of Ala.*, 647 F. App'x 924, 938 (11th Cir. 2016) ("To maintain an equal protection claim, a plaintiff must allege that, through state action, similarly situated persons have been treated disparately.   Further, the plaintiff must present evidence that the state actor's conduct was motivated by the plaintiff's race or sex.") (internal citations and quotation marks omitted); *Alford v. Consol. Gov't of Columbus, Ga.*, 438 F. App'x 837, 839 (11th Cir. 2011) (per curiam) ("In a traditional employment case brought under the Equal Protection Clause, an employee asserts that he was discriminated against on account of his membership in an identifiable or protected class, such as race, religion, sex, or national origin.").   "If a plaintiff fails to show the existence of a similarly-situated [individual], judgment as a matter of law is appropriate where no other plausible allegation of discrimination is present." *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (per curiam).

Here, Plaintiff does not identify membership in a protected class, nor does she allege with any particularity that similarly-situated individuals were treated more favorably.   Plaintiff has failed to meet her burden to show that Defendant Wasserman violated Plaintiff's clearly established equal protection rights.   *See Carter*, 821 F.3d at 1319.

Accordingly, Count III is dismissed without prejudiced as to Defendant Wasserman.

3.   Remaining State Law Claims

A district court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it has original jurisdiction.   28 U.S.C. § 1367(c)(3).   "It has

consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The Eleventh Circuit encourages district courts to dismiss any remaining state claims when the federal claims are dismissed prior to trial. *See, e.g.*, *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam). Dismissal of state-law claims should usually be done without prejudice so that plaintiff may seek relief in state court. *See Vibe Micro, Inc.*, 878 F.3d at 1296 (citing *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999)).

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims at this juncture and will dismiss those claims without prejudice.

## IV. CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Federal Defendants' Motion to Dismiss, the State Defendants' Motion to Dismiss, and Defendant Wasserman's Motion to Dismiss are GRANTED IN PART and DENIED IN PART.

Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE in its entirety as to the Federal Defendants and the State Defendants, including Defendant Wasserman in his official capacity. Plaintiff's Amended Complaint is DISMISSED WITHOUT PREJUDICE in its entirety as to Defendant Wasserman in his individual capacity. The Clerk of Court shall TERMINATE the Department of Education, the Secretary of Education, Florida International University Board of Trustees, Board of Governors for the State University System of Florida, Claudia Puig, Mark

B. Rosenberg, R. Alex Acosta, Tawia Baidoe Ansah, Joycelyn Brown, Rosario L. Schrier, Thomas E. Baker, Scott F. Norberg, Noah Weisbord, Marci Rosenthal, Ned C. Lautenbach, and Iris Elijah as parties to this case.

The Clerk of Court is INSTRUCTED to administratively CLOSE THIS CASE.  All pending motions, if any, are DENIED AS MOOT.  Should Plaintiff choose to file a second amended complaint, she may do so within twenty-one (21) days of the date of this Order.  Any such amended complaint shall remove all extraneous information related to the parties terminated herein.

DONE AND ORDERED in Chambers at Miami, Florida, this 12th  day of April, 2021.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c: All counsel of record